IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRESTON BENNETT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -*vs*- | ) | Case No. 18-cv-4268 |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | Judge Jeffrey Cummings |
| and COOK COUNTY, ILLINOIS, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submit the following response to Plaintiff's statement of facts:

1. On November 17, 2022, the Court certified the following issues under Rule 23(c)(4): "(1) whether the Uniform Federal Accessibility Standards apply to Division 10, and (2) if the Standards apply, whether Defendant violated them." Dkt. 175, Minute entry.

**RESPONSE:** Undisputed this is a portion of the Court's order.

2. The class is defined as "All inmates assigned to Division 10 at the Cook County Department of Corrections from June 27, 2016 to the date of entry of judgment prescribed a cane, crutch, or walker by a jail medical provider." Dkt. 175, Minute entry.

**RESPONSE:** Undisputed this is a portion of the Court's order.

3. Defendant Sheriff of Cook County is responsible, under Illinois law, for prisoners remanded to his custody. Dkt. 10, Defendants' Answer to Plaintiff's Amended Complaint ¶ 3.

**RESPONSE:** Defendants object that the phrase "is responsible" is vague and undefined. Notwithstanding and without waiving said objection, undisputed Defendant Sheriff has certain defined responsibilities under Illinois law, but disputed Defendant Sheriff is responsible for prisoners without limitation.

4. Cook County is a defendant in this action. Dkt. 10, Defendants' Answer to Plaintiff's Amended Complaint ¶ 4.

**RESPONSE:** Undisputed.

5. Cook County owns Division 10 at Cook County Department of Corrections. Exhibit 3, Cook County Response to Request to Admit ¶ 2.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. Notwithstanding and without waiving said objection, Defendants admit only what is admitted in the cited exhibit, which is that "as of February 12, 2020, the date the Cook County Property Tracking List (CCSAO Bennett 002282–002284) was produced, Division 10 of the Cook County Department of Corrections was owned by Defendant Cook County." (*Id.*)

6. Defendant Sheriff will not contest the federal financial assistance element required for a claim under the Rehabilitation Act in this case. Exhibit 1, Dart Stipulation.

**RESPONSE:** Undisputed.

7. Cook County stipulates that from 1989 to 1992, Cermak Health Services received federal financial assistance for programs, services, and/or activities for detainees at the Cook County Department of Corrections. Exhibit 2, Cook County Stipulation ¶ 1.

**RESPONSE:** Undisputed.

8. Division 10 occupies a four-story building which was constructed in 1992. Exhibit 4, Cook County Response to Request to Admit ¶ 1; Exhibit 5, Sheriff of Cook County Response to Request to Admit ¶ 1.

**RESPONSE:** Undisputed.

9. Eric Davis is the Deputy Director of Capital Planning and Policy for Cook County. Dkt. 124-2, Davis Affidavit ¶ 1.

**RESPONSE:** Undisputed.

10. Mr. Davis identified a document, called "the Cook County Department of Corrections Division 10 Bid Specifications" which listed a bid due date of August 30, 1989. Dkt. 124-2, Davis Affidavit ¶ 9.

**RESPONSE:** Undisputed.

11. According to Mr. Davis, a Cook County Department of Corrections map lists "1991 as the year Division 10 was built." Dkt. 124-2, Davis Affidavit ¶ 10.

**RESPONSE:** Undisputed.

12. A Cook County Property Tracking List states that Division 10 was built in 1991. Dkt. 124-2, Davis Affidavit ¶ 12.

**RESPONSE:** Undisputed.

13. From June 27, 2016 until at least June 26, 2023, there were no fixed grab bars in proximity to the toilets in any of the cells or dayrooms contained within the 16 housing tiers in Division 10. Exhibit 2, Cook County Stipulation ¶ 2; Exhibit 6, Dart Stipulation ¶ 1.

**RESPONSE:** Undisputed.

14. From June 27, 2016 until at least June 26, 2023, there were no fixed mounted seats for any of the detainee showers in Division 10. Exhibit 2, Cook County Stipulation ¶ 3; Exhibit 6, Dart Stipulation ¶ 2.

