IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kavarian Rogers, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *-vs-* | ) | No. 24-cv-3739 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | Judge Rowland |
| and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

Plaintiff seek to simplify this case by requesting the Court to certify the issues
whether Cook County Jail's Division 9 detainee toilets and showers comply with the
structural standards of the Americans with Disabilities Act (ADA) and/or the
Rehabilitation Act. The proposed class is easily identified because the Jail maintains
information regarding inmates prescribed a cane, crutch and walker in its database and
tracks each time one of these individuals is assigned to Division 9. The issue whether
Division 9 complies with federal accessibility standards is central to the claim of each
inmate and resolution of these issues will avoid potentially inconsistent rulings and is the
most practical and efficient way to manage this litigation.

Defendants argue this case should not be certified because differences among
class members (they contend "many" inmates with canes, crutches, or walkers "do not
need grab bars or shower chairs") make this case too complex. *See* Dkt. 43, Response at
15. This reasoning, once adopted by the district court in *Bennett v. Dart*, 2022 WL
4386588, at *5 (N.D. Ill. 2022) (Blakey, J.), to justify the decertification of the class, was

reversed in *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (*Bennett II*).

Plaintiff and the putative class share the common experience of toileting and showering without grab bars and the absence of any place to sit when showering. One purpose of Rule 23(b)(3) is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" due to small recoveries. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (cleaned up); *Mullins v. Direct Digital LLC*, 795 F.3d 654, 658 (7th Cir. 2015). Litigating this issue as a class action contributes greatly to judicial efficiency and economy and "the Seventh Circuit's holdings in *Bennett I and II* dictate the outcome in this case." *Hernandez v. Dart*, 2024 WL 4903906, at *4 (N.D. Ill. Nov. 27, 2024) (Harjani, J.). Plaintiff shows below that the proposed class is ascertainable and that the requirements of Rule 23(a), (b)(2), and (b)(3) are satisfied.

## I. Defendants' response misunderstands *Bennett* and presents no evidence putative class members do not need accessible features to shower and toilet safely

Defendants' response misunderstands several legal and factual elements. First, defendants represent on two occasions that "*Bennett* was decertified." Dkt. 43, Response at 11, 23. This statement does not accurately represent the complete procedural history. On September 22, 2022, *Bennett* was decertified because "Defendants produced new evidence showing that the class comprises over 350 persons prescribed canes, crutches, or walkers, many for '**long distance[s] only**' and that identifying "which of these class members have physical impairments that substantially limit one of more major life activities, have a record of such impairment, or are regarded as having such an impairment will require hundreds of individualized assessments." *Bennett v. Dart*, 2022

-2-

WL 4386588, at *3 (emphasis supplied). This reasoning for decertifying the case was firmly rejected by the Seventh Circuit in *Bennett II* where the Seventh Circuit faulted the district court for finding that "[d]ifferences among class members would make the case too complex" because some class members may be "malingering or because they can get around without assistance for short differences." *Bennett II*, 53 F.4th at 420. The Seventh Circuit noted that a declaratory judgment on whether the Standards were violated would resolve the issue (not the whole case) and class members would have to proceed in individual suits to seek damages. *Id.*

Second, defendants' contention that detainees with "general alerts" and "long-distance alerts" for cane, crutches and walkers do not have in common a need for accessible toilets and showers is without any evidentiary support. The Sheriff's designation of certain detainees as "long distance only" alert and a "general" alert is not based on generally accepted professional medical standards. Dr. Andrew DeFuniak, Cook County's Rule 30(b)(6) designee, explained this distinction is not applicable in a community setting and at the Jail, a person with either a general or long distance alert may need assistance showering and/or toileting.[1] Exhibit 1, DeFuniak Dep 36:13-37:1, 38:10-39:6, 58:18-60:10.

The Sheriff improperly attempts to manufacture a difference between detainees with a "general alert" and "long distance alert" for a cane, crutch or walker with a declaration from his ADA Compliance Officer, Sabrina Trevizo. Dkt. 43, Response at 6-7; Dkt. 44-1, S.Trevizo Decl. Although Ms. Trevizo correctly states that a person with a "Long-Distance Only" alert for a cane, crutch or walker is not permitted by the Sheriff to

---

[1] The Sheriff believes a person with a "long distance only" alert, like plaintiff Rogers, is independent with Activities of Daily Living. Exhibit 2, Gavin Dep 47:7-11.

have these "devices for day-to-day use within his or her housing unit," Dkt. 44-1, S.Travizo Decl. ¶ 10, she omits the fact that this is also true for detainees with "general alerts" housed in Division 9. Larry Gavin, the Sheriff's Rule 30(b)(6) designee, testified no inmate is permitted to use a cane, crutch, or walker within the housing unit.[2] Exhibit 2, Gavin Dep 65:4-23. The Sheriff's representative confirmed no accommodation is offered to any individual with an alert for a general or long distance cane, crutch, or walker to toilet or shower. *Id.* at 32:8-20, 64:7-65:23. All mobility impaired detainees in Division 9 are similarly situated; they may not use the assistive device within the housing unit, there are no grab bars to assist toileting, no grab bars in the shower, and no accommodation is provided to allow a detainee to sit while showering.

