Transcript of the Testimony of
**ANDREW DeFUNIAK, MD**

**Date:** December 17, 2024

**Case:** KAVARIAN ROGERS v. THOMAS DART, SHERIFF OF COOK COUNTY, ET. AL.

**TOOMEY REPORTING**
312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kavarian Rogers, Plaintiff,

-vs-  No. 24 C 3739

Thomas Dart, Sheriff of Cook County, et.al, Defendants.

The remote deposition via videoconference of ANDREW DeFUNIAK, MD, called by the Plaintiff for examination, pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Court pertaining to the taking of depositions for the purpose of discovery taken by Kelly Ann Potts, Certified Shorthand Reporter, Registered Professional Reporter, within and for the County of Cook and State of Illinois, on the 17th day of December, 2024, at 11:03 a.m.

A P P E A R A N C E S:

LAW OFFICE OF THOMAS G. MORRISSEY, by
MR. THOMAS G. MORRISSEY - and -
MR. PATRICK W. MORRISSEY
10257 South Western Avenue
Chicago, Illinois 60643
(773) 233-7900
tgm@morrisseylawchicago.com
pwm@morrisseylawchicago.com
Appeared on behalf of the Plaintiff;

DeVORE RADUNSKY, by
MR. JASON E. DeVORE - and a
MR. ZACHARY STILLMAN
230 West Monroe Street, Suite 230
Chicago, Illinois 60606
(312) 300-4479
jdevore@devoreradunsky.com
zstillman@devoreradunsky.com
Appeared on behalf of the Defendants.

* * *

INDEX OF EXAMINATION

PAGE

ANDREW DeFUNIAK, MD

Examination by Mr. Thomas Morrissey.......... 6
Examination by Mr. DeVore....................73
Further Exam by Mr. Thomas Morrissey.........76

INDEX TO EXHIBITS

| EXHIBIT | | PAGE |
|---|---|---|
| Plaintiff | | |
| No. 1 | Rule 30(b)(6) Notice | 7 |
| No. 3 | Message Journal from RN McCray | 45 |
| No. 5 | Health Service Request | 47 |
| No. 7 | DeFuniak Dep in Whitney case | 35 |
| No. 11 | Medical Records-Outpatient Rehab | 18 |
| No. 12 | Medical Infirmary Encounter | 25 |
| No. 13 | Video | 63 |
| No. 14 | Rogers' Declaration | 43 |
| No. 16 | ADA Assessment Improvements | 8 |

ANDREW DeFUNIAK, MD
December 17, 2024

Page 4

No. 18 M3 Review for Dorm 2 Housing.......80
No. 20 Message From Sabrina Canchola......50

CERTIFIED QUESTIONS: PAGE:

*1*............................9

* * *

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 5

THE STENOGRAPHER: All parties are aware that the witness will be sworn in remotely. The parties agree not to challenge the validity of any oath administered by the Certified Stenographic Reporter, even if the Certified Stenographic Reporter is not physically present with the witness. This deposition will be taken via STENOGRAPHIC means.

Here begins the remote deposition via videoconference of ANDREW DeFUNIAK, MD, in the matter of Kavarian Rogers versus Thomas Dart.

Today's date is the 17th day of December, 2024, and the time is 11:03 a.m., Central Standard Time.

Beginning with the noticing party, will counsel please introduce themselves, state whom they represent, and stipulate to the swearing in of the witness remotely?

MR. THOMAS MORRISSEY: I stipulate to remote.

My name is Tom Morrissey, I'm with Pat Morrissey, for the Plaintiff.

MR. DeVORE: Jason DeVore, D -- as in "David" -- e-V -- as in "Victor" -- o-r-e -- and

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 6

Zach Stillman on behalf of the witness.

THE STENOGRAPHER: Doctor, would you raise your right hand?

(Witness remotely sworn.)

THE STENOGRAPHER: Thank you.

MR. THOMAS MORRISSEY: This is the Rule 30(b)(6) deposition. The defendants have produced Dr. Andrew DeFuniak to -- designated to discuss Topic 5 of the Notice that was tendered on September 24th, 2024.

WHEREUPON:

ANDREW DeFUNIAK, MD

called as a witness herein, having been first remotely duly sworn, was examined upon oral interrogatories and testified as follows:

EXAMINATION

By Mr. Thomas Morrissey:

Q Doctor, I'm going to ask you to look at Exhibit No. 1, Paragraph 5.

And my ques- -- After you've had a chance to read that paragraph, I'm going to ask you a question about that.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 7

(Exhibit No. 1 was marked for identification and provided to the witness.)

BY THE WITNESS:

**A Okay.**

BY MR. THOMAS MORRISSEY:

Q Have you been designated by Cook County to testify in regards to Topic No. 5?

**A Yes.**

Q Doctor, are you familiar with a woman at the jail by the name of Sabrina Canchola who works with the Sheriff's Office?

MR. DeVORE: Objection to form.

THE STENOGRAPHER: I'm sorry. Who said "objection"?

MR. DeVORE: That's Jason DeVore.

THE STENOGRAPHER: Okay. If the other person that you're with objects, will you let me know? Because I'm not going to be able to distinguish voices and I can't see you.

MR. DeVORE: Yes.

THE STENOGRAPHER: Thank you.

BY MR. THOMAS MORRISSEY:

Q Do you recall the question?

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 2

**A Yes. I know that person, Sabrina.**

Q And is Sabrina Canchola -- is she the ADA coordinator for the Sheriff's Office at Cook County Jail?

**A Yes. I believe so.**

Q I'm showing you a document which is titled "ADA Assessment Improvements" for "Divisions 2, 4, 6, 9, and 10." It's dated -- It was prepared on April 3rd, 2018.

I'll show you this document and ask you to turn to Page 2 of that document.

(Exhibit No. 16 was marked for identification and provided to the witness.)

MR. DeVORE: What exhibit is it?

MR. THOMAS MORRISSEY: It's Exhibit No. 16.

MR. DeVORE: Do you have a copy?

MR. THOMAS MORRISSEY: Sure.

(Exhibit No. 16 tendered.)

MR. DeVORE: The print is pretty small.

(Witness viewing laptop.)

BY MR. THOMAS MORRISSEY:

Q Doctor, looking at the first --

MR. DeVORE: Can you blow it up a bit?

BY MR. THOMAS MORRISSEY:

Q -- page of Exhibit 16, do you see that the document was prepared by Sabrina Rivero-Canchola?

MR. DeVORE: Objection.

BY MR. THOMAS MORRISSEY:

Q It's on the first page.

MR. DeVORE: Objection. Form, outside of his knowledge, outside the scope of his 30(b)(6) Notice.

BY THE WITNESS:

**A Yes. I see where it says "Prepared By: Sabrina Rivero-Canchola."**

***1* Q I'd ask you to turn to Page 2 of Group Exhibit No. 16, the Business Case, it's under "What history led to this project?"**

**Will you read that -- that for a moment?**

MR. DeVORE: Objection. Again, this is outside the scope of the -- of the Notice.

If you can identify where this

could possibly fit in, then I would instruct him --

MR. THOMAS MORRISSEY: It discusses compliance with the ADA for Division 9.

MR. DeVORE: Objection. I'm going to direct him not to answer.

MR. THOMAS MORRISSEY: We'll certify the question.

You're certain you're not going to allow him to answer when it talks about Division 9 and not having "ADA-compliant housing other than divisions 8 and 08, severely restricts are [sic] ability to house detainees in the most integrated setting while making sure that they have access to accessible cells, toilets and showers. This creates difficulties with bed control and also leads to litigation"?

You'll notice that the -- Dr. DeFuniak is being presented for, in part, it says, explain, with reasonable particularity, why inmates with medical alerts for canes, crutches, and walkers would be assigned to Division 9, including the accommodations for these individuals to toilet and shower.

Now, will you allow the person to

testify?

MR. DeVORE: That is very different than -- than asking about the ins and outs of a -- of a memo that was purportedly prepared by someone he cannot authenticate, and it was someone not within Cook County.

So if your question could -- would be narrowed to that as opposed to exploring this document that has -- was not authored by someone at Cook County or the witness, I don't see why the questioning on this document makes any sense.

BY MR. THOMAS MORRISSEY:

Q The document says, "Division 10 is a maximum security division with no ADA compliant housing. Detainees with mobility disabilities that require auxiliary aids, but do not not require medical housing, are housed in divisions 2, 4, 6, 9 and 10. The only ADA housing (housing that complies with 2010 design standards) that currently exists for detainees with mobility impairments is the RTU and Cermak. The ADA requires us to house detainees in the most integrated setting. Having no ADA compliant housing other than Division 8 and

ANDREW DeFUNIAK, MD
December 17, 2024

Page 12

08 severely restricts are [sic] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets and showers."

Can you individually answer the question whether you are aware that Division 9 did not have accommodations for people with canes, crutches, and walkers to toilet and shower?

MR. DeVORE: Objection. He's not here to testify individually. He's testifying as a 30(b)(6) witness.

BY MR. THOMAS MORRISSEY:

Q Can you testify as the Sheriff's -- Let me -- Let me rephrase it.

