IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kavarian Rogers, | ) |
|     *Plaintiff,* | ) ) ) |
| -vs- | ) No. 24-cv-3739 |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) ) Judge Rowland ) ) |
|     *Defendants.* | ) ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Rogers and the putative Rule 23(b)(2) plaintiff class,[1] by counsel, moves the Court to order preliminary injunctive relief requiring the Department of Corrections to comply with CCDOC Procedure 704 to provide shower chairs to mobility impaired individuals assigned to Division 9 during the pendency of this litigation.

Grounds for this motion are as follows:

1. A general construction permit for Division 9 at Cook County Department of Corrections (CCDOC) was issued on August 4, 1989. Exhibit 1, Cook County Response to Second Request for Admission ¶ 3. The division officially opened in 1992. Exhibit 2, Cook County Response to First Request to Admit ¶ 1.

---

[1] Plaintiff moved for class certification on September 18, 2024. Dkt. 22. On January 6, 2025, plaintiff filed his reply brief. Dkt. 48.

-1-

2. From July 1, 1988 until at least July 31, 1992, federal financial assistance has been received for the benefit of individuals at the CCDOC. Exhibit 1, Cook County Response to Second Request for Admission ¶¶ 12-18.

3. Plaintiff Rogers, similar to the class in *Bennett* housed in Division 10, "alleges in this suit under the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34, and the Rehabilitation Act, 29 U.S.C. § 794, that Division [9] lacks the grab bars and other fixtures needed for such persons to use showers and bathrooms safely." *Bennett v. Dart*, 953 F.3d 467, 468 (7th Cir. 2020). Mr. Rogers, just like the plaintiff in *Bennett*, proposes a "class that would avoid all person-specific questions" by contending that Division 9, which was constructed after August of 1989, "violates a regulation providing that 'as of March 7, 1988 . . . construction [] or alteration of buildings' must comply with the Uniform Federal Accessibility Standards (UFAS or the Standards). 28 C.F.R. § 42.522(b). The Standards require accessible toilets to have grab bars nearly, UFAS § 4.17.6, and accessible showers to have mounted seats, UFAS § 4.21.3." *Bennett*, 953 F.3d at 468-69. UFAS also requires an accessible shower to have grab bars. UFAS § 4.21.4.

4. There is no dispute Division 9's showers violate UFAS; defendant Sheriff admits the showers lack grab bars and no mounted

seats are available in the shower. Exhibit 3, Sheriff Response to First Request to Admit ¶¶ 10-11.

5. CCDOC Procedure 704 titled "Prohibition Against Discrimination on the Basis of Disability Procedure" states "[t]he ADA Compliance Officer and Superintendents shall ensure that shower chairs are available in divisions that house inmates with mobility impairments so that they are provided safe and equal access to showering" and "[f]or living units that do not have fixed shower benches; the living unit officers shall issue shower chairs to inmates with mobility impairments upon request." Exhibit 4, Procedure 704 at 5.

6. Contrary to CCDOC Procedure 704, the Sheriff's staff does not offer shower chairs to mobility impaired detainees housed in Division 9. Larry Gavin, the Sheriff's Rule 30(b)(6) representative, testified at deposition "we do not have shower chairs in Division 9." Exhibit 5, Gavin Dep 33:18-22.

7. Plaintiff Rogers has grieved about hardship showering in Division 9 because the area is completely inaccessible:

    a. Rogers dated a grievance May 27, 2022, and complained of hardship showering in Division 9 and requested "a shower chair & or something like rails to be able to hold myself up in case of emergencies." Exhibit 6 at 1, Rogers Grievance assigned control number 2022x08394. In response to this

grievance, Sabrina Rivero-Canchola, the Sheriff's ADA Compliance Officer, wrote Rogers "is independent in his ADL's (including showers) and should not require an accommodation. *Id.* at 2.

b. Rogers dated a grievance August 17, 2023 complaining of a need for "some kind of support while taking a shower," that he fell yesterday, and that he does not "have control of [his] balance." Exhibit 6 at 5, Grievance marked control number 2023x13269. Ms. Rivero-Canchola responded to this grievance stating this complaint "had been previously addressed" in several grievances and that "Rogers is GP according to the medical classification assigned to him by Cermak." *Id.* at 8.

