Transcript of the Testimony of
**ANDREW DeFUNIAK, MD**

**Date:** December 17, 2024

**Case:** KAVARIAN ROGERS v. THOMAS DART, SHERIFF OF
COOK COUNTY, ET. AL.

**TOOMEY REPORTING**
312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kavarian Rogers,            )
                            )
        Plaintiff,          )
                            )
    -vs-                    )   No. 24 C 3739
                            )
Thomas Dart, Sheriff of Cook )
County, et.al,              )
                            )
        Defendants.         )

        The remote deposition via
videoconference of ANDREW DeFUNIAK, MD, called
by the Plaintiff for examination, pursuant to
notice and pursuant to the Federal Rules of Civil
Procedure for the United States District Court
pertaining to the taking of depositions for the
purpose of discovery taken by Kelly Ann Potts,
Certified Shorthand Reporter, Registered
Professional Reporter, within and for the County of
Cook and State of Illinois, on the 17th day of
December, 2024, at 11:03 a.m.

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 2

1  A P P E A R A N C E S :
2
3
4      LAW OFFICE OF THOMAS G. MORRISSEY, by
       MR. THOMAS G. MORRISSEY  - and -
       MR. PATRICK W. MORRISSEY
5      10257 South Western Avenue
       Chicago, Illinois  60643
6      (773) 233-7900
       tgm@morrisseylawchicago.com
7      pwm@morrisseylawchicago.com
8          Appeared on behalf of the
           Plaintiff;
9
10
11     DeVORE RADUNSKY, by
       MR. JASON E. DeVORE  - and a
       MR. ZACHARY STILLMAN
12     230 West Monroe Street, Suite 230
       Chicago, Illinois  60606
13     (312) 300-4479
       jdevore@devoreradunsky.com
14     zstillman@devoreradunsky.com
15         Appeared on behalf of the
           Defendants.
16
17
18
19
20
21
22
23         *         *         *
24

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 3

1          INDEX OF EXAMINATION
2
3                                      PAGE
4      ANDREW DeFUNIAK, MD
5
6  Examination by Mr. Thomas Morrissey.......... 6
7  Examination by Mr. DeVore...................73
8  Further Exam by Mr. Thomas Morrissey........76
9
10
11          INDEX TO EXHIBITS
12
13  EXHIBIT                              PAGE
14  Plaintiff
15
16  No. 1   Rule 30(b)(6) Notice............... 7
17  No. 3   Message Journal from RN McCray.....45
18  No. 5   Health Service Request............47
19  No. 7   DeFuniak Dep in Whitney case.......35
20  No. 11  Medical Records-Outpatient Rehab...18
21  No. 12  Medical Infirmary Encounter........25
22  No. 13  Video..............................63
23  No. 14  Rogers' Declaration................43
24  No. 16  ADA Assessment Improvements........ 8

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 1

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 4

1  No. 18    M3 Review for Dorm 2 Housing.......80
2  No. 20    Message From Sabrina Canchola......50

6  CERTIFIED QUESTIONS:        PAGE:

8  *1*...........................9

13            *           *           *

---

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 5

1            THE STENOGRAPHER:  All parties are
2  aware that the witness will be sworn in remotely.
3  The parties agree not to challenge the validity of
4  any oath administered by the Certified Stenographic
5  Reporter, even if the Certified Stenographic
6  Reporter is not physically present with the
7  witness.  This deposition will be taken via
8  STENOGRAPHIC means.
9            Here begins the remote deposition
10  via videoconference of ANDREW DeFUNIAK, MD, in the
11  matter of Kavarian Rogers versus Thomas Dart.
12            Today's date is the 17th day of
13  December, 2024, and the time is 11:03 a.m.,
14  Central Standard Time.
15            Beginning with the noticing
16  party, will counsel please introduce themselves,
17  state whom they represent, and stipulate to the
18  swearing in of the witness remotely?
19            MR. THOMAS MORRISSEY:  I stipulate to
20  remote.
21            My name is Tom Morrissey, I'm
22  with Pat Morrissey, for the Plaintiff.
23            MR. DeVORE:  Jason DeVore, D -- as in
24  "David" -- e-V -- as in "Victor" -- o-r-e -- and

---

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 6

1  Zach Stillman on behalf of the witness.
2            THE STENOGRAPHER:  Doctor, would you
3  raise your right hand?
4            (Witness remotely sworn.)
5            THE STENOGRAPHER:  Thank you.
6            MR. THOMAS MORRISSEY:  This is the
7  Rule 30(b)(6) deposition.  The defendants have
8  produced Dr. Andrew DeFuniak to -- designated to
9  discuss Topic 5 of the Notice that was tendered on
10  September 24th, 2024.
11  WHEREUPON:
12            ANDREW DeFUNIAK, MD
13  called as a witness herein, having been first
14  remotely duly sworn, was examined upon oral
15  interrogatories and testified as follows:
16            EXAMINATION
17            By Mr. Thomas Morrissey:
18
19      Q    Doctor, I'm going to ask you to look
20  at Exhibit No. 1, Paragraph 5.
21            And my ques- -- After you've had
22  a chance to read that paragraph, I'm going to ask
23  you a question about that.
24

---

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 7

1            (Exhibit No. 1 was marked for
2            identification and provided to
3            the witness.)
4  BY THE WITNESS:
5      A    Okay.
6  BY MR. THOMAS MORRISSEY:
7      Q    Have you been designated by
8  Cook County to testify in regards to Topic No. 5?
9      A    Yes.
10      Q    Doctor, are you familiar with a woman
11  at the jail by the name of Sabrina Canchola who
12  works with the Sheriff's Office?
13            MR. DeVORE:  Objection to form.
14            THE STENOGRAPHER:  I'm sorry.  Who
15  said "objection"?
16            MR. DeVORE:  That's Jason DeVore.
17            THE STENOGRAPHER:  Okay.  If the other
18  person that you're with objects, will you let me
19  know?  Because I'm not going to be able to
20  distinguish voices and I can't see you.
21            MR. DeVORE:  Yes.
22            THE STENOGRAPHER:  Thank you.
23  BY MR. THOMAS MORRISSEY:
24      Q    Do you recall the question?

Exhibit 13 Page 2

## Page 8

ANDREW DeFUNIAK, MD
December 17, 2024

Page 8

```
1          A    Yes.  I know that person, Sabrina.
2          Q    And is Sabrina Canchola -- is she the
3   ADA coordinator for the Sheriff's Office at
4   Cook County Jail?
5          A    Yes.  I believe so.
6          Q    I'm showing you a document which is
7   titled "ADA Assessment Improvements" for "Divisions
8   2, 4, 6, 9, and 10."  It's dated -- It was prepared
9   on April 3rd, 2018.
10              I'll show you this document and
11  ask you to turn to Page 2 of that document.
12              (Exhibit No. 16 was marked for
13                   identification and provided to
14                   the witness.)
15         MR. DeVORE:  What exhibit is it?
16         MR. THOMAS MORRISSEY:  It's Exhibit
17  No. 16.
18         MR. DeVORE:  Do you have a copy?
19         MR. THOMAS MORRISSEY:  Sure.
20              (Exhibit No. 16 tendered.)
21         MR. DeVORE:  The print is pretty
22  small.
23              (Witness viewing laptop.)
24
```

TOOMEY REPORTING
312-853-0648

## Page 9

ANDREW DeFUNIAK, MD
December 17, 2024

Page 9

```
1   BY MR. THOMAS MORRISSEY:
2          Q    Doctor, looking at the first --
3          MR. DeVORE:  Can you blow it up a bit?
4   BY MR. THOMAS MORRISSEY:
5          Q    -- page of Exhibit 16, do you see
6   that the document was prepared by Sabrina
7   Rivero-Canchola?
8          MR. DeVORE:  Objection.
9   BY MR. THOMAS MORRISSEY:
10         Q    It's on the first page.
11         MR. DeVORE:  Objection.  Form, outside
12  of his knowledge, outside the scope of his 30(b)(6)
13  Notice.
14  BY THE WITNESS:
15         A    Yes.  I see where it says "Prepared
16  By:  Sabrina Rivero-Canchola."
17  *1*  Q    I'd ask you to turn to Page 2 of Group
18  Exhibit No. 16, the Business Case, it's under "What
19  history led to this project?"
20              Will you read that -- that for a
21  moment?
22         MR. DeVORE:  Objection.  Again, this
23  is outside the scope of the -- of the Notice.
24              If you can identify where this
```

TOOMEY REPORTING
312-853-0648

## Page 10

ANDREW DeFUNIAK, MD
December 17, 2024

Page 10

```
1   could possibly fit in, then I would instruct him --
2          MR. THOMAS MORRISSEY:  It discusses
3   compliance with the ADA for Division 9.
4          MR. DeVORE:  Objection.  I'm going to
5   direct him not to answer.
6          MR. THOMAS MORRISSEY:  We'll certify
7   the question.
8              You're certain you're not going
9   to allow him to answer when it talks about
10  Division 9 and not having "ADA-compliant housing
11  other than divisions 8 and 08, severely restricts
12  are [sic] ability to house detainees in the most
13  integrated setting while making sure that they have
14  access to accessible cells, toilets and showers.
15  This creates difficulties with bed control and also
16  leads to litigation"?
17              You'll notice that the --
18  Dr. DeFuniak is being presented for, in part, it
19  says, explain, with reasonable particularity, why
20  inmates with medical alerts for canes, crutches,
21  and walkers would be assigned to Division 9,
22  including the accommodations for these individuals
23  to toilet and shower.
24              Now, will you allow the person to
```

