## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KAVARIAN ROGERS;

Plaintiff,

v.

THOMAS DART, SHERIFF OF COOK
COUNTY, AND COOK COUNTY,
ILLINOIS,

Defendants.

Case No. 24-cv-03739

Judge Mary M. Rowland
Judge M. David Weisman

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kavarian Rogers, brings suit against Thomas Dart, Sheriff of Cook County, and Cook County, Illinois (collectively "Defendants") alleging Defendants have been and continue to be deliberately indifferent to Plaintiff Rogers's rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Before the Court is the Defendants' motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6). [11]. For the reasons stated herein, Defendants' motion is denied.

## BACKGROUND

The incorporated factual allegations and the following factual allegations taken from the Complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff Kavarian Rogers was processed into the Cook County Department of Corrections ("CCDOC") on April 2, 2020 and remained in CCDOC custody at the time

1

he initiated this suit. [1] ¶ 2. Due to an injury sustained from a gunshot to the left side of his head in 2020, Mr. Rogers's ability to move from place to place and to stand is substantially limited. *Id.* ¶ 10. Consequently, Mr. Rogers requires accommodations to perform everyday life activities, such as ambulating, showering, and toileting. *Id.* ¶ 11.

Division 9 is a building used to house inmates at the CCDOC and its construction commenced after March 7, 1988. [1] ¶¶ 5–6. According to the Complaint, it is the policy of the Sheriff to designate Division 9 as a housing location for detainees with mobility disabilities that require auxiliary aids, such as a cane, crutch, or walker, but do not require medical housing. *Id.* ¶¶ 15, 17. Plaintiff Rogers has been assigned to Division 9 as his housing location for at least two years and at the time of filing was housed in Tier 1D. *Id.* ¶ 16. There are no grab bars or mounted shower seats in Division 9 to assist inmates. *Id.* ¶¶ 18–19. In April 2018, the Sheriff's ADA Compliance Officer prepared a "Business Case" report for fiscal year 2019 regarding future ADA assessments and improvement projects. *Id.* ¶ 20. The report acknowledges Division 9 is not ADA compliant, and thus "severely restricts [our] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets, and showers." *Id.*

Without a mounted shower seat and grab bars, Plaintiff and other similarly situated disabled inmates are unable to shower on the same basis as abled body inmates. [1] ¶ 21. The shower floor is slippery and Plaintiff is unsteady when he showers. *Id.* Plaintiff has fallen and sustained physical injuries while using the

inaccessible shower in Division 9. *Id.* Similarly, Plaintiff is unable to toilet on the same basis as non-disabled detainees because he is not provided an accessible toilet with grab bars. *Id.* ¶ 22. Plaintiff Rogers has experienced and continues to experience pain when showering and toileting. *Id.* ¶ 23. Mr. Rogers requests for accommodations to shower and toilet have been denied. *Id.* ¶ 25.

Plaintiff Rogers brings this suit pursuant to Federal Rule of Civil Procedure 23(b)(2) to obtain prospective relief for all inmates housed in Division 9 at the CCDOC prescribed a cane, crutch, or walker by the medical staff. [1] ¶ 26. Plaintiff also seeks to certify this case under Rule 23(b)(3) for all inmates housed in Division 9 at the CCDOC after May 8, 2022, prescribed either a crutch, cane, or walker. *Id.* ¶ 27. Plaintiff alleges Defendants have been and continue to be deliberately indifferent to Plaintiff's rights under the ADA and RA. *Id.* ¶ 28. He asserts claims arising under the ADA, 42 U.S.C. §12132; Section 504 of the RA; and the Illinois Civil Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 *et seq*. *Id.* ¶ 1.

Now before the Court is Defendants' motion to dismiss the Complaint in its entirety. [11].

## STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2)

3

(requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Concrete Dates or Times of Occurrences of the Alleged Conduct

Defendants contend the Complaint does not specify the exact time frame or dates on which the challenged conduct occurred and argue Plaintiff has not satisfied his pleading burden to put Defendants on notice of his claims. [11] at 3–5. The Court

4

disagrees. The Complaint contains sufficient allegations to put Defendants on notice of Plaintiff Rogers's claims. He states that he was processed into CCDOC on April 2, 2020, was assigned booking number 2020-0402015, and continued to be in CCDOC's custody at the time of filing the case. [1] ¶ 2. Provided with Plaintiff's booking number, Defendants can determine Mr. Rogers's history at CCDOC, including his housing assignments. This is enough to put Defendants on notice, but the Complaint goes further and states that Mr. Rogers was assigned to Division 9, the site of the allegedly non-compliant structures, for approximately two years as of May 8, 2024. *Id.* ¶ 16.

Plaintiff alleges ongoing pain when engaging in the everyday activities of showering and toileting and the inability to engage in these everyday activities on the same basis as able bodied inmates. [1] ¶¶ 21–22. The core of Plaintiff's Complaint is continual interference with his daily activities due to a lack of adequate accommodations. The Complaint need not list each date on which Mr. Rogers showered or used the toilets for Defendants to have notice of the nature of the claims. *Cf. Jackson v. Am. Water Co.*, No. 20-CV-413-SPM, 2021 WL 135912, at *2 (S.D. Ill. Jan. 14, 2021) (dismissing "bare bones" complaint that excluded circumstances of alleged wrongful termination).

Finally, Defendant's argument that Plaintiff does not allege that he has been outright unable to shower or use toilet facilities does not constitute grounds for dismissal. [12] at 5. Defendants' cited authorities do not support the proposition that Plaintiff must complain of an outright inability to use the bathroom facilities to state

a claim for violations of the ADA/RA. *See id.* (citing *Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (suggesting allegations of missing medical appointments due to inadequacy of transport vans would satisfy plaintiff's pleading burden) and *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (affirming dismissal on the basis that inconvenience is not a denial of services)). Moreover, here, Plaintiff alleges how his use of the facilities differs from the experiences of able-bodied inmates. For example, Mr. Rogers is unsteady when showering and has sustained injuries from falling on the slippery shower floors.[1] [1] ¶ 21. He also described feeling pain when showering or toileting. *Id.* ¶ 23. This is sufficient. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (concluding plaintiff stated a claim under the RA where he feared falling when using the toilet or shower and thus limited his monthly showers).

Accordingly, the Court finds Plaintiff Rogers has plausibly pleaded a claim for violations of the ADA and RA. Even without exact dates of when Plaintiff was unable to use the showers or toilets on the same basis as other inmates or when Plaintiff sustained physical injuries, Defendants have adequate notice of Plaintiff's claims and are not prejudiced to prepare a defense. Defendants will have the opportunity to probe more specific information through discovery (and may already have done so) that will

---

[1] Plaintiff's grievances, referenced in the Complaint ([1] ¶ 25) and attached to his response to Defendants' motion, provide even more detail regarding Plaintiff missing showers and injuries from falls. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint"). These additional facts do not concede the inadequacy of the Complaint, as drafted, as Defendants assert. [16] at 1. As described above, even without these exhibits, Plaintiff's Complaint stated a plausible claim.

aid in answering the complaint, asserting affirmative defenses, and otherwise supporting a defense strategy.

## II. Restoration Act Claims

Plaintiff Rogers alleges claims arising under the Illinois Civil Rights Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 *et seq*. Pursuant to the Restoration Act, violations of federal discrimination statutes, including the ADA or RA, "shall constitute a violation" of the Restoration Act. 775 ILCS 60/15. The Restoration Act permits damages for "past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonmonetary losses, and any amount that may be determined by a jury, or a court sitting without a jury." 775 ILCS 60/20.

Defendant asserts the Restoration Act is not retroactive and any violations "alleged in some way to have occurred" before the statute came into effect on January 1, 2024 are not actionable. [11] at 5–7. The two courts in the Northern District of Illinois who have taken up this question, of which this Court is aware, have reached different conclusions. In *Mendoza v. Dart, et al.*, 20-cv-670, ECF No. 213 (N.D. Ill. Mar. 4, 2024), the court concluded the statute only applies prospectively because it lacked any indication that the Illinois legislature intended the Restoration Act to apply retroactively. *Id.* at 3–4. In contrast, the court in *Pogorzelska v. Vandercook*, 19-cv-5683, ECF No. 206 (N.D. Ill. April 11, 2024) determined the Restoration Act merely expands available remedies without affecting the accrual of a claim, thus classifying as a procedural change that applies retroactively under Illinois state law.

