```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   KAVARIAN ROGERS,                    )  No. 24 C 3739
                                         )
 4                  Plaintiff,           )
                                         )
 5          vs.                          )  Chicago, Illinois
                                         )
 6   THOMAS DART, et al.,                )
                                         )  March 6, 2025
 7                  Defendants.          )  2:35 p.m.

 8                     TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE M. DAVID WEISMAN, MAGISTRATE JUDGE
 9
     APPEARANCES:
10
     For the Plaintiff:     THOMAS G. MORRISSEY, LTD.
11                          BY:  MR. THOMAS G. MORRISSEY
                                 MR. PATRICK W. MORRISSEY
12                          10257 South Western Avenue,
                            Chicago, Illinois  60643
13

14   For the Defendants:    DeVORE RADUNSKY, LLC
                            BY:  MR. JASON E. DeVORE
15                               MR. ZACHARY G. STILLMAN
                            230 West Monroe Street, Suite 230,
16                          Chicago, Illinois  60606

17

18

19

20

21

22
                           PATRICK J. MULLEN
23                        Official Court Reporter
                    219 South Dearborn Street, Room 1412
24                        Chicago, Illinois  60604
                             (312) 435-5565
25                            *  *  *  *  *
            TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1      (Proceedings in open court.)
2              THE CLERK:  24 CV 3739, Rogers versus Dart, et al.
3              THE COURT:  Good afternoon.  For plaintiff?
4              MR. P. MORRISSEY:  Good afternoon, Your Honor.
5      Patrick Morrissey for the plaintiff.
6              MR. T. MORRISSEY:  Thomas Morrissey on behalf of the
7      plaintiff.
8              THE COURT:  Good afternoon, Mr. Morrissey and
9      Mr. Morrissey.
10             For defendants?
11             MR. DeVORE:  Good afternoon, Your Honor.  Jason
12     DeVore, D, as in David, E, capital V, as in Victor, O-R-E on
13     behalf of defendants.
14             MR. STILLMAN:  As well as Zachary Stillman on behalf
15     of defendants.
16             THE COURT:  Good afternoon to both of you.
17             Okay.  Tell me where we are.
18             MR. T. MORRISSEY:  Well, there's a level of
19     frustration because we don't seem to get anywhere.  When we
20     come back, we enjoy coming back, but we would like to get this
21     case wrapped up.
22             THE COURT:  I've been told that's part of the problem,
23     but go ahead.
24             MR. DeVORE:  More reasonable requests would be, you
25     know -- no, there's a lot of progress, I think.

```
 1            MR. T. MORRISSEY:  Basically the main topic has still
 2   been the same topic for four or five months.  They need to
 3   designate and produce people under 30(b)(6) and give us dates
 4   where we can take their depositions.
 5            THE COURT:  Okay.  Mr. DeVore?
 6            MR. DeVORE:  So we've made a lot of progress since we
 7   were last here.  We had the inspection, and it went through or
 8   made it through.
 9            THE COURT:  So Mr. Morrissey didn't fall.  Nothing
10   happened.
11            MR. DeVORE:  Nothing happened.
12            MR. T. MORRISSEY:  No, I was safe.
13            MR. DeVORE:  Nothing happened.  I mean, I don't know
14   if I want to characterize but, I mean, it was I think a good
15   inspection.  It was done.  Their expert had as many
16   measurements as they could possibly want to take.  There
17   were -- we had no issues that I can recall, and we gave them
18   even longer than they asked for.
19            MR. T. MORRISSEY:  Well, here was the -- we went
20   around and around about the time that we could spend in the
21   tier, and then we didn't begin because of the person who was
22   coordinating the thing for about a half-hour.  Then it took
23   much longer because they wanted us to go to an empty tier,
24   which wasn't the tier that we wanted.  So we spent about 45
25   minutes in that tier, and then we went to the relevant tier and
```

1  all the fellows were out in the dayroom, which caused some
2  apprehension on our part.  Our guy had to go, you know, in
3  there pretty much unguarded in the division which has the most
4  incidents of batteries in the whole jail.