**RESPONSE:** Undisputed.

15. Sabrina Rivero-Canchola, Sheriff Dart's ADA Compliance Officer, prepared a FY19 Business Case dated 4/3/2018. Exhibit 13, FY19 Business Case; Dkt. 124-3, Rivero-Canchola Dep 4:23-5:6.

**RESPONSE:** Undisputed.

16. The FY19 Business Case states "[d]etainees with mobility disabilities that require auxiliary aids, but do not require medical housing are housed in divisions 2, 4, 6, 9, and 10." Exhibit 13, FY19 Business Case at 2.

**RESPONSE:** Undisputed.

17. The FY19 Business Case states "Division 10 is a maximum security division with no ADA Compliant housing" and that "[h]aving no ADA compliant housing other than division 8 and 08, severely restricts are [sic] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets and showers." Exhibit 13, FY19 Business case at 1-2.

**RESPONSE:** Undisputed.

18. Ms. Rivero-Canchola knows there are cells at the Cook County Department of Corrections that comply with the 2010 ADA standards. Dkt. 124-3, Rivero-Canchola Dep 57:9-15.

**RESPONSE:** Undisputed.

19.     Judge Lee adopted the following jury instruction in *Polletta v. Dart*, 16- cv-9492: "Under the Rehabilitation Act, an accessible toilet for individuals with disabilities in a facility built after 1988 must have grab bars near the toilet, and an accessible shower must have a mounted shower seat." Exhibit 9, Order at 4-5

**RESPONSE:** Defendants object that the statement in this paragraph is a legal assertion that does not belong in a statement of facts. *See Boykin v. Chess*, No. 16 CV 50161, 2020 WL 419408, at *3 (N.D. Ill. Jan. 27, 2020) ("Legal assertions and legal conclusions are improper in a statement of facts."). The information in this paragraph is not an evidentiary fact, and its inclusion in Plaintiff's statement of facts is improper. (*See* L.R. 56.1(d), stating that each asserted "fact" must be supported by "evidentiary material" and that a statement "should not contain legal argument.") Notwithstanding and without waiving said objections, undisputed the quoted language appears in Judge Lee's jury instructions.

20.     Plaintiff Preston Bennett entered the Cook County Department of Corrections on March 29, 2018. Dkt. 10, Answer to Amended Complaint ¶ 2.

**RESPONSE:** Undisputed.

21.     From March 29, 2018 until his release on July 23, 2019, plaintiff Bennett was assigned to Division 10 at Cook County Department of Corrections. Dkt. 130 at 2, Defendants' LR 56.1(a)(3) Response ¶ 9.

**RESPONSE:** Undisputed.

22.     Plaintiff Preston Bennett had his right leg above the knee amputated in 1996. Dkt. 124-1, Bennett Dep 7:11-8:6.

**RESPONSE:** Undisputed.

23.     Plaintiff Bennett uses a prosthesis off and on, including from 1997- 2002, 2009-2014, and again in 2017. Dkt. 124-1, Bennett Dep 58:16-62:10.

**RESPONSE:** Undisputed.

24.     Plaintiff grew out of his most recent prosthesis and would not use it as often as his crutches. Dkt. 124-1, Bennett Dep 12:5-20.

**RESPONSE:** Undisputed.

25.     As an amputee, "showering is always the same" for plaintiff Bennett meaning he uses either crutches or a walker since he "can't wear the leg into the shower." Dkt. 124-1, Bennett Dep 63:1-6.

**RESPONSE:** Undisputed.

26.     On May 3, 2018, the Sheriff's Office received the following grievance from plaintiff Bennet listing the specific location of incident as Division 10-2B: I have a disability. I am not being housed correctly according to ADA standards for the type of disability I have. Exhibit 10, Bennett Grievance at 1.

**RESPONSE:** Undisputed.

27.     Ms. Rivero-Canchola provided the following response to plaintiff's grievance on May 15, 2018:

> I spoke with Mr. Bennett on 5/11/2018, his only complaint was shoulder pain and difficulty walking long distances in crutches. Both have been addressed by medical. Mr. Bennett stated he has no difficulty eating, showering, toileting, or ambulating on the tier.