Third, defendants provide no evidence to dispute or challenge the evidence that plaintiff Rogers is substantially limited in the ability to move from place to place.[3] *See* Dkt. 23, Memorandum at 10 (noting that Dr. McCarthy authored a record that plaintiff has a traumatic brain injury and right spastic hemiparesis, and when she authored the note in August of 2020 plaintiff relied on a cane to ambulate); *See* Dkt. 43, Response (no comment regarding plaintiff's physical limitation). Dr. DeFuniak treated plaintiff Rogers and testified he has a mobility impairment. Exhibit 1, DeFuniak Dep 65:21-68:20. Indeed, video produced by defendants shows plaintiff, at times, has obvious limitations moving from place to place. *See* Exhibit 6, Video from Div 9 Cam 1.040 (Tier 1E Dayroom on June 9, 2024 showing plaintiff Rogers attempt to descend stairs) (to be filed

---

[2] Defendants' response states a medical provider may enter a general alert for an individual to use a cane, crutch, or walker within the housing unit. *See* Dkt. 43, Response at 6. This statement is factually inaccurate.

[3] Defense counsel deposed plaintiff Rogers on September 19, 2024 in *Hernandez v. Dart*, 22-cv-16970, where plaintiff explained he is limited in the ability to move from place to place. Exhibit 3, Rogers Dep 49:16-54:21.

as a digital media exhibit); Exhibit 5, Rogers Decl. ¶ 5 (foundation for video).

Finally, defendants state "[m]any individuals who use canes, crutches, or walkers do not need grab bars or shower chairs." Dkt. 43, Response at 15. Defendants offer no support for this statement nor any evidence or suggestion how many putative class members could not have been injured under the ADA or Rehabilitation Act. Defendants know, from *Lacy v. Cook County*, evidence must be presented to suggest "how many of these individuals could not have been injured under the ADA, let alone showed 'a great many' who evaded harm." 897 F.3d 847, 864 (7th Cir. 2018). Moreover, Cook County's Rule 30(b)(6) designee testified individuals with "long distance only" alerts may need grab bars to toilet and shower safely. Exhibit 1, DeFuniak Dep 58:18-60:10.

While the recoveries for showering and toileting at completely inaccessible conditions may be small, a class action is a vehicle for recovery "by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Cred. Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), quoted with approval in *Amchem*, 521 U.S. at 617.

## II.     The class is ascertainable

Defendants argue "not everyone prescribed a cane, crutch, or walker for some purpose at CCODC, requires accommodations, beyond those prescribed devices themselves, to shower and use the toilet." Dkt. 43, Response at 28. This argument is inconsistent with Cook County's Rule 30(b)(6) designee, Dr. DeFuniak. He plainly stated that a person with a long distance alert may need a grab bar toileting and showering. Exhibit 1, DeFuniak Dep 36:13-37:1, 38:10-39:6, 58:18-60:10. The Sheriff, however, has no knowledge whether a person with an alert for a long distance cane, crutch, or walker

needs a grab bar to toilet or shower. Exhibit 2, Gavin Dep 28:6-29:21.

Defendants also contend it is unclear how individuals have been harmed. Dkt. 43, Response at 28-29. This argument, in addition to having no evidentiary support, is inconsistent with the holding in *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018), where the Seventh Circuit affirmed the certification of a class of wheelchair-users complaining of structural noncompliance at six courthouses. Similar to *Lacy*, defendants in the instant case "have not suggested how many of these individuals could not have been injured under the ADA [or Rehabilitation Act], let alone shown 'a great many' who evaded harm." *Lacy*, 897 F.3d at 864; *see also* Exhibit 4, *Craig v. Hughes*, 23-cv-2993, Order at 2 (when objecting to ascertainability, the defendant "provides no evidence concerning how many wheelchair-bound individuals would not require ADA compliant showers"); *Hernandez*, 2024 WL 4903906, at *2 (defendants offer no evidence suggesting how many inmates traversing allegedly noncompliant ramps with canes, crutches, or walkers "could be uninjured under the ADA.").