Can you testify as the Cook County representative whether the statement which is contained in this Business Case by the Sheriff's ADA coordinator is correct in regards to 9 as far as Division 9 not having access to accessible cells, toilets, and showers?

MR. DeVORE: Objection as to it requires -- It's based on an incomplete hypothetical, incomplete information of the facts that go into -- that went into that particular

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 13

memo.

MR. THOMAS MORRISSEY: Will you allow him to testify?

MR. DeVORE: If he can, yeah.

BY THE WITNESS:

**A Okay. Can you repeat the question?**

BY MR. THOMAS MORRISSEY:

Q Sure.

My question is, as Cook County's designee, do you agree with the ADA coordinator here that Division 9 does not have accessible toilets and showers for people who have auxiliary aids, such as canes, crutches, and walkers?

MR. DeVORE: Objection. It seeks a legal opinion, outside the scope of the Notice.

BY THE WITNESS:

**A So my interpretation is that they -- people with disabilities that require auxiliary aids but do not require medical housing can be housed in Divisions 2, 4, 6, 9, and 10.**

BY MR. THOMAS MORRISSEY:

Q So to clarify, an inmate that has a medical alert are for a cane, crutch, or walker can be housed in Division 9 even though Division 9 does

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 14

not have accessible showers and toilets.

Is that your understanding?

MR. DeVORE: Objection as to the characterization of evidence by Counsel.

BY THE WITNESS:

**A Yeah. It is my understanding that there are some people that might use a cane that would not require an ADA-accessible toilet or shower.**

BY MR. THOMAS MORRISSEY:

Q Is it your understanding as Cook County's designee that Division 9 does not have accessible showers and toilets for people who have mobility disabilities under the ADA?

**A It's -- Well, it's my understanding that they don't have facilities accessible, for example, with a patient, a paraplegic, like in a wheelchair, that type of accessibility for toilets and showers, yes.**

Q Well, for a person that uses -- Can you tell me, what did you do to prepare for this deposition as the County's designee?

**A I'm met with my attorney.**

Q Did you physically tour Division 9?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 15

**A I did not.**

Q As the designee for Cook County, have you been in the showers and in the cells in Division 9 in the last ten years?

**A No, I have not.**

Q Do you know whether or not the showers, for instance, in Division 9 have grab bars?

**A I don't know.**

Q Do you know if the toilets in the cells have grab bars for disabled detainees?

MR. DeVORE: Objection. Outside the scope of this Notice and he's not -- wasn't brought here to testify regarding the -- the structure of the Cook County Jail.

BY MR. THOMAS MORRISSEY:

Q Do you have any knowledge whether or not the toilets have grab bars in Division 9?

**A I have not toured all the toilets in Division 9, no, so I don't know.**

Q Do you know if any of the toilets in the housing cells in Division 9 have grab bars --

MR. DeVORE: Same --

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 4

ANDREW DeFUNIAK, MD
December 17, 2024

Page 16

BY MR. THOMAS MORRISSEY:

Q -- that would accommodate people using canes, crutches, or walkers?

MR. DeVORE: Objection. The question is outside the scope of this Notice. He's not -- He's not an engineer or designer, someone brought here on behalf of the jail. He's a doctor.

BY THE WITNESS:

**A I don't know. Again, I don't know the specifics of the toilets in Division 9.**

BY MR. THOMAS MORRISSEY:

Q Do you know if there's any shower chairs in Division 9 to assist -- to accommodate a detainee that has an alert for a cane, a crutch, or walker?

MR. DeVORE: Same objection.

BY THE WITNESS:

**A I don't -- I don't know the answer to that.**

BY MR. THOMAS MORRISSEY:

Q Do you know if there's any type of assistive devices in the housing cells in Division 9 to accommodate a prisoner that has an alert for a cane, crutch, or walker?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 17

MR. DeVORE: Objection. Form.

What time frame?

MR. THOMAS MORRISSEY: During the class period, from May 8th, 2022, to the present.

BY THE WITNESS:

**A What type of assistive device do you mean?**

BY MR. THOMAS MORRISSEY:

Q Do you know of any assistive device in the cells in Division 9 to accommodate a prisoner who has an alert for a cane, crutch, or walker?

**A I'm not aware of what specifically is in the cells, no.**

Q And these questions are all based upon your designation as the -- Cook County's designee.

Do you understand that, Doctor --

**A Yes.**

Q -- throughout this deposition?

MR. DeVORE: And we have the same continuing objection regarding the scope and the fact he's not -- He's a medical doctor. He's not brought here to testify regarding the layout of the jail, what's in it, and he already testified that he hadn't been through Division 9 in many years.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 18

BY MR. THOMAS MORRISSEY:

Q In preparing to testify for Cook County, did you review any records in regards to the plaintiff in this case, Mr. Rogers?

**A I did a cursory review of his records, but nothing in-depth.**

Q Did you review a document by a Dr. McCarthy at Stroger Hospital in regards to Mr. Rogers?

MR. DeVORE: If there's an exhibit, maybe introduce it so we're not confused.

MR. THOMAS MORRISSEY: It's Exhibit No. 11, and I'll hand it --

BY MR. THOMAS MORRISSEY:

Q Well, I'm handing you Exhibit 11 and a copy for your attorney.

MR. DeVORE: Thank you.

(Exhibit No. 11 was marked for identification and provided to the witness.)

BY MR. THOMAS MORRISSEY:

Q As the Cook County designee, what medical records did you look at for Mr. Rogers?

**A Again, I just did a cursory review of**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 19

**the records. I didn't specifically review this note, no.**

Q Do you know a doc- -- Do you know of a Dr. Theresa McCarthy?

**A Yes.**

Q And she's at Stroger Hospital, correct?

**A Correct.**

Q And she's a rehabilitation doctor?

**A Yes.**

Q Looking at Exhibit 11, Page 1, do you see the -- what Dr. McCarthy wrote about a "History of Present Illness"?

**A Yes.**

Q Can you read that for the record what the -- what the note says?

**A Under "Chief Complaint"?**

Q Yes.

**A "22 year old with" --**

Q Excuse me. I'm sorry.

"The History of Present Illness."

**A "The patient presents with spastic right-sided hemiparesis."**

Q What is spastic right-sided

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 5

ANDREW DeFUNIAK, MD
December 17, 2024

Page 20

hemiparesis?

**A It's -- You know, it can be an intermittent weakness of the patient's right side.**

Q And the "Chief Complaint," can you read that into the record, please?

**A "22 year old with history of gunshot wound to head February 10, 2020 with resultant TBI and right spastic hemiparesis. Patient spent 2 months at Shirley Ryan Rehab following his acute medical stay for his acute" -- "for his rehab needs. Asked to see patient regarding his orthotic needs. Seeing outpatient PT at Cermak. Ambulating with a straight cane, wearing white commissary velcro closure shoes."**

Q And if we look at Page 2 at Dr. McCarthy's note, the physical exam included a musculoskeletal examination, correct?

**A Yes.**

Q Can you read her note in regards to -- her findings in regards to Mr. -- Mr. Rogers?

**A She wrote "spastic gait on right, some toe drag, noted clonus on right, short steps on right, can lift DF 3.5/5, PF 4/5 but marked spasticity with weightbearing. Right upper**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 21

**extremity with tight . . . flexors (when trying to extend fingers), marked spasticity, needs resting splint overnight for positioning/decrease muscle tone."**

Q And in the last page on Page 3, she provided some instructions for the patient, correct?

MR. DeVORE: Objection as to form, relevance, outside the scope.

I mean, I don't -- This is about an individual plaintiff.

MR. THOMAS MORRISSEY: He's a class rep.

MR. DeVORE: Okay. So how does this tie in?

MR. THOMAS MORRISSEY: It involves the accommodations for people with disability, which are not -- he's the class rep.

MR. DeVORE: Well, we don't need -- Okay. We don't need to read his entire record into the record. I mean, we have an exhibit marked. Let's go.

BY MR. THOMAS MORRISSEY:

Q Do you see on the instructions -- What

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 22

is an AFO?

**A It's a type of a brace. It stands for "ankle foot orthotic."**

Q And Dr. McCarthy recommended the brace while -- while walking, correct?

**A Yes.**

Q Does an activity of daily living include walking?

**A Yes.**

Q And would you agree that based upon Dr. McCarthy's evaluation that Mr. Rogers had a disability in regards to being able to walk without a brace?

**A Based on her note, it looks like he has some limitations with walking without a brace, yes.**

Q Can you describe the limitations that -- that Mr. Rogers has?

**A No. I don't know based on her note.**

Q Would you agree that based upon her notes and findings, spastic right-side hemiparesis, that he has weakness on his right side?

**A Based on her note, it appears that he has some weakness on his right side.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 23

Q And did she -- her evaluation reflect the finding that he had problems with his gait?

**A It sounds like he had, you know, required a cane for ambulation, yes.**

Q And without a cane, would you agree that there's a risk of falling for Mr. Rogers given his diagnosis of spastic right-side hemiparesis?

**A Based on her note, I would say it's possible to fall.**

Q Is it also possible that Mr. Rogers could have seizures based upon her notes?

MR. DeVORE: Objection. Calls for speculation based upon unknown facts.