8. Other individuals assigned to Division 9 executed declarations regarding the inability to shower on the same basis as non-disabled individuals because the shower room is completely inaccessible:

a. Antoine Pierce, an individual who has used a cane in Division 9, was unable to safely shower because there were no grab bars or place to sit. Exhibit 7, Pierce Decl. ¶¶ 1-4

b. Evander Foster, an individual who needed assistive devices to ambulate due to an injury, was unable to shower safely

because the shower room was inaccessible. Exhibit 8, Foster Decl. ¶¶ 2-5.

9. The Seventh Circuit in *The Bail Project, Inc. v. Commissioner, Indiana Department of Insurance,* explained a party seeking a preliminary injunction must demonstrate "(1) some likelihood of success on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." 76 F.4th 569, 575 (7th Cir. 2023) (cleaned up). If a plaintiff "makes such a showing, the court then weighs the relative harm the parties will suffer with or without an injunction and considers whether an injunction is in the public interest." *Id.* Plaintiff and the putative class meet each of these elements.

## I. Plaintiff has standing to seek injunctive relief individually and on behalf of the putative class

10. To establish Article III standing, a plaintiff must show: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-81 (2000).

11. This case was filed on May 8, 2024, when plaintiff Rogers was detained in Division 9 of the CCDOC. Dkt. 1, Compliant ¶ 16; Dkt. 12-1,

CCDOC information for plaintiff Rogers printed 6/13/2024. Plaintiff was transferred out of Division 9 on July 21, 2024, due to a seizure and subsequent injuries and again (as in the past) uses a wheelchair to move from place to place. Exhibit 9, Incident Report at 1; Exhibit 10, Rogers Dep 18:24-19:23.

12. Although plaintiff Rogers is presently housed in the CCDOC's Residential Treatment Unit (RTU), it is likely that plaintiff Rogers may be transferred back to Division 9; defendants previously removed his alert for a wheelchair and sent him back to Division 9. Exhibit 10, Rogers Dep 17:2-18, 21:7-9.

13. Plaintiff has standing to seek injunctive relief due to the "capable-of-repetition-yet evading-review doctrine" which applies when two conditions are simultaneously present: "(1) the challenged action was in its duration too short to be fully litigated prior to is cessation or expiration, and (2) there was a reasonable expectation that the same complaining party will be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *see also Spencer v. Kemna,* 523 U.S. 1, 17 (1998).

14. The first element, pertaining to the duration, is present here. Individuals, such as plaintiff Rogers, are frequently moved to various housing divisions within the CCDOC. Indeed, plaintiff Rogers has been transferred to Division 9 on three separate occasions, according to the Sheriff's Bed Assignment Report, and on one occasion stayed in the

building for one day (from November 18, 2021 at 14:30 hours to November 19, 2021 at 19:30 hours). Exhibit 11, Bed Assignment Report. As for the second element, there is reason to suspect that plaintiff Rogers will be moved back to Division 9 during his current detention. During this detention, plaintiff Rogers testified his wheelchair alert was removed and he was transferred to Division 9 where he was not provided any assistive devices within the hosing unit. Exhibit 10, Rogers Dep 17:2-18, 21:7-9. As a result, the capable-of-repetition doctrine is met.

15. Even if plaintiff's claims are moot, an exception to the mootness doctrine applies of the "inherently transitory" exception in *Gerstein v. Pugh,* 420 U.S. 103 (1975), is present. The inherently transitory exception allows a named plaintiff in a class action to continue prosecuting the class action even though intervening circumstances may have mooted his or her personal claim following the inception of the lawsuit. *Id.* The Supreme Court has explained the nature of the problem this exception is meant to solve:

> The 'inherently transitory' rational was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for the litigation to run its course. A plaintiff might seek, for instance, to bring a class action challenging the constitutionality of temporary pretrial detentions. In doing so, the names plaintiff would face the considerable challenge of preserving his individual claim from mootness, since pretrial custody likely would end prior to the resolution of his claim.