TOOMEY REPORTING
312-853-0648

## Page 11

ANDREW DeFUNIAK, MD
December 17, 2024

Page 11

```
1   testify?
2          MR. DeVORE:  That is very different
3   than -- than asking about the ins and outs of a --
4   of a memo that was purportedly prepared by someone
5   he cannot authenticate, and it was someone not
6   within Cook County.
7              So if your question could --
8   would be narrowed to that as opposed to exploring
9   this document that has -- was not authored by
10  someone at Cook County or the witness, I don't see
11  why the questioning on this document makes any
12  sense.
13  BY MR. THOMAS MORRISSEY:
14         Q    The document says, "Division 10 is a
15  maximum security division with no ADA compliant
16  housing.  Detainees with mobility disabilities that
17  require auxiliary aids, but do not not require
18  medical housing, are housed in divisions 2, 4, 6, 9
19  and 10.  The only ADA housing (housing that
20  complies with 2010 design standards) that currently
21  exists for detainees with mobility impairments is
22  the RTU and Cermak.  The ADA requires us to house
23  detainees in the most integrated setting.  Having
24  no ADA compliant housing other than Division 8 and
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 3

ANDREW DeFUNIAK, MD
December 17, 2024

Page 12

1  08 severely restricts are [sic] ability to house

2  detainees in the most integrated setting while

3  making sure they have access to accessible cells,

4  toilets and showers."

5              Can you individually answer the

6  question whether you are aware that Division 9 did

7  not have accommodations for people with canes,

8  crutches, and walkers to toilet and shower?

9              MR. DeVORE:  Objection. He's not here

10  to testify individually. He's testifying as a

11  30(b)(6) witness.

12  BY MR. THOMAS MORRISSEY:

13      Q      Can you testify as the Sheriff's --

14  Let me -- Let me rephrase it.

15              Can you testify as the

16  Cook County representative whether the statement

17  which is contained in this Business Case by the

18  Sheriff's ADA coordinator is correct in regards

19  to 9 as far as Division 9 not having access to

20  accessible cells, toilets, and showers?

21              MR. DeVORE:  Objection as to it

22  requires -- It's based on an incomplete

23  hypothetical, incomplete information of the facts

24  that go into -- that went into that particular

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 13

1  memo.

2              MR. THOMAS MORRISSEY:  Will you allow

3  him to testify?

4              MR. DeVORE:  If he can, yeah.

5  BY THE WITNESS:

6      A      Okay. Can you repeat the question?

7  BY MR. THOMAS MORRISSEY:

8      Q      Sure.

9              My question is, as Cook County's

10  designee, do you agree with the ADA coordinator

11  here that Division 9 does not have accessible

12  toilets and showers for people who have auxiliary

13  aids, such as canes, crutches, and walkers?

14              MR. DeVORE:  Objection.  It seeks a

15  legal opinion, outside the scope of the Notice.

16  BY THE WITNESS:

17      A      **So my interpretation is that they --**

18  **people with disabilities that require auxiliary**

19  **aids but do not require medical housing can be**

20  **housed in Divisions 2, 4, 6, 9, and 10.**

21  BY MR. THOMAS MORRISSEY:

22      Q      So to clarify, an inmate that has a

23  medical alert are for a cane, crutch, or walker can

24  be housed in Division 9 even though Division 9 does

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 14

1  not have accessible showers and toilets.

2              Is that your understanding?

3              MR. DeVORE:  Objection as to the

4  characterization of evidence by Counsel.

5  BY THE WITNESS:

6      A      Yeah.  It is my understanding that

7  **there are some people that might use a cane that**

8  **would not require an ADA-accessible toilet or**

9  **shower.**

10  BY MR. THOMAS MORRISSEY:

11      Q      Is it your understanding as

12  Cook County's designee that Division 9 does not

13  have accessible showers and toilets for people who

14  have mobility disabilities under the ADA?

15      A      **It's -- Well, it's my understanding**

16  **that they don't have facilities accessible, for**

17  **example, with a patient, a paraplegic, like in a**

18  **wheelchair, that type of accessibility for toilets**

19  **and showers, yes.**

20      Q      Well, for a person that uses -- Can

21  you tell me, what did you do to prepare for this

22  deposition as the County's designee?

23      A      **I'm met with my attorney.**

24      Q      Did you physically tour Division 9?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 15

1      A      **I did not.**

2      Q      As the designee for Cook County, have

3  you been in the showers and in the cells in

4  Division 9 in the last ten years?

5      A      **No, I have not.**

6      Q      Do you know whether or not the

7  showers, for instance, in Division 9 have

8  grab bars?

9      A      **I don't know.**

10      Q      Do you know if the toilets in the

11  cells have grab bars for disabled detainees?

12              MR. DeVORE:  Objection.  Outside the

13  scope of this Notice and he's not -- wasn't brought

14  here to testify regarding the -- structure of

15  the Cook County Jail.

16  BY MR. THOMAS MORRISSEY:

17      Q      Do you have any knowledge whether or

18  not the toilets have grab bars in Division 9?

19      A      **I have not toured all the toilets in**

20  **Division 9, no, so I don't know.**

21      Q      Do you know if any of the toilets in

22  the housing cells in Division 9 have grab bars --

23              MR. DeVORE:  Same --

24

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 4

ANDREW DeFUNIAK, MD
December 17, 2024

Page 16

1  BY MR. THOMAS MORRISSEY:
2       Q    -- that would accommodate people using
3  canes, crutches, or walkers?
4            MR. DeVORE:  Objection.  The question
5  is outside the scope of this Notice.  He's not --
6  He's not an engineer or designer, someone brought
7  here on behalf of the jail.  He's a doctor.
8  BY THE WITNESS:
9       A    I don't know.  Again, I don't know the
10 specifics of the toilets in Division 9.
11 BY MR. THOMAS MORRISSEY:
12      Q    I'm not sure if there's any shower
13 chairs in Division 9 to assist -- to accommodate a
14 detainee that has an alert for a cane, a crutch, or
15 walker?
16           MR. DeVORE:  Same objection.
17 BY THE WITNESS:
18      A    I don't -- I don't know the answer to
19 that.
20 BY MR. THOMAS MORRISSEY:
21      Q    Do you know if there's any type of
22 assistive devices in the housing cells in
23 Division 9 to accommodate a prisoner that has an
24 alert for a cane, crutch, or walker?

ANDREW DeFUNIAK, MD
December 17, 2024

Page 17

1            MR. DeVORE:  Objection.  Form.
2            What time frame?
3            MR. THOMAS MORRISSEY:  During the
4  class period, from May 8th, 2022, to the present.
5  BY THE WITNESS:
6       A    What type of assistive device do you
7  mean?
8  BY MR. THOMAS MORRISSEY:
9       Q    Do you know of any assistive device in
10 the cells in Division 9 to accommodate a prisoner
11 who has an alert for a cane, crutch, or walker?
12      A    I'm not aware of what specifically is
13 in the cells, no.
14      Q    And these questions are all based upon
15 your designation as the -- Cook County's designee.
16           Do you understand that, Doctor --
17      A    Yes.
18      Q    -- throughout this deposition?
19           MR. DeVORE:  And we have the same
20 continuing objection regarding the scope and the
21 fact he's not -- He's a medical doctor.  He's not
22 brought here to testify regarding the layout of the
23 jail, what's in it, and he already testified that
24 he hadn't been through Division 9 in many years.

ANDREW DeFUNIAK, MD
December 17, 2024

Page 18

1  BY MR. THOMAS MORRISSEY:
2       Q    In preparing to testify for
3  Cook County, did you review any records in regards
4  to the plaintiff in this case, Mr. Rogers?
5       A    I did a cursory review of his records,
6  but nothing in-depth.
7       Q    Did you review a document by a
8  Dr. McCarthy at Stroger Hospital in regards to
9  Mr. Rogers?
10           MR. DeVORE:  If there's an exhibit,
11 maybe introduce it so we're not confused.
12           MR. THOMAS MORRISSEY:  It's Exhibit
13 No. 11, and I'll hand it --
14 BY MR. THOMAS MORRISSEY:
15      Q    Well, I'm handing you Exhibit 11 and a
16 copy for your attorney.
17           MR. DeVORE:  Thank you.
18           (Exhibit No. 11 was marked for
19           identification and provided to
20           the witness.)
21 BY MR. THOMAS MORRISSEY:
22      Q    As the Cook County designee, what
23 medical records did you look at for Mr. Rogers?
24      A    Again, I just did a cursory review of

ANDREW DeFUNIAK, MD
December 17, 2024

Page 19

1  the records.  I didn't specifically review this
2  note, no.
3       Q    Do you know a doc- -- Do you know of a
4  Dr. Theresa McCarthy?
5       A    Yes.
6       Q    And she's at Stroger Hospital,
7  correct?
8       A    Correct.
9       Q    And she's a rehabilitation doctor?
10      A    Yes.
11      Q    Looking at Exhibit 11, Page 1, do you
12 see the -- what Dr. McCarthy wrote about a "History
13 of Present Illness"?
14      A    Yes.
15      Q    Can you read that for the record what
16 the -- what the note says?
17      A    Under "Chief Complaint"?
18      Q    Yes.
19      A    "22 year old with" --
20      Q    Excuse me.  I'm sorry.
21           "The History of Present Illness."
22      A    "The patient presents with spastic
23 right-sided hemiparesis."
24      Q    What is spastic right-sided

Exhibit 13 Page 5

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 20

1  hemiparesis?
2       A       It's -- You know, it can be an
3  intermittent weakness of the patient's right side.
4       Q       And the "Chief Complaint," can you
5  read that into the record, please?
6       A       "22 year old with history of gunshot
7  wound to head February 10, 2020 with resultant TBI
8  and right spastic hemiparesis.  Patient spent 2
9  months at Shirley Ryan Rehab following his acute
10 medical stay for his acute" -- "for his rehab
11 needs.  Asked to see patient regarding his orthotic
12 needs.  Seeing outpatient PT at Cermak.  Ambulating
13 with a straight cane, wearing white commissary
14 velcro closure shoes."
15      Q       And if we look at Page 2 at
16 Dr. McCarthy's note, the physical exam included a
17 musculoskeletal examination, correct?
18      A       Yes.
19      Q       Can you read her note in regards to --
20 her findings in regards to Mr. -- Mr. Rogers?
21      A       She wrote "spastic gait on right, some
22 toe drag, noted clonus on right, short steps on
23 right, can lift DF 3.5/5, PF 4/5 but marked
24 spasticity with weightbearing.  Right upper

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 21

1  extremity with tight . . . flexors (when trying to
2  extend fingers), marked spasticity, needs resting
3  splint overnight for positioning/decrease muscle
4  tone."
5       Q       And in the last page on Page 3, she
6  provided some instructions for the patient,
7  correct?
8       MR. DeVORE:  Objection as to form,
9  relevance, outside the scope.
10      I mean, I don't -- This is about
11 an individual plaintiff.
12      MR. THOMAS MORRISSEY:  He's a class
13 rep.
14      MR. DeVORE:  Okay.  So how does this
15 tie in?
16      MR. THOMAS MORRISSEY:  It involves the
17 accommodations for people with disability, which
18 are not -- he's the class rep.
19      MR. DeVORE:  Well, we don't need --
20 Okay.  We don't need to read his entire record into
21 the record.  I mean, we have an exhibit marked.
22 Let's go.
23 BY MR. THOMAS MORRISSEY:
24      Q       Do you see on the instructions -- What

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 22

1  is an AFO?
2       A       It's a type of a brace.  It stands for
3  "ankle foot orthotic."
4       Q       And Dr. McCarthy recommended the brace
5  while -- while walking, correct?
6       A       Yes.
7       Q       Does an activity of daily living
8  include walking?
9       A       Yes.
10      Q       And would you agree that based upon
11 Dr. McCarthy's evaluation that Mr. Rogers had a
12 disability in regards to being able to walk without
13 a brace?
14      A       Based on her note, it looks like he
15 has some limitations with walking without a brace,
16 yes.
17      Q       Can you describe the limitations
18 that -- that Mr. Rogers has?
19      A       No.  I don't know based on her note.
20      Q       Would you agree that based upon her
21 notes and findings, spastic right-side hemiparesis,
22 that he has weakness on his right side?
23      A       Based on her note, it appears that he
24 has some weakness on his right side.

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 23

1       Q       And did she -- her evaluation reflect
2  the finding that he had problems with his gait?
3       A       It sounds like he had, you know,
4  required a cane for ambulation, yes.
5       Q       And without a cane, would you agree
6  that there's a risk of falling for Mr. Rogers given
7  his diagnosis of spastic right-side hemiparesis?
8       A       Based on her note, I would say it's
9  possible to fall.
10      Q       Is it also possible that Mr. Rogers
11 could have seizures based upon her notes?
12      MR. DeVORE:  Objection.  Calls for
13 speculation based upon unknown facts.
14 BY THE WITNESS:
15      A       I can't tell based on her note.
16 BY MR. THOMAS MORRISSEY:
17      Q       In fact, did you -- Looking at the
18 note, does it reflect that he is taking seizure
19 medication?
20      A       Based on her note, one of the
21 medicines can be used for seizures or for other
22 things.
23      Q       Which -- Which medication, Doctor?
24      A       Divalproex.

Exhibit 13 Page 6

ANDREW DeFUNIAK, MD
December 17, 2024

Page 24