*Id.* at 4–5 (discussing *Perry v. Dep't of Fin. & Prof'l Regul.*, 2018 IL 122349, ¶ 46 ("[W]here our legislature has not expressly indicated the temporal reach of a change in law, we look to whether the change is procedural or substantive . . . .")).

But this Court does not reach this question. Plaintiff Rogers does not argue the Restoration Act should apply retroactively or contest any of Defendants' arguments. Instead, Plaintiff asserts that he "remains incarcerated in Division 9 and contends his rights under the ADA continue to be violated." [12] at 4–5. Plaintiff concedes the point and waives any argument on retroactivity. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, Plaintiff's claim under the Restoration Act for violations that occurred before January 1, 2024 are dismissed. Any claim for conduct occurring on or after January 1, 2024 survives.

## III.     Tort Immunity Act

Defendants assert Plaintiff's claims based on the Restoration Act should also be dismissed because multiple provisions of the Tort Immunity Act bar the pending state law claims.[2] [11] at 8. The Tort Immunity Act shields "local public entities and public employees from liability arising from the operation of government." 745 ILCS

---

[2] Defendants invoke the following provisions of the Illinois Tort Immunity Act as a bar to Plaintiff's Restoration Act claims: (a) Section 4-103, which prohibits a local public entity from being held liable for a state law claim based on a "failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein;" (b) Section 2-202, which blocks Illinois governmental workers and entities from liability for acts of negligence; (c) Section 2-109, which shields local public entities from liability "for an injury resulting from an act or omission of its employee where the employee is not liable;" and (d) Section 3-103, which bars local public entities from liability for injuries "caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction" by a body or employee "exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved."

10/1-101(a).

As an initial matter, the parties dispute whether the Restoration Act waives immunities under the Tort Immunity Act and whether the Tort Immunity Act even extends to claims under the Restoration Act for ADA/RA violations. The Restoration Act expressly sets forth that the "[s]tate waives sovereign and Eleventh Amendment of the United States Constitution immunity for any violation of this Act," but the Restoration Act is silent on the Tort Immunity Act. 775 ILCS 60/30. Defendants argue this silence supports the conclusion that the statutory immunities available under the Tort Immunity Act are not waived. [11] at 8; [16] at 4–5. In response, Plaintiff asserts that the Restoration Act merely provides a remedy for violations of substantive federal anti-discrimination law and the Illinois Tort Immunity Act does not bestow "immunities and defenses" upon local governments for infringing upon rights protected by the ADA and RA. [12] at 5–6. Indeed, it is unsettled whether the Tort Immunity Act "categorically excludes actions that do not sound in tort," such as Plaintiff's allegations that sounds more in disability discrimination than tort. *Hernandez & Mathis v. Dart et al.*, 23-cv-16970, ECF No. 70 (N.D. Ill. Nov. 13, 2024) (quoting *Society of American Bosnians and Herzegovinians v. City of Des Plaines*, 2017 WL 748528, at *14 (N.D. Ill 2017)). However, the Court will not determine at this time whether the Tort Immunity Act categorically forecloses state law Restoration Act claims based on the parties' limited arguments on the topic.

The Court declines to dismiss based on the Tort Immunity Act at this stage of the litigation. "The Illinois Tort Immunity Act is an affirmative defense, and a

9

plaintiff does not have to plead around affirmative defenses." *Prokop v. Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022); *Sterling v. Bd. of Educ. of Evanston Township High Sch. Dist. 202*, No. 19-CV-05599, 2021 WL 809763, at *7 (N.D. Ill. Mar. 3, 2021) ("[The Tort Immunity Act] provides affirmative defenses, and plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint."). Defendants may be able to show that they are immune from liability, however, such a determination which requires the Court to go beyond the allegations in the Complaint is premature at the motion to dismiss stage. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (dismissal based on an affirmative defense "is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense.") (emphasis in original).

## CONCLUSION

For the stated reasons, Defendants' motion to dismiss the complaint [11] is denied.

E N T E R:

Dated: March 12, 2025

_____
MARY M. ROWLAND
United States District Judge

10