5           Other than that, we probably spent much more time than
6  was necessary.  There's still this lingering issue.  We've been
7  asking and we asked that day.  We don't want to have to go
8  through the whole building, and they all agree that all the
9  tiers are identical.  They won't give us a stipulation to say
10 that, and we've been hung up on this for months.  So I don't
11 know what -- you know, I don't know where we are on that.
12           MR. DeVORE:  Where we are is articulated in the JSR.
13           THE COURT:  Okay.  I've got it open.
14           MR. DeVORE:  Yeah.
15           THE COURT:  I'm at 68.
16           MR. DeVORE:  We have two of them.
17           THE COURT:  Okay.  So I'm at 68.  This is defendants',
18 so you can start, Mr. DeVore, and then I'll go to the other
19 one.
20           MR. DeVORE:  Yeah.  So starting on page 2 and into
21 page 3, we have a listing of all the different witnesses and
22 some dates, some proposed dates.  The 30(b)(6) we are trying
23 mightily to get, and we've taken Your Honor's words and passed
24 them on.  We have -- we would like to get this done as
25 efficiently as we can.  It's taking longer than we want, but

1   it's not for lack of effort.  So the 30(b)(6) are the missing
2   elements right now.
3           With respect to the cells and the layout, I mean, we
4   did bring plaintiff's counsel and their expert into a tier that
5   was a mirror image of the tier that they wanted initially to
6   inspect, and then we also gave them an opportunity to inspect
7   the tier that they wanted to inspect, which happened to have
8   some folks in it.  So that was done.
9           So we've asked or we've suggested that we could get
10  this by the 14th.  I know we've been trying hard.  I know, but
11  every time we've been back here we've had a number of things we
12  crossed off the list.  And believe me, we are really, really
13  trying.
14          THE COURT:  Okay.  So here's my thought on the
15  30(b)(6).  What's our close of discovery, the 14th?
16          MR. T. MORRISSEY:  I think it's the end of the month,
17  isn't it?
18          MR. P. MORRISSEY:  The Court extended it at the last
19  status to the end of this month.
20          THE COURT:  Okay.  So did I give you the 28th?
21          MR. DeVORE:  The 28th.
22          THE COURT:  Okay.  Here's what I'm going to do on the
23  30(b)(6).  Mr. DeVore, just tell your client April 18th,
24  they've got to be done by April 18th.  If they're not done --
25  and they just have to get someone prepared to answer these

1  questions.  If they cannot do that, the Court will look at
2  other means through court intervention to address these facts.
3  I don't know what else I can do, you know.
4           MR. DeVORE:  Understood.
5           THE COURT:  So --
6           MR. DeVORE:  Understood.
7           THE COURT:  -- whatever, whoever you're dealing with,
8  tell them if we don't get a witness, if we think there's an
9  issue, we've got to get the witness up to speed.  If we don't,
10 we don't have to worry about it.  But if we don't get anything
11 done, the Court is going to take it in his own hands to get it
12 figured out.
13          MR. DeVORE:  Understood.
14          THE COURT:  Okay.
15          MR. DeVORE:  And we've articulated the issues going --
16 since it's such a long time ago, but obviously that's our
17 burden.
18          THE COURT:  Yes.  For the record, because -- well,
19 anyway, if I have to get involved, I'll get involved.
20          MR. DeVORE:  Sure, understood.
21          THE COURT:  Okay.  Then I've got a question on these
22 other depositions with the people who are at the MCC.  So I'm
23 just having --
24          MR. DeVORE:  And Big Muddy.
25          THE COURT:  Yes.

1                MR. DeVORE:  We're having trouble.  It's really
2    something.
3                THE COURT:  So Foster I may be able to help you with,
4    but can you look at Pierce who's on page 3?  It says he's
5    currently at Big Muddy, but in the right-hand column it says
6    "having trouble scheduling with the MCC."  Is that just kind of
7    a typo?
8                MR. STILLMAN:  Yeah, a typo.
9                THE COURT:  Okay.
10               MR. DeVORE:  Yep.  We're working so hard that we
11   didn't get that typo.
12               THE COURT:  Okay. That's fine.  Who are you working
13   with at the MCC?
14               MR. STILLMAN:  Your Honor, I don't believe we have a
15   name yet.  I've made several calls to them to try to be put in
16   touch with whoever handles scheduling legal matters like
17   depositions.