Exhibit 10, Bennett Grievance at 2.

**RESPONSE:** Undisputed.

28.     Mr. Bennett testified he never made these statements to Ms. Rivero-Canchola. Dkt. 124-1, Bennett Dep 33:15-34:7.

**RESPONSE:** Defendants dispute Plaintiff's testimony that he never made these statements to Ms. Rivero-Canchola. Ms. Rivero-Canchola documented that Plaintiff made these statements to her. (Ex. 10, Bennett Grievance, at 2.) In addition, when Plaintiff replied to Ms. Rivero-Canchola's response, he did not state that Ms. Rivero-Canchola incorrectly recorded his statement that he has no difficulty eating, showering, toileting, or ambulating on the tier. (*Id.*)

29. Plaintiff Bennett appealed the respond to his grievance stating "I was never advised of my ADA housing rights." Exhibit 10, Bennett Grievance at 2.

**RESPONSE:** Defendants dispute that Plaintiff "was never advised of [his] ADA housing rights." Plaintiff knew he was being housed according to his medical classification. (Rivero-Canchola Dep. 113:6–8, Pl.'s Ex. 3, ECF No. 124-3.) The Inmate Handbook informed Plaintiff that inmates with physical disabilities will be housed in facilities appropriate to their needs and in a manner that allows equal access to programs and services. (Ex. A, Inmate Handbook, at 13.) Undisputed that the quoted language is Plaintiff's sole reply to Ms. Rivero-Canchola without any mention that Ms. Rivero-Canchola incorrectly recorded his statement that he has no difficulty eating, showering, toileting, or ambulating on the tier. (Pl.'s Ex. 10, Bennett Grievance, at 2.)

30. Ms. Rivero-Canchola met with plaintiff Bennett and knew he was an amputee and ambulated with crutches. Dkt. 124-3, Rivero-Canchola Dep 48:1-20, 49:18-22.

**RESPONSE:** Undisputed.

31. On May 18, 2018, the Sheriff's Designee, Brooke Rezko, did not accept plaintiff Bennett's appeal and wrote "original response stands." Exhibit 10, Bennett Grievance at 2.

**RESPONSE:** Disputed that Brooke Rezko is the "Sheriff's Designee." Ms. Rezko signed the grievance under the heading, "Inmate Services Director/Designee." (*Id.*) Defendants object that the phrase "did not accept" as used in this statement of fact is ambiguous. Ms. Rezko accepted

7

Exhibit 3 Page 7

the grievance appeal by reviewing Plaintiff's appeal and responding to it. After reviewing the appeal, Ms. Rezko checked the box next to "No" for "Administrator/Designees' Acceptance of Inmate's Appeal." (*Id.*) Undisputed Ms. Rezko wrote, "original response stands." (*Id.*)

32. Ms. Rezko has no recollection of the steps taken to investigate and answer plaintiff Bennett's appeal. Exhibit 11, Rezko Dep 49:10-18, 50:9-10.

**RESPONSE:** Undisputed.

33. A record produced by defendants as CCSAO Bennett 00397 identifies Isiah Mitchell is on a document titled "Detainees in Division 10 between 6/27/2016- 10/1/2018 with cane, crutch or walker alerts." Dkt. 74, Exhibit 10, Page 9.

**RESPONSE:** Undisputed. Stating further, a majority of detainees listed on the document have alerts for cane, crutches, or walkers for "Long Distance Only." (*Id.*)

34. A grievance dated May 8, 2019 identifies Isiah Mitchell as a detainee assigned to Division 10, Tier 1B, complaining of inadequate shower access. Exhibit 12 at 3-4, Mitchell Grievance assigned control number 201904775. In response to this grievance, the Sheriff's representative stated "Inmate Mitchell is afforded the opportunity to use the proper CCDOC approved items to shower." *Id.* at 4.