Further, the Seventh Circuit in *Lacy* distinguished a case relied on by defendants, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012). The Seventh Circuit found the commonality of the *Lacy* plaintiffs' alleged injuries stemming from defendants' failure to accommodate all wheelchair-using detainees was different from the *Jamie* class members' alleged injuries. *Lacy*, 897 F.3d at n. 38. The *Jamie* plaintiffs claimed "IDEA violations ranging from school district's failure to identify eligible students, to its failure to timely refer them for evaluation and its failure to hold properly constituted meetings regarding their individualized education programs." *Id.* Unlike in *Jamie*, plaintiff does not claim that defendants engaged in a range of injurious conduct differing by plaintiff.

Rather plaintiff claims defendants engaged in the same conduct – failing to bring Division 9 toilets and showers into compliance for the Jail's mobility impaired detainees, resulting in the same lack of proper access for all of those detainees. And here, Cook County's medical staff determines whether an inmate may use a cane, crutch, or walker, *See* Exhibit 2, Gavin Dep 7:23-8:7, and the Sheriff's records identify all such individuals assigned to Division 9. Dkt. 23-5, Sheriff's Supplemental Response to Production (identifying during the putative class period 103 individuals with a cane, crutch or walker have been assigned to Division 9). The class, therefore, is well tailored to reach individuals who would have suffered the alleged deprivations.

### III.     The proposed class satisfies Rule 23(a)(1)

Defendants acknowledge 103 individuals were assigned to Division 9 during the putative class period with a cane, crutch or walker (either for a general or "long distance" purposes). Dkt. 43, Response at 16. Despite this evidence, defendants contend a person with a "long distance" mobility device "would not be entitled to accommodations in housing for use of toilets and showers." Dkt. 43, Response at 16.  This is squarely wrong because Dr. DeFuniak said a person with a long distance alert may need grab bars to shower or toilet. Indeed, plaintiff Rogers filed grievances about unequal access to shower and toilet due to the alleged structural barriers. Dkt. 43-3 at 1-2 (Rogers grievance assigned control # 2022 x 08394 complaining of grab bars and place to sit while showering); Dkt. 43-3 at 5-6 (Rogers grievance assigned control # 2023 x 13269 complaining of poor balance and no grab bars to provide support while showering); Dkt. 43-3 at 9-10 (Rogers grievance assigned control # 2024 x 07478 complaining of no grab bars near toilet for support).

These arguments, however, fail because a proposed class is sufficiently numerous when "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Defendants acknowledge more than 40 individuals with an alert for a cane, crutch, or walker have been assigned to Division 9. As explained by the court in *Craig*, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class suit." Exhibit 4, *Craig* Order at 2 (internal citation omitted). As in *Craig* (where the partied agreed 100 or more wheelchair-users encountered allegedly inaccessible conditions), there is no dispute that hundreds of individuals with an active medical order for a cane, crutch, or walker were assigned to Division 9 making the class "large enough that joinder is impracticable." *See id*. The Court, therefore, should find the numerosity requirement is met.

### IV.    Commonality

Defendants request the Court to overrule *Bennett II* by insisting the question regarding compliance with the structural standards is insufficient to satisfy commonality since the true analysis calls for an individual analysis over what accommodation an individual may need to toilet and shower. *See* Dkt. 43, Response at 8- 12. This argument is contrary to *Bennett II*, deserves little consideration, and was recently rejected by the court in *Hernandez*:

> To satisfy commonality, Plaintiffs must "assert a common injury that is 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lacy*, 897 F.3d at 865 (*citing Wal-Mart*, 564 U.S. at 350). The issue is not one of common questions but the "capacity of class-wide proceedings to generate common *answers*." *Id.* Again, the Seventh Circuit's reasoning from *Lacy* is instructive and binding. Despite noting that "the reasonableness of a given accommodation will vary among individuals with differing disabilities," the Seventh Circuit held that "any dissimilarities among the proposed class

members will not impede the generation of common answers in this case." *Id.* Contrary to Defendants' argument that the questions posed in this case are not common to all class members, as in *Lacy*, "commonality abounds." *Id.* The proposed class "share[s] a common physical impairment" requiring use of a crutch, cane, or walker, they face common physical barriers when they confront noncompliant facilities and common answers are needed – whether the ramps were non-ADA compliant such that individuals can seek damages. *Id.* at 865-66.

*Hernandez*, 2024 WL 4903906, at *3.