BY THE WITNESS:

**A I can't tell based on her note.**

BY MR. THOMAS MORRISSEY:

Q In fact, did you -- Looking at the note, does it reflect that he is taking seizure medication?

**A Based on her note, one of the medicines can be used for seizures or for other things.**

Q Which -- Which medication, Doctor?

**A Divalproex.**

TOOMEY REPORTING
312-853-0648
Exhibit 1 Page 6

ANDREW DeFUNIAK, MD
December 17, 2024

Page 24

THE STENOGRAPHER: Could you repeat that, Doctor?
THE WITNESS: Divalproex.
Do you want me to spell that?
THE STENOGRAPHER: Go ahead, yes.
THE WITNESS: D-i-v-a-l-p-r-o-e-x.
THE STENOGRAPHER: Thank you.
BY MR. THOMAS MORRISSEY:
Q If we look at the "Problems list," does it reflect that he had a gunshot wound?
**A Yes.**
Q And that was to his head, correct?
**A Yes.**
Q And that caused a hemiparesis to his right dominant side?
**A Yes.**
Q And he had post- -- he's had posttraumatic seizures, correct, under the "Problem list"?
**A Yes. It lists -- It's listed under the --**
Q So you would -- You would agree that Mr. Rogers without a cane presents a fall risk given --

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 25

MR. DeVORE: Object- --
BY MR. THOMAS MORRISSEY:
Q -- given his diagnosis?
MR. DeVORE: Objection. Calls for an opinion without full information in front of him.
BY THE WITNESS:
**A You know, based on this information, I'm speculating that it potentially could be a fall risk.**
BY MR. THOMAS MORRISSEY:
Q I'm showing you Exhibit 12, which is an examination that you did on July 29, 2024, and I'll give a copy to your attorney.
(Exhibit No. 12 was marked for identification and provided to the witness.)
BY MR. THOMAS MORRISSEY:
Q Prior to testifying for Cook County, did you review your notes in regards to this encounter with Mr. Rogers?
**A I saw that I had seen him. I didn't review it in any detail, no.**
Q Your "Problem list," in your encounter with Mr. Rogers, did you go through his list of

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 26

medical issues with him?
**A Did I go through his "Problem list" with him?**
Q Yes.
**A I'm not sure.**
Q Did you have access to Dr. McCarthy's notes?
**A Yes. I would have had access.**
Q And in your notes, you have a list of problems, correct, on Page 1 of Exhibit 12?
**A Correct.**
Q And one of the problems is "Post-Traumatic seizures"?
**A Yes.**
Q And you also have "hemiparesis affecting right dominant side" as one of the problems that Mr. Rogers was having?
**A Yes.**
Q And you -- you list the fact that he also had a gunshot wound to his head, a brain injury to his head?
**A Yes.**
Q And under "History of Present Illness," you also confirm that he had a traumatic

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 27

brain injury resulting in right hemiparesis and seizures?
**A Yes.**
Q And when you had talked to -- took the history of Mr. Rogers, Mr. Rogers reported weakness worsening in his right side?
**A Yes.**
Q At that time when you saw him, he was in a wheelchair, correct?
**A Correct.**
Q So you would agree that based upon your diagnosis, that posttraumatic brain injury, that Mr. Rogers experienced weakness on his right side?
**A Yes. He was reporting weakness on his right side.**
Q And based upon that weakness, posttraumatic brain injury, he required an assistive device, such as a cane, walker, or wheelchair?
**A When I saw him, he was in a wheelchair, yes.**
Q And when Dr. McCarthy -- Do you know why he got worse?

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 7

ANDREW DeFUNIAK, MD
December 17, 2024

Page 28

**A No, I do not.**
MR. DeVORE: Objection. Calls for speculation as well.
BY MR. THOMAS MORRISSEY:
Q And your impressions on Page 4 was that he had seizure disorders, correct?
**A Yes.**
Q And that's similar to what Dr. McCarthy reported when she evaluated him, correct, that he had seizure disorders and put him on seizure medication?
**A Yes.**
Q And, in fact, you continued him on seizure medication, correct?
**A Yes.**
Q So a person with seizure disorders presents a fall risk, right?
**A Well, yes. A person with seizure disorder, while they're having a seizure, would -- would fall, yes. Typically, they would fall.**
Q Did you evaluate Mr. Rogers whether he could take a shower standing up without a -- a grab bar in the shower?
MR. DeVORE: Objection to the extent

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 29

that this seeks information as to just an individual visit as opposed to his being here as a 30(b)(6) witness speaking on behalf of Cook County.
Go ahead.
THE WITNESS: Okay.
BY THE WITNESS:
**A We didn't specifically discuss using a shower.**
BY MR. THOMAS MORRISSEY:
Q In your opinion, when you saw Mr. Rogers, did he need an accommodation to move from place to place?
**A When I evaluated him, yes. He was in a wheelchair. That's our recommendation.**
Q And when Dr. McCarthy evaluated him, did she also find that he needed an accommodation when moving from place to place?
**A I believe that she had -- at that time he was using a cane.**
Q And he also had a brace when he was walking in addition to a cane, correct?
**A Correct.**
Q So he needed those accommodations to move from place to place back when Dr. McCarthy saw

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 30

him, correct?
**A Correct.**
Q And at the time you saw him, you evaluated that he needed to be in a wheelchair, correct?
**A Correct.**
Q And you would agree that when you saw him that he needed an accommodation for toileting given his medical condition?
**A Yes. Based on my exam, he would have needed accommodation for a toilet.**
Q What type of accommodation after you -- At the time you evaluated him, what type of accommodation did Mr. Rogers require?
**A Well, at the time I evaluated him, he would -- he had some weakness on his right side, so he would have probably required a grab bar next to the toilet.**
Q And when Dr. McCarthy evaluated him, he also had this weakness on his right side, correct?
**A He had some weakness on his right side. It wasn't as severe, no.**
Q But he used -- He had to have a cane,

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 31

correct?
**A Correct.**
Q And he needed a brace, correct?
**A Correct.**
Q Would you agree that given his condition that he was -- he had a mobility disability at the time Dr. McCarthy examined him?
MR. DeVORE: Objection. Calls for speculation. He wasn't there at the time Dr. McCarthy examined him, examined Rogers.
BY THE WITNESS:
**A Based on her note, he did have some difficulties ambulating and did require a cane at that time, yes.**
BY MR. THOMAS MORRISSEY:
Q And based on your experience as a medical doctor, would a -- perhaps a grab bar near the toilet assist him, accommodate him, in toileting if he had had a right-side hemiparesis?
MR. DeVORE: Objection. Outside the scope of the 30(b)(6) Notice. He's here as a Cook County representative, not his doctor in an individual capacity.

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 8

ANDREW DeFUNIAK, MD
December 17, 2024

Page 32

BY THE WITNESS:

**A So there are -- There are different levels of weakness. I don't know exactly what he required back in -- in 2020 when he was evaluated as far as the toileting.**

BY MR. THOMAS MORRISSEY:

Q If a person that's -- Do you, as a medical doctor, prescribe walkers to patients at Cook County Jail?

**A Yes.**

Q One of the reasons that you would prescribe a walker to a patient is because they have a problem with their gait, walking?

**A Yes.**

Q Would one of the problems that you would prescribe a walker to a patient because they may have a problem with balance?

**A Yes.**

Q One of the problems that you would prescribe a walker to a patient at the jail is that they may have some weakness in their leg strength?

**A Yes, possibly.**

Q Would that also be true for a person that you would prescribe a cane to, that they might

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 33

have a problem with their gait and walking without the assistance of a cane?

**A They might have a problem, meaning like pain?**

Q I'm referring specifically that -- for people that you prescribe a cane to, some of the patients that are prescribed canes have a problem with their gait or their ability to walk without an assistive device like a cane, correct?

**A Yes.**

Q And some of the patients that you prescribe a cane to may have a problem with their balance without having an assistive device, such as a cane?

**A Yes.**

Q And some of the patients that you prescribe a cane to may have a problem with their leg strength, correct?

**A Correct.**

Q And the same would be true in regards to a crutch, as far as a person that you prescribe a crutch to may have difficulty with walking without the assistance of a crutch?

**A Correct.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 34

Q And the same is true with a crutch, that that may have problems with balance, correct?

**A Correct.**

Q And the same is true with a crutch, that they may have problems with leg strength without the assistance of a crutch?

**A Yes. Correct.**

Q And for people who that are prescribed a cane, crutch, or walker, for some of those patients, they present a fall risk if they're not provided with either a cane, crutch, or walker, correct?

**A Some of them, yes.**

Q As the Cook County designee -- Well, Let me -- let me digress for a second.

You've previously been deposed by my office?

**A Yes.**

Q And in preparing for today's deposition, have you looked at some of the depositions that you gave in various cases for Cook County?

**A No.**

Q I'm showing you a deposition you gave

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 35

on June 21st, 2018, in a case called Whitney versus Dart.

(Exhibit No. 7 was marked for identification and provided to the witness.)

MR. DeVORE: Is this marked?

MR. THOMAS MORRISSEY: Yeah. It's marked as Plaintiff's Exhibit No. 7.