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013).

16. Here, plaintiff meets this exception because he had standing for injunctive relief when the complaint was filed on May 8, 2024. Dkt. 1, Complaint. As a pretrial detainee, there is no certainty any individual will be assigned to Division 9 long enough to move for class certification and for the court to certify a class. As in the case of plaintiff Rogers, the CCDOC moved him to and from Division 9 on three separate occasions. Second, there is a constant class of persons suffering the deprivation complained of because individuals with canes, crutches, and walkers are assigned to Division 9, and there is no accommodation offered to shower or toilet in this building. The Sheriff acknowledged over the proposed class period 103 individuals with an alert for a cane, crutch, or walker have been assigned to Division 9. Exhibit 14, Sheriff's Supplemental Response to First Request for Production ¶ 6.

## II. Success on the merits

17. Division 9 was constructed after 1988 and, during this time period, the CCODC was in receipt of federal financial assistance for programs and/or services. Defendants therefore were required to follow the applicable UFAS Standards for showers and toilets.[2]

---

[2] Plaintiff contends Division 9 showers and toilets must be renovated to achieve compliance with the applicable structural standards. This motion seeks to provide interim relief for mobility impaired individuals to shower until the building is renovated.

18. There is no question the building lacks accessible showers; defendants admit there are no grab bars nor mounted shower seats. Moreover, the Sheriff's Rule 30(b)(6) designee admits there are no portable shower chairs offered to Division 9 detainees. Exhibit 5, Gavin Dep 33:18-22.

19. Ms. Rivero-Canchola prepared a business case on April 3, 2018, nearly six years ago, on behalf of the Department of Corrections, acknowledging "[d]etainees with mobility disabilities that require auxiliary aids, but do not require medical housing, are housed in divisions 2, 4, 6, 9 and 10" and that the only ADA housing for "mobility impairments is the RTU and Cermak." Exhibit 12, FY19 Business Case at 2. This is a problem, according to the CCDOC, because "having no ADA compliant housing other than divisions 8 and 08, severely restricts are [sic] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets, and showers." *Id.*

### III. Irreparable harm

20. Plaintiff and members of the putative class suffer irreparable harm without injunctive relief because there is absolutely no accommodation offered for a person with an alert for a cane, crutch, or walker to shower. Cook County's Rule 30(b)(6) designee, Dr. Andrew DeFuniak, testified individuals with a "long distance only" alert for a cane,

crutch, or walker may need accommodations to shower, such as a grab bar. Exhibit 13, DeFuniak Dep 36:13-37:1, 38:10-39:6, 58:18-60:10.

21. Individuals, such as plaintiff Rogers, may continue to fall and suffer physical injuries in the Division 9 showers as a result of defendants' deliberate decision to place them in a completely inaccessible shower room. *See* Exhibit 6 at 5, Rogers Grievance marked control number 2023x13269 (complaining of a fall in August of 2023 while showering and the absence of any device to assist with his balance in the shower and to prevent falls).

## IV. Benefits of granting the injunction outweigh the injury to the defendants

22. The benefits of granting the injunction outweigh any harm to defendants because it will provide mobility impaired detainees some accommodation to shower in an otherwise completely inaccessible location. As explained by the Seventh Circuit in *Lacy*, "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018).

23. No harm will be suffered by the Sheriff's Office if it is compelled to follow CCDOC Procedure 704 and provide a portable chair to putative class members. *See* Exhibit 4, Procedure 704 at 5.

## V.     Public interest is not harmed by injunction

24.     An injunction advancing the rights of mobility impaired individuals in Division 9 is in the public interest.

## VI.    Conclusion

It is therefore respectfully requested that the Court enter a preliminary injunction directing the CCDOC to enforce Procedure 704. Specifically, plaintiff requests that the Court direct notice to individuals housed in Division 9 that a shower chair is available upon request and direct staff to provide a shower chair to individuals with an alert for a cane, crutch, or walker (either general or "long distance only") upon request during the pendency of this action.

Respectfully submitted,

/s/ Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
pwm@morrisseylawchicago.com

*an attorney for the plaintiff*