```
 1            THE STENOGRAPHER:  Could you repeat
 2  that, Doctor?
 3            THE WITNESS:  Divalproex.
 4               Do you want me to spell that?
 5            THE STENOGRAPHER:  Go ahead, yes.
 6            THE WITNESS:  D-i-v-a-l-p-r-o-e-x.
 7            THE STENOGRAPHER:  Thank you.
 8  BY MR. THOMAS MORRISSEY:
 9       Q    If we look at the "Problems list,"
10  does it reflect that he had a gunshot wound?
11       A    Yes.
12       Q    And that was to his head, correct?
13       A    Yes.
14            And that caused a hemiparesis to his
15  right dominant side?
16       A    Yes.
17            And he had post- -- he's had
18  posttraumatic seizures, correct, under the
19  "Problem list"?
20       A    Yes.  It lists -- It's listed under
21  the --
22       Q    So you would -- You would agree that
23  Mr. Rogers without a cane presents a fall
24  risk given --
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 25

```
 1            MR. DeVORE:  Object- --
 2  BY MR. THOMAS MORRISSEY:
 3       Q    -- given his diagnosis?
 4            MR. DeVORE:  Objection.  Calls for an
 5  opinion without full information in front of him.
 6  BY THE WITNESS:
 7       A    You know, based on this information,
 8  I'm speculating that it potentially could be a fall
 9  risk.
10  BY MR. THOMAS MORRISSEY:
11       Q    I'm showing you Exhibit 12, which is
12  an examination that you did on July 29, 2024, and
13  I'll give a copy to your attorney.
14                (Exhibit No. 12 was marked for
15                 identification and provided to
16                 the witness.)
17  BY MR. THOMAS MORRISSEY:
18       Q    Prior to testifying for Cook County,
19  did you review your notes in regards to this
20  encounter with Mr. Rogers?
21       A    I saw that I had seen him.  I didn't
22  review it in any detail, no.
23       Q    Your "Problem list," in your encounter
24  with Mr. Rogers, did you go through his list of
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 26

```
 1  medical issues with him?
 2       A    Did I go through his "Problem list"
 3  with him?
 4       Q    Yes.
 5       A    I'm not sure.
 6       Q    Did you have access to Dr. McCarthy's
 7  notes?
 8       A    Yes.  I would have had access.
 9       Q    And in your notes, you have a list of
10  problems, correct, on Page 1 of Exhibit 12?
11       A    Correct.
12       Q    And one of the problems is
13  "Post-Traumatic seizures"?
14       A    Yes.
15       Q    And you also have "hemiparesis
16  affecting right dominant side" as one of the
17  problems that Mr. Rogers was having?
18       A    Yes.
19       Q    And you -- you list the fact that he
20  also had a gunshot wound to his head, a brain
21  injury to his head?
22       A    Yes.
23       Q    And under "History of Present
24  Illness," you also confirm that he had a traumatic
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 27

```
 1  brain injury resulting in right hemiparesis and
 2  seizures?
 3       A    Yes.
 4       Q    And when you had talked to -- took the
 5  history of Mr. Rogers, Mr. Rogers reported weakness
 6  worsening in his right side?
 7       A    Yes.
 8       Q    At that time when you saw him, he was
 9  in a wheelchair, correct?
10       A    Correct.
11       Q    So you would agree that based upon
12  your diagnosis, that posttraumatic brain injury,
13  that Mr. Rogers experienced weakness on his right
14  side?
15       A    Yes.  He was reporting weakness on his
16  right side.
17       Q    And based upon that weakness,
18  posttraumatic brain injury, he required an
19  assistive device, such as a cane, walker, or
20  wheelchair?
21       A    When I saw him, he was in a
22  wheelchair, yes.
23       Q    And when Dr. McCarthy -- Do you know
24  why he got worse?
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 7

Page 28

```
 1      A     No, I do not.
 2           MR. DeVORE:  Objection.  Calls for
 3  speculation as well.
 4  BY MR. THOMAS MORRISSEY:
 5      Q     And your impressions on Page 4 was
 6  that he had seizure disorders, correct?
 7      A     Yes.
 8      Q     And that's similar to what Dr.
 9  McCarthy reported when she evaluated him, correct,
10  that he had seizure disorders and put him on
11  seizure medication?
12      A     Yes.
13      Q     And, in fact, you continued him on
14  seizure medication, correct?
15      A     Yes.
16      Q     So a person with seizure disorders
17  presents a fall risk, right?
18      A     Well, yes.  A person with seizure
19  disorder, while they're having a seizure, would --
20  would fall, yes.  Typically, they would fall.
21      Q     Did you evaluate Mr. Rogers whether he
22  could take a shower standing up without a -- a
23  grab bar in the shower?
24           MR. DeVORE:  Objection to the extent
```

Page 29

```
 1  that this seeks information as to just an
 2  individual visit as opposed to his being here as a
 3  30(b)(6) witness speaking on behalf of Cook County.
 4           Go ahead.
 5           THE WITNESS:  Okay.
 6  BY THE WITNESS:
 7      A     We didn't specifically discuss using a
 8  shower.
 9  BY MR. THOMAS MORRISSEY:
10      Q     In your opinion, when you saw
11  Mr. Rogers, did he need an accommodation to move
12  from place to place?
13      A     When I evaluated him, yes.  He was in
14  a wheelchair.  That's our recommendation.
15      Q     And when Dr. McCarthy evaluated him,
16  did she also find that he needed an accommodation
17  when moving from place to place?
18      A     I believe that she had -- at that time
19  he was using a cane.
20      Q     And he also had a brace when he was
21  walking in addition to a cane, correct?
22      A     Correct.
23      Q     So he needed those accommodations to
24  move from place to place back when Dr. McCarthy saw
```

Page 30

```
 1  him, correct?
 2      A     Correct.
 3      Q     And at the time you saw him, you
 4  evaluated that he needed to be in a wheelchair,
 5  correct?
 6      A     Correct.
 7      Q     And you would agree that when you saw
 8  him that he needed an accommodation for toileting
 9  given his medical condition?
10      A     Yes.  Based on my exam, he would have
11  needed accommodation for a toilet.
12      Q     What type of accommodation after
13  you -- At the time you evaluated him, what type of
14  accommodation did Mr. Rogers require?
15      A     Well, at the time I evaluated him, he
16  would -- he had some weakness on his right side, so
17  he would have probably required a grab bar next to
18  the toilet.
19      Q     And when Dr. McCarthy evaluated him,
20  he also had this weakness on his right side,
21  correct?
22      A     He had some weakness on his right
23  side.  It wasn't as severe, no.
24      Q     But he used -- He had to have a cane,
```

Page 31

```
 1  correct?
 2      A     Correct.
 3      Q     And he needed a brace, correct?
 4      A     Correct.
 5      Q     Would you agree that given his
 6  condition that he was -- he had a mobility
 7  disability at the time Dr. McCarthy examined him?
 8           MR. DeVORE:  Objection.  Calls for
 9  speculation.  He wasn't there at the time
10  Dr. McCarthy examined him, examined Rogers.
11  BY THE WITNESS:
12      A     Based on her note, he did have some
13  difficulties ambulating and did require a cane at
14  that time, yes.
15  BY MR. THOMAS MORRISSEY:
16      Q     And based on your experience as a
17  medical doctor, would a -- perhaps a grab bar near
18  the toilet assist him, accommodate him, in
19  toileting if he had had a right-side hemiparesis?
20           MR. DeVORE:  Objection.  Outside the
21  scope of the 30(b)(6) Notice.  He's here as a
22  Cook County representative, not his doctor in an
23  individual capacity.
24
```

Exhibit 13 Page 8

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 32

```
 1   BY THE WITNESS:
 2        A     So there are -- There are different
 3   levels of weakness.  I don't know exactly what he
 4   required back in -- in 2020 when he was evaluated
 5   as far as the toileting.
 6   BY MR. THOMAS MORRISSEY:
 7        Q     If a person that's -- Do you, as a
 8   medical doctor, prescribe walkers to patients at
 9   Cook County Jail?
10        A     Yes.
11        Q     One of the reasons that you would
12   prescribe a walker to a patient is because they
13   have a problem with their gait, walking?
14        A     Yes.
15        Q     Would one of the problems that you
16   would prescribe a walker to a patient because they
17   may have a problem with balance?
18        A     Yes.
19        Q     One of the problems that you would
20   prescribe a walker to a patient at the jail is that
21   they may have some weakness in their leg strength?
22        A     Yes, possibly.
23        Q     Would that also be true for a person
24   that you would prescribe a cane to, that they might
```

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 33

```
 1   have a problem with their gait and walking without
 2   the assistance of a cane?
 3        A     They might have a problem, meaning
 4   like pain?
 5        Q     I'm referring specifically that -- for
 6   people that you prescribe a cane to, some of the
 7   patients that are prescribed canes have a problem
 8   with their gait or their ability to walk without an
 9   assistive device like a cane, correct?
10        A     Yes.
11        Q     And some of the patients that you
12   prescribe a cane to may have a problem with their
13   balance without having an assistive device, such as
14   a cane?
15        A     Yes.
16        Q     And some of the patients that you
17   prescribe a cane to may have a problem with their
18   leg strength, correct?
19        A     Correct.
20        Q     And the same would be true in regards
21   to a crutch, as far as a person that you prescribe
22   a crutch to may have difficulty with walking
23   without the assistance of a crutch?
24        A     Correct.
```

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 34

```
 1        Q     And the same is true with a crutch,
 2   that that may have problems with balance, correct?
 3        A     Correct.
 4        Q     And the same is true with a crutch,
 5   that they may have problems with leg strength
 6   without the assistance of a crutch?
 7        A     Yes.  Correct.
 8        Q     And for people who that are prescribed
 9   a cane, crutch, or walker, for some of those
10   patients, they present a fall risk if they're not
11   provided with either a cane, crutch, or walker,
12   correct?
13        A     Some of them, yes.
14        Q     As the Cook County designee -- Well,
15   Let me -- let me digress for a second.
16              You've previously been deposed by
17   my office?
18        A     Yes.
19        Q     And in preparing for today's
20   deposition, have you looked at some of the
21   depositions that you gave in various cases for
22   Cook County?
23        A     No.
24        Q     I'm showing you a deposition you gave
```

**ANDREW DeFUNIAK, MD**
**December 17, 2024**

Page 35