18               THE COURT:  Yes.
19               MR. STILLMAN:  I haven't managed to speak with anyone.
20               THE COURT:  Mr. Morrissey and Mr. Morrissey, do you
21   have any objection?  I know the legal counsel over there.  I
22   could put it in a minute order, or probably I'd prefer not to
23   do that, but it wouldn't be ex parte.  But I'd communicate to
24   both of you this person's name.
25               MR. T. MORRISSEY:  That's fine.

1          THE COURT: Okay.

2          MR. P. MORRISSEY: We have no objection.

3          MR. DeVORE: That would be great.

4          THE COURT: Let me see if I can get that done. I
5 think that I can help you with that. Big Muddy, you're on your
6 own.

7          MR. DeVORE: We'll take all the help we can get.

8          THE COURT: Okay. Okay. So I'm on page 3. Amended
9 answers or answers to amended requests, where are we on that?

10          MR. DeVORE: We've tendered the amended. They
11 responded. Then there was one additional clarification,
12 additional clarification we made or adjustment, and we're
13 waiting on that last one, right?

14          MR. STILLMAN: Yes.

15          MR. DeVORE: And there was some equivocating, but not
16 too bad for the plaintiff.

17          THE COURT: Mr. Morrissey?

18          MR. P. MORRISSEY: There was a typo on their end.
19 They served this revised request on Friday, and I looked at it
20 on the way here. I think it's just a simple thing, so I can
21 respond to that next week. It shouldn't be an issue.

22          THE COURT: Oh, you're saying the typo is on the date
23 that it was served?

24          MR. P. MORRISSEY: No. The defendants propounded a
25 request to admit, and it wasn't supported by what they -- they

1    misidentified an exhibit.
2            THE COURT: Oh, I see what you're saying.
3            MR. DeVORE: A document, yes.
4            THE COURT: So you all figured that out.
5            MR. DeVORE: Yes.
6            THE COURT: Okay.
7            MR. P. MORRISSEY: So they revised it, and it should
8    be a simple task.
9            THE COURT: Okay. So that one you'll take care of
10   yourselves.
11           MR. P. MORRISSEY: Right, it will be addressed.
12           THE COURT: Okay. Then the stipulation regarding
13   Division 9, is that March 14th date still good? Mr. Morrissey
14   said you all have reached agreement. Then Mr. Morrissey said
15   you haven't sent it over, but now you're telling me March 14th.
16           MR. DeVORE: Well, we agreed. We have agreement. We
17   just don't have the approval and the signoff from the client.
18           THE COURT: Okay.
19           MR. DeVORE: It's not going to be anything surprising
20   in terms of content. I mean, it's pretty much the -- but we
21   can't -- it's just that last little bit.
22           THE COURT: Okay. But March 14th you'll still get
23   that done. Perfect. That was a yes just for the record?
24           MR. DeVORE: Yes, yes.
25           THE COURT: That's fine.

```
 1              MR. DeVORE:  My apologies.
 2              THE COURT:  No worries.
 3              MR. DeVORE:  Good thing I'm not on the phone.
 4              THE COURT:  Yeah, I'd have no idea what's going on.
 5              MR. DeVORE:  And I don't have -- I do have a rural
 6   accent, just not a Texan.
 7              THE COURT:  Right.  Still the Midwest rings easier.
 8              MR. DeVORE:  Ten days would have been Sunday,
 9   obviously.
10              THE COURT:  Okay.
11              MR. DeVORE:  Yeah.
12              THE COURT:  Okay.  So we've covered everything from
13   your status report.
14              MR. DeVORE:  Yes.
15              THE COURT:  Okay.
16              MR. DeVORE:  The same issues, I think.
17              THE COURT:  Okay.
18              MR. DeVORE:  They just didn't want to include our
19   efforts and dates, I think, that we had put there in our chart.
20              THE COURT:  All right, Mr. Morrissey or Mr. Morrissey.
21   I've got 67 up now.
22              MR. T. MORRISSEY:  So there's a sergeant and a
23   lieutenant that have some knowledge in regards to the
24   plaintiff's grievance.  They want to start the deps at 3:00
25   o'clock and go through them then.  In our view, that seems to
```

1   be unreasonable.  They're county employees.  We want to do them
2   in person, so we've been hung up on that.  We spoke after the
3   last status and, you know, we'd like to do it a little earlier
4   in the day for the convenience of not only ourselves but the
5   court reporter.