**RESPONSE:** Undisputed.

35. Isiah Mithcell appealed the response to the grievance assigned control number 201904775. Exhibit 12 at 4. In response to this appeal, the Sheriff's designee, Ms. Rezko, stated "Cermak Health has made shower chairs available in Division 10 for use whenever a detainee requests one. This is referred to Div 10 for 2nd review of this grievance and response." *Id.*

**RESPONSE:** Disputed that Brooke Rezko is the "Sheriff's Designee." Ms. Rezko signed the grievance under the heading, "Inmate Services Director/Designee." (*Id.*) Undisputed the quoted language is contained in Ms. Rezko's response to Mr. Mitchell's grievance appeal.

36. A record produced by defendants as CCSAO Bennett 00400 identifies Demetrius Bates is on a document titled "Detainees in Division 10 between 6/27/2016-10/1/2018 with cane, crutch or walker alerts." Dkt. 74, Exhibit 10, Page 12.

**RESPONSE:** Undisputed. Stating further, a majority of detainees listed on the document have alerts for cane, crutches, or walkers for "Long Distance Only." (*Id.*)

37. A grievance by Demetrius Bates is dated May 25, 2018, identifies he was housed in Division 10, Tier 3A, and that he complained of hardship showering because of the lack of grab bars. Dkt. 74, Exhibit 11 at 10.

**RESPONSE:** Undisputed.

38. Ms. Rivero-Canchola responded to the grievance by Mr. Bates and wrote: "After speaking with Mr. Bates, he states he wants to be housed in RTU. Mr. Bates was advised that RTU housing is for detainees with intermediate medical issues. Bates was advised to speak w/ divisional provider and shower chair is available." Dkt. 74, Exhibit 11 at 11.

**RESPONSE:** Undisputed.

39. Mr. Bates appealed this response and wrote: "I never stated to be housed in RTU. I only said that the shower area was not handicap accessible for my condition that's the only thing that I stated." Dkt. 74, Exhibit 11 at 11. The appeal was not accepted. *Id.*

**RESPONSE:** Defendants object that the phrase "was not accepted" as used in this statement of fact is ambiguous. John Mueller accepted the grievance appeal by reviewing Mr. Bates' appeal and responding to it. After reviewing the appeal, Mr. Mueller checked the box

next to "No" for "Administrator/Designees' Acceptance of Inmate's Appeal." (*Id.*) Undisputed the quoted language is contained in Mr. Bates' grievance but disputed the shower area "was not handicap accessible" for his condition. (*Id.*) Ms. Rivero-Canchola advised Mr. Bates that a shower chair is available to accommodate any alleged disability. (*Id.*)

40. A record produced by defendants as CCSAO Bennett 00391 identifies Robert Serritella is on a document titled "Detainees in Division 10 between 6/27/2016-10/1/2018 with cane, crutch or walker alerts." Dkt. 74, Exhibit 10, Page 3.

**RESPONSE:** Undisputed. Stating further, a majority of detainees listed on the document have alerts for cane, crutches, or walkers for "Long Distance Only." (*Id.*)

41. A grievance by Robert Serritella is dated August 20, 2018, and identifies he is housed in Division 10, Tier 1A. Dkt. 74, Exhibit 11 at 14. Mr. Serritella's grievance complains the showers and toilets lacked handrails. Dkt. 74, Exhibit 11 at 14.

**RESPONSE:** Undisputed.

42. Ms. Rivero-Cachola responded to this grievance by Mr. Serritella and wrote "Shower chairs are available in division 10 as reasonable accommodations since 10/21/15. If you believe you have a medical condition that necessitates housing elsewhere, then you must speak with a Cermak doctor." Dkt. 74, Exhibit 11 at 15.

**RESPONSE:** Undisputed.

43. Mr. Serritella appealed the response to this grievance. Dkt. 74, Exhibit 11 at 15.

**RESPONSE:** Undisputed.

44. A record produced by defendants as CCSAO Bennett 00396 identifies Robert Cummings is on a document titled "Detainees in Division 10 between 6/27/2016-10/1/2018 with cane, crutch or walker alerts." Dkt. 74, Exhibit 10, Page 8.