Finally, defendants suggest that the common issue of noncompliance with the structural standards ultimately may be determined in favor of the plaintiff thus defeating commonality. *See* Dkt. 43, Response 12. As the Seventh Circuit explained in *Bennett I*, "Rule 23(a) and (b) provides a list of requirements for class certification, all of which must be met, but surety of prevailing on the merits is not among them." 953 F.3d 467, 469 (7th Cir. 2020) (*Bennett I*) (internal citation omitted). Defendants' belief that the outcome of this common issue may ultimately be found in favor of the plaintiff does not diminish the "central legal issue" presented in this case. *Bennett I*, 953 F.3d at 469.

## V. Typicality

Defendants contest typicality by suggesting there is "little evidence" of plaintiff's disability and suggest, without any evidence, members of the putative class may require various levels of accommodations to toilet and shower. *See* Dkt. 43, Response at 12-15. Defendants' "challenge to the typicality requirement fails for largely the same reasons" the commonality requirement fails. *Lacy,* 897 F.3d at 866 (citing *Wal-Mart*, 564 U.S. at 349 n.4 ("commonality and typicality requirements . . . tend to merge.")).

There is ample evidence plaintiff and similarly situated mobility impaired individuals are housed in Division 9. They all face the same inaccessible toilets and showers and, according to the Sheriff's designee, no accommodation is offered to shower

or toilet. All canes, crutches, and walkers are kept in the interlock when an individual is inside the living unit as depicted in the photograph below:



Exhibit 5, Rogers Decl. ¶ 4; Exhibit 2, Gavin Dep 62:11-65:23 (acknowledging this picture is a Division 9 interlock and the location where canes, crutches, and walkers are stored when an individual is inside the living unit).

As in *Lacy*, the injurious conduct alleged (failure to provide accessible toilets and showers) and the requested relief (damages for injuries sustained while using the non-compliant toilets and showers) is typical of the class at-large.

## VI. Adequacy

Defendants adopt their challenges to "commonality" and "typicality" to dispute the adequacy of plaintiff Rogers to serve as the class representative. Dkt. 43, Response at 29. This argument fails for the reasons previously advanced.

Finally, defendants do not challenge the adequacy of plaintiff's counsel to serve

as class counsel.

### VII.    Plaintiff satisfies Rule 23(b)(2)

Defendants argue plaintiff Rogers is unable to demonstrate equitable relief is "appropriate for the whole class" and that "not all proposed members would receive the same relief or accommodation." Dkt. 43, Response at 17-20. Nearly identical arguments were recently rejected in *Hernandez*.[4]

Similar to the plaintiff in *Walker*, plaintiff Rogers contends defendants "act on grounds that apply generally to the class by failing to comply with the Structural Standards required" by the Rehabilitation Act as it relates to Division 9 toilets and showers. *Walker*, 2021 WL 809765, at *6. One form of equitable relief applicable to the class as a whole involves bringing toilets and showers into compliance with the applicable federal structural standards. *Id.*

Other forms of equitable relief are also available to the proposed class, including preliminary injunctive relief requiring defendants to implement policies and procedures to assist putative class members when toileting or showering until the facilities are renovated and brought into compliance. *See Lacy*, 897 F.3d at 854.

As explained in *Hernandez*, "[c]ommon injunctive relief would remedy the injury" by either brining the toilets and showers into compliance "or by ordering policies and procedures to assist class members while" the toilets and showers "undergo construction." *Hernandez*, 2024 WL 4903906, at *4.

---

[4] The *Hernandez* court summarized defendants' position as follows: "Defendants respond that a Rule 23(b)(2) class is inappropriate because Plaintiffs would have varied abilities, experiences, and injuries, and there are no concrete physical injuries alleged." *Hernandez*, 2024 WL 4903906, *4.

### VIII.     Certification appropriate under Rule 23(b)(3) and Rule 23(c)(4)

Defendants urge the Court to adopt argument overturned in *Bennett II* that "[d]ifferences among class members would make the case too complex" given individualized nature of some class members disabilities. *Bennett II,* 53 F.4th at 420; Dkt. 43, Response at 22 (arguing "[t]he potential members of the putative class have vastly different disabilities, utilize mobility devices differently than Plaintiff, and may or may not require different reasonable accommodations from one another"). Plaintiff respectfully requests that the Court decline defendants' invitation to overturn binding precedent.