BY MR. THOMAS MORRISSEY:

Q I'm on Page 14 -- well, going from Line -- Let's start at Line 21 on Page 15. Calling your attention to your prior deposition testimony in Whitney versus Dart on Page 15, Line 21, you are asked this question:

"Are there certain housing units at the jail where patients with assisted devices, for example, canes, walkers, or crutches can be housed?"

You responded and your answer was:

"I'm not aware of . . . specific housing units?"

Doctor, that -- You gave that

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 9

statement in 2018.

Today, based upon your position as the designee, what specific housing units can people with canes, crutches, and walkers be housed in in the Cook County Jail?

**A Well, if that's the only alert, it's my understanding they can be housed in any of the divisions.**

Q So a person with a cane, crutch, or walker could be housed in Division 9.

Is that fair to say?

**A Yes.**

Q And as a medical doctor, in the medical literature, is there any reference that you're aware of for a diagnosis of a long distance walker?

MR. DeVORE: Objection as to form.

BY THE WITNESS:

**A I'm not sure. I don't think there's a specific diagnosis for long distance walker.**

BY MR. THOMAS MORRISSEY:

Q And as far as -- So as a medical doctor, you can prescribe a walker for a patient, correct?

**A Correct.**

Q And that can be given to an insurance company for purposes of reimbursing the patient for a walker, correct?

MR. DeVORE: Objection. Scope, form. I don't know how this relates, insurance.

You can answer.

BY THE WITNESS:

**A That's my understanding, yes.**

BY MR. THOMAS MORRISSEY:

Q Okay. Is there any distinction, in your knowledge in the medical community, if you write a prescription for a long distance walker or just a walker as far as the patient being reimbursed for the walker by insurance?

MR. DeVORE: Objection as to it's outside the scope of this.

I'm going to direct you not to answer.

MR. THOMAS MORRISSEY: You're going to direct him not to answer?

MR. DeVORE: Yeah. I mean, if we're talking about insurance reimbursement, I don't know how that -- how that could possibly, conceivably --

MR. THOMAS MORRISSEY: All right.

BY MR. THOMAS MORRISSEY:

Q In the medical community, do you agree that there's no distinction between walker -- a prescription for a walker and the walker for long distance?

MR. DeVORE: Objection as to what a medical community.

BY MR. THOMAS MORRISSEY:

Q Well, you're -- you're a medical doctor, correct?

**A Yes.**

Q You received your training at Franklin medical school -- or Chicago Medical School, correct?

**A Correct.**

Q And you did an internship, correct?

**A Yes.**

Q So based upon your training and experience as a medical doctor, is there -- in the medical community that you're part of, is there any distinction between a walker -- a prescription for a walker and a prescription for a walker for long distance?

MR. DeVORE: Same objection.

BY THE WITNESS:

**A And if you're talking about in the community, I don't think there's a distinction made, if the patient just uses the walker when they need to.**

BY MR. THOMAS MORRISSEY:

Q In looking at your deposition on Page 18, Line 9, you were asked -- Well, let's start with Line 5, on Page 18.

"Who generally runs the staff meetings?

"ANSWER: Generally Dr. Mennella or one of the associate medical directors, Dr. Feldman or Dr. Richardson.

"QUESTION: Have you ever discussed the practice or the policy [of prescribing] canes, crutches, or walkers at the general staff meetings?

"ANSWER: I can't specifically recall that."

So my question today is, in your

staff meetings with Cook County, Cermak, have you -- had any medical doctor ever discuss the distinction in regards to providing a walker to a patient versus a long distance walker?

MR. DeVORE: Objection just as to scope and -- and your reference to 2018 testimony when this case involves May 8, 2022 forward.

You can answer.

BY THE WITNESS:

**A Not that I'm aware of, no.**

BY MR. THOMAS MORRISSEY:

Q Is it -- So is it fair that, as a Cermak Health Service doctor, you received no training from your superiors -- I don't know who the current medical director is in Dr. Mennella's place -- but you received no training or policy in regards to the distinction between a long distance prescription for a walker versus a prescription just for a walker?

**A There's no specific training regarding that, no.**

Q Would the same also be true in regards to a long distance cane versus a cane or a long distance crutch or a crutch as far as your

ANDREW DeFUNIAK, MD
December 17, 2024

training vis-a-vis Cermak Health Service?

**A Yes.**

Q And if we look at Page 15 of that same exhibit, going to Line 6 on Page 15, in 2008 [sic] -- '18, your question was:

"Has the Sheriff's Office given you any training about or relating to prescribing wheelchairs to inmates in the DOC?

"ANSWER: No.

"Have you been given any training about prescribing canes to inmates in the DOC?

"I mean it's the same with wheelchairs. We don't have specific training for assisted devices. It's part of the overall health assessment of the patient."

Is that fair to say, up to the present you've received no formal training from the Sheriff in regards to when to prescribe a walker, for instance, or a walker for long distance?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

MR. DeVORE: Objection. He's not here -- Objection to form.

He's not here to talk about what the Sheriff would train anybody in. He worked for Cook County.

But you can answer, to the extent you can.

MR. THOMAS MORRISSEY: Well, let me -- Let me rephrase question.

MR. DeVORE: Yeah, mm-hmm.

BY MR. THOMAS MORRISSEY:

Q Have you been given any instruction or training or policies from the Sheriff in regards to you, as a medical professional, when to prescribe a walker, cane, or crutch alert vis-a-vis the difference between a long distance alert for a walker, cane, or crutch?

**A No, we have not.**

Q Are you aware as the Sheriff -- as the Cook County's designee that the Sheriff's Office is -- To your knowledge, what type of assistive devices are allowed for detainees with mobility disabilities in Division 9?

**A To my knowledge, it's permitted to**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

**have canes, crutches, potentially walkers. I'm not a hundred percent sure about that.**

Q So based -- as the Sheriff -- As the County's designee, inmates that have canes and crutches are allowed to keep those assistive devices in the tiers in Division 9?

MR. DeVORE: Objection as to form. He's not a -- He's a medical doctor. He's not housing for the Sheriff. Seeks information outside of the scope of his knowledge.

BY THE WITNESS:

**A I don't know the specifics of where individuals keep their assistive devices in Division 9.**

BY MR. THOMAS MORRISSEY:

Q I'm going to show you Exhibit No. 14. It's a declaration from the plaintiff in this case, Mr. Rogers.

(Exhibit No. 14 was marked for identification and provided to the witness.)

BY MR. THOMAS MORRISSEY:

Q I'd ask you to take a few moments to look at that.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 44

(Brief pause.)

BY MR. THOMAS MORRISSEY:

Q Have you had a chance to read Mr. Rogers' declaration?

**A Yes.**

Q And review the exhibit that's a screenshot from Paragraph 4?

**A Yes.**

Q And the screenshot for No. 4 shows at least a walker and three canes and a crutch in the interlock area in Division 9?

**A Yes. It appears so.**

Q Is that -- And Mr. Rogers' declaration, as the County's designee, does that represent Cook County understanding that when a detainee with an alert for a cane, crutch, or walker is placed in Division 9 that the devices are -- are collected and maintained in the officers' bubble?

MR. DeVORE: Objection as to form. Also, it seeks an answer based upon incomplete information. I don't even know what the question is.

Could you rephrase the question?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 45

MR. THOMAS MORRISSEY: Sure.

BY MR. THOMAS MORRISSEY:

Q As Cermak Health Services' designee, Cook County's designee, do you agree with Mr. Rogers that when a person with an alert for either a long distance or just a general alert for a cane, crutch, or walker is placed in the housing tier in Division 9 that the assistive device is taken from them and held in the officers' bubble?

MR. DeVORE: Objection as to form. You can't ask him to agree with the plaintiff, and in the context of this 30(b)(6) Notice, it's not why he's here.

BY THE WITNESS:

**A I'm not aware of the specific policy.**

BY MR. THOMAS MORRISSEY:

Q So would it be fair to say, as the Cermak -- as Cook County's designee -- I'm going to show you the records from . . .

I'm going to show you Exhibit No. 3 -- I'm going to show you Exhibit No. 3.

(Exhibit No. 3 was marked for identification and provided to the witness.)

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 46

BY MR. THOMAS MORRISSEY:

Q It's a Message Journal from an RN McCray.

Do you a nurse by the name of McCray who works for Cermak?

**A I do.**

MR. DeVORE: Is this one 8/18/22?

MR. THOMAS MORRISSEY: This -- Yeah.

MR. DeVORE: Okay.

MR. THOMAS MORRISSEY: At 1404. It's Bates stamped by your firm DR001577.

BY MR. THOMAS MORRISSEY:

Q Do you know a Ms. Sims also?

**A Mr. Sims, yes.**

Q Kevin Sims?

**A Yes.**

Q He's a PA that works for Cermak?

**A Yes.**

Q Looking at Ms. McCray's message to Physician Assistant Sims -- and this is in regards to a plaintiff by the name of Mr. Hernandez -- it says, in part, "This patient just come back [from] IDOC on 8/4 and has a cane at all times. The prior provider that seen him on intake renewed the cane

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 47

order from February when he was here. He is overweight and walk with a staggered, shuffled limp. He drags [his] left foot. He does need the cane in my opinion but they will not allow him to have in Division 9, except for long distances. As a result, he needs appropriate housing. Please see my note."