```
 1   on June 21st, 2018, in a case called Whitney versus
 2   Dart.
 3                   (Exhibit No. 7 was marked for
 4                   identification and provided to
 5                   the witness.)
 6              MR. DeVORE:  Is this marked?
 7              MR. THOMAS MORRISSEY:  Yeah.  It's
 8   marked as Plaintiff's Exhibit No. 7.
 9   BY MR. THOMAS MORRISSEY:
10        Q     I'm on Page 14 -- well, going from
11   Line -- Let's start at Line 21 on Page 15.  Calling
12   your attention to your prior deposition testimony
13   in Whitney versus Dart on Page 15, Line 21, you are
14   asked this question:
15                   "Are there certain housing units
16                   at the jail where patients with
17                   assisted devices, for example,
18                   canes, walkers, or crutches can
19                   be housed?"
20              You responded and your answer
21   was:
22                   "I'm not aware of . . . specific
23                   housing units?"
24                   Doctor, that -- You gave that
```

Exhibit 13 Page 9

ANDREW DeFUNIAK, MD
December 17, 2024

Page 36

1  statement in 2018.
2          Today, based upon your position
3  as the designee, what specific housing units can
4  people with canes, crutches, and walkers be housed
5  in in the Cook County Jail?
6      A    Well, if that's the only alert, it's
7  my understanding they can be housed in any of the
8  divisions.
9      Q    So a person with a cane, crutch, or
10 walker could be housed in Division 9.
11         Is that fair to say?
12     A    Yes.
13     Q    And as a medical doctor, in the
14 medical literature, is there any reference that
15 you're aware of for a diagnosis of a long distance
16 walker?
17         MR. DeVORE:  Objection as to form.
18 BY THE WITNESS:
19     A    I'm not sure.  I don't think there's a
20 specific diagnosis for long distance walker.
21 BY MR. THOMAS MORRISSEY:
22     Q    And as far as -- So as a medical
23 doctor, you can prescribe a walker for a patient,
24 correct?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 37

1      A    Correct.
2      Q    And that can be given to an insurance
3  company for purposes of reimbursing the patient for
4  a walker, correct?
5          MR. DeVORE:  Objection.  Scope, form.
6  I don't know how this relates, insurance.
7          You can answer.
8  BY THE WITNESS:
9      A    That's my understanding, yes.
10 BY MR. THOMAS MORRISSEY:
11     Q    Okay.  Is there any distinction, in
12 your knowledge in the medical community, if you
13 write a prescription for a long distance walker or
14 just a walker as far as the patient being
15 reimbursed for the walker by insurance?
16         MR. DeVORE:  Objection as to it's
17 outside the scope of this.
18         I'm going to direct you not to
19 answer.
20         MR. THOMAS MORRISSEY:  You're going to
21 direct him not to answer?
22         MR. DeVORE:  Yeah.  I mean, if we're
23 talking about insurance reimbursement, I don't know
24 how that -- how that could possibly, conceivably --

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 38

1          MR. THOMAS MORRISSEY:  All right.
2  BY MR. THOMAS MORRISSEY:
3      Q    In the medical community, do you agree
4  that there's no distinction between walker -- a
5  prescription for a walker and the walker for long
6  distance?
7          MR. DeVORE:  Objection to what a
8  medical community.
9  BY MR. THOMAS MORRISSEY:
10     Q    Well, you're -- you're a medical
11 doctor, correct?
12     A    Yes.
13     Q    You received your training at Franklin
14 medical school -- or Chicago Medical School,
15 correct?
16     A    Correct.
17     Q    And you did an internship, correct?
18     A    Yes.
19     Q    So based upon your training and
20 experience as a medical doctor, is there -- in the
21 medical community that you're part of, is there any
22 distinction between a walker -- a prescription for
23 a walker and a prescription for a walker for long
24 distance?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 39

1          MR. DeVORE:  Same objection.
2  BY THE WITNESS:
3      A    And if you're talking about in the
4  community, I don't think there's a distinction
5  made, if the patient just uses the walker when they
6  need to.
7  BY MR. THOMAS MORRISSEY:
8      Q    In looking at your deposition on
9  Page 18, Line 9, you were asked -- Well, let's
10 start with Line 5, on Page 18.
11              "Who generally runs the staff
12              meetings?
13          "ANSWER:  Generally Dr. Mennella
14          or one of the associate medical
15          directors, Dr. Feldman or
16          Dr. Richardson.
17          "QUESTION:  Have you ever
18          discussed the practice or the
19          policy [of prescribing] canes,
20          crutches, or walkers at the
21          general staff meetings?
22          "ANSWER:  I can't specifically
23          recall that."
24          So my question today is, in your

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 10

ANDREW DeFUNIAK, MD
December 17, 2024

Page 40

1  staff meetings with Cook County, Cermak, have
2  you -- had any medical doctor ever discuss the
3  distinction in regards to providing a walker to a
4  patient versus a long distance walker?
5          MR. DeVORE:  Objection just as to
6  scope and -- and your reference to 2018 testimony
7  when this case involves May 8, 2022 forward.
8          You can answer.
9  BY THE WITNESS:
10     A     Not that I'm aware of, no.
11 BY MR. THOMAS MORRISSEY:
12     Q     Is it -- So is it fair that, as a
13 Cermak Health Service doctor, you received no
14 training from your superiors -- I don't know
15 who the current medical director is in
16 Dr. Mennella's place -- but you received no
17 training or policy in regards to the distinction
18 between a long distance prescription for a walker
19 versus a prescription just for a walker?
20     A         There's no specific training regarding
21 that, no.
22     Q         Would the same also be true in regards
23 to a long distance cane versus a cane or a
24 long distance crutch or a crutch as far as your

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 41

1  training vis-a-vis Cermak Health Service?
2     A     Yes.
3     Q     And if we look at Page 15 of that
4  same exhibit, going to Line 6 on Page 15, in
5  2008 [sic] -- '18, your question was:
6              "Has the Sheriff's Office given
7               you any training about or
8               relating to prescribing
9               wheelchairs to inmates in the
10              DOC?
11          "ANSWER:  No.
12          "Have you been given any training
13              about prescribing canes to
14              inmates in the DOC?
15          "I mean it's the same with
16              wheelchairs.  We don't have
17              specific training for assisted
18              devices.  It's part of the
19              overall health assessment of the
20              patient."
21          Is that fair to say, up to the
22 present you've received no formal training from the
23 Sheriff in regards to when to prescribe a walker,
24 for instance, or a walker for long distance?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 42

1          MR. DeVORE:  Objection.  He's not
2  here -- Objection to form.
3              He's not here to talk about what
4  the Sheriff would train anybody in.  He worked for
5  Cook County.
6              But you can answer, to the extent
7  you can.
8          MR. THOMAS MORRISSEY:  Well, let me --
9  Let me rephrase question.
10         MR. DeVORE:  Yeah, mm-hmm.
11 BY MR. THOMAS MORRISSEY:
12     Q     Have you been given any instruction or
13 training or policies from the Sheriff in regards to
14 you, as a medical professional, when to prescribe a
15 walker, cane, or crutch alert vis-a-vis the
16 difference between a long distance alert for a
17 walker, cane, or crutch?
18     A     No, we have not.
19     Q     Are you aware as the Sheriff -- as the
20 Cook County's designee that the Sheriff's Office
21 is -- To your knowledge, what type of assistive
22 devices are allowed for detainees with mobility
23 disabilities in Division 9?
24     A     To my knowledge, it's permitted to

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 43

1  have canes, crutches, potentially walkers.  I'm not
2  a hundred percent sure about that.
3     Q     So based -- as the Sheriff -- As the
4  County's designee, inmates that have canes and
5  crutches are allowed to keep those assistive
6  devices in the tiers in Division 9?
7          MR. DeVORE:  Objection as to form.
8  He's not a -- He's a medical doctor.  He's not
9  housing for the Sheriff.  Seeks information outside
10 of the scope of his knowledge.
11 BY THE WITNESS:
12     A     I don't know the specifics of where
13 individuals keep their assistive devices in
14 Division 9.
15 BY MR. THOMAS MORRISSEY:
16     Q     I'm going to show you Exhibit No. 14.
17 It's a declaration from the plaintiff in this case,
18 Mr. Rogers.
19              (Exhibit No. 14 was marked for
20              identification and provided to
21              the witness.)
22 BY MR. THOMAS MORRISSEY:
23     Q     I'd ask you to take a few moments to
24 look at that.

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 11

ANDREW DeFUNIAK, MD
December 17, 2024

Page 44

1       (Brief pause.)
2  BY MR. THOMAS MORRISSEY:
3       Q    Have you had a chance to read
4  Mr. Rogers' declaration?
5       A    Yes.
6       Q    And review the exhibit that's a
7  screenshot from Paragraph 4?
8       A    Yes.
9       Q    And the screenshot for No. 4 shows at
10 least a walker and three canes and a crutch in the
11 interlock area in Division 9?
12      A    Yes.  It appears so.
13      Q    Is that -- And Mr. Rogers'
14 declaration, as the County's designee, does that
15 represent Cook County understanding that when a
16 detainee with an alert for a cane, crutch, or
17 walker is placed in Division 9 that the devices
18 are -- are collected and maintained in the
19 officers' bubble?
20           MR. DeVORE:  Objection as to form.
21 Also, it seeks an answer based upon incomplete
22 information.  I don't even know what the question
23 is.
24           Could you rephrase the question?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 45

1           MR. THOMAS MORRISSEY:  Sure.
2  BY MR. THOMAS MORRISSEY:
3       Q    As Cermak Health Services' designee,
4  Cook County's designee, do you agree with
5  Mr. Rogers that when a person with an alert for
6  either a long distance or just a general alert for
7  a cane, crutch, or walker is placed in the housing
8  tier in Division 9 that the assistive device is
9  taken from them and held in the officers' bubble?
10           MR. DeVORE:  Objection as to form.
11 You can't ask him to agree with the plaintiff, and
12 in the context of this 30(b)(6) Notice, it's not
13 why he's here.
14 BY THE WITNESS:
15      A    I'm not aware of the specific policy.
16 BY MR. THOMAS MORRISSEY:
17      Q    So would it be fair to say, as the
18 Cermak -- as Cook County's designee -- I'm going to
19 show you the records from . . .
20           I'm going to show you Exhibit
21 No. 3 -- I'm going to show you Exhibit No. 3.
22           (Exhibit No. 3 was marked for
23            identification and provided to
24            the witness.)

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 46

1  BY MR. THOMAS MORRISSEY:
2       Q    It's a Message Journal from an
3  RN McCray.
4            Do you a nurse by the name of
5  McCray who works for Cermak?
6       A    I do.
7            MR. DeVORE:  Is this one 8/18/22?
8            MR. THOMAS MORRISSEY:  This -- Yeah.
9            MR. DeVORE:  Okay.
10           MR. THOMAS MORRISSEY:  At 1404.  It's
11 Bates stamped by your firm DR001577.
12 BY MR. THOMAS MORRISSEY:
13      Q    Do you know a Ms. Sims also?
14      A    Mr. Sims, yes.
15      Q    Kevin Sims?
16      A    Yes.
17      Q    He's a PA that works for Cermak?
18      A    Yes.
19      Q    Looking at Ms. McCray's message to
20 Physician Assistant Sims -- and this is in regards
21 to a plaintiff by the name of Mr. Hernandez -- it
22 says, in part, "This patient just come back [from]
23 IDOC on 8/4 and has a cane at all times.  The prior
24 provider that seen him on intake renewed the cane

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 47

1  order from February when he was here.  He is
2  overweight and walk with a staggered, shuffled
3  limp.  He drags [his] left foot.  He does need the
4  cane in my opinion but they will not allow him to
5  have in Division 9, except for long distances.  As
6  a result, he needs appropriate housing.  Please see
7  my note."
8  BY MR. THOMAS MORRISSEY:
9       Q    And then if we look at the
10 examination -- Exhibit No. 5 -- Let me show you
11 Exhibit 5.
12           (Exhibit No. 5 was marked for
13            identification and provided to
14            the witness.)
15 BY MR. THOMAS MORRISSEY:
16      Q    Is it your understanding that when a
17 detainee puts in a Health Service Request that
18 they're seen by a PA --
19           MR. DeVORE:  Objection to --
20           THE STENOGRAPHER:  I'm sorry, Tom.
21           Could you repeat that question?
22 Because you're kind of fading out a little bit.
23 BY MR. THOMAS MORRISSEY:
24      Q    Does this appear to be a medical

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 12

ANDREW DeFUNIAK, MD
December 17, 2024

Page 48

1  appointment with a nurse based upon a
2  Health Service Request Form?
3          MR. DeVORE:  Objection as to scope.
4  That's beyond -- well beyond the scope of this
5  Notice as it's related to Hernandez, not even the
6  plaintiff, nothing to do with this case.
7  BY MR. THOMAS MORRISSEY:
8      Q    Can you answer the question?
9      A    Can you repeat the question?
10     Q    Sure.
11              When a -- When a prisoner puts in
12 a Health Service Request, is there a process to be
13 seen in the healthcare unit?
14     A    There's a process to be evaluated
15 typically by the nurse initially.
16     Q    And looking at Exhibit 5, Page 1, is
17 this dated 8/18/22?
18         MR. DeVORE:  Objection.  This has
19 nothing to do with this case, outside the scope of
20 this 30(b)(6) Notice.
21 BY THE WITNESS:
22     A    Yes.
23 BY MR. THOMAS MORRISSEY:
24     Q    And it's for Mr. Hernandez, the

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 49

1  patient?
2          MR. DeVORE:  Same objection.
3  BY THE WITNESS:
4      A    Yes.
5  BY MR. THOMAS MORRISSEY:
6      Q    And the FIN number, which is on the
7  top of that, that matches the number in Exhibit
8  No. 3?
9          MR. DeVORE:  Objection.  Unless you
10 can articulate how this relates, I'm going to
11 direct him not to answer.
12         MR. THOMAS MORRISSEY:  It relates
13 specifically to the Notice which talks about
14 accommodations for those individuals to toilet and
15 shower that are in Division 9, and Hernandez is a
16 putative class member.
17 BY THE WITNESS:
18     A    What was the question?
19 BY MR. THOMAS MORRISSEY:
20     Q    The question was, looking at
21 Exhibit 3, is there an FIN number in regards to
22 the -- to the e-mail to the PA or the -- or the
23 nurse?
24          (Brief pause.)

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 50

1          MR. THOMAS MORRISSEY:  I'll withdraw
2  that question.
3  BY MR. THOMAS MORRISSEY:
4      Q    All right.  I'm going to show you --
5  Before we get to Exhibit 5, I'm going to show you
6  Exhibit 20.
7              (Exhibit No. 20 was marked for
8              identification and provided to
9              the witness.)
10 BY MR. THOMAS MORRISSEY:
11     Q    This is a message from
12 Sabrina Canchola, the ADA coordinator.
13         Do you see this?
14     A    Yes.
15     Q    And it says -- And the message to
16 Ms. Sims -- to Mr. Sims, the PA, it says:  "Good
17 afternoon.  Can you review the following inmates to
18 determine if they need their devices full time?"
19         MR. DeVORE:  That's Exhibit 20?
20         MR. THOMAS MORRISSEY:  It's
21 Exhibit 20.
22         MR. DeVORE:  Did you send that to us?
23         MR. PATRICK MORRISSEY:  It's
24 misnumbered on the thing we sent you.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 51

1          MR. DeVORE:  What's the one you sent?
2          MR. PATRICK MORRISSEY:  It would be 5.
3          MR. DeVORE:  5?
4          MR. PATRICK MORRISSEY:  Yeah.
5          MR. DeVORE:  So it's 5 on the one you
6  sent us?
7          MR. PATRICK MORRISSEY:  Yes.
8          MR. DeVORE:  Okay.
9  BY MR. THOMAS MORRISSEY:
10     Q    So, again, looking at this e-mail from
11 the ADA coordinator for the Sheriff to PA Sims on
12 8/18/22, there's a "CH" number.  The jail number is
13 on there, correct, on Exhibit 20, 20220202047?
14     A    Yes.
15     Q    And it's the same number on the
16 medical nurses' note on Exhibit 5, correct?
17     A    Correct.
18     Q    Okay.  And Exhibit 5 is a medical note
19 for a Mr. Hernandez, correct?
20     A    Correct.
21     Q    The patient's name is Mr. Hernandez.
22              And what Sabrina Canchola is
23 asking the PAs, "Can you review the following
24 inmates and determine if they need their devices

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 13

ANDREW DeFUNIAK, MD
December 17, 2024

Page 52

1 full time?  Due to [the] limited bed space for Max
2 detainees, they are currently housed in 9."
3          So looking back now at Exhibit 5,
4 the request by Mr. Hernandez, "I had a cane when I
5 got here today.  C/O said I could not have it on
6 the deck.  I need my cane at all times specially
7 when I get" -- "get up in the morning.  Medical
8 staff is aware . . . because I fell in my cell in
9 div-10.  I also need to be placed on a wing with a
10 shower chair medical wing or old mans deck."
11                And the grievance is -- Okay.
12 Okay.  Okay.
13          So the reason why he was being
14 seen today is because he wasn't allowed to have his
15 cane on Division 9's deck, correct?
16          MR. DeVORE:  Where are you reading
17 from again?
18          MR. THOMAS MORRISSEY:  The request to
19 talk to a healthcare provider on Exhibit 5.
20          MR. DeVORE:  5.
21                And this is about Division 10,
22 right?
23          MR. THOMAS MORRISSEY:  It's about
24 Division 9.

ANDREW DeFUNIAK, MD
December 17, 2024

Page 53

1          MR. DeVORE:  Okay.  The fall in
2 Division 10, is that what you're referring to?
3 Okay.
4 BY THE WITNESS:
5     A     So the request is regarding an
6 evaluation for a cane, it appears, and also his
7 request to be placed in a wing with a -- medical
8 wing with a shower chair or old man's deck.
9 BY MR. THOMAS MORRISSEY:
10    Q     So as a Cook County designee, does
11 this refresh Cook County's recollection that
12 prisoners with alerts for either long distance or
13 just alerts with canes, crutches, and walkers are
14 not allowed to have them inside of Division 9 as an
15 accommodation?
16          MR. DeVORE:  Objection as to form and
17 seeks information outside of his knowledge as well.
18 Also, it relates to different divisions, including
19 Division 10, which is referenced in Exhibit 5.
20 BY THE WITNESS:
21    A     No.  That does not refresh my memory.
22 BY MR. THOMAS MORRISSEY:
23    Q     As Cook County's designee, is it fair
24 to say that Cook County, Cermak Health is unaware

ANDREW DeFUNIAK, MD
December 17, 2024

Page 54

1 of whether or not detainees with canes, crutches,
2 or walkers, either an alert or a long distance or a
3 general alert, are able to keep those devices when
4 they're on the tier -- tiers in Division 9?
5          MR. DeVORE:  Objection as to mis- --
6 Object to mischaracterizes the evidence and also as
7 to form in terms of it being compound and
8 confusing.
9 BY MR. THOMAS MORRISSEY:
10    Q     Do you understand the question?
11    A     No.
12          Can you repeat it?
13    Q     Sure.
14          As a designee, are you aware
15 whether or not a prisoner with an alert, either a
16 long distance or a general alert for a cane,
17 crutch, or walker, is allowed to have those devices
18 in the tiers in Division 9?
19          MR. DeVORE:  Objection.  Form, time
20 frame.
21 BY THE WITNESS:
22    A     No, I'm not aware.
23 BY MR. THOMAS MORRISSEY:
24    Q     During the class period from -- from

ANDREW DeFUNIAK, MD
December 17, 2024

Page 55

1 May 8th, 2022, to the present, would your answer be
2 the same, that Cook County, Cermak Health is
3 unaware of whether or not individuals with -- with
4 alerts for canes, crutches, or walkers, either a
5 general alert or a long distance, whether they're
6 allowed to have those devices while on the tier?
7          MR. DeVORE:  Objection as to form and
8 also seeks information outside his knowledge and
9 it's specifically requesting information within the
10 realm of the Sheriff as opposed to Cook County.
11          But if you can answer, you can.
12 BY THE WITNESS:
13    A     Yes.  I'm unaware.
14 BY MR. THOMAS MORRISSEY:
15    Q     Just to clarify, if an inmate has
16 a general alert for a cane and is housed in
17 Division 9, Cook County is unaware of whether or
18 not that person is allowed to have a cane inside
19 the tier?
20          MR. DeVORE:  Objection.  Outside the
21 scope of the Notice, asking about -- If there's a
22 question regarding the -- what's in the Notice,
23 that's a fair question.  This is not a fair
24 question.

Exhibit 13 Page 14

ANDREW DeFUNIAK, MD
December 17, 2024

Page 56

1    MR. THOMAS MORRISSEY:  Are you
2  allowing him to answer?
3        MR. DeVORE:  I don't know how he
4  can -- As phrased, I mean, not as phrased.
5        MR. THOMAS MORRISSEY:  Okay.
6  BY MR. THOMAS MORRISSEY:
7        Q    If an inmate has a general alert for a
8  cane, based upon Cook County's knowledge, are they
9  allowed to use the cane when showering in
10 Division 9?
11       A    I'm unaware of the specifics if they
12 would need a cane or if they could have a cane in
13 Division 9.
14       Q    If a detainee had a general alert for
15 a cane in Division 9, were they allowed to use the
16 cane when they toilet?
17       MR. DeVORE:  Objection.  It seeks
18 information outside the scope of his knowledge and
19 better suited for the Sheriff.
20 BY THE WITNESS:
21       A    I don't know the specifics where a
22 cane is permitted to be held by the patient.
23 BY MR. THOMAS MORRISSEY:
24       Q    Would the same be true in regards to

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 57

1  each of the other assistive devices -- a walker or
2  a crutch -- in Division 9, whether -- whether or
3  not the patient would be allowed to use a cane,
4  crutch, or walker in order to toilet in Division 9?
5        MR. DeVORE:  Same objection.
6  BY THE WITNESS:
7        A    Yes.  I'm unaware of the specifics.
8  BY MR. THOMAS MORRISSEY:
9        Q    And would the same be true if it
10 wasn't a general alert but a long distance alert
11 for a cane, crutch, or walker; is Cook County aware
12 of whether or not they could use that -- those
13 devices to either shower or to toilet?
14       A    I'm not aware of the specifics.
15       Q    As Cook County's designee, are you
16 aware of any assistive device or accommodation
17 provided in Division 9 for a person that has alerts
18 either for long distance or general for a cane,
19 crutch, or walker when they shower -- when they
20 toilet?
21       MR. DeVORE:  Objection.  Seeks
22 information outside of his knowledge and better
23 suited for the Sheriff.

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 58

1  BY THE WITNESS:
2        A    I'm not aware of the specifics of
3  individual units.
4  BY MR. THOMAS MORRISSEY:
5        Q    And that would be true in Division 9
6  in regards to showering; Cook County is not aware
7  of any accommodations for a person who has an alert
8  for a cane, crutch, or walker, either a general
9  alert or a long distance, as far as providing any
10 assistance or accommodations for them to take a
11 shower.
12            Is that fair to say?
13       MR. DeVORE:  Objection.  Form, seeks
14 information outside the scope of the Notice.
15 BY THE WITNESS:
16       A    Yes.
17 BY MR. THOMAS MORRISSEY:
18       Q    As a -- As Cook County's
19 representative or designee, would you agree that
20 some people with a medical alert for a cane require
21 a cane when toileting in Division 9?
22       MR. DeVORE:  Objection.  Calls for
23 speculation as to who "some people" might be.
24 BY THE WITNESS:

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 59

1        A    There may be -- Certainly, there may
2  be individuals that would require that, yes.
3  BY MR. THOMAS MORRISSEY:
4        Q    And the same would be true in regards
5  to a person that has a walker or a crutch, that
6  they may require those assistive devices to toilet?
7        MR. DeVORE:  Same objection.
8  BY THE WITNESS:
9        A    Yes.  That's correct.
10 BY MR. THOMAS MORRISSEY:
11       Q    And the same would be true for a long
12 distance alert for a cane; some detainees may
13 require a long distance cane to toilet in
14 Division 9?
15       MR. DeVORE:  Objection.  Calls for
16 speculation.
17 BY THE WITNESS:
18       A    In theory, they may, yes.
19 BY MR. THOMAS MORRISSEY:
20       Q    And the same would be true for
21 crutches and walkers, correct?
22       A    Yes.  The same would be true.
23       Q    And if I asked you the same questions
24 in regards to showering, that when a medical doctor

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 15

ANDREW DeFUNIAK, MD
December 17, 2024

Page 60