6           THE COURT:  Well, okay.  There's not a rule, right?
7           MR. T. MORRISSEY:  No.
8           THE COURT:  Okay.  That's fine.
9           MR. T. MORRISSEY:  But --
10          THE COURT:  Why do you all want to do it at 3:00?
11          MR. DeVORE:  They start at 3:00.
12          THE COURT:  That's when they start work.
13          MR. DeVORE:  That's when they start their shift.
14          THE COURT:  Okay.
15          MR. DeVORE:  And we've elucidated that numerous times.
16  I don't think it's that controversial, and plaintiff's counsel
17  also indicated, even as recent as within the past hour, that
18  these shouldn't take that long.  I can't believe they are going
19  to.  We don't want to go into the night.  We never said that,
20  ever.  We'd like to have it done in an hour if we could.  That
21  would be -- I mean, if we could do that, we'll be out of there
22  by 4:00.
23          THE COURT:  Mr. Morrissey?
24          MR. T. MORRISSEY:  Yeah, I have a suggestion.  I think
25  each one will be done within two hours.

```
 1                THE COURT:  Okay.
 2                MR. T. MORRISSEY:  But if not, we would like to have
 3   the option to continue it to the next day.
 4                THE COURT:  So two, both starting at 3:00.
 5                MR. T. MORRISSEY:  Well, we don't believe we can do
 6   two in a two-hour period.
 7                THE COURT:  That's what I was saying.  Two that both
 8   start at 3:00, one day -- one dep on one day and the other dep
 9   on the next day.
10                MR. T. MORRISSEY:  That would be fine.
11                THE COURT:  Mr. DeVore, what do you think about that?
12                MR. DeVORE:  Starting at 3:00 and have one commence on
13   day 1 and have another commence on the second at 3:00?
14                THE COURT:  Right.
15                MR. DeVORE:  We would have no issue with that.
16   Obviously we have to check on the schedule with the jail, but
17   we have no -- we have never said there was an issue with that.
18                MR. T. MORRISSEY:  So the understanding is --
19                MR. DeVORE:  They do work on slightly different days,
20   and we have to confirm their exact schedule.
21                THE COURT:  Okay.
22                MR. T. MORRISSEY:  So it will be in person, and if we
23   didn't finish on day 1 by 5:00 --
24                THE COURT:  Well, hold on, Mr. Morrissey.
25                MR. DeVORE:  By 5:00?
```

|   |   |
|---|---|
| 1 | THE COURT: I'm going to intervene here. |
| 2 | MR. T. MORRISSEY: Yeah. |
| 3 | THE COURT: So you want 3:00, and you're figuring two hours. |
| 5 | MR. T. MORRISSEY: Yeah. |
| 6 | THE COURT: You want 3:00 p.m. to start. |
| 7 | MR. T. MORRISSEY: Yeah. |
| 8 | THE COURT: And they start at 3:00 p.m. So here's my guess, just crazy thinking here. It won't start at 3:00. It's going to start at 3:15, maybe 3:30. You get one on one day, and that will be two hours or so. So you're out by 5:30, 6:00 o'clock. |
| 13 | MR. T. MORRISSEY: Yeah. |
| 14 | THE COURT: Still time to have a nice dinner, relax, everything. Then the next one will be the next day. Just plan on it that way, because if we do it your way, which is a little self-centered, maybe we can't get two done in one day, and then maybe what would happen is you don't have -- that doesn't happen and the other deponent has been sitting there wasting his or her time. So let's just do it that way. |
| 21 | MR. T. MORRISSEY: Well, what I'm suggesting is -- |
| 22 | THE COURT: I'm not suggesting. I'm just saying that's what we're going to do. |
| 24 | MR. T. MORRISSEY: Oh, all right. |
| 25 | THE COURT: So that's what we'll do. You all figure |

1  out timing. That's fine. We're saving the county all that
2  money for overtime.
3          MR. DeVORE: Thank you.
4          THE COURT: Yes, it all --
5          MR. DeVORE: It's our money.
6          THE COURT: Yes, it's all of our money, right?
7          MR. DeVORE: And plaintiff's counsel's office is much
8  closer than ours. It's much more -- we have no inconvenience
9  issues.