Exhibit 3 Page 10

**RESPONSE:** Undisputed. Stating further, a majority of detainees listed on the document have alerts for cane, crutches, or walkers for "Long Distance Only." (*Id.*)

45. A grievance by Robert Cummings is dated September 14, 2018, and identifies he is housed in Division 10, Tier 1A. Dkt. 74, Exhibit 11 at 18. The grievance states "Having medical difficulties standing long periods of time including lifting my legs in attempt washing both feet, including lifting myself up from sitting position. I have no medical access to stationary hand grib [sic] bars located in the common shower/toilets and cell toilet." Dkt. 74, Exhibit 11 at 18.

**RESPONSE:** Undisputed.

46. Ms. Rivero-Canchola responded to the grievance by Robert Cummings on September 29, 2018 and wrote:

> There is nothing in Mr. Cummings medical alerts that would indicate a need for grab bars during showering. Mr. Cummings is able to ambulate short distances independently and rise from a sitting position without assistance. Shower/toilet chairs are available as an accommodation.

Dkt. 74, Exhibit 11 at 19. Mr. Cummings appealed this response, but it was not accepted by the Sheriff's Administrator/Designee. *Id.*

**RESPONSE:** Disputed that the individual responding to the grievance appeal is the "Sheriff's Administrator/Designee." John Mueller signed the grievance under the heading, "Inmate Services Director/Designee." (*Id.*) Defendants object that the phrase "was not accepted" as used in this statement of fact is ambiguous. Mr. Mueller accepted the grievance appeal by reviewing Mr. Cummings' appeal and responding to it. After reviewing the appeal, Mr. Mueller checked the box next to "No" for "Administrator/Designees' Acceptance of Inmate's Appeal." (*Id.*) Undisputed the quoted language was Ms. Rivero-Canchola's response to Mr. Cummings'

11

Exhibit 3 Page 11

grievance. Stating further, Mr. Cummings had an alert for a cane for "Long Distance Only." (CCSAO Bennett 00396, Pl.'s Ex. 10, at 8, ECF No. 74.)

47. On July 23, 2013, Joan Kunz, a Sheriff's employee, wrote an e-mail to John Cooke and James Ro (both of Capital Planning for Cook County) that "I met with Cermak this morning to review ADA violations and prioritize them for completion prior to the DOJ arrival next month." Exhibit 7, J.Kunz e-mail sent 7/23/2013.

**RESPONSE:** Defendants object that the phrase "ADA violations" is an inadmissible legal conclusion. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 620 & n.3 (7th Cir. 2022) (pointing out the witness's "testimony reflects an inadmissible legal conclusion"). In addition, the Americans with Disabilities Act (ADA) does not apply to this case because physical construction of Division 10 commenced prior to July 26, 1992. *See* 28 C.F.R. § 35.151(c)(1); Davis Decl. ¶¶ 9–12, Pl.'s Ex. 2, ECF No. 124-2.

48. Ms. Kunz's e-mail sent on July 23, 2013, recommends to "[i]nstall grab bars and lower shower head" in Division 10 Tiers 2A and 2D. Exhibit 7, J.Kunz e- mail sent 7/23/2013.

**RESPONSE:** Undisputed.

49. In response to an interrogatory why the Division 10, Tier 2A shower room does not have a mounted seat, the Sheriff formulated the following answer:

> Defendant Sheriff objects to this Interrogatory to the extent that it seeks information not within the possession, custody or control of this Defendant. This Defendant does not own the building and is not the local government entity who arranged, financed, and managed the construction of Division 10. Notwithstanding these objections, Division 10 was constructed around 1991. Given the significant amount of time that has passed since Division 10 was constructed, Defendant is unable to investigate why construction of Division 10 did not include a mounted seat in the shower room in Division 10, Tier 2A.

Exhibit 8, Sheriff's Interrogatory Answer ¶ 1.

**RESPONSE:** Undisputed.

50. In response to an interrogatory why the Division 10, Tier 2D shower room does not have a mounted seat, the Sheriff formulated the following answer:

> Defendant Sheriff objects to this Interrogatory to the extent that it seeks information not within the possession, custody or control of this Defendant. This Defendant does not own the building and is not the local government entity who arranged, financed, and managed the construction of Division 10. Notwithstanding these objections, Division 10 was constructed around 1991. Given the significant amount of time that has passed since Division 10 was constructed, Defendant is unable to investigate why construction of Division 10 did not include a mounted seat in the shower room in Division 10, Tier 2D.