The Court explained in *Walker*, "as the Seventh Circuit recognized in *Bennett II*, a certification under Rule 23(b)(3) in conjunction with Rule 23(c)(4) of this legal question is appropriate in order to 'resolve the *issue*, not the whole case.'" Dkt. 23-22, *Walker* Order at 3 (citing *Bennett II*, 53 F.4th at 420 (emphasis in original)). Similar to *Walker*, the fact that class members "may have different damages" does not preclude certification where, as here, the main issues are (1) whether the Rehabilitation Act applies to the toilets and showers, and (2) if the standards were violated due to lack of grab bars and the absence of a place to sit while showering. *See id.* at 3-4. The "issue of the Structural Standards may 'be determined class-wide . . . leaving to the future any particular inmate's claim to relief.'" *Id.* at 4 (citing *Bennett II*, 53 F.4th at 420).

Defendants rely on *Jacks v. DirectSat USA, LLC*, 118 F.4th 888 (7th Cir. Oct. 3, 2024), to argue "Plaintiff has failed to 'show that common questions predominate in the resolution of the specific issue or issues that are the subject of the certification motion and not as to the cause of action, taken as a whole.'" Dkt. 43, Response at 24. *Jacks* holds

that to certify a class under Rule 23(c)(4) a party must demonstrate "common questions predominate as to each issue to be certified" and that "certifying the proposed issues would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898.

In *Jacks*, the plaintiffs, three former satellite service technicians, filed a class action suit against their employer alleging a violation of the Illinois Minimum Wage Law and the Fair Labor Standards Act for time spent performing work-related tasks in excess of forty hours per week. 118 F.4th at 890. Prior to trial, the district court decertified a Rule 23(c)(4) issue class finding "not only was it 'not possible to separate the question of liability from the question of damages,' but there was 'no feasible way' to determine the liability for the class as a whole" due to "'too much variance in the amount of time DirectSat technicians spent working overtime and the work they were doing in that overtime.'" *Id.* at 893.

The Seventh Circuit was critical of the district court's analysis for two reasons. First, the Court found it "was a flawed approach" for the district court to "examine[] whether common questions predominated as to the entire cause of action" rather "than looking to see whether common questions predominated as to each of the remaining fourteen certified issues." *Id.* at 898. Second, the Court squarely rejected the notion that "issues certified pursuant to Rule 23(c)(4) must resolve *all liability* in one fell swoop." *Id.*

Ultimately, however, the Court affirmed the decertification order since the DirectSat compensation method "raises many more individualized issues as compared to the straightforward forty-hour workweek commonly used by other employers" and there was a wide variation in work performed on some of the issue classes. *Id.* at 899. The

-13-

Court found "this is not a case where liability and damages can be determined by a simple formula or uncomplicated follow-on proceedings," but required "hundreds of separate trials to evaluate evidence regarding the nature and scope of an individual technician's work and the impact of his particular supervisor on the type of tasks assigned and how the technician recorded his time – not to mention the individualized piece-rate calculations at the center of this dispute." *Id.*

This case is distinguishable from *Jacks* because the proposed class, similar to the *Bennett* class, "presents what appears to be a straightforward question about whether Division [9] complies with the Standards." *Bennett II*, 53 F.4th at 420. For nearly the same reasons articulated in *Bennett I*, the issue whether the toilets and showers comply with the Rehabilitation Act standards is relevant to every detainee. *Id.*

Finally, defendants argue that plaintiff fails to show a class action is a superior method of adjudicating this case. Dkt. 43, Response at 25-27. Defendants rely on language by the district court in *Bennett* (that was subsequently reversed) that "individual questions relating to Plaintiff's claims require individualized inquiries into the extent of each detainee's disability, the type of alert, the anticipated or personal use of assistive devices, entitlement to preferred accommodations, and injuries sustained." Dkt. 43, Response at 26. This argument was squarely rejected in *Bennett II* because "[c]lass members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages; by contract, if the class loses, every detainee would be bound through the doctrine of issue preclusion." *Bennett II*, 53 F.4th at 420. The Cout of Appeals saw no reason "why the application of the Standards cannot be determined class-wide, while leaving to the future any particular

inmate's claim to other relief." *Id.* The same is true here and is consistent with *Jacks* since a class regarding the proposed issues "would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. A class action, thus, is a vehicle for the parties to litigate in one forum whether the toilets and showers comply with the structural standards and "achieves economies of time, effort, and expense and promotes uniformity of decision." *Hernandez*, 2024 WL 4903906, at * 5 (citing *Bennett*, 2020 WL 1812376, at *3); *Suchanek v. Strum Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) ("Rule 23(b)(3) class actions are designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results.'" (quoting *Amchem Prods., Inc.*, 521 U.S. at 615)).

## IX.     Conclusion

Plaintiff requests that the Court order that this case proceed as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/   Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900
pwm@morrisseylawchicago.com

*Attorneys for Plaintiff*