BY MR. THOMAS MORRISSEY:

Q And then if we look at the examination -- Exhibit No. 5 -- Let me show you Exhibit 5.

(Exhibit No. 5 was marked for identification and provided to the witness.)

BY MR. THOMAS MORRISSEY:

Q Is it your understanding that when a detainee puts in a Health Service Request that they're seen by a PA --

MR. DeVORE: Objection to --

THE STENOGRAPHER: I'm sorry, Tom.

Could you repeat that question? Because you're kind of fading out a little bit.

BY MR. THOMAS MORRISSEY:

Q Does this appear to be a medical

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 12

ANDREW DeFUNIAK, MD
December 17, 2024

Page 48

appointment with a nurse based upon a Health Service Request Form?

MR. DeVORE: Objection as to scope. That's beyond -- well beyond the scope of this Notice as it's related to Hernandez, not even the plaintiff, nothing to do with this case.

BY MR. THOMAS MORRISSEY:

Q Can you answer the question?

**A Can you repeat the question?**

Q Sure.

When a -- When a prisoner puts in a Health Service Request, is there a process to be seen in the healthcare unit?

**A There's a process to be evaluated typically by the nurse initially.**

Q And looking at Exhibit 5, Page 1, is this dated 8/18/22?

MR. DeVORE: Objection. This has nothing to do with this case, outside the scope of this 30(b)(6) Notice.

BY THE WITNESS:

**A Yes.**

BY MR. THOMAS MORRISSEY:

Q And it's for Mr. Hernandez, the

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 49

patient?

MR. DeVORE: Same objection.

BY THE WITNESS:

**A Yes.**

BY MR. THOMAS MORRISSEY:

Q And the FIN number, which is on the top of that, that matches the number in Exhibit No. 3?

MR. DeVORE: Objection. Unless you can articulate how this relates, I'm going to direct him not to answer.

MR. THOMAS MORRISSEY: It relates specifically to the Notice which talks about accommodations for those individuals to toilet and shower that are in Division 9, and Hernandez is a putative class member.

BY THE WITNESS:

**A What was the question?**

BY MR. THOMAS MORRISSEY:

Q The question was, looking at Exhibit 3, is there an FIN number in regards to the -- to the e-mail to the PA or the -- or the nurse?

(Brief pause.)

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 50

MR. THOMAS MORRISSEY: I'll withdraw that question.

BY MR. THOMAS MORRISSEY:

Q All right. I'm going to show you -- Before we get to Exhibit 5, I'm going to show you Exhibit 20.

(Exhibit No. 20 was marked for identification and provided to the witness.)

BY MR. THOMAS MORRISSEY:

Q This is a message from Sabrina Canchola, the ADA coordinator.

Do you see this?

**A Yes.**

Q And it says -- And the message to Ms. Sims -- to Mr. Sims, the PA, it says: "Good afternoon. Can you review the following inmates to determine if they need their devices full time?"

MR. DeVORE: That's Exhibit 20?

MR. THOMAS MORRISSEY: It's Exhibit 20.

MR. DeVORE: Did you send that to us?

MR. PATRICK MORRISSEY: It's misnumbered on the thing we sent you.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 51

MR. DeVORE: What's the one you sent?

MR. PATRICK MORRISSEY: It would be 5.

MR. DeVORE: 5?

MR. PATRICK MORRISSEY: Yeah.

MR. DeVORE: So it's 5 on the one you sent us?

MR. PATRICK MORRISSEY: Yes.

MR. DeVORE: Okay.

BY MR. THOMAS MORRISSEY:

Q So, again, looking at this e-mail from the ADA coordinator for the Sheriff to PA Sims on 8/18/22, there's a "CH" number. The jail number is on there, correct, on Exhibit 20, 20220202047?

**A Yes.**

Q And it's the same number on the medical nurses' note on Exhibit 5, correct?

**A Correct.**

Q Okay. And Exhibit 5 is a medical note for a Mr. Hernandez, correct?

**A Correct.**

Q The patient's name is Mr. Hernandez.

And what Sabrina Canchola is asking the PAs, "Can you review the following inmates and determine if they need their devices

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 13

ANDREW DeFUNIAK, MD
December 17, 2024

Page 52

full time? Due to [the] limited bed space for Max detainees, they are currently housed in 9."

So looking back now at Exhibit 5, the request by Mr. Hernandez, "I had a cane when I got here today. C/O said I could not have it on the deck. I need my cane at all times specially when I get" -- "get up in the morning. Medical staff is aware . . . because I fell in my cell in div-10. I also need to be placed on a wing with a shower chair medical wing or old mans deck."

And the grievance is -- Okay. Okay. Okay.

So the reason why he was being seen today is because he wasn't allowed to have his cane on Division 9's deck, correct?

MR. DeVORE: Where are you reading from again?

MR. THOMAS MORRISSEY: The request to talk to a healthcare provider on Exhibit 5.

MR. DeVORE: 5.

And this is about Division 10, right?

MR. THOMAS MORRISSEY: It's about Division 9.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 53

MR. DeVORE: Okay. The fall in Division 10, is that what you're referring to? Okay.

BY THE WITNESS:

**A So the request is regarding an evaluation for a cane, it appears, and also his request to be placed in a wing with a -- a medical wing with a shower chair or old man's deck.**

BY MR. THOMAS MORRISSEY:

Q So as a Cook County designee, does this refresh Cook County's recollection that prisoners with alerts for either long distance or just alerts with canes, crutches, and walkers are not allowed to have them inside of Division 9 as an accommodation?

MR. DeVORE: Objection as to form and seeks information outside of his knowledge as well. Also, it relates to different divisions, including Division 10, which is referenced in Exhibit 5.

BY THE WITNESS:

**A No. That does not refresh my memory.**

BY MR. THOMAS MORRISSEY:

Q As Cook County's designee, is it fair to say that Cook County, Cermak Health is unaware

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 54

of whether or not detainees with canes, crutches, or walkers, either an alert or a long distance or a general alert, are able to keep those devices when they're on the tier -- tiers in Division 9?

MR. DeVORE: Objection as to mis- -- Object to mischaracterizes the evidence and also as to form in terms of it being compound and confusing.

BY MR. THOMAS MORRISSEY:

Q Do you understand the question?

**A No.**

**Can you repeat it?**

Q Sure.

As a designee, are you aware whether or not a prisoner with an alert, either a long distance or a general alert for a cane, crutch, or walker, is allowed to have those devices in the tiers in Division 9?

MR. DeVORE: Objection. Form, time frame.

BY THE WITNESS:

**A No, I'm not aware.**

BY MR. THOMAS MORRISSEY:

Q During the class period from -- from

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 55

May 8th, 2022, to the present, would your answer be the same, that Cook County, Cermak Health is unaware of whether or not individuals with -- with alerts for canes, crutches, or walkers, either a general alert or a long distance, whether they're allowed to have those devices while on the tier?

MR. DeVORE: Objection as to form and also seeks information outside his knowledge and it's specifically requesting information within the realm of the Sheriff as opposed to Cook County.

But if you can answer, you can.

BY THE WITNESS:

**A Yes. I'm unaware.**

BY MR. THOMAS MORRISSEY:

Q Just to clarify, if an inmate has a general alert for a cane and is housed in Division 9, Cook County is unaware of whether or not that person is allowed to have a cane inside the tier?

MR. DeVORE: Objection. Outside the scope of the Notice, asking about -- If there's a question regarding the -- what's in the Notice, that's a fair question. This is not a fair question.

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 14

ANDREW DeFUNIAK, MD
December 17, 2024

Page 56

MR. THOMAS MORRISSEY: Are you allowing him to answer?

MR. DeVORE: I don't know how he can -- As phrased, I mean, not as phrased.

MR. THOMAS MORRISSEY: Okay.

BY MR. THOMAS MORRISSEY:

Q If an inmate has a general alert for a cane, based upon Cook County's knowledge, are they allowed to use the cane when showering in Division 9?

**A I'm unaware of the specifics if they would need a cane or if they could have a cane in Division 9.**

Q If a detainee had a general alert for a cane in Division 9, were they allowed to use the cane when they toilet?

MR. DeVORE: Objection. It seeks information outside the scope of his knowledge and better suited for the Sheriff.

BY THE WITNESS:

**A I don't know the specifics where a cane is permitted to be held by the patient.**

BY MR. THOMAS MORRISSEY:

Q Would the same be true in regards to

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 57

each of the other assistive devices -- a walker or a crutch -- in Division 9, whether -- whether or not the patient would be allowed to use a cane, crutch, or walker in order to toilet in Division 9?

MR. DeVORE: Same objection.

BY THE WITNESS:

**A Yes. I'm unaware of the specifics.**

BY MR. THOMAS MORRISSEY:

Q And would the same be true if it wasn't a general alert but a long distance alert for a cane, crutch, or walker; is Cook County aware of whether or not they could use that -- those devices to either shower or to toilet?

**A I'm not aware of the specifics.**

Q As Cook County's designee, are you aware of any assistive device or accommodation provided in Division 9 for a person that has alerts either for long distance or general for a cane, crutch, or walker when they shower -- when they toilet?