```
1    or a physician assistant issues a prescription for
2    a cane, walker, or crutch, whether it's long
3    distance or a general alert, the detainee may
4    require those assistive devices in order to shower?
5              MR. DeVORE:  Objection.  Form, unclear
6    if you're talking about a case-by-case basis or
7    generalities.
8    BY THE WITNESS:
9         A    In general, there -- there might be a
10   situation, yes.
11   BY MR. THOMAS MORRISSEY:
12        Q    Can you -- And Cook County has no
13   awareness of whether or not there's grab bars in
14   showers in Division 9 for people who have been
15   prescribed canes, crutches, or walkers to hold onto
16   when showering, correct?
17        A    Correct.
18        Q    And Cook County has no knowledge
19   whether or not there's grab bars in the individual
20   cells in Division 9 for a person prescribed by a
21   medical doctor or physician assistant to have a
22   cane, crutch, or walker, either generally or
23   specifically long distance?
24             MR. DeVORE:  Objection.  Form,
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 61

```
1    compound.
2    BY THE WITNESS:
3         A    That's correct.
4              MR. THOMAS MORRISSEY:  Let's take a
5    five-minute break.
6              MR. DeVORE:  Okay.
7                   (Brief recess was had.)
8    BY MR. THOMAS MORRISSEY:
9         Q    Showing you on the screen in a moment
10   Exhibit 13, which is a video of Mr. Rogers on
11   June 9th, 2024, in Division 9, we are going to
12   start with, are you aware of whether or not -- Let
13   me ask a preliminary question.
14             In Division 9, are you familiar
15   with the layout of Division 9's tiers?
16             MR. DeVORE:  Objection.  Asked and
17   answered.  He previously testified he hasn't been
18   through Division 9 in several years.
19   BY THE WITNESS:
20        A    I can recall I've -- I've been in a
21   tier before, a tier, yes.
22   BY MR. THOMAS MORRISSEY:
23        Q    And in Division 9, are there two
24   levels in each tier?
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 62