10         THE COURT: Yes.
11         MR. T. MORRISSEY: Perhaps we can do them at the jail
12 to make it even better for the county. That's what our
13 suggestion was.
14         MR. DeVORE: We did ask about that, and it was
15 presenting an issue for our client.
16         MR. P. MORRISSEY: We've done it in the past where we
17 just go over to the courthouse, the Leighton Courthouse. The
18 state's attorneys have an office there, so then it's --
19         THE COURT: Okay. I am 100 percent confident that you
20 all can figure out where to do these.
21         MR. DeVORE: Yes, I think we can figure it out.
22         THE COURT: If you can't, just call me jointly and
23 we'll do it off the record, and then I'll put in a little
24 minute order saying we figured it out.
25         MR. DeVORE: Thank you.

1             MR. T. MORRISSEY:  Can we have those -- because we've
2  been having problems with dates, can those two deps be done by
3  the end of March?
4             THE COURT:  I'm good with that.
5             Are you good with that, Mr. DeVore?
6             MR. DeVORE:  I don't think it's a problem.
7             THE COURT:  March 28th I think is that Friday.
8             MR. DeVORE:  Yes.
9             THE COURT:  Mr. Stillman, if that doesn't happen, it
10 will be your fault.
11    (Laughter.)
12            THE COURT:  What's next?
13            MR. DeVORE:  That's it.
14            THE COURT:  That's it?
15            MR. DeVORE:  Yeah.
16            MR. T. MORRISSEY:  That's it.
17            MR. DeVORE:  We're looking pretty good.
18            THE COURT:  Yeah, you guys are looking great.
19            MR. DeVORE:  Really.
20            MR. T. MORRISSEY:  We'll keep our fingers crossed.
21            MR. DeVORE:  Compared to a couple months ago, you
22 know, we're a little more optimistic, I think.
23            THE COURT:  We're good, Mr. Morrissey?
24            MR. P. MORRISSEY:  We're fine, Your Honor.
25            THE COURT:  Okay.  All right.

1    MR. T. MORRISSEY:  All right.  Thank you, Your Honor.
2    THE COURT:  Wait, wait.  We do need to set another
3 date, gentlemen.
4    MR. DeVORE:  A new date, yeah.  May?
5    THE COURT:  So I think May, you know.  We could do
6 like 11:00, and then you all could go to a Cubs game if you
7 want.
8    MR. DeVORE:  Oh.
9    MR. T. MORRISSEY:  I'm a south-sider.
10    THE COURT:  I'm a Sox fan.
11    MR. T. MORRISSEY:  I haven't been to a Cubs game since
12 1970.
13    THE COURT:  You know what, Mr. Morrissey?  Maybe
14 you'll see me there.  Trust me, we'll be one of about 400
15 people.
16    MR. T. MORRISSEY:  That's right.
17    MR. DeVORE:  Well, last week, we were one of about 100
18 people, I think, going to Sox Park.
19    THE COURT:  At the Sox game?
20    MR. DeVORE:  Yes.  It wasn't good.
21    THE COURT:  My son, that's one of the things he said:
22 Dad, I can't believe you made me a Sox fan.
23    MR. DeVORE:  We went, and they won.  Then I think I
24 went again six weeks later, something like that, and they
25 hadn't won in between.  I'm a little -- but it was that time

1  period.
2            THE COURT:  That's terrible.
3            Okay.  May 7th, that's a Wednesday.  I'm just picking
4  it out of the blue.  Does that work for everyone?
5            MR. DeVORE:  Yes.
6            THE COURT:  10:00 o'clock?
7            MR. P. MORRISSEY:  Thank you.
8            MR. T. MORRISSEY:  All right.  Thank you.
9            THE COURT:  Thanks a lot.
10           MR. DeVORE:  Thank you.
11     (Proceedings concluded at 2:52 p.m.)
12
13                      C E R T I F I C A T E
14       I certify that the foregoing is an accurate transcript
15  produced from an audio recording of proceedings in the
16  above-entitled matter.
17
18  */s/Patrick J. Mullen*                    *April 11, 2025*
19  Patrick J Mullen
    Official Court Reporter
20
21
22
23
24
25