Exhibit 8, Sheriff's Interrogatory Answer ¶ 2.

**RESPONSE:** Undisputed.

51. In *Duran v. Elrod*, Case No. 74 C 2949, the Sheriff of Cook County and Cook County entered into a Consent Decree acknowledging "[i]n 1970, Defendants (or their predecessors in office) launched a $150 million dollar program to rehabilitate and expand the physical facilities at the Cook County Department of Corrections in order to improve the conditions at the Department of Corrections. That program is nearing completion." Exhibit 14 at 4, *Duran* Consent Decree p. 3.

**RESPONSE:** Defendants object that under the terms of the Consent Decree, "nothing in [the Consent Decree] shall be construed as an admission of liability by [d]efendants." (*Id.*) The Consent Decree was entered into "as a compromise in settlement of all aspects of [the *Duran*] litigation" and the defendants denied all allegations made by the plaintiff. (*Id.*) Notwithstanding and without waiving said objections, undisputed the quoted language is contained in the Consent Decree.

52. One of the goals of the Duran Consent Decree was the avoidance of overcrowding. Exhibit 14 at 4, *Duran* Consent Decree p. 3.

**RESPONSE:** Defendants object that under the terms of the Consent Decree, "nothing in [the Consent Decree] shall be construed as an admission of liability by [d]efendants." (*Id.*) The Consent Decree was entered into "as a compromise in settlement of all aspects of [the *Duran*] litigation" and the defendants denied all allegations made by the plaintiff. (*Id.*) Notwithstanding and without waiving said objections, undisputed the Consent Decree stated one of the goals was to avoid any overcrowding.

53. The *Duran* Consent Decree provides "[a]ll matters and decisions that affect in any way, directly or indirectly, the security and internal order of the Cook County Department of Corrections are entrusted by law to the discretion and control of the Sheriff of Cook County and the administration of the Cook County Department of Corrections, so long as such discretion and control are exercised in accordance with the provisions of law, including the Constitution of the United States and the State of Illinois." Exhibit 14 at 3, *Duran* Consent Decree p. 2.

**RESPONSE:** Defendants object that under the terms of the Consent Decree, "nothing in [the Consent Decree] shall be construed as an admission of liability by [d]efendants." (*Id.*) The Consent Decree was entered into "as a compromise in settlement of all aspects of [the *Duran*] litigation" and the defendants denied all allegations made by the plaintiff. (*Id.*) Notwithstanding and without waiving said objections, undisputed the quoted language is contained in the Consent Decree.

54. On February 7, 1989, Heard & Associates "was engaged as the Architect for the construction of the County of Cook's Jail Dormitory Facility, Division x, located in the County's

Department of Corrections Complex at and about 2700 South California Boulevard, Chicago, Illinois (the "New Jail")." Exhibit 15, Affidavit of Andrew L. Heard ¶ 6.

**RESPONSE:** Undisputed. For context, Defendants include the next sentence in the affidavit that Plaintiff omits from his statement of facts: "Heard & Associates worked with the County of Cook (the 'County') in the preparation of the Contract and Contract Documents, including the Specifications and Drawings, for the construction of the New Jail (the 'Contract')."

55. On September 18, 1989, a contract was awarded to Mellon Steuart Company, now calling itself Federal Street Construction Co., Inc., to construct Division 10. Exhibit 15, Affidavit of Andrew L. Heard ¶ 7.

**RESPONSE:** Undisputed with the additional context that the Contract was awarded by Cook County, not the Sheriff's Office. (*Id*. ¶ 6.)

56. As work progressed on Division 10, "substantial defects, deviations and delays developed in the construction Work performed by Mellon Stuart and its subcontractors." Exhibit 15, Affidavit of Andrew L. Heard ¶ 8.