MR. DeVORE: Objection. Seeks information outside of his knowledge and better suited for the Sheriff.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 58

BY THE WITNESS:

**A I'm not aware of the specifics of individual units.**

BY MR. THOMAS MORRISSEY:

Q And that would be true in Division 9 in regards to showering; Cook County is not aware of any accommodations for a person who has an alert for a cane, crutch, or walker, either a general alert or a long distance, as far as providing any assistance or accommodations for them to take a shower.

Is that fair to say?

MR. DeVORE: Objection. Form, seeks information outside the scope of the Notice.

BY THE WITNESS:

**A Yes.**

BY MR. THOMAS MORRISSEY:

Q As a -- As Cook County's representative or designee, would you agree that some people with a medical alert for a cane require a cane when toileting in Division 9?

MR. DeVORE: Objection. Calls for speculation as to who "some people" might be.

BY THE WITNESS:

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 59

**A There may be -- Certainly, there may be individuals that would require that, yes.**

BY MR. THOMAS MORRISSEY:

Q And the same would be true in regards to a person that has a walker or a crutch, that they may require those assistive devices to toilet?

MR. DeVORE: Same objection.

BY THE WITNESS:

**A Yes. That's correct.**

BY MR. THOMAS MORRISSEY:

Q And the same would be true for a long distance alert for a cane; some detainees may require a long distance cane to toilet in Division 9?

MR. DeVORE: Objection. Calls for speculation.

BY THE WITNESS:

**A In theory, they may, yes.**

BY MR. THOMAS MORRISSEY:

Q And the same would be true for crutches and walkers, correct?

**A Yes. The same would be true.**

Q And if I asked you the same questions in regards to showering, that when a medical doctor

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 15

ANDREW DeFUNIAK, MD
December 17, 2024

Page 60

or a physician assistant issues a prescription for a cane, walker, or crutch, whether it's long distance or a general alert, the detainee may require those assistive devices in order to shower?

MR. DeVORE: Objection. Form, unclear if you're talking about a case-by-case basis or generalities.

BY THE WITNESS:

**A In general, there -- there might be a situation, yes.**

BY MR. THOMAS MORRISSEY:

Q Can you -- And Cook County has no awareness of whether or not there's grab bars in showers in Division 9 for people who have been prescribed canes, crutches, or walkers to hold onto when showering, correct?

**A Correct.**

Q And Cook County has no knowledge whether or not there's grab bars in the individual cells in Division 9 for a person prescribed by a medical doctor or physician assistant to have a cane, crutch, or walker, either generally or specifically long distance?

MR. DeVORE: Objection. Form,

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 61

compound.

BY THE WITNESS:

**A That's correct.**

MR. THOMAS MORRISSEY: Let's take a five-minute break.

MR. DeVORE: Okay.

(Brief recess was had.)

BY MR. THOMAS MORRISSEY:

Q Showing you on the screen in a moment Exhibit 13, which is a video of Mr. Rogers on June 9th, 2024, in Division 9, we are going to start with, are you aware of whether or not -- Let me ask a preliminary question.

In Division 9, are you familiar with the layout of Division 9's tiers?

MR. DeVORE: Objection. Asked and answered. He previously testified he hasn't been through Division 9 in several years.

BY THE WITNESS:

**A I can recall I've -- I've been in a tier before, a tier, yes.**

BY MR. THOMAS MORRISSEY:

Q And in Division 9, are there two levels in each tier?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 62

**A Yes, to my recollection. I don't know if it's every tier, but the tier that I recall had two levels, yes.**

Q And are some of the tiers used for segregation of prisoners?

**A I don't -- I don't know how that works in Division 9. I think there's segregation in all the units.**

Q Are you aware that prisoners, when they're released from the cell that are in segregation, are shackled; their legs are shackled and their hands are shackled?

MR. DeVORE: Objection. Seeks testimony outside of his knowledge.

BY THE WITNESS:

**A No. I don't specifically know how they're restrained.**

BY MR. THOMAS MORRISSEY:

Q Have you seen prisoners at the jail shackled, their legs shackled, hands shackled?

**A I have, yes.**

Q Have you seen prisoners that have a mobility disability having their legs shackled and hands handcuffed at the same time?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 63

MR. DeVORE: Objection as to time frame, form.

BY MR. THOMAS MORRISSEY:

Q In the last two years.

**A I wouldn't know. No, not that I recall.**

Q We're going to -- we're going -- where -- Are the showers located on the lower level where the dayroom is in Division 9?

**A I don't know.**

Q To your knowledge, are they on the second floor of the Division 9 tiers, the showers?

**A I don't know where they're located.**

Q Showing you now a video which is Exhibit No. 13 of Mr. Rogers in Tier 1E on June 9th, 2024, at 9:18 a.m.

(Exhibit No. 13 was marked for identification and video was viewed.)

BY MR. THOMAS MORRISSEY:

Q I'm going to stop Exhibit 13 for a moment and call your attention back to Exhibit 14, the declaration of Mr. Hernandez.

Paragraph No. 5, "I have also

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 16

ANDREW DeFUNIAK, MD
December 17, 2024

Page 64

watched the video from Division 9, Tier 1E from 9:17 until 9:29 a.m. This video is marked 'Division 9-CAM_1.040_IE Dayroom_Door-2024-06-09.' In this video, I am assigned to the top deck in the living unit and struggle to descend the steps. I am unable to make it down the stairs and the correctional staff, including a white shirt who is a supervisor, carry me up the stairs back to my cell."

So we're going to resume the video of Mr. Rogers descending the steps -- or trying to descend the steps on June 9, 2024.

(Video was viewed via screen-share.)

MR. THOMAS MORRISSEY: I'm going to stop the video at 9:20:59.

BY MR. THOMAS MORRISSEY:

Q Doctor, when you saw Mr. Rogers descending the steps in Division 9, did it appear that he had his brace on his legs?

**A I really can't tell.**

Q If we go back -- go back and zoom in on his right foot . . .

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 65

(Video was viewed via screen-share.)

BY THE WITNESS:

**A I see it. But if it's under his clothes, I can't -- I can't see.**

MR. DeVORE: What mark of the video are we at?

MR. THOMAS MORRISSEY: 9:20:37.

MR. DeVORE: 9:20:37.

BY THE WITNESS:

**A Okay. At the arrow, it appears like there's a black band on his leg. That could be a brace.**

BY MR. THOMAS MORRISSEY:

Q Is that an AFO, Doctor?

**A I can't tell.**

Q Can you describe an AFO for me?

**A I mean, it's a -- It's a plastic, fabricated brace that goes behind the back of your leg around your -- the base of your foot.**

Q In Mr. Rogers' attempt to descend the stairs in Division 9, on June 9, 2024, would you agree that he was favoring his right leg?

MR. DeVORE: Objection. Calls for

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 66

speculation.

BY THE WITNESS:

**A It -- It appears that his left side was his dominant side.**

BY MR. THOMAS MORRISSEY:

Q And would you -- Is that consistent with your evaluation, that Mr. Rogers had difficulty in regards to his legs when --

**A Well, it wasn't the same time period; but when I -- when I saw him, he was having weakness in his right side, yes.**

Q And looking at this video, would you agree that the film demonstrates that on June 9th, 2024, Mr. Rogers was demonstrating difficulty with his gait?

MR. DeVORE: Objection. Calls for speculation.

BY THE WITNESS:

**A It looks like he's taking his time going down the stairs, yes.**

BY MR. THOMAS MORRISSEY:

Q Okay. He's having difficulty bearing weight on his leg or foot?

MR. DeVORE: Objection. Calls for

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 67

speculation regarding difficulty and what the plaintiff was feeling at the time of this video when the doctor was not there.

BY THE WITNESS:

**A It appears he's favoring his left side.**

BY MR. THOMAS MORRISSEY:

Q As a medical doctor, if you examine a patient descending stairs with an apparent brace on his right leg, would you agree that he has -- might have some mobility disability?

MR. DeVORE: Objection. Incomplete hypothetical and also outside the scope of the 30(b)(6) Notice for which he was brought here.

BY THE WITNESS:

**A So as a -- as a provider, if we're examining a patient that's limping, they would appear to have some type of -- some degree of mobility disability, yes. Each case would be individualized, obviously.**

BY MR. THOMAS MORRISSEY:

Q But in regards to Mr. Rogers, you would agree from looking at this film that it appears he had a mobility disability on his right

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 17

side, which is consistent with Dr. McCarthy's diagnosis and your diagnosis later?

MR. DeVORE: Objection as to form, incomplete hypothetical.

BY THE WITNESS:

**A So I saw him when he came back from the hospital. It appears this was before, but it does appear this individual -- it's consistent with, you know, someone who has some weakness in his right side. He's favoring his right leg.**

BY MR. THOMAS MORRISSEY:

Q That's consistent with Dr. McCarthy's diagnosis of hemiparesis of right dominant side?

MR. DeVORE: Objection as to time frame, form. You're asking him to compare diagnosis of a note from 2020 to current date.

BY THE WITNESS:

**A Based on this video, it appears he has -- like I said, he's favoring his right leg, yes.**

BY MR. THOMAS MORRISSEY:

Q As a medical doctor --

THE STENOGRAPHER: I'm sorry, Tom. Can you speak up a little bit?