```
1         A    Yes, to my recollection.  I don't know
2    if it's every tier, but the tier that I recall had
3    two levels, yes.
4         Q    And are some of the tiers used for
5    segregation of prisoners?
6         A    I don't -- I don't know how that works
7    in Division 9.  I think there's segregation in all
8    the units.
9         Q    Are you aware that prisoners, when
10   they're released from the cell that are in
11   segregation, are shackled; their legs are shackled
12   and their hands are shackled?
13             MR. DeVORE:  Objection.  Seeks
14   testimony outside of his knowledge.
15   BY THE WITNESS:
16        A    No.  I don't specifically know how
17   they're restrained.
18   BY MR. THOMAS MORRISSEY:
19        Q    Have you seen prisoners at the jail
20   shackled, their legs shackled, hands shackled?
21        A    I have, yes.
22        Q    Have you seen prisoners that have a
23   mobility disability having their legs shackled and
24   hands handcuffed at the same time?
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 63

```
1              MR. DeVORE:  Objection as to time
2    frame, form.
3    BY MR. THOMAS MORRISSEY:
4         Q    In the last two years.
5         A    I wouldn't know.  No, not that I
6    recall.
7         Q    We're going to -- we're going --
8    where -- Are the showers located on the lower level
9    where the dayroom is in Division 9?
10        A    I don't know.
11        Q    To your knowledge, are they on the
12   second floor of the Division 9 tiers, the showers?
13        A    I don't know where they're located.
14        Q    Showing you now a video which is
15   Exhibit No. 13 of Mr. Rogers in Tier 1E on
16   June 9th, 2024, at 9:18 a.m.
17                   (Exhibit No. 13 was marked for
18                   identification and video was
19                   viewed.)
20   BY MR. THOMAS MORRISSEY:
21        Q    I'm going to stop Exhibit 13 for a
22   moment and call your attention back to Exhibit 14,
23   the declaration of Mr. Hernandez.
24             Paragraph No. 5, "I have also
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 16

ANDREW DeFUNIAK, MD
December 17, 2024

Page 64

1  watched the video from Division 9, Tier 1E from
2  9:17 until 9:29 a.m.  This video is marked
3  'Division 9-CAM_1.040_IE Dayroom_Door-2024-06-09.'
4  In this video, I am assigned to the top deck in the
5  living unit and struggle to descend the steps.  I
6  am unable to make it down the stairs and the
7  correctional staff, including a white shirt who is
8  a supervisor, carry me up the stairs back to my
9  cell."
10              So we're going to resume the
11 video of Mr. Rogers descending the steps -- or
12 trying to descend the steps on June 9, 2024.
13                  (Video was viewed via
14              screen-share.)
15          MR. THOMAS MORRISSEY:  I'm going to
16 stop the video at 9:20:59.
17 BY MR. THOMAS MORRISSEY:
18     Q    Doctor, when you saw Mr. Rogers
19 descending the steps in Division 9, did it appear
20 that he had his brace on his legs?
21     A    I really can't tell.
22     Q    If we go back -- go back and zoom in
23 on his right foot . . .
24

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 65

1                  (Video was viewed via
2              screen-share.)
3  BY THE WITNESS:
4      A    I see it.  But if it's under his
5  clothes, I can't -- I can't see.
6          MR. DeVORE:  What mark of the video
7  are we at?
8          MR. THOMAS MORRISSEY:  9:20:37.
9          MR. DeVORE:  9:20:37.
10 BY THE WITNESS:
11     A    Okay.  At the arrow, it appears like
12 there's a black band on his leg.  That could be a
13 brace.
14 BY MR. THOMAS MORRISSEY:
15     Q    Is that an AFO, Doctor?
16     A    I can't tell.
17     Q    Can you describe an AFO for me?
18     A    I mean, it's a -- It's a plastic,
19 fabricated brace that goes behind the back of your
20 leg around your -- the base of your foot.
21     Q    In Mr. Rogers' attempt to descend the
22 stairs in Division 9, on June 9, 2024, would you
23 agree that he was favoring his right leg?
24          MR. DeVORE:  Objection.  Calls for

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 66

1  speculation.
2  BY THE WITNESS:
3      A    It -- It appears that his left side
4  was his dominant side.
5  BY MR. THOMAS MORRISSEY:
6      Q    And would you -- Is that consistent
7  with your evaluation, that Mr. Rogers had
8  difficulty in regards to his legs when --
9      A    Well, it wasn't the same time period;
10 but when I -- when I saw him, he was having
11 weakness in his right side, yes.
12     Q    And looking at this video, would you
13 agree that the film demonstrates that on
14 June 9th, 2024, Mr. Rogers was demonstrating
15 difficulty with his gait?
16          MR. DeVORE:  Objection.  Calls for
17 speculation.
18 BY THE WITNESS:
19     A    It looks like he's taking his time
20 going down the stairs, yes.
21 BY MR. THOMAS MORRISSEY:
22     Q    Okay.  He's having difficulty bearing
23 weight on his leg or foot?
24          MR. DeVORE:  Objection.  Calls for

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 67

1  speculation regarding difficulty and what the
2  plaintiff was feeling at the time of this video
3  when the doctor was not there.
4  BY THE WITNESS:
5      A    It appears he's favoring his left
6  side.
7  BY MR. THOMAS MORRISSEY:
8      Q    As a medical doctor, if you examine a
9  patient descending stairs with an apparent brace on
10 his right leg, would you agree that he has -- might
11 have some mobility disability?
12          MR. DeVORE:  Objection.  Incomplete
13 hypothetical and also outside the scope of the
14 30(b)(6) Notice for which he brought here.
15 BY THE WITNESS:
16     A    So as a -- as a provider, if we're
17 examining a patient that's limping, they would
18 appear to have some type of -- some degree of
19 mobility disability, yes.  Each case would be
20 individualized, obviously.
21 BY MR. THOMAS MORRISSEY:
22     Q    But in regards to Mr. Rogers, you
23 would agree from looking at this film that it
24 appears he had a mobility disability on his right

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 17

ANDREW DeFUNIAK, MD
December 17, 2024

Page 68

```
 1   side, which is consistent with Dr. McCarthy's
 2   diagnosis and your diagnosis later?
 3              MR. DeVORE: Objection as to form,
 4   incomplete hypothetical.
 5   BY THE WITNESS:
 6        A     So I saw him when he came back from
 7   the hospital.  It appears this was before, but it
 8   does appear this individual -- it's consistent
 9   with, you know, someone who has some weakness in
10   his right side.  He's favoring his right leg.
11   BY MR. THOMAS MORRISSEY:
12        Q     That's consistent with Dr. McCarthy's
13   diagnosis of hemiparesis of right dominant side?
14              MR. DeVORE:  Objection as to time
15   frame, form.  You're asking him to compare
16   diagnosis of a note from 2020 to current date.
17   BY THE WITNESS:
18        A     Based on this video, it appears he
19   has -- like I said, he's favoring his right leg,
20   yes.
21   BY MR. THOMAS MORRISSEY:
22        Q     As a medical doctor --
23              THE STENOGRAPHER:  I'm sorry, Tom.
24   Can you speak up a little bit?
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 69

```
 1              MR. THOMAS MORRISSEY:  Yes.
 2   BY MR. THOMAS MORRISSEY:
 3        Q     As the County designee, can you
 4   explain why a person that has a long distance
 5   walker alert and has an obvious disability is
 6   placed on the second floor of Division 9?
 7              MR. DeVORE:  Objection.  Calls for
 8   speculation.  He's not here on behalf of housing.
 9   He doesn't do any housing.  He's not designated as
10   anyone who was in assignment of housing.  He's a
11   medical doctor.
12   BY THE WITNESS:
13        A     So we don't determine the housing, and
14   we would respond to, you know, an issue, if it was
15   brought up, that they were having some difficulty
16   navigating.
17   BY MR. THOMAS MORRISSEY:
18        Q     So from Cook County's perspective, as
19   the designee, the Sheriff determines where they're
20   housed.
21              Is that fair to say?
22        A     That's correct.
23        Q     The Sheriff is responsible for
24   providing accommodations for people with mobility
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 70