**RESPONSE:** Undisputed.

57. "Because of the conditions of the project caused by Mellon Stuart, the City of Chicago has issued a non-compliance order with respect to the metallic raceway electronical system and will not issue an occupancy permit for the New Jail," according to Andrew L. Heard's declaration dated May 13, 1992. Exhibit 15, Affidavit of Andrew L. Heard ¶ 19.

**RESPONSE:** Undisputed.

58. On May 11, 1992, Cook County filed an action in the Circuit Court of Cook County against Mellon Stuart and Federal Street (along with other defendants) alleging a breach of contract relating to the construction of Division 10. *County of Cook v. Mellon Stuart Company*, Case No.

15

Exhibit 3 Page 15

92 C 3178, 812 F.Supp. 793, 794 (N.D. Ill. 1992) (Aspen, J.); Exhibit 16, at 10, Cook County's Answer in *County of Cook v. Mellon Stuart Company*, 92 CH 04636, ¶ 18.

**RESPONSE:** Undisputed.

59. "In order to meet the population restrictions and distribution ceilings for detainees as specified in the [*Duran*] consent decree, the County, on August 4, 1989, advertised for bids on the construction of a new jail dormitory facility to be located in the County's Department of Corrections complex at 2700 South California Boulevard." *Mellon Stuart Company*, 812 F.Supp. at 794; Exhibit 16, at 4, Cook County's Answer in *County of Cook v. Mellon Stuart Company*, 92 CH 04636, ¶ 6.

**RESPONSE:** Undisputed.

60. The "Cook County 1989 Budget" document produced by defendants reflects a funding period July 1, 1988 through January 1, 1990, with a grant to provide drug treatment and screening services under a jail setting. Exhibit 17 at 31, Bates Stamped CCSAO Bennett 002902.

**RESPONSE:** Undisputed.

61. The "Cook County 1992 Budget" document produced by defendants reflects that the Cermak Health Services Substance Abuse Program at the Cook County Department of Corrections is funding, at least in part, "from the U.S. Department of Health and Human Services – Public Health Servies Office for Treatment Improvement." Exhibit 17 at 42, Bates Stamped CCSAO Bennett 002913.

**RESPONSE:** Undisputed.

62. During the funding period August 1, 1991 through July 31, 1992, a grant is identified in the "Cook County 1992 Budget" identified as No. 752 showing a grant to provide

education and counseling to the inmate population at the Cook County Department of Corrections. Exhibit 17 at 41, Bates Stamped CCSAO Bennett 002912.

**RESPONSE:** Undisputed.

63. The Cook County 1992 Annual Appropriation Bill identifies the following a 1991 Achievement: "Implemented the three (3) year federal grant to enhance AIDS education and related services at an annual amount of $227,500.00" for inmates in the custody of the Cook County Department of Corrections." Exhibit 18, 1992 Annual Appropriation Bill at 3.

**RESPONSE:** Undisputed with the qualification that Plaintiff's statement of facts is missing a quotation mark and inaccurately presents the quoted language as one sentence.

64. The Cook County 1992 Annual Appropriation Bill identifies the following 1991 Achievement: "Successfully recruited five (5) physicians though our federal designation by the National Health Services Corp" for Cermak Health Services. Exhibit 18, 1992 Annual Appropriation Bill at 3.

**RESPONSE:** Undisputed.

65. Cermak Health Services of Cook County is a public entity that is administered by the Cook County Health and Hospitals System Board charged with providing health services to individuals at the Cook County Department of Corrections. Exhibit 19, Agreed Order in *United States of America v. Cook County, Illinois*, Case No. 10 C 2946, ¶ 5.

**RESPONSE:** Undisputed. Stating further, Cermak Health Services is under Cook County and not a part of the Sheriff's Office. *See Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002) (stating that "Cermak [Health Services] is a separate entity from CCDOC [Cook County Department of Corrections] and an extension of Cook County Hospital").

                                                    Respectfully submitted,

                                                    KIMBERLY M. FOXX
                                                    State's Attorney of Cook County

Dated: March 1, 2024                           /s/ *Samuel D. Branum*
                                                    Special Assistant State's Attorney

Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770