ANDREW DeFUNIAK, MD
December 17, 2024

MR. THOMAS MORRISSEY: Yes.

BY MR. THOMAS MORRISSEY:

Q As the County designee, can you explain why a person that has a long distance walker alert and has an obvious disability is placed on the second floor of Division 9?

MR. DeVORE: Objection. Calls for speculation. He's not here on behalf of housing. He doesn't do any housing. He's not designated as anyone who was in assignment of housing. He's a medical doctor.

BY THE WITNESS:

**A So we don't determine the housing, and we would respond to, you know, an issue, if it was brought up, that they were having some difficulty navigating.**

BY MR. THOMAS MORRISSEY:

Q So from Cook County's perspective, as the designee, the Sheriff determines where they're housed.

Is that fair to say?

**A That's correct.**

Q The Sheriff is responsible for providing accommodations for people with mobility

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

disabilities?

MR. DeVORE: Objection as to calls for a legal conclusion. He's a medical doctor.

BY THE WITNESS:

**A I mean, it's collaborative with medical, but the Sheriff ultimately would decide where the individual was housed, yes.**

BY MR. THOMAS MORRISSEY:

Q And Cook County has no awareness of whether or not Division 9 has showers that have grab bars in Division 9 for people with mobility disabilities?

MR. DeVORE: Objection as to form and the term "awareness."

BY THE WITNESS:

**A That's correct.**

BY MR. THOMAS MORRISSEY:

Q And Cook County has no awareness that Division 9 -- the cells in Division 9, toilets in Division 9, do not have grab bars for prisoners that have mobility disabilities?

MR. DeVORE: Objection as to form as to -- and also as to the term "awareness" and the scope of the question.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

You can answer.

BY THE WITNESS:

**A That's correct.**

BY MR. THOMAS MORRISSEY:

Q And the responsibility -- And Cook County is not aware of any accommodations provided for people with canes, crutches, or walker alerts to toilet in Division 9?

MR. DeVORE: Objection. Mischaracterizes testimony regarding that particular issue.

BY THE WITNESS:

**A Right. That's correct. We don't -- I mean, we -- everyone is individualized as the patient, so . . . And we would expect that they would -- if they're having difficulties, they would bring it to the attention of somebody.**

BY MR. THOMAS MORRISSEY:

Q My question was more direct.

As the designee for Cook County, Cook County is not aware of any assistive devices provided to detainees with either a general alert or a long distance alert for canes, crutches, or walkers to toilet in Division 9?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 72

**A That's correct.**

Q And the same is true for that class of prisoners; Cook County is not aware of any assistive device or accommodations provided in Division 9 to people with alerts for canes, crutches, or walkers, either a general or long distance alerts --

MR. DeVORE: Objection. Form. That mischaracterizes evidence, outside the --

BY MR. THOMAS MORRISSEY:

Q -- for showers?

**A Yes. We're generally not made aware. We would collaborate with the patient and the Sheriff if there was a situation that came up.**

Q On June 9 in Division 9 in Mr. Rogers' tier, 1B, assuming the showers are on the first floor and he's been housed on the second floor by the Sheriff, can you tell me what accommodations were provided for Mr. Rogers to shower on that day?

MR. DeVORE: Objection. Incomplete hypothetical, the information presented.

BY THE WITNESS:

**A No. I can't tell you that day.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 73

BY MR. THOMAS MORRISSEY:

Q I have nothing further. Thanks.

**A Thank you.**

MR. DeVORE: Let's just take a couple minutes, five minutes.

Can we take a five-minute break?

MR. THOMAS MORRISSEY: Sure.

(Brief recess was had.)

MR. DeVORE: Let's go back on.

I just have a couple questions.

EXAMINATION

By Mr. DeVore:

Q Doctor, you had -- there had been some questioning regarding whether the Sheriffs had provided certain medical training.

Would you ever expect a Sheriff to provide medical training to -- to doctors and staff?

**A No.**

Q Okay. And why is that?

**A I mean, they -- because they're not medically trained, typically, Sheriffs, since that's not their specialty.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 74

Q Okay. And so then -- and that would -- That would include, you wouldn't expect to have the Sheriff provide long distance walker alert or training related to long distance versus general walker alerts.

Is that fair to say?

**A I wouldn't expect them to provide training.**

Q Okay. There were some questions regarding whether you knew if the Sheriff had made certain accommodations.

I just want to clarify that just because you may not be -- that Cook County may not be aware of certain accommodations given in Division 9, that doesn't mean there weren't accommodations made. Is that correct?

**A Yes. That's correct.**

Q And is it also fair to say that Cook County relies on, in part, the inmate to raise an issue in terms of either submitting a Health Request Service Form or a grievance if there's -- if there's an issue regarding an accommodation in Division 9 or anywhere else?

**A Well, it is part of the process if the**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 75

**individual is having a medical or mental health issue, they can put in a Health Request Form.**

Q And is it also the case that sometimes they may ask the Sheriff for -- to ask a question of Cook County in terms of the -- the collaboration?

**A Well, I mean, there's multiple ways they raise issues with their healthcare: through the Sheriffs, through the social workers, through -- with the health staff.**

Q And then that information can be conveyed back to Cook County, is that correct, and Cermak?

**A Yes. That's correct.**

Q Okay. And there was -- There was some questions before regarding -- regarding Plaintiff Rogers having a medical visit when he had a cane and then later having -- being in a wheelchair when you saw him.

Does that suggest that there was a change in the alert given for Mr. Rogers?

MR. THOMAS MORRISSEY: Objection. Mr. Rogers had a walker, not a cane.

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 19

ANDREW DeFUNIAK, MD
December 17, 2024

Page 76

BY THE WITNESS:

**A Well, when I saw him, the -- the note that I was given when I had seen him, he did have a change in condition, so a different alert was placed, yes.**

BY MR. DeVORE:

Q And is it -- Is it the case that if an inmate raises an issue and he's -- and that inmate is observed by someone at Cook County that they're -- if there's a change in condition warranted that there could be a new alert issued?

**A Yes. That's correct.**

Q And that information, then, gets transmitted back to the Cook County Sheriff?

**A Yes.**

Q Okay. That's all I have.

MR. THOMAS MORRISSEY: I have some follow-up.

FURTHER EXAMINATION

By Mr. Thomas Morrissey:

Q Going back to Sabrina Canchola's business report, Exhibit No. 16, where she --

MR. DeVORE: 16?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 77

MR. THOMAS MORRISSEY: Exhibit 16, Page 2.

MR. DeVORE: I don't think we have that.

(Discussion off the record.)

BY THE WITNESS:

**A This one (indicating)?**

BY MR. THOMAS MORRISSEY:

Q Yeah.

**A Okay.**

Q Where it talks about --

**A Exhibit 16, yes.**

Q -- the only housing for people with mobility disabilities is the RTU and Cermak.

Do you see that, Page 2 of Exhibit 16?

MR. DeVORE: What's the date on that?

MR. THOMAS MORRISSEY: I believe we went through that. That was April 3rd, 2018.

MR. DeVORE: Are you referencing where Division 10 is the maximum security division, that one?

BY MR. THOMAS MORRISSEY:

Q She also --

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 78

MR. THOMAS MORRISSEY: Yeah.

BY MR. THOMAS MORRISSEY:

Q She also says that "mobility disabilities that require auxiliary aids but do not require medical housing, are housed in Divisions 2, 4, 6, 9, and 10. The only ADA housing (housing that complies with 2010 design standards) that currently exist for detainees with mobility impairments are the RTU and Cermak."

Do you see that?

**A Yes.**

Q So Cook County, Cermak, doesn't control where the Sheriff decides to house people with mobility disabilities.

Is that fair to say?

**A We make recommendations and collaborate with them, but they ultimately make the decision, yes.**

Q And it's still true today and it was in 2018 that the only -- that as far as Cook County knows, the only divisions that are accessible -- that have accessible toilets and showers for people with mobility disabilities are the RTU and Cermak divisions?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 79

MR. DeVORE: Objection as to form.

BY THE WITNESS:

**A Yeah. My understanding is that RTU and Cermak have ADA -- are ADA-compliant housing. I'm not sure what the requirements are outside of Cermak and -- and the RTU building.**

BY MR. THOMAS MORRISSEY:

Q And on a regular basis medical doctors are asked by the Sheriff to review whether or not patients with mobility disabilities that are housed in the RTU can be moved into another housing situation at the jail.

Is that fair to say?

MR. DeVORE: Objection as to form, as to frequency. It's unclear.

BY THE WITNESS:

**A Yeah. I'm not sure it's a regular basis. It's not uncommon that they may ask medical -- medical to review a patient's housing status.**

BY MR. THOMAS MORRISSEY:

Q Showing you a document which is Exhibit 18 -- it's going to be on your screen -- it's "Re: M3 Review for Dorm 2, 1st and 2nd Floor

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 20

ANDREW DeFUNIAK, MD
December 17, 2024

Page 80

Housing."

(Exhibit No. 18 was marked for identification and provided to the witness.)

MR. DeVORE: What exhibit is this again?

MR. THOMAS MORRISSEY: It's Exhibit 18.

MR. DeVORE: Okay.