```
 1   disabilities?
 2              MR. DeVORE:  Objection as to calls for
 3   a legal conclusion.  He's a medical doctor.
 4   BY THE WITNESS:
 5        A     I mean, it's collaborative with
 6   medical, but the Sheriff ultimately would decide
 7   where the individual was housed, yes.
 8   BY MR. THOMAS MORRISSEY:
 9        Q     And Cook County has no awareness of
10   whether or not Division 9 has showers that have
11   grab bars in Division 9 for people with mobility
12   disabilities?
13              MR. DeVORE:  Objection as to form and
14   the term "awareness."
15   BY THE WITNESS:
16        A     That's correct.
17   BY MR. THOMAS MORRISSEY:
18        Q     And Cook County has no awareness that
19   Division 9 -- the cells in Division 9, toilets in
20   Division 9, do not have grab bars for prisoners
21   that have mobility disabilities?
22              MR. DeVORE:  Objection as to form as
23   to -- and also as to the term "awareness" and the
24   scope of the question.
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 71

```
 1              You can answer.
 2   BY THE WITNESS:
 3        A     That's correct.
 4   BY MR. THOMAS MORRISSEY:
 5        Q     And the responsibility -- And
 6   Cook County is not aware of any accommodations
 7   provided for people with canes, crutches, or walker
 8   alerts to toilet in Division 9?
 9              MR. DeVORE:  Objection.
10   Mischaracterizes testimony regarding that
11   particular issue.
12   BY THE WITNESS:
13        A     Right.  That's correct.  We don't -- I
14   mean, we -- everyone is individualized as the
15   patient, so . . .  And we would expect that they
16   would -- if they're having difficulties, they would
17   bring it to the attention of somebody.
18   BY MR. THOMAS MORRISSEY:
19        Q     My question was more direct.
20              As the designee for Cook County,
21   Cook County is not aware of any assistive devices
22   provided to detainees with either a general alert
23   or a long distance alert for canes, crutches, or
24   walkers to toilet in Division 9?
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 18

ANDREW DeFUNIAK, MD
December 17, 2024

Page 72

```
 1         A       That's correct.
 2         Q       And the same is true for that class of
 3  prisoners; Cook County is not aware of any
 4  assistive device or accommodations provided in
 5  Division 9 to people with alerts for canes,
 6  crutches, or walkers, either a general or long
 7  distance alerts --
 8         MR. DeVORE:  Objection.  Form.  That
 9  mischaracterizes evidence, outside the --
10  BY MR. THOMAS MORRISSEY:
11         Q       -- for showers?
12         A       Yes.  We're generally not made aware.
13  We would collaborate with the patient and the
14  Sheriff if there was a situation that came up.
15         Q       On June 9 in Division 9 in Mr. Rogers'
16  tier, 1B, assuming the showers are on the first
17  floor and he's been housed on the second floor by
18  the Sheriff, can you tell me what accommodations
19  were provided for Mr. Rogers to shower on that day?
20         MR. DeVORE:  Objection.  Incomplete
21  hypothetical, the information presented.
22  BY THE WITNESS:
23         A       No.  I can't tell you that day.
24
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 73

```
 1  BY MR. THOMAS MORRISSEY:
 2         Q       I have nothing further.  Thanks.
 3         A       Thank you.
 4         MR. DeVORE:  Let's just take a couple
 5  minutes, five minutes.
 6         Can we take a five-minute break?
 7         MR. THOMAS MORRISSEY:  Sure.
 8         (Brief recess was had.)
 9         MR. DeVORE:  Let's go back on.
10         I just have a couple questions.
11         EXAMINATION
12         By Mr. DeVore:
13
14         Q       Doctor, you had -- there had been some
15  questioning regarding whether the Sheriffs had
16  provided certain medical training.
17         Would you ever expect a Sheriff
18  to provide medical training to -- to doctors and
19  staff?
20         A       No.
21         Q       Okay.  And why is that?
22         A       I mean, they -- because they're not
23  medically trained, typically, Sheriffs, since
24  that's not their specialty.
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 74

```
 1         Q       Okay.  And so then -- and that
 2  would -- That would include, you wouldn't expect to
 3  have the Sheriff provide long distance walker alert
 4  or training related to long distance versus general
 5  walker alerts.
 6         Is that fair to say?
 7         A       I wouldn't expect them to provide
 8  training.
 9         Q       Okay.  There were some questions
10  regarding whether you knew if the Sheriff had made
11  certain accommodations.
12         I just want to clarify that just
13  because you may not be -- that Cook County may not
14  be aware of certain accommodations given in
15  Division 9, that doesn't mean there weren't
16  accommodations made.  Is that correct?
17         A       Yes.  That's correct.
18         Q       And is it also fair to say that
19  Cook County relies on, in part, the inmate to
20  raise an issue in terms of either submitting a
21  Health Request Service Form or a grievance if
22  there's -- if there's an issue regarding an
23  accommodation in Division 9 or anywhere else?
24         A       Well, it is part of the process if the
```

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 75

```
 1  individual is having a medical or mental health
 2  issue, they can put in a Health Request Form.
 3         Q       And is it also the case that sometimes
 4  they may ask the Sheriff for -- to ask a question
 5  of Cook County in terms of the -- the
 6  collaboration?
 7         A       Well, I mean, there's multiple ways
 8  they raise issues with their healthcare:  through
 9  the Sheriffs, through the social workers,
10  through -- with the health staff.
11         Q       And then that information can be
12  conveyed back to Cook County, is that correct, and
13  Cermak?
14         A       Yes.  That's correct.
15         Q       Okay.  And there was -- There was
16  some questions before regarding -- regarding
17  Plaintiff Rogers having a medical visit when he had
18  a cane and then later having -- being in a
19  wheelchair when you saw him.
20         Does that suggest that there was
21  a change in the alert given for Mr. Rogers?
22         MR. THOMAS MORRISSEY:  Objection.
23  Mr. Rogers had a walker, not a cane.
24
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 19

ANDREW DeFUNIAK, MD
December 17, 2024

Page 76

1   BY THE WITNESS:
2       A       Well, when I saw him, the -- the note
3   that I was given when I had seen him, he did have a
4   change in condition, so a different alert was
5   placed, yes.
6   BY MR. DeVORE:
7       Q       And is it -- Is it the case that if an
8   inmate raises an issue and he's -- and that inmate
9   is observed by someone at Cook County that
10  they're -- if there's a change in condition that
11  warranted that there could be a new alert issued?
12      A       Yes.  That's correct.
13      Q       And that information, then, gets
14  transmitted back to the Cook County Sheriff?
15      A       Yes.
16      Q       Okay.  That's all I have.
17          MR. THOMAS MORRISSEY:  I have some
18  follow-up.
19          FURTHER EXAMINATION
20          By Mr. Thomas Morrissey:
21
22      Q       Going back to Sabrina Canchola's
23  business report, Exhibit No. 16, where she --
24          MR. DeVORE:  16?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 77

1           MR. THOMAS MORRISSEY:  Exhibit 16,
2   Page 2.
3           MR. DeVORE:  I don't think we have
4   that.
5               (Discussion off the record.)
6   BY THE WITNESS:
7       A       This one (indicating)?
8   BY MR. THOMAS MORRISSEY:
9       Q       Yeah.
10      A       Okay.
11      Q       Where it talks about --
12      A       Exhibit 16, yes.
13      Q       -- the only housing for people with
14  mobility disabilities is the RTU and Cermak.
15              Do you see that, Page 2 of
16  Exhibit 16?
17          MR. DeVORE:  What's the date on that?
18          MR. THOMAS MORRISSEY:  I believe we
19  went through that.  That was April 3rd, 2018.
20          MR. DeVORE:  Are you referencing where
21  Division 10 is the maximum security division, that
22  one?
23  BY MR. THOMAS MORRISSEY:
24      Q       She also --

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 78

1           MR. THOMAS MORRISSEY:  Yeah.
2   BY MR. THOMAS MORRISSEY:
3       Q       She also says that "mobility
4   disabilities that require auxiliary aids but do not
5   require medical housing, are housed in Divisions 2,
6   4, 6, 9, and 10.  The only ADA housing (housing
7   that complies with 2010 design standards) that
8   currently exist for detainees with mobility
9   impairments are the RTU and Cermak."
10              Do you see that?
11      A       Yes.
12      Q       So Cook County, Cermak, doesn't
13  control where the Sheriff decides to house people
14  with mobility disabilities.
15              Is that fair to say?
16      A       We make recommendations and
17  collaborate with them, but they ultimately make the
18  decision, yes.
19      Q       And it's still true today and it was
20  in 2018 that the only -- that as far as Cook County
21  knows, the only divisions that are accessible --
22  that have accessible toilets and showers for people
23  with mobility disabilities are the RTU and Cermak
24  divisions?

TOOMEY REPORTING
312-853-0648

---

ANDREW DeFUNIAK, MD
December 17, 2024

Page 79

1           MR. DeVORE:  Objection as to form.
2   BY THE WITNESS:
3       A       Yeah.  My understanding is that RTU
4   and Cermak have ADA -- are ADA-compliant housing.
5   I'm not sure what the requirements are outside of
6   Cermak and -- and the RTU building.
7   BY MR. THOMAS MORRISSEY:
8       Q       And on a regular basis medical doctors
9   are asked by the Sheriff to review whether or not
10  patients with mobility disabilities that are housed
11  in the RTU can be moved into another housing
12  situation at the jail.
13              Is that fair to say?
14          MR. DeVORE:  Objection as to form, as
15  to frequency.  It's unclear.
16  BY THE WITNESS:
17      A       Yeah.  I'm not sure it's a regular
18  basis.  It's not uncommon that they may ask
19  medical -- medical to review a patient's housing
20  status.
21  BY MR. THOMAS MORRISSEY:
22      Q       Showing you a document which is
23  Exhibit 18 -- it's going to be on your screen --
24  it's "Re:  M3 Review for Dorm 2, 1st and 2nd Floor

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 20

ANDREW DeFUNIAK, MD
December 17, 2024

Page 80

```
 1    Housing."
 2                    (Exhibit No. 18 was marked for
 3                    identification and provided to
 4                    the witness.)
 5              MR. DeVORE:  What exhibit is this
 6    again?
 7              MR. THOMAS MORRISSEY:  It's
 8    Exhibit 18.
 9              MR. DeVORE:  Okay.
10    BY MR. THOMAS MORRISSEY:
11         Q    That's a document that's from you to
12    Joseph Hilburger -- I guess he's with the Sheriff's
13    Office --
14         A    Yes.
15         Q    -- and a bunch of other folks.
16              Is this an example where you, as
17    a medical doctor, will be asked to review people
18    that are -- have mobility disabilities in the RTU
19    to see whether or not they could be placed in
20    another housing unit?
21         A    This looks like this was one instance
22    of that, yes.
23         Q    Does this happen on an ongoing basis,
24    that you're asked to review detainees for possible
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 81