BY MR. THOMAS MORRISSEY:

Q That's a document that's from you to Joseph Hilburger -- I guess he's with the Sheriff's Office --

**A Yes.**

Q -- and a bunch of other folks.

Is this an example where you, as a medical doctor, will be asked to review people that are -- have mobility disabilities in the RTU to see whether or not they could be placed in another housing unit?

**A This looks like this was one instance of that, yes.**

Q Does this happen on an ongoing basis, that you're asked to review detainees for possible

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 81

housing in other housing divisions?

MR. DeVORE: Objection as to form in terms of "ongoing."

You can answer.

BY THE WITNESS:

**A I mean, it's not uncommon, but it's just part of the back and forth that we sometimes do with where people can be housed.**

BY MR. THOMAS MORRISSEY:

Q So in this document, you reference whether they -- whether or not they can be on the second-floor housing, correct?

MR. DeVORE: Objection as to form as to scope in terms of this being outside of the 30(b)(6) Notice related to cane, crutch, or walker for Division 9. This includes insulin and it looks like elderly and all kinds of other things.

BY THE WITNESS:

**A It's relating to housing in a different division adjacent to RTU, Division 2.**

BY MR. THOMAS MORRISSEY:

Q It also relates to whether they can be housed on the second-floor level in their division, right?

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 82

**A Yes.**

Q And just for example, the first entry on here, Julian Stelmach, there's a note that he shouldn't be on the second floor because he's elderly, correct?

MR. DeVORE: Objection as to scope. This is well outside the scope of the 30(b)(6) Notice that relates to cane, crutch, or walker in Division 9, and I direct him not to answer that question as posed.

BY MR. THOMAS MORRISSEY:

Q For Division 9, there are times that you're asked to review whether patients that are housed in RTU and Cermak are eligible to be placed in Division 9?

MR. DeVORE: Objection as to scope. We're talking -- not talking about individual cases. It's more broad-based than that.

BY THE WITNESS:

**A Yeah. I don't -- I don't recall specifically. Like I said, we sometimes go back and forth, collaborate, regarding individual patients.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 83

BY MR. THOMAS MORRISSEY:

Q Is it Cermak and Cook County's position that they rely on the Sheriff's Office to provide people with mobility disabilities -- i.e.: people that a medical professional prescribes a cane, crutch, or walker either general or long distance -- that Cook County and the medical staff rely on the Sheriff to provide them accommodations for their disabilities?

MR. DeVORE: Objection as to "rely" and also as to the scope in terms of the question and the Notice -- the 30(b)(6) Notice which reflects information regarding cane, crutch, or walker in Division 9.

BY THE WITNESS:

**A In general, like I said, we collaborate with Department of Corrections regarding housing and individual needs of the patient.**

BY MR. THOMAS MORRISSEY:

Q So Cook County and Cermak's medical staff is aware that there are prisoners at Cook County Jail that have mobility disabilities.

Is that fair to say?

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 21

ANDREW DeFUNIAK, MD
December 17, 2024

Page 84

**A Yes.**

Q And the medical staff, with that awareness, collaborates with the Sheriff's Office to place disabled prisoners that have mobility impairments in Division 9?

MR. DeVORE: Objection. That mischaracterizes evidence. He already testified that medical writes alerts and that the Sheriff controls housing. There's a collaborative process involving the inmates themselves.

MR. THOMAS MORRISSEY: That's a speaking objection.

MR. DeVORE: Okay. Well --

MR. THOMAS MORRISSEY: That's improper.

MR. DeVORE: Rephrase the question then.

MR. THOMAS MORRISSEY: No. The question is fine.

MR. DeVORE: Objection. Form.

Don't answer that.

BY MR. THOMAS MORRISSEY:

Q The question is, given the collaboration between the Sheriff's Office and the

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 85

Cook County medical staff at Cermak, as Cook County's designee, why does Cook County allow prisoners with mobility disabilities to be housed in Division 9 if it doesn't have accessible toilets and showers?

MR. DeVORE: Objection. Asked and answered, mischaracterizes the evidence. He didn't testify that way.

BY THE WITNESS:

**A Again, the answer is, we individualize each patient if it's brought to us. So if someone has -- just has a cane alert, they might not necessarily need an ADA-accessible toilet.**

**If they did, then they could come to us like the example you gave us of, I think, Mr. Hernandez, and we would work with -- work with DOC to get him housing that was appropriate for him --**

BY MR. THOMAS MORRISSEY:

Q So --

**A -- and that was done.**

Q If a Cermak or Cook County doctor diagnoses and prescribes a cane for a person, it's okay, as far as Cook County is concerned, to put

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 86

that person in Division 9, assuming Division 9 doesn't have accessibility for showers and toilets for a mobility-disabled person?

MR. DeVORE: Objection as to the scope -- you're asking him to answer essentially on behalf of the Sheriff -- and outside the scope of his medical testimony.

MR. THOMAS MORRISSEY: I'm asking him pursuant to this Notice, and Judge Weisman specifically allowed the plaintiffs to ask Cook County in regards to the accommodations in Division 9 for people with disabilities as far as toileting or showering.

BY MR. THOMAS MORRISSEY:

Q So the question is, why, as Cook County's designee, does Cook County allow prisoners who have been diagnosed as needing a cane, crutch, or walker be placed in Division 9, assuming it doesn't meet the ADA standards for having accessible toilets and showers?

MR. DeVORE: Objection as to the term "allowed," mischaracterizes evidence --

MR. THOMAS MORRISSEY: That's a speaking objection.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 87

MR. DeVORE: -- form, asked and answered.

I think it's been asked and answered, but to the extent there's something different . . .

BY THE WITNESS:

**A Okay, yeah. I don't know.**

**If we -- again, if someone -- Every patient is individualized. So if someone just needs a cane because they have some -- you know, a sore knee, they might not require full ADA accommodations.**

**But if there was an issue, it would be brought up to the medical staff, like the example you gave us of Mr. Hernandez, and the patient would be reassessed and housed based on what medical felt was appropriate.**

BY MR. THOMAS MORRISSEY:

Q So is it your position as the designee for Cook County that during the class period from May 8, 2022, to the present, Cook County was unaware that Division 9 doesn't have accessible toilets and showers for people with mobility disabilities that would need that?

TOOMEY REPORTING
312-853-0648

Exhibit 1 Page 22

ANDREW DeFUNIAK, MD
December 17, 2024

Page 88

MR. DeVORE: Objection. Asked and answered.

BY THE WITNESS:

**A Again, I'm -- We were unaware of the specifics of the toilets and showers. But like I said, in the example you brought up to me, every patient is individualized, and so the care plan would be individualized based on what the patient is telling us.**

BY MR. THOMAS MORRISSEY:

Q Given either the knowledge or lack of knowledge by -- by Cook County, why does Cook County continue to collaborate with the Sheriff to allow people with canes, crutches, and walkers to be housed in Division 9?

MR. DeVORE: Objection. Mischaracterizes the testimony, form.

BY THE WITNESS:

**A I mean, I'd answer the same way. We individualize each patient; and if there is an issue with them, they're having issues, we will make an assessment and change their housing recommendations as -- as the patient's needs indicate.**

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 89

Q All right. Thank you.

**A Thank you.**

THE STENOGRAPHER: Signature?

MR. DeVORE: We'll reserve.

(FURTHER DEPONENT SAITH NOT.)

(Deposition concluded at 12:56 p.m.)

* * *

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 90

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kavarian Rogers, )
Plaintiff, )
-vs- ) No. 24 C 3739
Thomas Dart, Sheriff of Cook County, et.al, )
Defendants. )

I, ANDREW DeFUNIAK, MD, being first remotely duly sworn on oath, say that I am the deponent in the aforesaid deposition, that I have read the foregoing transcript of my deposition, consisting of Pages 1 through 92, taken on December 17, 2024, and that the foregoing is a true and correct transcript of my testimony so given.

ANDREW DeFUNIAK, MD

SUBSCRIBED AND SWORN TO
before me this day
of , A.D., 2024.

Notary Public

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 91

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

I, KELLY ANN POTTS, Registered Professional Reporter, Certified Shorthand Reporter in and for the County of Cook, State of Illinois, do hereby certify that on December 17, 2024, the remote deposition via videoconference of the witness, ANDREW DeFUNIAK, MD, was taken by me, reported stenographically and was thereafter reduced to typewriting under my direction, and there were present counsel as previously set forth.

The said witness, ANDREW DeFUNIAK, MD, was first remotely duly sworn to tell the truth, the whole truth, and nothing but the truth, and was then examined upon oral interrogatories.

I further certify that the foregoing is a true, accurate, and complete record of the questions asked of and answers made by said witness, ANDREW DeFUNIAK, MD, at the time hereinabove referred to.

The signature of the witness, ANDREW DeFUNIAK, MD, was reserved by agreement of the parties.

TOOMEY REPORTING
312-853-0648
Exhibit 1 Page 23

The undersigned is not interested in the within case, nor of kin or counsel to any of the parties.

WHEREUPON, I set my hand pursuant to the Illinois Shorthand Reporters Act of 1984 on this 30th day of December, A.D., 2024.

Kelly Ann Potts

KELLY ANN POTTS, RPR, CSR
CSR No. 084-003558