```
 1    housing in other housing divisions?
 2              MR. DeVORE:  Objection as to form in
 3    terms of "ongoing."
 4              You can answer.
 5    BY THE WITNESS:
 6         A    I mean, it's not uncommon, but it's
 7    just part of the back and forth that we sometimes
 8    do with where people can be housed.
 9    BY MR. THOMAS MORRISSEY:
10         Q    So in this document, you reference
11    whether they -- whether or not they can be on the
12    second-floor housing, correct?
13              MR. DeVORE:  Objection as to form as
14    to scope in terms of this being outside of the
15    30(b)(6) Notice related to cane, crutch, or walker
16    for Division 9.  This includes insulin and it looks
17    like elderly and all kinds of other things.
18    BY THE WITNESS:
19         A    It's relating to housing in a
20    different division adjacent to RTU, Division 2.
21    BY MR. THOMAS MORRISSEY:
22         Q    It also relates to whether they can be
23    housed on the second-floor level in their division,
24    right?
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 82

```
 1         A    Yes.
 2         Q    And just for example, the first entry
 3    on here, Julian Stelmach, there's a note that he
 4    shouldn't be on the second floor because he's
 5    elderly, correct?
 6              MR. DeVORE:  Objection as to scope.
 7    This is well outside the scope of the 30(b)(6)
 8    Notice that relates to cane, crutch, or walker in
 9    Division 9, and I direct him not to answer that
10    question as posed.
11    BY MR. THOMAS MORRISSEY:
12         Q    For Division 9, there are times that
13    you're asked to review whether patients that are
14    housed in RTU and Cermak are eligible to be placed
15    in Division 9?
16              MR. DeVORE:  Objection as to scope.
17    We're talking -- not talking about individual
18    cases.  It's more broad-based than that.
19    BY THE WITNESS:
20         A    Yeah.  I don't -- I don't recall
21    specifically.  Like I said, we sometimes go back
22    and forth, collaborate, regarding individual
23    patients.
24
```

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 83

```
 1    BY MR. THOMAS MORRISSEY:
 2         Q    Is it Cermak and Cook County's
 3    position that they rely on the Sheriff's Office to
 4    provide people with mobility disabilities -- i.e.:
 5    people that a medical professional prescribes a
 6    cane, crutch, or walker either general or long
 7    distance -- that Cook County and the medical staff
 8    rely on the Sheriff to provide them accommodations
 9    for their disabilities?
10              MR. DeVORE:  Objection as to "rely"
11    and also as to the scope in terms of the question
12    and the Notice -- the 30(b)(6) Notice which
13    reflects information regarding cane, crutch, or
14    walker in Division 9.
15    BY THE WITNESS:
16         A    In general, like I said, we
17    collaborate with Department of Corrections
18    regarding housing and individual needs of the
19    patient.
20    BY MR. THOMAS MORRISSEY:
21         Q    So Cook County and Cermak's medical
22    staff is aware that there are prisoners at
23    Cook County Jail that have mobility disabilities.
24              Is that fair to say?
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 21

ANDREW DeFUNIAK, MD
December 17, 2024

Page 84

1     A     Yes.
2     Q     And the medical staff, with that
3 awareness, collaborates with the Sheriff's Office
4 to place disabled prisoners that have mobility
5 impairments in Division 9?
6          MR. DeVORE:  Objection.  That
7 mischaracterizes evidence.  He already testified
8 that medical writes alerts and that the Sheriff
9 controls housing.  There's a collaborative process
10 involving the inmates themselves.
11          MR. THOMAS MORRISSEY:  That's a
12 speaking objection.
13          MR. DeVORE:  Okay.  Well --
14          MR. THOMAS MORRISSEY:  That's
15 improper.
16          MR. DeVORE:  Rephrase the question
17 then.
18          MR. THOMAS MORRISSEY:  No.  The
19 question is fine.
20          MR. DeVORE:  Objection.  Form.
21          Don't answer that.
22 BY MR. THOMAS MORRISSEY:
23     Q     The question is, given the
24 collaboration between the Sheriff's Office and the

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 85

1 Cook County medical staff at Cermak, as
2 Cook County's designee, why does Cook County allow
3 prisoners with mobility disabilities to be housed
4 in Division 9 if it doesn't have accessible toilets
5 and showers?
6          MR. DeVORE:  Objection.  Asked and
7 answered, mischaracterizes the evidence.  He didn't
8 testify that way.
9 BY THE WITNESS:
10     A     Again, the answer is, we individualize
11 each patient if it's brought to us.  So if someone
12 has -- just has a cane alert, they might not
13 necessarily need an ADA-accessible toilet.
14          If they did, then they could come
15 to us like the example you gave us of, I think,
16 Mr. Hernandez, and we would work with -- work with
17 DOC to get him housing that was appropriate for
18 him --
19 BY MR. THOMAS MORRISSEY:
20     Q     So --
21     A     -- and that was done.
22     Q     If a Cermak or Cook County doctor
23 diagnoses and prescribes a cane for a person, it's
24 okay, as far as Cook County is concerned, to put

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 86

1 that person in Division 9, assuming Division 9
2 doesn't have accessibility for showers and toilets
3 for a mobility-disabled person?
4          MR. DeVORE:  Objection as to the
5 scope -- you're asking him to answer essentially on
6 behalf of the Sheriff -- and outside the scope of
7 his medical testimony.
8          MR. THOMAS MORRISSEY:  I'm asking him
9 pursuant to this Notice, and Judge Weisman
10 specifically allowed the plaintiffs to ask
11 Cook County in regards to the accommodations in
12 Division 9 for people with disabilities as far as
13 toileting or showering.
14 BY MR. THOMAS MORRISSEY:
15     Q     So the question is, why, as
16 Cook County's designee, does Cook County allow
17 prisoners who have been diagnosed as needing a
18 cane, crutch, or walker be placed in Division 9,
19 assuming it doesn't meet the ADA standards for
20 having accessible toilets and showers?
21          MR. DeVORE:  Objection as to the term
22 "allowed," mischaracterizes evidence --
23          MR. THOMAS MORRISSEY:  That's a
24 speaking objection.

TOOMEY REPORTING
312-853-0648

ANDREW DeFUNIAK, MD
December 17, 2024

Page 87

1          MR. DeVORE:  -- form, asked and
2 answered.
3          I think it's been asked and
4 answered, but to the extent there's something
5 different . . .
6 BY THE WITNESS:
7     A     Okay, yeah.  I don't know.
8          If we -- again, if someone --
9 Every patient is individualized.  So if someone
10 just needs a cane because they have some -- you
11 know, a sore knee, they might not require full ADA
12 accommodations.
13          But if there was an issue, it
14 would be brought up to the medical staff, like the
15 example you gave us of Mr. Hernandez, and the
16 patient would be reassessed and housed based on
17 what medical felt was appropriate.
18 BY MR. THOMAS MORRISSEY:
19     Q     So is it your position as the designee
20 for Cook County that during the class period from
21 May 8, 2022, to the present, Cook County was
22 unaware that Division 9 doesn't have accessible
23 toilets and showers for people with mobility
24 disabilities that would need that?

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 22

## ANDREW DeFUNIAK, MD
### December 17, 2024

Page 88

```
1              MR. DeVORE:  Objection.  Asked and
2    answered.
3    BY THE WITNESS:
4         A     Again, I'm -- We were unaware of the
5    specifics of the toilets and showers.  But like I
6    said, in the example you brought up to me, every
7    patient is individualized, and so the care plan
8    would be individualized based on what the patient
9    is telling us.
10   BY MR. THOMAS MORRISSEY:
11        Q     Given either the knowledge or lack
12   of knowledge by -- by Cook County, why does
13   Cook County continue to collaborate with the
14   Sheriff to allow people with canes, crutches, and
15   walkers to be housed in Division 9?
16             MR. DeVORE:  Objection.
17   Mischaracterizes the testimony, form.
18   BY THE WITNESS:
19        A     I mean, I'd answer the same way.  We
20   individualize each patient; and if there is an
21   issue with them, they're having issues, we will
22   make an assessment and change their housing
23   recommendations as -- as the patient's needs
24   indicate.
```

TOOMEY REPORTING
312-853-0648

## ANDREW DeFUNIAK, MD
### December 17, 2024

Page 89

```
1         Q     All right.  Thank you.
2         A     Thank you.
3              THE STENOGRAPHER:  Signature?
4              MR. DeVORE:  We'll reserve.
5
6              (FURTHER DEPONENT SAITH NOT.)
7
8              (Deposition concluded at 12:56 p.m.)
9
10             *          *          *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

TOOMEY REPORTING
312-853-0648

## ANDREW DeFUNIAK, MD
### December 17, 2024

Page 90

```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION
3
     Kavarian Rogers,           )
4                               )
              Plaintiff,        )
5                               )
         -vs-                   )  No. 24 C 3739
6                               )
     Thomas Dart, Sheriff of Cook )
7    County, et.al,             )
                                )
8              Defendants.      )
9
10             I, ANDREW DeFUNIAK, MD, being first
11   remotely duly sworn on oath, say that I am the
12   deponent in the aforesaid deposition, that I have
13   read the foregoing transcript of my deposition,
14   consisting of Pages 1 through 92, taken on
15   December 17, 2024, and that the foregoing is a true
16   and correct transcript of my testimony so given.
17
18
19
20                  ANDREW DeFUNIAK, MD
21   SUBSCRIBED AND SWORN TO
     before me this     day
22   of          , A.D., 2024.
23
24        Notary Public
```

TOOMEY REPORTING
312-853-0648

## ANDREW DeFUNIAK, MD
### December 17, 2024

Page 91

```
1    STATE OF ILLINOIS )
                        )  SS:
2    COUNTY OF C O O K )
3
4              I, KELLY ANN POTTS, Registered
5    Professional Reporter, Certified Shorthand Reporter
6    in and for the County of Cook, State of Illinois,
7    do hereby certify that on December 17, 2024, the
8    remote deposition via videoconference of the
9    witness, ANDREW DeFUNIAK, MD, was taken by me,
10   reported stenographically and was thereafter
11   reduced to typewriting under my direction, and
12   there were present counsel as previously set forth.
13             The said witness, ANDREW DeFUNIAK, MD,
14   was first remotely duly sworn to tell the truth,
15   the whole truth, and nothing but the truth, and was
16   then examined upon oral interrogatories.
17             I further certify that the foregoing is
18   a true, accurate, and complete record of the
19   questions asked of and answers made by said
20   witness, ANDREW DeFUNIAK, MD, at the time
21   hereinabove referred to.
22             The signature of the witness,
23   ANDREW DeFUNIAK, MD, was reserved by agreement of
24   the parties.
```

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 23

ANDREW DeFUNIAK, MD
December 17, 2024

Page 92

1          The undersigned is not interested in the
2     within case, nor of kin or counsel to any of the
3     parties.
4          WHEREUPON, I set my hand pursuant to the
5     Illinois Shorthand Reporters Act of 1984 on this
6     30th day of December, A.D., 2024.
7
8
9
10
11          KELLY ANN POTTS, RPR, CSR
12          CSR No. 084-003558
13
14
15
16
17
18
19
20
21
22
23
24

TOOMEY REPORTING
312-853-0648

Exhibit 13 Page 24