Transcript of the Testimony of
# SYRIL THOMAS

**Date:** May 20, 2025

**Case:** ROGERS VS. DART

**TOOMEY REPORTING**
312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

**SYRIL THOMAS**
**May 20, 2025**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


KAVARIAN ROGERS,          )
                          )
          Plaintiff,  ) Case No. 24-cv-03739
                          )
          vs.             )
                          )
THOMAS DART, SHERIFF )
of COOK COUNTY,           )
ILLINOIS,                 )
                          )
          Defendants. )


        Zoom deposition of SYRIL THOMAS, taken before

ROBBIN M. OCHENKOWSKI, C.S.R., pursuant to the Federal

Rules of Civil Procedure for the United States District

Courts pertaining to the taking of Zoom depositions,

commencing at 3:05 p.m., on the 23rd of May, A.D., 2025.

        There were present at the taking of this deposition

the following counsel:

**SYRIL THOMAS**
**May 20, 2025**

2 (Pages 2 to 5)

Page 2

APPEARANCES:

THOMAS G. MORRISSEY, LTD.
by MR. THOMAS G. MORRISSEY
   MR. PATRICK W. MORRISSEY
10257 South Western Avenue
Chicago, Illinois 60643
(773) 233-7901
tgm@morrisseylawchicago.com
pwm@morrisseylawchicago.com

   on behalf of the Plaintiff;

DE VORE, RADUNSKY LLC
by MR. JASON E. DE VORE
   MS. JORI JOHNSON
230 West Monroe Street
Suite 230
Chicago, Illinois 60606
(312) 300-4479
jdevore@devoreradunsky.com
jjohnson@devoreradunsky.com

   on behalf of the Defendants.

          - - - - -

Page 3

          I N D E X
          SYRIL THOMAS
          MAY 23, 2025

Examination by

Mr. Patrick Morrissey          6
Mr. Jason DeVore               82

          E X H I B I T S

          FIRST REFERENCED

Exhibit 1                      6
(Plaintiff's Rule 30(b)(6) Notice)
Exhibit 3                      60
(Defendant's Response to Plaintiff's Statements of Fact)

Exhibit 4                      15
(Plaintiff's Second Request to Admit)
Exhibit 10                     32
(Drug Treatment in the Jail Setting)

          - - - - -

Certified Question - Page 42, Line 10

Page 4

MR. DE VORE: Okay. So this deposition was supposed to commence at 1:00. It's now 3:05. The issues are discreet. These were agreed-upon times and dates. I know times were short, but it's -- it's on the eve of -- it's right on the holiday, and I don't want to -- I don't want to keep this witness past 5:00, and I certainly don't want to keep this witness past 6:00, particularly in light of where we're at.

So I just want to put that out on the record.

MR. P. MORRISSEY: Well, Mr. DeVore, these times were the only times proposed by your office and the clients, the last day of the deadline.

MR. DE VORE: We also -- We also said that, if there was an issue and additional time was needed, we would not object to additional time, including into next week to get this done.

MR. P. MORRISSEY: Well, I don't remember ever receiving that.

But, Mr. Devore, you've already got three extensions from the Court.

MR. DE VORE: It wouldn't be my motion.

MR. T. MORRISSEY: Hold it here.

MR. DE VORE: But we wouldn't object to it though.

MR. T. MORRISSEY: Hold it here, Mr. DeVore.

Page 5

This notice went out in September.

MR. DE VORE: We know when the notice went out.

MR. T. MORRISSEY: Yeah.

MR. DE VORE: We know. We were there for all the hearings.

In fact, I argued it. So we have argument.

We can bring it in and have the witness dismissed and have him set aside and wait, but I'm not going to have a bunch of argument again in front of a witness that's entirely improper.

He's ready. He's been waiting. So let's get moving.

MR. P. MORRISSEY: Robbin, can you swear in the witness, please?

THE REPORTER: The attorneys agree that I can swear in the witness remotely?

MR. P. MORRISSEY: I do.

MR. DE VORE: Yes.

MS. JOHNSON: Yes.

(Witness first duly remotely sworn.)

          SYRIL THOMAS,
called as a witness herein, having been first duly sworn, was examined upon oral interrogatories and testified remotely as follows:

**SYRIL THOMAS**
**May 20, 2025**

Page 6

1    THE REPORTER: Thank you.
2    MR. P. MORRISSEY: This is a Rule 30(b)(6)
3  Deposition taken pursuant to notice and continued to
4  this day, the last day the Court provided to us.
5        EXAMINATION
6  BY MR. P. MORRISSEY:
7    Q  Sir, I'm going to ask you a series of questions.
8  I'd ask that you answer them orally.
9       Do you understand?
10   **A  Yes.**
11   Q  What is your name?
12   **A  Syril Thomas.**
13   Q  Sir, what is your title?
14   **A  Comptroller.**
15   Q  And how long have you been the comptroller for?
16   **A  About a year.**
17   Q  And you're the comptroller for Cook County?
18   **A  That is correct.**
19   Q  I'm going to show you Exhibit 1 of the
20  Rule 30(b)(6) Deposition Notice.
21      Sir, Mr. Thomas, do you see this document in
22  front of you, Plaintiff's Rule 30(b)(6) Notice?
23   **A  Yes, I do.**
24   Q  There's a section highlighted?

Page 7

1    **A  I see the highlighted area.**
2    Q  Have you ever received this document before?
3    **A  Yes.**
4    Q  When did you receive it?
5    **A  I don't recall the specific date, but I did -- I**
6  **did receive it via e-mail.**
7    Q  Approximately how long ago?
8    **A  Maybe a week approximately. I'm unsure of the**
9  **specific time, but I did receive this.**
10   Q  And you mentioned it was approximately a week
11  ago?
12   **A  Yes.**
13   Q  Was that the first time you looked or saw this
14  document?
15   **A  I don't believe it's the first time.**
16   **I think I've been kind of addressing this for a**
17  **while, but I'm unsure of the time periods.**
18   Q  What do you mean by you've been addressing this
19  for a while?
20   **A  I've been looking at expenditures related to**
21  **federal expenditures during this time period of 1988 to**
22  **1992.**
23   Q  And when did you start doing this?
24   **A  The last -- I feel like the last few weeks.**

Page 8

1    Q  So it would be in the month of May you've been
2  trying to investigate this topic?
3    **A  I think that's fair to say.**
4    Q  And tell me the steps you've taken to
5  investigate the receipt of financial -- federal
6  financial assistance for program services and/or
7  activities at the Cook County Department of Corrections
8  between March 7th of '88 and August 1st of '92?
9    **A  So this time period, based on retention records,**
10  **we don't have any hard copies or information related to**
11  **any federal receipts.**
12   **Additionally, the mainframe system which was in**
13  **place during this time frame has been decommissioned,**
14  **we've moved on from that into two new systems, we are**
15  **currently within EBS Oracle.**
16   **Part of the difficulty with the change in**
17  **systems is how we can connect the actual expenditures**
18  **and cash receipts related to different programs are**
19  **different 20-plus years ago versus what it is now so**
20  **it's very difficult for us to identify these specific**
21  **federal receipts associated with this particular program**
22  **that you're trying to identify.**
23   Q  And which program is that?
24   **A  Related to this Cook County Department of**

Page 9

1  Corrections.
2    **It's very difficult to identify programs with**
3  **these types of expenditures based on our record**
4  **retention history as well as the current system that we**
5  **have.**
6    Q  Did you speak to anybody to try and see if they
7  had any information about this topic?
8    **A  Speak to anyone?**
9    **No.**
10   **We -- We researched this internally to see if**
11  **there were any records that we can identify, whether**
12  **hard copies or reports, anything within this time frame.**
13   **Unfortunately, we are in a new system and the**
14  **mainframe system that would have this information**
15  **specifically is decommissioned, and so we don't have a**
16  **way of researching this out specifically, and all the**
17  **hard copy information associated with this particular**
18  **time frame has been destroyed, whether it's cash**
19  **receipts, bank statements or any such item of**
20  **expenditures that would identify specifically invoices.**
21   Q  Who did you work with internally to research
22  this topic?
23   **A  This is something within the comptroller's**
24  **purview. We have staff in accounts payable as well as**

**SYRIL THOMAS**
**May 20, 2025**

Page 10

1  general ledger that deal disbursements and cash
2  receipts.
3      Q  Did you reach out to anybody in the county
4  government outside the comptroller's office to
5  investigate this topic on behalf of Cook County?
6      A  No need to reach outside of that.
7          The comptroller's responsibility is to retain
8  historical information.  We keep recordkeeping.
9          So based on our policy, we have a ten-year
10  retention policy, and this is outside of that.  So the
11  hard copies associated with this were not retained.
12          Additionally, as I mentioned, the mainframe,
13  which was the system -- the financial system at the
14  time, was decommissioned so we were unable to go into
15  that system to pull up reports necessary to provide this
16  information to help connect the dots unfortunately.
17      Q  Did you reach out to the budget director?
18      A  No need to reach out to the budget director.
19          They would not have any of this information.
20  We would be responsible for that information.
21      Q  Do you know Annette Guzman?
22      A  I do.
23      Q  How do you know her?
24      A  She was the former budget director at

Page 11

1  Cook County.
2      Q  And do you -- did you work with her when she was
3  a budget director?
4      A  I did.
5      Q  For how many years did you work with Ms. Guzman?
6      A  I want to say, at least, a year or two maybe.
7      Q  When was the last time you spoke to her?
8      A  Oh, maybe a year or and a half ago.
9          She's now with the city.  So whenever the
10  transition between now and into the city, I haven't
11  worked with her.
12      Q  So when Ms. Guzman was a budget director, were
13  all these records destroyed?
14      A  No, no.
15          These records were --
16  MR. DE VORE:  Objection.
17          You can answer.  Go ahead.
18  THE WITNESS:  These records were destroyed well
19  before me or Annette Guzman were here.
20  BY MR. P. MORRISSEY:
21      Q  So Ms. Guzman would not have access to any of
22  these records?
23      A  If she was here at that time in -- in '88 to 92,
24  she would access to it as I would.

Page 12

1      Q  How about from 2018 to 2023?  Would Ms. Guzman
2  have had access to these records?
3      A  No.
4          As I mentioned, all these records are destroyed
5  so she would not be able to get to it, but she would
6  have access if we did have it.
7      Q  Well, between 2018 and 2023, did the county have
8  access to these records?
9      A  No.
10          Much of this information was destroyed prior to
11  that.
12      Q  And who destroyed it?
13      A  It's based on a record retention policy.  We
14  have third parties that come in that take the boxes of
15  information if it's hard copies and destroys it.
16          I don't know at the time who in particular it
17  was, our third party that did this or where the specific
18  facility was.  Yeah, I'm sorry, I can't be specific
19  about it.
20          I was not here at the time to give you that
21  specific information.  I apologize about that.
22      Q  And when -- did you review any documents in
23  preparation for testifying for Cook County on behalf of
24  Topic 1?

Page 13

1      A  Yeah, the record retention policy, and we did
2  some research to see if anything historical was
3  available for us to review.
4          There was nothing within our department to
5  identify these particular years and data because, as
6  mentioned, our retention policy says to destroy these
7  items after ten years, and then we didn't have any
8  information systems available for us to do any research
9  to pull out reports to identify specifically for this
10  program.
11          So because we were limited to that point and
12  the system was decommissioned, that's where we ended our
13  research.
14      Q  You mentioned there's nothing within your
15  department, the comptroller's office, is that true?
16      A  Yes, that is true.
17      Q  So you found no doc -- historical documents that
18  could help aid your testimony for Topic 1?
19  MR. DE VORE:  Objection to form.
20          You can answer.
21  THE WITNESS:  The research that we did was try to
22  locate this information so we did our best to see if we
23  can get reports within this time period.
24          And then we realized that this was well beyond

**SYRIL THOMAS**
**May 20, 2025**

---

Page 14

1   the ten-year retention policy. So there was nothing
2   available as far as hard copies.
3       And the system has been decommissioned so
4   didn't have a crosswalk within the system to identify
5   these particular programs to pull out the expenditure
6   reports that we needed to see if there was actual
7   expenses against it.
8     Q  Outside of the comptroller's office, did you
9   reach out to any other departments within Cook County to
10  see if they had any historical documents for this topic?
11    **A  No.**
12     **As I had mentioned, the comptroller's office is**
13  **the data retention for financial information, we're the**
14  **ones that put the reports together, it's based on the**
15  **general ledger and transaction detail. So there's no**
16  **need for us to go anywhere else to get historical**
17  **information about a particular program.**
18    Q  Did you ask the sheriff's office if they had any
19  information?
20    MR. DE VORE:  Objection; asked and answered.
21     But you can answer.
22    THE WITNESS:  No, we did not.
23  BY MR. P. MORRISSEY:
24    Q  Did you reach out --

---

Page 15

1     Strike that.
2     To your knowledge --
3     Strike that.
4     The county board keeps ledgers and journal
5   entries of their meetings, correct?
6    **A  I'm sorry. You kind of phased out. I**
7  **apologize.**
8     **Can you repeat that question?**
9    Q  The county board keeps journal entries of the
10  meetings, is that true?
11    MR. DE VORE:  Objection; calls for speculation.
12     You can answer.
13    THE WITNESS:  I don't understand journal entries
14  that the board keeps.
15     What does that mean?
16  BY MR. P. MORRISSEY:
17    Q  All the account -- Cook County budget documents.
18    **A  Okay.**
19    Q  Are there?
20    **A  There is budget documents, that's correct.**
21    **I don't know why the board would keep budget**
22  **documents though. The budget director or the budget**
23  **department is responsible for the budget.**
24    Q  All right. Let me show you Exhibit 4.

---

Page 16

1     Did defense counsel share this exhibit with
2   you? It's Exhibit 4 titled Plaintiff's Second Request
3   to Admit, the title is Rogers versus Dart?
4    **A  I was shared information. I may have glanced at**
5  **this.**
6     **Okay.**
7    Q  Did you receive this document?
8    **A  I believe I've received something similar to**
9  **this, yes.**
10    Q  What other documents did you receive from
11  defense counsel in preparation for this deposition?
12    **A  I received various documents.**
13    Q  Can you tell me the documents you received, list
14  them for me?
15    **A  Documents similar to this. I don't know that I**
16  **can recall the very specific nature of all the documents**
17  **that I had received.**
18    Q  Are they in your e-mail?
19    **A  They might be.**
20    Q  Can you pull that up to identify the documents
21  you looked at to testify on behalf of Cook County for
22  Topic 1?
23    MR. DE VORE:  Objection as to that particular
24  request.

---

Page 17

1     He did say he reviewed documents, and he
2   didn't -- he did not say everything was shared by
3   e-mail, and he also said he never testified that it
4   would refresh his recollection.
5     But you can answer.
6  BY MR. P. MORRISSEY:
7    Q  Can you respond, sir?
8    MR. DE VORE:  I'm not going to have him look stuff
9   up in the middle of a deposition.
10     But you can go ahead, Syril.
11    THE WITNESS:  I've reviewed this information as
12  mentioned, and I believe that I've kind of provided the
13  response that, whether I looked at this document or not,
14  I still can't validate any of this information because I
15  don't have hard copy information or a system that's
16  available to me to research it to identify the specific
17  expenditures, nor do I have any banking information as
18  far as cash receipts or disbursements to kind of
19  validate any of it, which makes it very difficult for me
20  to -- to prove the county actually spent the money for
21  these projects at that time, which makes it very
22  difficult for me to kind of answer these questions
23  related to anything other than.
24  BY MR. P. MORRISSEY:

---

**SYRIL THOMAS**
**May 20, 2025**

6 (Pages 18 to 21)

---

Page 18

1   Q   Where did you attend high school?
2   A   **Downers Grove South.**
3   Q   What year did you graduate?
4   A   **1997.**
5   Q   Did you attend college?
6   A   **I did.**
7   Q   Where did you attend?
8   A   **NIU, Northern Illinois University.**
9   Q   What year did you graduate?
10  A   **2001 with my bachelor's degree, and then my MBA**
11  **in 2006.**
12  Q   Where did you receive your MBA from?
13  A   **Northern Illinois University.**
14  Q   And what is your MBA in?
15  A   **It's a master's in business administration with**
16  **a focus in finance and accounting.**
17  Q   After your MBA, did you receive any additional
18  education?
19  A   **I did.**
20      **I got my CPA, and I continued to take CPE**
21  **associated with my CPA.**
22  Q   When did you become a CPA?
23  A   **I want to say 2008.**
24      **Don't hold me to it.  I tried to block it out**

---

Page 19

1   of my mind once I received it, but, yeah.  It was a hard
2   test.  That's why I say that.
3   Q   When did you start working for the county
4   government?
5   A   **I worked for the county starting in 20 -- 2014.**
6   **I was the director of financial reporting '14.  And then**
7   **'15, I left the county after '15, went back into public**
8   **accounting.**
9   Q   And who did you work for?
10  A   **I worked --**
11      **After I left the county?**
12  Q   Yes.
13  A   **I worked for a public accounting firm that**
14  **focuses on governmental accounting called Sikich for**
15  **about three years, and then two years after that I**
16  **worked for CLA focusing on governmental accounting as**
17  **well performing audits on state and local as well as**
18  **Sikich.  That was my primary focus.  And then after that**
19  **I came back to the county as a deputy comptroller**
20  **working under then Comptroller Lawrence Wilson for about**
21  **two years before his retirement and became comptroller.**
22  Q   And when did you become comptroller?
23  A   **I was appointed in March of 2024.**
24  Q   And who appointed you?

---

Page 20

1   A   **I was appointed by Madam President and the**
2   **Cook County Board.**
3   Q   That would be President Preckwinkle?
4   A   **Yes, that is correct.**
5   Q   So going back to Exhibit 4, I'm showing you
6   Exhibit 7 -- Exhibit 4, Page 7, which is from the
7   Cook County 1991 budget.
8       Do you see it says, program protection of
9   persons and property, sheriff, and under the program it
10  says Department of Corrections?
11  A   **I do.**
12  Q   In preparation for this deposition, is it fair
13  to say you did not look at the Cook County 1991 budget
14  document?
15  A   **I glanced at this exhibit, but this is just a**
16  **budget.  A budget is only an attempt to spend.  You need**
17  **actual reports to validate that the spending occurred**
18  **within these particular areas.**
19      **And that's the thing I was trying to identify**
20  **within the systems that were decommissioned and**
21  **resources that I thought we would have as hard copies**
22  **that were destroyed based on our retention policy.**
23      **I couldn't validate that we actually spent any**
24  **dollars against these particular programs.**

---

Page 21

1   Q   Do you see the budget document has a 1990
2   achievement?
3   A   **You said the budget document has a 1990**
4   **achievement?**
5   Q   That's correct.
6   Q   Where exactly is that?  Can you put the cursor
7   at that specific -- specific --
8       Oh, I see it.  I apologize.  I see it.
9   Q   As the county's representative, what does an
10  achievement mean in the budget book?
11  A   **I -- You know, from 19 -- from 1991 Exhibit**
12  **of -- I don't know what that means.  I'm not a budget**
13  **person for that period of time.**
14      **I could tell you more about the achievements**
15  **based on the years that I was here, but I don't want to**
16  **speculate or say anything associated with the 1990**
17  **achievements of this period of time.**
18  Q   As the county's designee, did you do anything to
19  investigate what this entry meant in the 1991 budget
20  book?
21  A   **I'm sorry.  You're fading out.**
22      **Can you repeat that, please?  I apologize for**
23  **you having to repeat it.**
24  Q   As the county's designee, did you take any steps

---

**SYRIL THOMAS**
**May 20, 2025**

7 (Pages 22 to 25)

---

Page 22

1  to investigate what it meant to have a 1990 achievement
2  in the 1991 budget document?
3      A  I did not, nor do I know how to kind of validate
4  this information.
5          If I was requested to do so, I would have to
6  look at hard copies and see if I could kind of identify
7  that.
8          And, you know, based on the knowledge that I
9  have, I don't know that I'd be able to re -- be able to
10 validate these achievements because of a retention data
11 policy as well as the system in play, the mainframe was
12 decommissioned so I don't know exactly how I would be
13 able to kind of validate this information.
14     Q  Can anybody within the county validate the
15 information on the 1990 achievement Exhibit 4, Page 7?
16     A  I don't know anyone within my office that would
17 be able to address this concern.
18         And I -- I can't tell you anyone outside of
19 this department, unfortunately, that would have the
20 knowledge.
21     Q  Mr. Thomas, this isn't about knowledge from your
22 department, your limited department, the comptroller's
23 office.  This is knowledge from the county government.
24         Do you understand that?

---

Page 23

1      A  I do understand your question.
2          But I want to honest -- I mean, I want to give
3  you a good response, and I don't know enough about this
4  to identify the right party to give you the answer for
5  this time frame.
6      Q  Do you know what it means when --
7          Strike that.
8          Do you know the process in 1991 and 1990 to
9  generate the budget books for the county?
10     A  I do not.
11     Q  Did you do anything to investigate how they
12 drafted and publish and approve these books between 1990
13 and 1991?
14     A  I did not, and I do not know.
15     Q  Does the county --
16         Do you see where it says that they received a
17 federal grant from the advanced inmate identification
18 process, do you see that in the county board document?
19     A  Yeah, I see it.  I see it, the last sentence of
20 the two bullets, yep.
21     Q  Do you have any -- Does the county have any
22 reason to dispute that a 1990 achievement at the
23 Department of Corrections was the receipt of a federal
24 grant for enhanced inmate identification process?

---

Page 24

1      A  Yes.
2      MR. DE VORE:  Objection; calls for speculation.
3          You can answer.
4      MR. P. MORRISSEY:  Mr. DeVore, that's not an
5  appropriate objection for this type of deposition.
6      MR. DE VORE:  Really?
7      MR. P. MORRISSEY:  That's true.
8          It's the Waldren case that I sent you two days
9  ago and we went and covered in the first deposition
10 today.
11     MR. DE VORE:  Well, he just testified that he
12 couldn't find a lot of different documents so that's
13 what my -- that's what I'm basing my objection on.
14     MR. P. MORRISSEY:  That's a speaking objection,
15 Mr. DeVore.
16     MR. DE VORE:  Well, it wasn't initially.
17         I was just explaining because you were having a
18 difficult time understanding what I was saying.
19 BY MR. P. MORRISSEY:
20     Q  Mr. Thomas, do you understand the question?
21     A  Yeah.  Yeah.  I'm sorry.  Yes.
22         I do not dispute this, but I don't -- I can't
23 validate it either.  I don't have information to confirm
24 that we actually received federal grants for this

---

Page 25

1  because the mainframe system that would be the record of
2  keeping information system has been decommissioned, and
3  I can't look up hard copies to validate this
4  information.
5          I don't dispute it, but I can't validate it
6  either.
7      Q  Did you reach out to the justice department?
8      A  I did not.
9      Q  Why not?
10     A  Because, as mentioned before, recordkeeping and
11 record retention, that falls within the house of the
12 comptroller responsibilities, and our record retention
13 was ten years, and this is well beyond ten years, and
14 the systems in place have been decommissioned, and I
15 have no way of researching this out, and I have not any
16 reports, anything to kind of look at or identify the
17 cash receipts associated with this program or
18 expenditures associated with it.
19     Q  Mr. Thomas, my question is about reaching out to
20 the justice department.
21         Did you reach out -- You didn't reach out to
22 the justice department, correct?
23     A  I did not.
24     Q  Do you have any knowledge, does the county have

---

**TOOMEY REPORTING**
**312-853-0648**

**SYRIL THOMAS**
**May 20, 2025**

8 (Pages 26 to 29)

---

Page 26

1  any knowledge of the justice department's retention
2  policy?
3      A  I do not know the justice department's retention
4  policy.
5          I just know the county's retention policy.
6  They may have a separate one.
7      Q  The justice department has a separate retention
8  policy?
9      A  I do not know.
10     Q  All right.  And do you have a contact with the
11 justice department?
12     A  I do not.
13     Q  Did you ever attempt to reach out --
14         Strike that.
15         Does the comptroller receive funding from the
16 federal government?
17     A  I'm sorry.  Can you repeat that?  I coughed.
18     Q  Does the county receive federal funding
19 presently?
20     MR. DE VORE:  Objection; scope.
21         But you can answer, yes.  Sorry.
22     THE WITNESS:  Yes.
23 BY MR. P. MORRISSEY:
24     Q  How do you know that, Mr. Thomas?

---

Page 27

1      A  We have reporting around it.
2      Q  And what's the report called?
3      A  So we've got -- publicly we have the schedule
4  federal expenditures for each close of fiscal year that
5  we publish, and then we have internal reports that
6  identify cash receipts received and expenditures
7  associated with federal programs as well.
8      Q  And how far does that go back based on your
9  understanding of the county's retention policy?
10     A  So we have all that information in EBS Oracle
11 all the way to 2018, two years back into JD Edwards, and
12 then we have JDE reporting that goes back until 1999
13 that should help us identify federal expenditures and
14 cash receipts.
15     Q  And presently is federal money received for the
16 benefit of the Department of Corrections?
17     A  I do not know the answer to that question.
18         I would have to do specific research for that.
19     Q  As the county's representative, tell me the
20 different program services or activities that benefit
21 the Department of Corrections?
22     A  I cannot list that all to you.
23         I would have to submit a list to you at some
24 other time.

---

Page 28

1      Q  And how would you access that list or generate
2  that list?
3      A  I would have to go into the system and look at
4  all the specific programs associated with the Department
5  of Corrections.
6      Q  Between '88 and '91, tell me the different types
7  of program services or activities you'd expect to be at
8  the Department of Corrections.
9      A  I would not be able to --
10     MR. DE VORE:  Object to form.
11         You can answer.
12     THE WITNESS:  I would not be able to provide you
13 that information, nor can I build an expectation around
14 that.
15         There's no information currently available for
16 me to kind of provide that to you.
17 BY MR. P. MORRISSEY:
18     Q  How do you know?
19     A  The system in -- at that time from 1988 to '92
20 was the mainframe system that was decommissioned, and so
21 I would not be able to go into the mainframe to look at
22 those particular programs, I don't have a crosswalk, a
23 chart of accounts to describe all that which would be
24 within the mainframe to identify the specific programs,

---

Page 29

1  and nor do I have any hard copy reports or specific
2  information to help me identify this information.
3      Q  In preparation for your deposition, did you
4  review Anita Guzman's statements to a federal judge on
5  March 13th, 2023?
6      A  I'm familiar with it.
7      Q  And when were you -- when did you receive a copy
8  of Ms. Guzman's statements to Judge Blakey?
9      A  I believe it was in a week, a week ago.  I --
10         I did receive it.  I just don't know the
11 specific dates of it.
12     Q  And how many times did you meet with counsel to
13 prepare for your testimony?
14     A  We met a few times.  I don't recall how many
15 times we've met, but we did talk.
16     Q  And when was the first meeting?
17     A  I -- I don't know specific times, I apologize
18 for that, but we did meet.
19     Q  Was it before May of 2025?
20     A  I -- I don't know.
21         I know we did meet a couple of times.
22     Q  And who did you meet with?
23     A  I met with Jason and Jorie.
24     Q  Anybody else?

---

**SYRIL THOMAS**
**May 20, 2025**

Page 30

1   **A   I don't recall.  I don't think so.  I think they**
2   **were the two people.**
3       Q   Where did you meet?
4   **A   Maybe just Jorie.**
5       **I don't know specifically.**
6       Q   Where did you meet?
7   **A   Excuse me?**
8       Q   Where did you meet?
9   **A   Virtually or via phone conference --**
10      Q   And how much time --
11  **A   -- I think.**
12      Q   -- did you --
13  **A   I don't recall how much time.**
14      Q   Would anything refresh your memory?
15  **A   As far as?**
16      Q   How much time you met with your attorneys to
17  prepare.
18  **A   I -- I don't know.  Maybe -- I don't -- I don't**
19  **know how much time.**
20      **I felt like it was sufficient though.**
21      Q   Do you have an approximate amount of time you
22  spent with your attorneys preparing?
23  **A   No.**
24      Q   How many hours did you spend preparing for this

Page 31

1   deposition?
2       **A   As I mentioned, we were looking actively to**
3   **understand if we could provide this information.  The**
4   **data was -- The mainframe system was decommissioned so I**
5   **could not pull out any reports for the time period in**
6   **question.  And then our data retention policy made it**
7   **difficult to look up hard copies of this information.**
8       **So once we understood those things, it became**
9   **very plain that there was no more information available**
10  **for us to sort through to identify the specific nature**
11  **of what this question was or research associated with**
12  **these particular programs.**
13      Q   Do you have any documents in front of you?
14  **A   No.**
15      **I'm looking straight at the camera at the**
16  **proceedings, but I am in my office.**
17      Q   Did Mr. DeVore or Ms. Johnson show you documents
18  that indicate the Cook County Department of Corrections
19  received federal money from '88 to '91?
20  **A   Did they show me federal documents?**
21      Q   Did they show you documents indicating that the
22  Department of Corrections received federal assistance
23  between '88 and '91?
24      MR. DE VORE:  Objection to form.

Page 32

1       You can answer.
2       THE WITNESS:  No.
3       As I mentioned, you know, if there was any
4   documentations, it had to come through the comptroller's
5   office, and we did not -- we didn't have any reports or
6   any hard copy information because of our data retention
7   policy and then the mainframe system being
8   decommissioned.
9       If we had those -- the mainframe, at least, I
10  could pull out some reports identifying cash receipts
11  and associated with the Department of Corrections, but
12  it's been decommissioned so I couldn't pull out any
13  reports.
14      Q   Showing you Exhibit 10, which is titled
15  Drug Treatment in the Jail Setting, a National
16  Demonstration Program, do you see this document?
17      **A   I do.**
18      MR. DE VORE:  I now would just object to the use of
19  this document that wasn't disclosed prior to, I believe,
20  today so any -- anything -- any questioning regarding
21  this, I would object to.
22      But you can -- you can continue.
23  BY MR. P. MORRISSEY:
24      Q   Do you see it says U.S. Department of Justice at

Page 33

1   the top left?
2       **A   Yes, I see that.**
3       Q   Do you see it says Bureau of Justice Assistance
4   in the bottom right?
5       **A   I do.**
6       Q   As the county's representative, have you ever
7   heard of the Bureau of Justice Assistance?
8       **A   Have I heard of it?**
9       Q   Right.
10      **A   I -- I mean, I'm familiar with it, I've heard of**
11  **it, but I don't know it specifically.**
12      **You know, the nature of my job is to basically**
13  **capture cash receipts accurately from federal agencies,**
14  **and we kind of check that based on the CFDH, CFDA number**
15  **and the federal agency associated with it, but I don't**
16  **know the particulars of every federal agency.**
17      Q   And how are you -- how have you heard of the
18  Bureau of Justice Assistance?
19      **A   I'm familiar with the U.S. Department of**
20  **Justice, not so much the Bureau of Justice Assistance.**
21      **That's where I'm kind of unfamiliar with,**
22  **but --**
23      Q   I'm showing you Exhibit 10, Page 7.
24      Do you see on the top?  Why don't you read the

**SYRIL THOMAS**
**May 20, 2025**

---

Page 34

1  top two paragraphs to me, sir?
2       MR. DE VORE:  I'm just objecting further to the use
3  of this document that was -- that was not appropriately
4  tendered to give an opportunity to review.
5       But you can continue.
6       THE WITNESS:  In 1987 the American Jail Association,
7  (AJA) obtained grant funding from the Bureau of Justice
8  Assistance (BJA) to conduct a project entitled Drug
9  Treatment in the Jail Setting National Demonstration
10 Program.  The goals of the project were to reduce drug
11 abuse, criminality and jail overcrowding by establishing
12 model jail-based drug treatment and demonstration
13 programs in several metropolitan jails.
14      Later that year, the Bureau of Justice
15 Assistance granted $300,000 in grants to the
16 Hillsborough Bureau County, Tampa, Florida, and
17 Pima County, Tucson, Arizona to establish model drug
18 treatment programs in their jail.  In 1988 Congress
19 appropriated additional funding for substance abuse
20 treatment and BJA funded a third national model in Cook
21 County, Chicago, Illinois.
22 BY MR. P. MORRISSEY:
23      Q  As the county's representative, do you any
24 reason to dispute that in 1988 Congress appropriated

---

Page 35

1  additional funding for substance abuse treatment and the
2  BJA funded a third national model in Cook County,
3  Illinois?
4       MR. DE VORE:  Objection to form.
5       But you can answer.
6       THE WITNESS:  I don't dispute.
7       But I can't validate either.
8  BY MR. P. MORRISSEY:
9       Q  What's the difference between not being able to
10 dispute --
11      Strike that.
12      What's the difference in your mind between not
13 being able to dispute a statement and not being able to
14 validate a statement?
15      A  So the dispute is that like I don't have
16 anything to say that that's not correct.  I would say
17 it's fine that they awarded it to Cook County.
18      The problem that I have is, from the
19 comptroller's side, I can't validate that we actually
20 received the $300,000, that we recorded it and that it
21 hit the bank statement for me to see that the money came
22 in and that we spent it.  That's the validation aspect
23 of it.
24      So if an auditor were to come in and ask for

---

Page 36

1  these things, I couldn't substantiate any of this
2  $300,000 received or how it was spent.  That's the
3  problem I have.
4       Q  And, similarly, you can't dispute it either?
5       A  Correct.  I can't dispute that because I can't
6  validate any of it.
7       Q  So Cook County cannot dispute the fact Congress
8  in 1988 appropriated funding for drug treatments at the
9  Cook County Jail?
10      A  That is correct.
11      Q  Is your answer the same thing about all these
12 government records that we've shared in this case; that
13 you as the county's designee, you're not able to dispute
14 their content?
15      MR. DE VORE:  Objection; form, vague.
16      But you can respond.
17      THE WITNESS:  Yeah, I can't -- I won't dispute it.
18      I just can't validate.  I can't confirm any of
19 this information was actually received as far as cash
20 receipts from the federal government, and nor can I tell
21 you that we spent it.
22      I don't have any reports, I don't have any cash
23 receipts, checks either coming in or going out.  There's
24 nothing to prove anything from the comptroller's side

---

Page 37

1  based on our record retention policy as well as the
2  decommissioning of the mainframe system.
3  BY MR. P. MORRISSEY:
4       Q  I just want to be clear.  It's not the
5  comptroller's.  You're speaking for the county in
6  general, you're speaking on behalf of the president's
7  office?
8       A  That's correct.  The comptroller is essentially
9  the contracting department for the county.
10      Q  So you understand you're here today on behalf of
11 Cook County, the government entity?
12      A  That's correct.
13      Q  And as a representative for Cook County, you
14 have -- you will not dispute the statements, and we can
15 go through all these records, you don't have any reason
16 to dispute the statements in the government records, is
17 that fair to say?
18      MR. DE VORE:  Objection; form, asked and answered.
19      But you can answer.
20      THE WITNESS:  Yeah.  Yes, I am not disputing.
21      I just as mentioned before, cannot validate
22 the cash receipts that have come in or the expenditures
23 associated with these programs.
24 BY MR. P. MORRISSEY:

---

**SYRIL THOMAS**
**May 20, 2025**

Page 38

1     Q  And is it true the county can't ever validate
2 the cash receipts or the expenditures because the
3 records are destroyed?
4     MR. DE VORE:  Objection to form, time frame.
5       You can respond.
6     MR. P. MORRISSEY:  Well, I'm talking about the
7 topic, the topic from '88 to '91.
8     MR. DE VORE:  Okay.
9     MR. T. MORRISSEY:  He's the county's representative.
10     MR. DE VORE:  Okay.
11 BY MR. P. MORRISSEY:
12     Q  You can't ever dispute -- You can't challenge
13 these statements because the records were destroyed many
14 years ago, correct?
15     MR. DE VORE:  Objection; asked and answered.  He
16 just answered that multiple times with great detail,
17 including explanations regarding dispute versus
18 validate.
19     MR. P. MORRISSEY:  All right.  Let me rephrase the
20 question.
21     MR. P. MORRISSEY:
22     Q  Mr. Thomas, you can't ever validate any of the
23 expenditures or cash receipts of federal funds between
24 '88 and '91, is that true?

Page 39

1     MR. DE VORE:  Objection to form.
2       But you can answer.
3     THE WITNESS:  That's correct, I cannot validate.
4 BY MR. P. MORRISSEY:
5     Q  And Cook County will never be able to validate
6 the cash receipts and expenditures from the federal
7 government from '88 to '91 because these records are
8 destroyed?
9     **A  That is correct.**
10     Q  And there's nothing that the county can do, the
11 corporate entity of Cook County, to validate this
12 information because they were destroyed?
13     MR. DE VORE:  Objection to form as to this
14 information.  Just I want to make sure we have a clear
15 understanding of what we're talking about.
16     MR. P. MORRISSEY:  We're talking about receipts of
17 federal assistance for program services and activities
18 at the Department of corrections from March 7th of '88
19 until -- until August 1st of 1992.
20     MR. DE VORE:  Okay.  I just wasn't sure if you had
21 questions as it relates to the document destruction
22 policy and if there are any exceptions.
23       Okay.  Fine.  You can answer.
24     THE WITNESS:  Yeah, I cannot validate any of the

Page 40

1 cash receipts or expenditures during that time frame of
2 1988 to 1992.
3 BY MR. P. MORRISSEY:
4     Q  And it's not feasible for the county to validate
5 that during that time period?
6     **A  Yes, based on the record --**
7     MR. DE VORE:  Objection.
8       You can, Sorry, go ahead.
9     THE WITNESS:  Based on the record retention policy,
10 we don't have any hard copies, and the mainframe system
11 that was available during that time has been
12 decommissioned so can't pull any reports out of it to
13 validate that.
14 BY MR. P. MORRISSEY:
15     Q  What about outside those things you commented
16 on?  Is there any way for you, for the county to
17 validate the receipts or expenditure of federal fund
18 during this time period?
19     **A  We have -- I mean, the records that we have have**
20 **been destroyed during that time period, and the**
21 **mainframe system that was decommissioned in 1999, I**
22 **can't pull any reports or cash receipts and expenditures**
23 **associated with those programs making it very difficult**
24 **specifically for the Department of Corrections.**

Page 41

1     Q  I'm not saying whether it's difficult.
2       I'm saying, is there a way for the county to
3 validate receipt or expenditures during this time period
4 in Topic 1?
5     **A  No, there's no way to validate.**
6     Q  And so Cook County has no evidence that it did
7 not receive federal assistance during this time period,
8 is that fair to say?
9     MR. DE VORE:  Objection; asked and answered multiple
10 times.
11       You can answer one more time.
12     THE WITNESS:  Yeah, there's no way to validate.
13 BY MR. P. MORRISSEY:
14     Q  That's not my question.
15     **A  I'm sorry.  Repeat your question.**
16     Q  Cook County has no evidence to challenge the
17 contention that federal assistance was received for the
18 benefit of the DOC between March 7th, 1988, and
19 April 1st, 1992, is that fair?
20     MR. DE VORE:  Asked and answered objection.  It's
21 not fair.  He just answered it.  No matter how many
22 different ways you ask the same question, he's not going
23 to change his response.  He's, I believe, articulated it
24 at least ten times during the course of this deposition

**SYRIL THOMAS**
**May 20, 2025**

---

Page 42

1   in a very smooth, unemotional clinical way.
2       So please don't ask the same question again.
3   BY MR. P. MORRISSEY:
4     Q  Can you please respond, sir?
5     **A  We have no reports from prior to 1999 or any**
6   **hard copy information available to validate any cash**
7   **receipts for federal expenditure -- or expenditures**
8   **towards federal programs.**
9     Q  That's not my question.
10     My question is; is it fair to say the county
11   has no evidence to challenge a contention that federal
12   assistance was received for the benefit of the DOC for
13   program services or activities between March 7th, 1988,
14   and August 1st, 1992?
15     MR. DE VORE:  Objection; calls for a legal
16   conclusion, asked and answered.
17     I'm not going to have him answer that question
18   again.  If you want to ask a different question, then he
19   can answer it as long as it's not duplicative, but I'm
20   not going to put him through this.  It's nearly
21   4:00 o'clock.  You've asked him the same question for
22   probably 15 minutes.
23     MR. P. MORRISSEY:  I'll certify the question.
24     MR. DE VORE:  Fine.

---

Page 43

1   BY MR. P. MORRISSEY:
2     Q  Mr. Thomas, what evidence do you have that no
3   federal money was received between March 7th, 1988, and
4   March 1st, 1992, for program services and/or activities
5   at the Cook County Department of Corrections?
6     MR. DE VORE:  Objection; calls for a legal
7   conclusion with respect to the evidence.
8     But you can answer.
9     THE WITNESS:  I have no evidence to dispute that any
10   federal dollars were received or not received.
11   BY MR. P. MORRISSEY:
12     Q  I'm showing you, sir, Exhibit 4, Page 8, which
13   is from the Cook County 1989 budget.
14     Do you see this document?
15     **A  I do.**
16     Q  And you looked at this document in preparation
17   for your testimony?
18     **A  I did skim through it.**
19     Q  And does it reflect an expenditure for this
20   grant?
21     **A  Yeah, I see there's 44,000 there for --**
22     Q  What does that mean?
23     **A  That's an intent to spend.  It's a budget.  So**
24   **it's a plan to spend that dollar.**

---

Page 44

1     Q  And what does it mean when it says approved and
2   adopted?
3     **A  That means that it was presented before the**
4   **board and it was approved and adopted by the board of**
5   **commissioners to spend up to that dollar amount.**
6     **At least, that's how it's currently**
7   **interpreted.  I don't want to speculate on what -- on**
8   **how they did that back then.**
9     Q  So the Cook County Board in 1989 for the budget
10   adopted -- approved and adopted $93,592 for a grant to
11   provide drug training treatment and screening service
12   under a jail setting?
13     **A  That's how I'm reading it.**
14     **But keep in mind, I was not the one that**
15   **created this budget, did not prepare it or set it before**
16   **the board for approval, only from my eyes from, you**
17   **know, 2025.**
18     Q  Mr. Thomas, you're here speaking for Cook County
19   about these documents.
20     **A  Yeah, to the best of my knowledge.**
21     **But I was not the one that prepared the budget,**
22   **it was a different budget director, and the budget**
23   **director prepares the budget, the comptroller is the one**
24   **that captures actual cash receipt and expenditures based**

---

Page 45

1   on these line items and reports on it.
2     **So the budgets is just an intent to spend.  I'm**
3   **not sure if they've actually spent the dollars**
4   **associated with it.**
5     **As I mentioned before, I cannot validate cash**
6   **receipts or expenditures that occurred during this time**
7   **period.**
8     Q  Do you have any evidence that the money was not
9   received in the amount of 93,592 for personal services
10   for this grant?
11     **A  No, I -- I don't have any evidence.**
12     Q  What does impersonal services mean?
13     **A  Personal services in -- means like payroll,**
14   **employee payroll information.**
15     Q  What is impersonal services?
16     **A  I don't know.  It's hard to -- You know, my**
17   **interpretation of impersonal services from my lens in**
18   **2025 is it could be indirect costs or like some kind of**
19   **benefits possibly, but I -- I don't know, I'm not a**
20   **budget director for that time period, and I'm not**
21   **knowledgeable enough about these specifications and**
22   **categorizations.**
23     Q  Did you do anything to become familiar about
24   these classifications to prepare for Topic 1 for

---

**SYRIL THOMAS**
**May 20, 2025**

Page 46

1  Cook County?
2      **A  It wasn't necessary because, from the**
3  **comptroller's position, it was more important to find**
4  **out if we had actual evidence associated with cash**
5  **receipts and expenditures, and I could not find any**
6  **evidence of this information to validate that we spent**
7  **it the way that is listed in this budget, and the budget**
8  **is just an intent to spend.**
9      Q  The Cook County Government has no position
10  whether this money was spent?
11      **A  As I mentioned, I can't validate any cash**
12  **receipts or expenditures.**
13      Q  Let me ask you this.  If federal money is
14  received by Cook County and it's not used, is it -- is
15  there supposed to be a report to the federal government?
16      **A  So the reports and findings associated with a**
17  **schedule of federal expenditures are reported within**
18  **SEFA as findings.**
19      **And, typically, you have a -- based on the**
20  **agreement with the federal government based on specific**
21  **programs, there might be a term so it could be more than**
22  **one year.  So you have some time to spend it.  It's hard**
23  **to say -- I mean, I cannot determine how long they had**
24  **for this particular agreement to spend the dollars.**

Page 47

1      **They may have wanted to spend it within the**
2  **year, but I don't know if they did or not.**
3      Q  What does it mean by capital outlay in this
4  document?
5      **A  Capital outlay essentially means fixed capital**
6  **like fixed assets so equipment purchases,**
7  **infrastructure, that's what typically capital outlay is.**
8      **But sometimes, depending on the project costs,**
9  **it could be non-capitalized costs captured in there.**
10      Q  So going back to this grant in the 1989 budget
11  to provide drug treatment and screening under a jail
12  setting funding period July 1st, 1988, through
13  January 1st, 1990, do you see that, Mr. Thomas?
14      **A  I do.**
15      **Thank you.**
16      Q  I'm going to go back to Exhibit 10, which is the
17  Justice Department's documents.
18      Now, if you go to Page 10 of -- Page 35 of
19  Exhibit 10, the government publication, did you have a
20  chance to read the background for the Cook County model?
21      **A  I have not.**
22      Q  Do you see where it says Cook County was
23  selected as it's third -- third site to receive funding
24  from the Bureau of Justice assistance to develop an

Page 48

1  in-jail treatment program?
2      Do you see that?
3      **A  Yes, I see.**
4      Q  Do you have any --
5      Does the county dispute that statement; that in
6  1988 they were selected to receive funding from the
7  Bureau of Justice Assistance to develop an in-jail
8  treatment program?
9      MR. DE VORE:  Objection.  Continuing the objection
10  regarding the use of this particular document.  It also
11  calls for speculation.
12      But you can answer.
13      THE WITNESS:  Yeah, I have no reason to dispute
14  this.
15  BY MR. P. MORRISSEY:
16      Q  Do you have --
17      The next sentence reads, prior to the BJA
18  Award, limited drug treatment services had been provided
19  to the jail by Gateway Foundation, a private nonprofit
20  drug treatment agency.
21      Does the county have any reason to dispute that
22  statement by the federal government?
23      MR. DE VORE:  Objection; form.  Also calls for
24  speculation.

Page 49

1      You can answer.
2      THE WITNESS:  Yeah, no reason to dispute.
3  BY MR. P. MORRISSEY:
4      Q  The next sentence, after BJA awarded the grant
5  to Cermak Health Services and Cermak's Department of
6  Psychiatry within Cook County's Public Health Agency, it
7  became the focal point for additional drug treatment
8  programming.
9      Does Cook County have any reason to dispute
10  that statement by the federal government?
11      **A  No.**
12      Q  The next sentence, in addition to caring for the
13  mentally ill, Cermak Department of Psychiatry is
14  responsible for the coordination and administration of
15  the substance abuse program of the nearly 55,000
16  detainees processed through the Cook County Jail
17  annually, an estimated 60 percent were found in need of
18  substance abuse treatment.
19      Does Cook County have any reason to dispute
20  that statement by the government publication?
21      **A  No.**
22      Q  The next sentence reads, on Page 36, Exhibit 10,
23  as a result of grant funding, new program staff county
24  employees were hired in a substance abuse therapeutic

**SYRIL THOMAS**
**May 20, 2025**

---

Page 50

1  community, SATC was developed with the technical
2  assistance and some support staff from Gateway
3  Foundation.
4       The program originally provided services to
5  220 men and 30 women. At the conclusion of federal
6  funding for the program, the county continued to
7  contract for services through Gateway Foundation to
8  maintain the therapeutic drug treatment community.
9       Does Cook County have any reason to dispute
10  that statement in the government publication?
11       A  No.
12       Q  So based on this statement, Cook County concedes
13  that federal funds were provided for drug treatment at
14  the Cook County Jail, is that true?
15       MR. DE VORE: Objection; mischaracterizes testimony,
16  assumes facts not in evidence.
17       You can -- You can answer.
18       THE WITNESS: As mentioned before, I don't dispute
19  some of this stuff.
20       The problem is, I can't validate it, I can't
21  confirm that cash receipts were received or expenditures
22  were made for these programs as noted here.
23       The mainframe system which would be within the
24  time frame was decommissioned, and our data retention

---

Page 51

1  policy doesn't allow us to research those hard copies of
2  cash receipts and cash disbursements associated with
3  programs.
4  BY MR. P. MORRISSEY:
5       Q  Going back to Exhibit 4, Page 18 --
6       THE WITNESS: Counsel, can we take a break?
7       MR. P. MORRISSEY: We can take a break.
8       MR. DE VORE: How long do you need, Syril?
9       THE WITNESS: Is five minutes okay?
10       I'd like to use the restroom.
11       MR. DE VORE: Yes. Oh, absolutely.
12       Let's do -- come back at 4:10. We'll give you
13  seven if that's enough.
14       THE WITNESS: Thank you.
15       MR. DE VORE: Okay. Thanks.
16       (Break taken.)
17  BY MR. P. MORRISSEY:
18       Q  Going back to Exhibit 10, the federal government
19  publication where it talks about as a result of grant
20  funding, the new program staff county employees were
21  hired and a substance abuse therapeutic community was
22  developed with technical assistance and some support
23  staff from Gateway Foundation, with the funds
24  appropriated by the U.S. Congress in 1988, does the

---

Page 52

1  county have any dispute that new program staff county
2  employees were hired with this federal funding?
3       A  Yeah, no dispute.
4       Q  Now, in your investigation, did you uncover
5  investigation to explain how many employees were hired
6  with the assistance of federal funds between '88 and
7  '92?
8       A  As I mentioned before, we were not able to
9  identify any cash receipts or disbursements either in
10  reporting or hard copy so I would not be able to
11  validate that information.
12       Q  Sir, I'm not talking about what's in possession
13  of the comptroller's office.
14       I'm talking about what's in possession of the
15  county government.
16       A  Yeah, I -- I don't know if they hired more
17  people or not, but based on my records, I could not tell
18  you that.
19       Q  But, Mr. Thomas, you're talking about your
20  records in the comptroller's office, right?
21       A  As I mentioned before, the comptroller
22  represents the accounting for Cook County so any
23  financial records would have to come through the county
24  comptroller's office.

---

Page 53

1       Q  Does the county know whether other records
2  outside of the comptroller's office would reflect
3  whether employees were hired with the benefit of federal
4  funds?
5       A  Hiring and termination are within the realm of
6  BHR, which is Bureau of Human Resources.
7       Whether they were hired or fired based on
8  federal dollars, I don't know that that information is
9  available because we don't have a record of federal
10  dollars for that time period based on our data retention
11  policy and our systems in place.
12       Q  Did you look to see whether there are -- there
13  were documents by human resources or other agencies
14  within the county government that reflect receipt of
15  federal funds for hiring staff during this time period?
16       A  So federal receipts and disbursements are the
17  realm of the comptroller's office.
18       Hiring and firing are within BHR.
19       I don't know that the two are correlated
20  together, and I can't speak for that time period
21  unfortunately, and I don't have any reports to verify
22  that.
23       But from what I know now of our system, it's
24  two different things.

---

**SYRIL THOMAS**
**May 20, 2025**

Page 54

1    Q   Now, did any of the county budget records
2  identify any achievements during this time period about
3  hiring physicians through their designation by the
4  National Health Services Corps?
5    A   I do not know.
6    Q   I'm going to show you Exhibit 4.
7        When looking at Exhibit 4, Page --
8    THE REPORTER:  I'm sorry.  What page?
9    MR. P. MORRISSEY:  Exhibit 4, Page 13.
10 BY MR. P. MORRISSEY:
11   Q   And I'll rotate it so you can see.
12       Mr. Thomas, do you see that this is the page
13 from the county 1992 budget?
14   A   I do.
15   Q   Do you have any dispute that this is a copy of
16 the 1992 county budget?
17   A   I do not dispute that.
18   Q   In preparation for your deposition, did you go
19 look at the county budget books?
20   A   I scanned it, this particular document.
21   Q   Did you look at any of the hard copy budget
22 books?
23   A   I did look at a 1992 budget book.
24   Q   When did you receive that book?

Page 55

1    A   Within the budget department.
2    Q   And when did you do that?
3    A   I don't recall the time period.  It was within,
4  I think, May or -- I think it was May.  I can't say for
5  sure.
6        I apologize for not knowing the specific date.
7    Q   So you looked at the actual budget book that I'm
8  showing you, the full copy?
9    A   I looked at a hard copy of it, yeah.
10   Q   And the page in front of you, minus the
11 handwriting, that's not in the court filings?
12   A   I could not find specific pages noted here, but
13 I did see a 1992 budget book.
14   Q   How many pages was this budget book?
15   A   It was a large -- It was a large book.
16       Historically, the budgets book has been three
17 bound copies from my recollection, but there was one
18 document or one book.
19   Q   Do you see on this page, Exhibit 4, Page 13,
20 that there are 1991 achievements?
21   A   I do see it, the 1991 achievements, and the
22 seven bullets, yeah.
23   Q   Does Cook County have any reason to dispute
24 that, if something is listed as a 1991 achievement in

Page 56

1  the 1992 budget book, that is something that occurred in
2  the past?
3    A   I do not -- would not dispute this.
4        But as mentioned before, I can't validate this
5  information either.
6    Q   So Paragraph 2 under the 1991 achievements that
7  are in the 1992 budget book say that implemented the
8  three-year federal grant to enhance AIDS education and
9  related services in an annual amount of $227,500.
10       Do you see that?
11   A   I do.  I do see it.
12   Q   And Cook County doesn't dispute that this is
13 something that occurred in 1991; that a federal grant
14 was implemented to enhance AIDS education and related
15 services at the Department of Corrections, is that true?
16   A   I do not dispute it.
17   Q   Not just you, but Cook County doesn't dispute
18 that in 1991 federal money was received to enhance AIDS
19 education and related services in the amount of $227,500
20 for the benefit of the Department of Corrections?
21   MR. DE VORE:  Objection; asked and answered.  He
22 just answered that.
23       But you can answer again.
24   THE WITNESS:  Yeah.  I do not dispute this.  As much

Page 57

1  as before, I cannot validate this information either.
2  BY MR. P. MORRISSEY:
3    Q   But just to clarify, it's not you, you're
4  speaking on behalf of Cook County, right?
5    A   That's correct.
6        I'm Syril Thomas, comptroller, for the
7  Office of the Comptroller appointed by Cook County.
8    Q   But you understand you're testifying here on
9  behalf of the corporation, Cook County as a corporate
10 entity?
11   MR. DE VORE:  I think he just said that.
12   MR. P. MORRISSEY:  He didn't, Mr. DeVore.
13   MR. DE VORE:  He did.
14       I don't know -- There's no lack of -- There's
15 no confusion other than what counsel may be trying to
16 make, but I mean, it's been pretty clear why he's here
17 and who he's testifying on behalf of the entire time.
18 BY MR. P. MORRISSEY:
19   Q   So, Mr. Thomas, you understand you're talking
20 for Cook County President Preckwinkle's offices?
21   A   Yes.
22   MR. DE VORE:  Objection; asked and answered.
23 BY MR. P. MORRISSEY:
24   Q   And President Preckwinkle's office doesn't

**SYRIL THOMAS**
**May 20, 2025**

16 (Pages 58 to 61)

Page 58

1  dispute that in 1991 they implemented a federal grant
2  for AIDS education and related services at the
3  Department of Corrections?
4      **A  Do not dispute this information that you're**
5  **mentioning.**
6          **At the same time, I cannot validate this**
7  **information, confirm that any of this occurred based on**
8  **the records that are not available because of our record**
9  **retention policy as well as the mainframe system being**
10 **decommissioned during this time period.**
11     Q  Mr. Thomas, there's no other investigation or
12 records you could obtain to dispute that statement to
13 the 1992 budget?
14     MR. DE VORE:  Objection to form.
15         But you can answer.
16     THE WITNESS:  There's no other records that I'm
17 aware of outside of mainframe reporting and hard copies
18 that have been destroyed based on our record retention
19 policy.
20 BY MR. P. MORRISSEY:
21     Q  Does the mainframe exist?
22     **A  It did exist.**
23         **It's been decommissioned in 1999.**
24     Q  What does that -- What does it mean it was

Page 59

1  decommissioned?
2      **A  It was sunset or basically, you know, not being**
3  **used anymore, not available for use.**
4          **We are no longer maintaining it because it's**
5  **too costly to maintained.**
6          **And we moved to a new system called JD Edwards**
7  **1999 onwards, and then we basically moved on from**
8  **JD Edwards in 2018 and retained two years of information**
9  **of JDE within Oracle, but we do have JDE reporting**
10 **allowing us to report on previous years during the JDE**
11 **time frame before we decommissioned the mainframe system**
12 **for the same reason -- I'm sorry, the JDE systems for**
13 **the same reasons as we decommissioned the mainframe.**
14 BY MR. P. MORRISSEY:
15     Q  Was the mainframe information archived?
16     **A  It was not.**
17         **We were not -- If it was archived, then I would**
18 **be able to go in and get the reporting that you were**
19 **looking for to substantiate some of the questions, but**
20 **we were not able to.**
21     Q  Does this mainframe exist?  Is it physically in
22 existence anymore?
23     **A  No.**
24         **It's not a physical thing.  It's a software.**

Page 60

1          **So in order to get to it, it's -- it's not**
2  **available for us.  There's no reporting because most of**
3  **the reporting would have been hard-copied, and it was**
4  **not retained because of the retention policy, and**
5  **because it's over 20 years, we didn't store it because**
6  **of the retention policy as well, which added to the**
7  **difficulty of finding this information to respond to**
8  **your questions to validate some of this.**
9      Q  Mr. Thomas, I'm going to show you Exhibit 3,
10 which is Defendant's Response to Plaintiff's Statements
11 of Fact in Bennett versus Dart.  It's by the Sheriff and
12 Cook County.
13         Is this a document that you reviewed in
14 testifying for Topic 1?
15     **A  Yeah, I believe I skimmed through this.**
16     Q  And who did you skim through it with?
17     **A  Just myself.**
18     Q  Do you see Paragraph 7, it says:  Cook County
19 stipulates from that -- that from 1989 to 1992,
20 Cermak Health Services received federal financial
21 assistance for program services and/or activities for
22 detainees at the Cook County Department of Corrections,
23 and it says undisputed?
24     **A  Yes, I do see it.**

Page 61

1          **Thank you.**
2      Q  As Cook County's representative, does
3  Cook County agree that in 1989 federal financial
4  assistance was received for program services and/or
5  activities for detainees at the Cook County Department
6  of Corrections?
7      MR. DE VORE:  Objection, asked and answered multiple
8  times, ten-plus times probably.
9          But you can answer.
10     THE WITNESS:  I do not dispute this.
11 BY MR. P. MORRISSEY:
12     Q  So I'm just asking about 1989.
13         Does Cook County dispute that federal financial
14 assistance was received for program services and/or
15 activities for detainees at the Cook County Department
16 of Corrections?
17     MR. DE VORE:  Objection; asked and answered.
18         You can answer again.
19     THE WITNESS:  Yeah, I do not dispute this.
20 BY MR. P. MORRISSEY:
21     Q  And what evidence does the county have that
22 in -- that it's not going to dispute that federal
23 financial assistance was received for program services
24 and/or activities at the Cook County Department of

**SYRIL THOMAS**
**May 20, 2025**

Page 62

1  Corrections in 1989?
2      MR. DE VORE:  Objection to form, asked and answered.
3      You can answer.
4      THE WITNESS:  Yeah, I don't dispute that any of this
5  information was received.
6  BY MR. P. MORRISSEY:
7      Q   So Cook County is not going to have any evidence
8  to challenge, nobody's going to challenge that federal
9  money was received for program services or activities
10  for detainees at the Cook County Department of
11  Corrections in 1989?
12      MR. DE VORE:  Objection; asked and answered.
13      But you can answer again.
14      THE WITNESS:  Yeah, no one can dispute it, but no
15  one can validate it either.
16      As mentioned before, we don't have any cash
17  receipts for this time period or records within the
18  mainframe because the mainframe was decommissioned, and
19  so we can't research this out to determine if actual
20  money was received from the federal government to
21  showcase that.
22      And that's the difficulty that we have in the
23  comptroller's office.
24      No disputing this statement though that you

Page 63

1  mentioned.
2  BY MR. P. MORRISSEY:
3      Q   Well, Mr. Thomas, I'm asking more than just
4  what's in the mainframe.  It's larger.  It's bigger than
5  that.
6      In the government records that show federal
7  money was allocated and spent in 1989.
8      MR. DE VORE:  Is that a question?  Or it sounds like
9  you're testifying, Counsel.
10      MR. P. MORRISSEY:  So like I'm asking Mr. Thomas as
11  the county's representative to expand his answer beyond
12  the mainframe in the comptroller's office.
13      MR. DE VORE:  He did on numerous occasions expand it
14  considerably including a discussion -- I mean, so I mean
15  he's gone through this extensively.
16      I don't understand why you make that assertion.
17  So I mean --
18  BY MR. P. MORRISSEY:
19      Q   So let me --
20      In 1989 does the county agree federal funds
21  were received for the benefit of detainees at the
22  Cook County Department of Corrections?
23      MR. DE VORE:  Objection; asked and answered numerous
24  times.

Page 64

1      You can answer one more time.
2      THE WITNESS:  Don't dispute it.
3  BY MR. P. MORRISSEY:
4      Q   How about in 1990?  Does Cook County agree that
5  federal financial assistance was received for these at
6  the Cook County Department of Corrections?
7      MR. DE VORE:  Same objection.
8      This witness has answered during -- from the
9  time frame of, I believe, 1988 through 1992 inclusive,
10  and it's been a very expansive set of responses so --
11  so, you know, he's answered that, he's already answered
12  that.
13  BY MR. P. MORRISSEY:
14      Q   And can you respond?
15      MR. DE VORE:  You can answer one more time.
16      THE WITNESS:  No dispute.
17  BY MR. P. MORRISSEY
18      Q   And in 1990, is it fair to say Cook County
19  agrees federal financial assistance was received for
20  program services and activities at the Department of
21  Corrections?
22      MR. DE VORE:  Objection; asked and answered.  He
23  also answered for -- he answered for '90, he answered
24  for '91, he answered for '92, he answered for a longer

Page 65

1  period.
2      I'm not going to allow the witness to be asked
3  the same question 20 times.  Maybe ten.  I think we've
4  gone through so many iterations of the same question.
5  So I'm not going to allow the same questions over and
6  over.
7      MR. P. MORRISSEY:  Mr. DeVore, I never asked about
8  1990.
9      MR. DE VORE:  Yeah, you did.  You asked about the
10  whole time period.
11      And then you tried to do a recap for each
12  individual year to try to get him to change to his
13  answer and try to fool him apparently.  It's very clear.
14      MR. P. MORRISSEY:  So as the attorney for the
15  county, are you going to agree, are you consistent with
16  the prior counsel's representation that there's no
17  dispute that federal money was received for benefit of
18  detainees for program services or activities at the DOC
19  between '89.
20      MR. DE VORE:  I'm not here to agree or disagree or
21  anything else.  I'm not -- I'm not being deposed so.
22      MR. P. MORRISSEY:  Well, that's why we're going to
23  be asking about 1990.
24      MR. DE VORE:  Ask better questions.  You already

**SYRIL THOMAS**
**May 20, 2025**

Page 66

1   asked about it so quit trying to -- you know, you're
2   taking multiple bites of the apple, you aren't -- you
3   apparently do not like the responses, and but that's not
4   within the witness' control as comptroller.
5       MR. P. MORRISSEY:  Mr. DeVore, it's not about his
6   knowledge as comptroller.  It's his knowledge for the
7   county government.
8       MR. DE VORE:  I think we have an understanding of
9   why he's here and in what capacity.  We just went
10  through this ten minutes ago.
11  BY MR. P. MORRISSEY:
12      Q  So, Mr. Thomas, does the president's office --
13  the President's Office of Cook County doesn't dispute
14  that in 1990 federal money was received for the benefit
15  of detainees at the DOC Cook County Department of
16  Corrections for program services and activities, is that
17  true?
18      MR. DE VORE:  Same objection.
19      But you can answer.
20      And I think that -- I believe he already
21  testified from the time period of 1988 to 1992 and
22  beyond of the lack of dispute.
23      But you can answer one more time.  I apologize.
24      THE WITNESS:  No dispute.

Page 67

1   BY MR. T. MORRISSEY:
2       Q  Is the same true for 991; there's no dispute
3   from the county's -- from the Cook County Government
4   that federal financial assistance was received for the
5   benefit of program services and activities at the
6   Department of Corrections?
7       MR. DE VORE:  Same objection.  You could have asked
8   this in one question, not five.
9       You can answer.
10      THE WITNESS:  No dispute.
11  BY MR. T. MORRISSEY:
12      Q  Now, Division 9 at the Cook County Jail, does
13  the county have any knowledge about whether funds,
14  federal funds were received for constructing Division 9
15  at the Department of Corrections?
16      **A  As I mentioned before, I have no records, hard**
17  **copies because of our record retention policy.**
18      **In addition, the mainframe system was**
19  **decommissioned so I can't pull specific expenditures or**
20  **transactions associated with your question, which makes**
21  **it difficult for me to respond.**
22      Q  So I'm not trying to be -- things can be
23  difficult, but as the representative for Cook County,
24  what's the county's position?  Was federal money

Page 68

1   received for constructing Division 9 at the Cook County
2   Department of Corrections?
3       **A  I do not dispute.**
4       MR. DE VORE:  Calls for a legal conclusion.
5       But you can answer.
6       THE WITNESS:  I don't dispute it.
7       I just can't validate it.
8   BY MR. P. MORRISSEY:
9       Q  How about Division 10 at the Cook County
10  Department of Corrections?
11      MR. DE VORE:  Objection; it's outside the scope,
12  doesn't have anything to do with this case at all.
13      MR. P. MORRISSEY:  How?
14      The topic is federal financial assistance for
15  the benefit for program services and activities at the
16  Department of Corrections between a time period of 19 --
17      I can pull it up so we're --
18      MR. DE VORE:  Our case relates to Division 9, not
19  10.
20      MR. T. MORRISSEY:  No, it doesn't.
21      MR. P. MORRISSEY:  It doesn't, Mr. DeVore.
22      MR. DE VORE:  You have a separate case regarding
23  Division 10.
24      MR. P. MORRISSEY:  Mr. DeVore, the topic is in front

Page 69

1   of us, and it's receipt of federal financial assistance
2   for program services and/or activities at the
3   Cook County Department of Corrections between March 7th,
4   1988 and August 1st, 1992.
5       MR. DE VORE:  Understood.
6       MR. P. MORRISSEY:  So building a building or housing
7   detainees is a program service offered at the Department
8   of Corrections.
9       MR. DE VORE:  Right.
10      But Division 10 is not Division 9.
11      But if he can answer, he can answer.
12  BY MR. P. MORRISSEY:
13      Q  So, Mr. Thomas, does the county -- assuming a
14  building was built between March 7th, 1988, and
15  August 1st, 1992, at the Cook County Department of
16  Corrections, does the county have any knowledge or any
17  dispute whether federal money was received for building
18  that building?
19      MR. DE VORE:  Objection; assumes facts not in
20  evidence.
21      But you can answer.
22      THE WITNESS:  I do not dispute it.
23  BY MR. P. MORRISSEY:
24      Q  And why can the county not dispute that

**SYRIL THOMAS**
**May 20, 2025**

19 (Pages 70 to 73)

Page 70

1  statement or that question?
2      MR. DE VORE:  Objection; asked and answered.
3          But you can answer again.
4      THE WITNESS:  I can't validate it confirming whether
5  it was spent or not so, therefore, I'm unsure whether it
6  should be disputed.
7          As mentioned before, we don't have any hard
8  copy information on cash receipts or disbursements, our
9  data retention policy allows for it to be destroyed
10  after ten years.
11          Additionally, the mainframe system that would
12  be used for reporting was decommissioned so I can't pull
13  any information specifically to identify any
14  transactions related to cash receipts or expenditures,
15  making it very difficult for me to identify specific
16  expenditures related to this.
17      MR. P. MORRISSEY:  Let's take a few-minute break.
18      Mr. DeVore?
19      MR. DE VORE:  That's fine.
20          Do you want to come back at 4:40?
21      MR. P. MORRISSEY:  Sure.
22          Is that enough for you, Robbin?  Do you need a
23  little more?
24      THE REPORTER:  No, no.  That's okay.  I'm good.

Page 71

1  Thank you.
2      MR. P. MORRISSEY:  All right.
3          (Break taken.)
4      MR. P. MORRISSEY:  Everybody ready?
5      MR. DE VORE:  Yes.
6      THE REPORTER:  (Indicating.)
7  BY MR. P. MORRISSEY:
8      Q  So, Mr. Thomas, assuming Division 9 was
9  constructed between 1989 and 1992, does the county
10  have -- did the county fund --
11          Strike that.
12          Assuming Division 9 was constructed between
13  1989 and 1992, was this project funded by the county?
14      **A  I don't -- I don't know.  That's --**
15      **I guess I don't understand the question; was it**
16  **funded by the county?**
17      Q  Well, are you familiar with Division 9 at the
18  Cook County Department of Corrections?
19      **A  I'm not familiar with the particular offices of**
20  **the departments under each of the departments.**
21      Q  Division 9 is a building that was constructed
22  sometime in late 1980, early 1990s, okay?
23          Is that true?
24      MR. DE VORE:  Objection; calls for speculation.

Page 72

1          But you can answer.
2      THE WITNESS:  I don't have any reason to dispute it.
3  BY MR. P. MORRISSEY:
4      Q  So assuming -- does the sheriff have the ability
5  to raise funds?
6      MR. DE VORE:  Object -- Objection; scope.
7          But you can answer if you know.
8      THE WITNESS:  Raise funds by themselves?
9  BY MR. P. MORRISSEY:
10      Q  Correct.
11      **A  No.**
12      Q  The sheriff's budget comes from Cook County,
13  right?
14      **A  Yes, it's appropriated through Cook County.**
15      Q  And the employees are funding for the sheriff's
16  employees as appropriated by Cook County?
17      **A  That is correct.**
18      Q  And buildings at the Cook County Department of
19  Corrections, they're paid for by Cook County?
20      **A  That is correct.**
21      Q  And so for a building like Division 9 now built
22  in the late eighties, early nineties, does all the
23  funding come from Cook County?
24      MR. DE VORE:  Objection to form.

Page 73

1          But you can answer.
2      THE WITNESS:  The reason why I hesitate a little bit
3  is because we know that it could be appropriated
4  directly from the county and it could be composed of
5  federal grants or private dollars as well.  So I want to
6  be accurate about that.
7  BY MR. P. MORRISSEY:
8      Q  And for a building like Division 9 at the
9  Cook County Jail that was built in the time period of
10  this notice, does the county have any reason to dispute
11  that federal assistance was received for the
12  construction or modification of this building?
13      **A  I have no reason to dispute it.**
14      Q  And what -- And so, within this building in
15  Division 9, there are -- there's a law library, correct?
16      **A  I -- I wouldn't know.**
17      **I don't know the specifics of Division 9 and**
18  **what is there and what is not.**
19      Q  In Division 9 there's a dispensary where inmates
20  receive medical care, okay?
21          Do you understand that?
22      **A  Yeah, I -- I have no reason to dispute what you**
23  **said.**
24      Q  And the doctors are provided by the county,

**SYRIL THOMAS**
**May 20, 2025**

---

Page 74

1    correct, Cermak Health Services?

2        **A   Yeah, no reason to dispute what you said.**

3        Q   And some of the doctors that work at the

4    Cook County Department of Corrections are federally

5    funded between '88 and '92, is that fair?

6        MR. DE VORE:  Objection; calls for speculation, form

7    of the question.

8        You could answer.

9        THE WITNESS:  I have no reason to dispute it.

10   BY MR. P. MORRISSEY:

11       Q   And the build-outs for the dispensaries where

12   the physicians and the medical staff treat patients,

13   those -- that facility in Division 9 between 1988 and

14   1992, the receipt was -- was funded by the federal

15   government in part, correct?

16       MR. DE VORE:  Objection to form.  That's a long one.

17       Go ahead.  You can answer it.

18       THE WITNESS:  I have no reason to dispute it.

19   BY MR. P. MORRISSEY:

20       Q   Now, in your research in investigation, did you

21   uncover a federal grant for more than $200,000 during

22   this time period for providing treatment to detainees at

23   the Department of Corrections who have AIDS or HIV?

24       **A   As mentioned before, our data retention policy,**

---

Page 75

1    **we didn't have any hard copy records for cash receipts**

2    **or disbursements or any information supporting any**

3    **particular grants related to this during this time**

4    **frame.**

5        **In addition, the mainframe system, which was**

6    **the system available at the time for recordkeeping, was**

7    **decommissioned so I was unable to ask pull out reports**

8    **for cash receipts and expenditures to identify that**

9    **specific program or grant noted.**

10       Q   Now I'm pulling up Exhibit 4 again, Page 13,

11   which is a page from the Cook County 1992 budgets where

12   there's the 1991 achievement talking about that

13   three-year federal grant to enhance AIDS education and

14   related services in the annual amount of $227,500.

15       And we covered this already, right?

16       **A   Correct.**

17       Q   And does the county have any reason to dispute

18   that that funding was -- was used for people in

19   Division 9 to provide AIDS education and research and

20   related services?

21       **A   No reason to dispute.**

22       **Also, as mentioned, no reason -- I cannot**

23   **validate that either.**

24       Q   Now, assuming the money was provided by the

---

Page 76

1    federal government in the amount of $227,500 in 1991,

2    does the county have any records whether the money was

3    actually used specifically for AIDS education and

4    related services at the Department of Corrections?

5        MR. DE VORE:  Objection.  We don't want the witness

6    to assume.

7        But you can answer.

8        THE WITNESS:  We don't have any information based on

9    the data retention policy.  All hard copy information

10   related to cash receipts and disbursements were

11   destroyed.

12       In addition, the system in place during that

13   time frame was decommissioned so I can't pull out any

14   specific reports identifying transactions related to

15   this.

16   BY MR. P. MORRISSEY:

17       Q   Does the county know whether a federal grant to

18   enhance AIDS education related services in an annual

19   amount of $227,500 as reflected in Exhibit 4, Page 13,

20   could be used to build out exam rooms for the treatment

21   of patients at the Cook County Department of

22   Corrections?

23       MR. DE VORE:  Objection; calls for speculation.

24       You can answer.

---

Page 77

1        THE WITNESS:  No dispute.

2        But as mentioned before, I cannot validate that

3    cash receipts associated with these particular grants

4    were used in any manner because of the mainframe report

5    at the time -- the mainframe system at the time was

6    decommissioned.

7    BY MR. P. MORRISSEY:

8        Q   Now, going back to that Exhibit 10, the Bureau

9    of Justice Assistance government publication where

10   there's a discussion about drug treatments physically at

11   the jail campus, do you remember that, reading that

12   section?

13       **A   No.**

14       **Oh, is this -- didn't we discuss this before?**

15       Q   We discussed this before, Exhibit 10, Page 36 --

16       **A   Okay.**

17       Q   -- talking about the Cook County -- its 1988

18   federal grant -- federal appropriation by Congress for

19   the Cook County Jail facility.

20       **A   Right.  Okay.**

21       Q   And do you see how it talks about how the

22   program structure for this federal grant is to provide

23   therapeutic community modality in five -- in five

24   five-man dorms?  Do you see that?

---

**SYRIL THOMAS**
**May 20, 2025**

21 (Pages 78 to 81)

---

Page 78

1    A  I do.
2    Q  Does Cook County have any dispute that the
3  federal grant that Congress appropriated in 1988 could
4  be used to built out structural space for the drug
5  treatments at the Cook County Jail campus?
6    A  No dispute.
7    MR. P. MORRISSEY:  Why don't we take a five-minute
8  break?
9       I think I'm almost finished.
10   MR. DE VORE:  Okay.  4:55?
11   MR. P. MORRISSEY:  What time should we be back?
12   MR. DE VORE:  4:55?
13   MR. P. MORRISSEY:  That's fine.
14   MR. DE VORE:  Okay.  4:51 to 4:55.
15      (Break taken.)
16   MR. P. MORRISSEY:  All right.  Back on the record.
17  BY MR. P. MORRISSEY:
18   Q  As the county's designee between the time period
19  for Topic 1, does the county have any reason to dispute
20  that federal financial assistance was received for the
21  benefit of the Department of Corrections to replace
22  toilets or sinks?
23   A  No reason to dispute.
24   Q  How about to make minor renovations to the

---

Page 79

1  Department of Corrections campus between the time period
2  in Topic 1, 1988 to '92?
3    A  No reason to dispute.
4    Q  How about received federal funds for maintenance
5  of the Cook County Department of Corrections?  Does
6  Cook County have any reason to dispute federal
7  assistance for that?
8    A  No reason to dispute.
9    Q  I'm turning now to Exhibit 4, Page 10.
10      And I need to share.
11   A  I'm not seeing anything.
12   Q  I'm sorry.
13   A  That's okay.
14   Q  So going to Page 4 -- Exhibit 4, Page 10,
15  there's one document that we haven't looked at.  It's
16  part of the 1992 budget where it talks about funding for
17  Cermak Health Services substance abuse elements, the
18  program's protection of persons and property.
19      It talks about grants.  The second paragraph
20  talks about on-site social health, mental health
21  education, vocational health education, HIV-related and
22  other services, and the last paragraph says, funding for
23  this project is for the U.S. Department of Health &
24  Human Services Public Health Services for treatment

---

Page 80

1  improvement.
2       And there's a mention on this document of
3  funding for a three-year period from November 15th,
4  1991, to August 31st, 1993, in the amount of $1,504,438.
5       Do you see that, Mr. Thomas?
6    A  I do see it.
7       Thank you.
8    Q  And some of this funding, it says funding is
9  from the U.S. Department of Health & Human Services.
10      Do you see that?
11   A  Yes, I do.
12   Q  Now, from the $1,504,438 funding, does the
13  county have any reason to dispute that this funding was
14  allocated for the Department of Corrections?
15   A  No dispute.
16   Q  Does the county have any reason or evidence to
17  dispute whether this funding was for the benefit of
18  Division 9 at the Cook County Department of Corrections?
19   MR. DE VORE:  Objection; assumes facts not in
20  evidence.
21      But you can answer.
22   THE WITNESS:  No reason to dispute.
23      But as mentioned previously, we cannot validate
24  this either.

---

Page 81

1  BY MR. P. MORRISSEY:
2    Q  Would the county have any evidence about what
3  specific program services or activities this funding was
4  used for at the Department of Corrections during the
5  funding period?
6    A  As mentioned before, based on our data retention
7  policy, there's no cash receipts or disbursements that
8  we can look through to validate any expenditures.
9       And the mainframe system was decommissioned so
10  I can't pull out transaction reports to determine how
11  money was spent specifically for these programs.
12   Q  This section in the budget book talks about this
13  program will deliver on-site social health, mental
14  health education, vocational health education,
15  HIV-related and other services.
16      Does Cook County have any reason to dispute
17  that this -- these funds could have been used to build
18  out facilities to treat patients or detainees at the
19  Department of Corrections?
20   A  No reason to dispute it.
21      It's a budget associated with the program.
22   MR. P. MORRISSEY:  All right.  I have nothing
23  further.
24      I appreciate your time, Mr. Thomas.

SYRIL THOMAS
May 20, 2025

Page 82

1    THE WITNESS: Thank you.
2        MR. DE VORE: I just -- I just have a few.
3            EXAMINATION
4    BY MR. DE VORE:
5        Q  So there's been a lot of testimony about this
6    time period from 1988 to 1992.
7            So based upon the document retention policy
8    that you described in tremendous detail, if there were
9    doc -- if there were documents from 1988 to 1992, is it
10   fair to say that they would have been destroyed
11   generally speaking within seven to eight years?
12       A  Yes.
13       Q  Okay.  So by my math, it's kind of loose math,
14   but it appears that, unless there were -- there was some
15   outlying issue which we haven't discussed here, these
16   documents would have been destroyed in the area of 1995
17   to 2000, is that correct?
18       A  That's fair to say.
19       Q  Okay.  So that's 25, 30 years ago.
20           So is it also correct that these documents, I
21   believe you testified to this, would not have been
22   available in 20 -- the year 2023, correct?
23       A  That is correct.
24       Q  Because there were --

Page 83

1            And is it also the case that the comptroller
2    holds or houses financial records for all Cook County
3    departments?
4        A  That's correct.
5        Q  Okay.  And would that include departments of
6    facilities of management, capital planning and any other
7    department?
8        A  Yes, within Cook County.
9            But I will say this to clarify.  You know, this
10   is back in 1988 to 1992 so the structure of Cook County
11   may have changed, and so please keep that in mind.
12       Q  Certainly.  Certainly.
13           And so it's -- is it -- is it the case that,
14   generally speaking, the comptroller is in the best
15   position to have accounting information for Cook County
16   departments?
17       A  That is correct.
18       Q  Okay.
19       MR. DE VORE:  That's all I have.
20       MR. P. MORRISSEY:  All right.  I have no further
21   questions.
22           Robbin, we'll send an e-mail tomorrow about the
23   order of which we need.
24           Okay.  I appreciate.  Have a good weekend,

Page 84

1    Everybody.
2        MR. DE VORE:  Are you ordering a copy of this?
3        MR. P. MORRISSEY:  We're going to get back with
4    Robbin tomorrow.
5        MR. DE VORE:  Okay.  Reserved.
6            Yeah, we definitely want a copy if they do,
7    yeah.
8            Thank, you, Syril.
9        THE WITNESS: Thank you.
10           (Whereupon, the deposition in the
11           above-entitled cause concluded at
12           5:04 p.m.)
13
14
15
16
17            -----
18
19
20
21
22
23
24

Page 85

1    STATE OF ILLINOIS  )
                         )
2    COUNTY OF C O O K  )
3
4
5        The within and foregoing Zoom deposition of the
6    aforementioned witness was taken before ROBBIN M.
7    OCHENKOWSKI, C.S.R., at the time and date and
8    aforementioned.
9        There were present during the taking of the remote
10   deposition the previously named counsel.
11       The said witness was first duly sworn and was then
12   examined upon oral interrogatories; the questions and
13   answers were taken down in shorthand by the undersigned,
14   acting as stenographer; and the within and foregoing is
15   a true, accurate and complete remote record of all of
16   the questions asked of and answers made by the
17   aforementioned witness, at the time and date hereinabove
18   referred to.
19       The signature of the witness was not waived,
20   and the deposition was submitted, pursuant to the Rules
21   of the Supreme Court of Illinois.
22       The undersigned is not interested in the within
23   case, nor of kin or counsel to any of the parties.
24

**SYRIL THOMAS**
**May 20, 2025**

23 (Pages 86 to 87)

Page 86

1    Witness my official signature in and for
2  Cook County, Illinois, on this 29th day of May, A.D.,
3  2025.
4
5
6
7    _____
     ROBBIN M. OCHENKOWSKI, C.S.R.
8    CSR License No. 084-002522
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 87

1         WITNESS CERTIFICATION
2
3
4    I hereby certify that I have read the foregoing
5  transcript of my deposition consisting of Pages 1
6  through 87 inclusive. Subject to the changes set forth
7  on the preceding pages, the foregoing is a true and
8  correct transcript of my deposition taken on the
9  23rd day of May, 2025.
10
11
12
13
14
15   _____
        SYRIL THOMAS
16
17
18
19  SUBSCRIBED AND SWORN to
20  before me this _____day
21  of _____, A.D., 2025.
22
23
     _____
24  Notary Public

**TOOMEY REPORTING**
**312-853-0648**

**SYRIL THOMAS**
**May 20, 2025**

Page 1

**A**

**A.D** 1:16
86:2 87:21
**ability** 72:4
**able** 12:5
22:9,9,13
22:17 28:9
28:12,21
35:9,13,13
36:13 39:5
52:8,10
59:18,20
**above-entit...**
84:11
**absolutely**
51:11
**abuse** 34:11
34:19 35:1
49:15,18,24
51:21 79:17
**access** 11:21
11:24 12:2
12:6,8 28:1
**account**
15:17
**accounting**
18:16 19:8
19:13,14,16
52:22 83:15
**accounts** 9:24
28:23
**accurate** 73:6
85:15
**accurately**
33:13
**achievement**
21:2,4,10
22:1,15
23:22 55:24
75:12
**achieveme...**
21:14,17
22:10 54:2
55:20,21

56:6
**acting** 85:14
**actively** 31:2
**activities** 8:7
27:20 28:7
39:17 42:13
43:4 60:21
61:5,15,24
62:9 64:20
65:18 66:16
67:5 68:15
69:2 81:3
**actual** 8:17
14:6 20:17
44:24 46:4
55:7 62:19
**added** 60:6
**addition**
49:12 67:18
75:5 76:12
**additional**
4:14,15
18:17 34:19
35:1 49:7
**Additionally**
8:12 10:12
70:11
**address**
22:17
**addressing**
7:16,18
**administra...**
18:15 49:14
**Admit** 3:14
16:3
**adopted** 44:2
44:4,10,10
**advanced**
23:17
**aforementi...**
85:6,8,17
**agencies**
33:13 53:13
**agency** 33:15

33:16 48:20
49:6
**ago** 7:7,11
8:19 11:8
24:9 29:9
38:14 66:10
82:19
**agree** 5:15
61:3 63:20
64:4 65:15
65:20
**agreed-upon**
4:3
**agreement**
46:20,24
**agrees** 64:19
**ahead** 11:17
17:10 40:8
74:17
**aid** 13:18
**AIDS** 56:8,14
56:18 58:2
74:23 75:13
75:19 76:3
76:18
**AJA** 34:7
**allocated**
63:7 80:14
**allow** 51:1
65:2,5
**allowing**
59:10
**allows** 70:9
**American**
34:6
**amount**
30:21 44:5
45:9 56:9
56:19 75:14
76:1,19
80:4
**and/or** 8:6
43:4 60:21
61:4,14,24

69:2
**Anita** 29:4
**Annette**
10:21 11:19
**annual** 56:9
75:14 76:18
**annually**
49:17
**answer** 6:8
11:17 13:20
14:21 15:12
17:5,22
23:4 24:3
26:21 27:17
28:11 32:1
35:5 36:11
37:19 39:2
39:23 41:11
42:17,19
43:8 48:12
49:1 50:17
56:23 58:15
61:9,18
62:3,13
63:11 64:1
64:15 65:13
66:19,23
67:9 68:5
69:11,11,21
70:3 72:1,7
73:1 74:8
74:17 76:7
76:24 80:21
**answered**
14:20 37:18
38:15,16
41:9,20,21
42:16 56:21
56:22 57:22
61:7,17
62:2,12
63:23 64:8
64:11,11,22
64:23,23,23

64:24,24
70:2
**answers**
85:13,16
**anybody** 9:6
10:3 22:14
29:24
**anymore**
59:3,22
**apologize**
12:21 15:7
21:8,22
29:17 55:6
66:23
**apparently**
65:13 66:3
**appears**
82:14
**apple** 66:2
**appointed**
19:23,24
20:1 57:7
**appreciate**
81:24 83:24
**appropriate**
24:5
**appropriated**
34:19,24
36:8 51:24
72:14,16
73:3 78:3
**appropriat...**
34:3
**appropriat...**
77:18
**approval**
44:16
**approve**
23:12
**approved**
44:1,4,10
**approximate**
30:21
**approxima...**

7:7,8,10
**April** 41:19
**archived**
59:15,17
**area** 7:1
82:16
**areas** 20:18
**argued** 5:6
**argument** 5:6
5:9
**Arizona**
34:17
**articulated**
41:23
**aside** 5:8
**asked** 14:20
37:18 38:15
41:9,20
42:16,21
56:21 57:22
61:7,17
62:2,12
63:23 64:22
65:2,7,9
66:1 67:7
70:2 85:16
**asking** 61:12
63:3,10
65:23
**aspect** 35:22
**assertion**
63:16
**assets** 47:6
**assistance** 8:6
31:22 33:3
33:7,18,20
34:8,15
39:17 41:7
41:17 42:12
47:24 48:7
50:2 51:22
52:6 60:21
61:4,14,23
64:5,19

**SYRIL THOMAS**
**May 20, 2025**

Page 2

67:4 68:14
69:1 73:11
77:9 78:20
79:7
**associated**
8:21 9:17
10:11 18:21
21:16 25:17
25:18 27:7
28:4 31:11
32:11 33:15
37:23 40:23
45:4 46:4
46:16 51:2
67:20 77:3
81:21
**Association**
34:6
**assume** 76:6
**assumes**
50:16 69:19
80:19
**assuming**
69:13 71:8
71:12 72:4
75:24
**attempt**
20:16 26:13
**attend** 18:1,5
18:7
**attorney**
65:14
**attorneys**
5:15 30:16
30:22
**auditor** 35:24
**audits** 19:17
**August** 8:8
39:19 42:14
69:4,15
80:4
**available**
13:3,8 14:2
17:16 28:15

31:9 40:11
42:6 53:9
58:8 59:3
60:2 75:6
82:22
**Avenue** 2:4
**Award** 48:18
**awarded**
35:17 49:4
**aware** 58:17

———
**B**
**B** 3:8
**bachelor's**
18:10
**back** 19:7,19
20:5 27:8
27:11,12
44:8 47:10
47:16 51:5
51:12,18
70:20 77:8
78:11,16
83:10 84:3
**background**
47:20
**bank** 9:19
35:21
**banking**
17:17
**based** 8:9 9:3
10:9 12:13
14:14 20:22
21:15 22:8
27:8 33:14
37:1 40:6,9
44:24 46:19
46:20 50:12
52:17 53:7
53:10 58:7
58:18 76:8
81:6 82:7
**basically**
33:12 59:2

59:7
**basing** 24:13
**behalf** 2:7,13
10:5 12:23
16:21 37:6
37:10 57:4
57:9,17
**believe** 7:15
16:8 17:12
29:9 32:19
41:23 60:15
64:9 66:20
82:21
**benefit** 27:16
27:20 41:18
42:12 53:3
56:20 63:21
65:17 66:14
67:5 68:15
78:21 80:17
**benefits**
45:19
**Bennett**
60:11
**best** 13:22
44:20 83:14
**better** 65:24
**beyond** 13:24
25:13 63:11
66:22
**BHR** 53:6,18
**bigger** 63:4
**bit** 73:2
**bites** 66:2
**BJA** 34:8,20
35:2 48:17
49:4
**Blakey** 29:8
**block** 18:24
**board** 15:4,9
15:14,21
20:2 23:18
44:4,4,9,16
**book** 21:10

21:20 54:23
54:24 55:7
55:13,14,15
55:16,18
56:1,7
81:12
**books** 23:9
23:12 54:19
54:22
**bottom** 33:4
**bound** 55:17
**boxes** 12:14
**break** 51:6,7
51:16 70:17
71:3 78:8
78:15
**bring** 5:7
**budget** 10:17
10:18,24
11:3,12
15:17,20,21
15:22,22,23
20:7,13,16
20:16 21:1
21:3,10,12
21:19 22:2
23:9 43:13
43:23 44:9
44:15,21,22
44:22,23
45:20 46:7
46:7 47:10
54:1,13,16
54:19,21,23
55:1,7,13
55:14 56:1
56:7 58:13
72:12 79:16
81:12,21
**budgets** 45:2
55:16 75:11
**build** 28:13
76:20 81:17
**build-outs**

74:11
**building** 69:6
69:6,14,17
69:18 71:21
72:21 73:8
73:12,14
**buildings**
72:18
**built** 69:14
72:21 73:9
78:4
**bullets** 23:20
55:22
**bunch** 5:9
**Bureau** 33:3
33:7,18,20
34:7,14,16
47:24 48:7
53:6 77:8
**business**
18:15

———
**C**
**C** 2:1 85:2
**C.S.R** 1:13
85:7 86:7
**called** 5:22
19:14 27:2
59:6
**calls** 15:11
24:2 42:15
43:6 48:11
48:23 68:4
71:24 74:6
76:23
**camera** 31:15
**campus**
77:11 78:5
79:1
**capacity** 66:9
**capital** 47:3,5
47:5,7 83:6
**capture**
33:13

**captured**
47:9
**captures**
44:24
**care** 73:20
**caring** 49:12
**case** 1:5 24:8
36:12 68:12
68:18,22
83:1,13
85:23
**cash** 8:18
9:18 10:1
17:18 25:17
27:6,14
32:10 33:13
36:19,22
37:22 38:2
38:23 39:6
40:1,22
42:6 44:24
45:5 46:4
46:11 50:21
51:2,2 52:9
62:16 70:8
70:14 75:1
75:8 76:10
77:3 81:7
**categorizat...**
45:22
**cause** 84:11
**Cermak** 49:5
49:13 60:20
74:1 79:17
**Cermak's**
49:5
**certainly** 4:7
83:12,12
**CERTIFIC...**
87:1
**Certified**
3:20
**certify** 42:23
87:4

**SYRIL THOMAS**
**May 20, 2025**

Page 3

**CFDA** 33:14
**CFDH** 33:14
**challenge** 38:12 41:16 42:11 62:8 62:8
**chance** 47:20
**change** 8:16 41:23 65:12
**changed** 83:11
**changes** 87:6
**chart** 28:23
**check** 33:14
**checks** 36:23
**Chicago** 2:5 2:11 34:21
**city** 11:9,10
**Civil** 1:14
**CLA** 19:16
**clarify** 57:3 83:9
**classificatio...** 45:24
**clear** 37:4 39:14 57:16 65:13
**clients** 4:12
**clinical** 42:1
**close** 27:4
**college** 18:5
**come** 12:14 32:4 35:24 37:22 51:12 52:23 70:20 72:23
**comes** 72:12
**coming** 36:23
**commence** 4:2
**commencing** 1:16
**commented** 40:15

**commissio...** 44:5
**community** 50:1,8 51:21 77:23
**complete** 85:15
**composed** 73:4
**comptroller** 6:14,15,17 19:19,20,21 19:22 25:12 26:15 37:8 44:23 52:21 57:6,7 66:4 66:6 83:1 83:14
**comptroller's** 9:23 10:4,7 13:15 14:8 14:12 22:22 32:4 35:19 36:24 37:5 46:3 52:13 52:20,24 53:2,17 62:23 63:12
**concedes** 50:12
**concern** 22:17
**concluded** 84:11
**conclusion** 42:16 43:7 50:5 68:4
**conduct** 34:8
**conference** 30:9
**confirm** 24:23 36:18 50:21 58:7
**confirming**

70:4
**confusion** 57:15
**Congress** 34:18,24 36:7 51:24 77:18 78:3
**connect** 8:17 10:16
**considerably** 63:14
**consistent** 65:15
**consisting** 87:5
**constructed** 71:9,12,21
**constructing** 67:14 68:1
**construction** 73:12
**contact** 26:10
**content** 36:14
**contention** 41:17 42:11
**continue** 32:22 34:5
**continued** 6:3 18:20 50:6
**Continuing** 48:9
**contract** 50:7
**contracting** 37:9
**control** 66:4
**Cook** 1:7 6:17 8:7,24 10:5 11:1 12:23 14:9 15:17 16:21 20:2,7,13 31:18 34:20 35:2,17

36:7,9
37:11,13
39:5,11
41:6,16
43:5,13
44:9,18
46:1,9,14
47:20,22
49:6,9,16
49:19 50:9
50:12,14
52:22 55:23
56:12,17
57:4,7,9,20
60:12,18,22
61:2,3,5,13
61:15,24
62:7,10
63:22 64:4
64:6,18
66:13,15
67:3,12,23
68:1,9 69:3
69:15 71:18
72:12,14,16
72:18,19,23
73:9 74:4
75:11 76:21
77:17,19
78:2,5 79:5
79:6 80:18
81:16 83:2
83:8,10,15
86:2
**coordination** 49:14
**copies** 8:10
9:12 10:11
12:15 14:2
20:21 22:6
25:3 31:7
40:10 51:1
55:17 58:17
67:17

**copy** 9:17
17:15 29:1
29:7 32:6
42:6 52:10
54:15,21
55:8,9 70:8
75:1 76:9
84:2,6
**corporate**
39:11 57:9
**corporation**
57:9
**Corps** 54:4
**correct** 6:18
15:5,20
20:4 21:5
25:22 35:16
36:5,10
37:8,12
38:14 39:3
39:9 57:5
72:10,17,20
73:15 74:1
74:15 75:16
82:17,20,22
82:23 83:4
83:17 87:8
**corrections**
8:7 9:1
20:10 23:23
27:16,21
28:5,8
31:18,22
32:11 39:18
40:24 43:5
56:15,20
58:3 60:22
61:6,16
62:1,11
63:22 64:6
64:21 66:16
67:6,15
68:2,10,16
69:3,8,16

71:18 72:19
74:4,23
76:4,22
78:21 79:1
79:5 80:14
80:18 81:4
81:19
**correlated**
53:19
**costly** 59:5
**costs** 45:18
47:8,9
**coughed**
26:17
**counsel** 1:18
16:1,11
29:12 51:6
57:15 63:9
85:10,23
**counsel's**
65:16
**county** 1:7
6:17 8:7,24
10:3,5 11:1
12:7,23
14:9 15:4,9
15:17 16:21
17:20 19:3
19:5,7,11
19:19 20:2
20:7,13
22:14,23
23:9,15,18
23:21 25:24
26:18 31:18
34:16,17,21
35:2,17
36:7,9 37:5
37:9,11,13
38:1 39:5
39:10,11
40:4,16
41:2,6,16
42:10 43:5

**SYRIL THOMAS**

**May 20, 2025**

Page 4

43:13 44:9
44:18 46:1
46:9,14
47:20,22
48:5,21
49:9,16,19
49:23 50:6
50:9,12,14
51:20 52:1
52:1,15,22
52:23 53:1
53:14 54:1
54:13,16,19
55:23 56:12
56:17 57:4
57:7,9,20
60:12,18,22
61:3,5,13
61:15,21,24
62:7,10
63:20,22
64:4,6,18
65:15 66:7
66:13,15
67:3,12,13
67:23 68:1
68:9 69:3
69:13,15,16
69:24 71:9
71:10,13,16
71:18 72:12
72:14,16,18
72:19,23
73:4,9,10
73:24 74:4
75:11,17
76:2,17,21
77:17,19
78:2,5,19
79:5,6
80:13,16,18
81:2,16
83:2,8,10
83:15 85:2

86:2
**county's** 21:9
  21:18,24
  26:5 27:9
  27:19 33:6
  34:23 36:13
  38:9 49:6
  61:2 63:11
  67:3,24
  78:18
**couple** 29:21
**course** 41:24
**court** 1:1
  4:20 6:4
  55:11 85:21
**Courts** 1:15
**covered** 24:9
  75:15
**CPA** 18:20
  18:21,22
**CPE** 18:20
**created** 44:15
**criminality**
  34:11
**crosswalk**
  14:4 28:22
**CSR** 86:8
**current** 9:4
**currently**
  8:15 28:15
  44:6
**cursor** 21:6

————————
**D**
**D** 3:1
**Dart** 1:7 16:3
  60:11
**data** 13:5
  14:13 22:10
  31:4,6 32:6
  50:24 53:10
  70:9 74:24
  76:9 81:6
**date** 7:5 55:6

85:7,17
**dates** 4:3
  29:11
**day** 4:12 6:4
  6:4 86:2
  87:9,20
**days** 24:8
**DE** 2:8,9 4:1
  4:13,21,23
  5:2,4,18
  11:16 13:19
  14:20 15:11
  16:23 17:8
  24:2,6,11
  24:16 26:20
  28:10 31:24
  32:18 34:2
  35:4 36:15
  37:18 38:4
  38:8,10,15
  39:1,13,20
  40:7 41:9
  41:20 42:15
  42:24 43:6
  48:9,23
  50:15 51:8
  51:11,15
  56:21 57:11
  57:13,22
  58:14 61:7
  61:17 62:2
  62:12 63:8
  63:13,23
  64:7,15,22
  65:9,20,24
  66:8,18
  67:7 68:4
  68:11,18,22
  69:5,9,19
  70:2,19
  71:5,24
  72:6,24
  74:6,16
  76:5,23

78:10,12,14
80:19 82:2
82:4 83:19
84:2,5
**deadline** 4:12
**deal** 10:1
**decommissi...**
  8:13 9:15
  10:14 13:12
  14:3 20:20
  22:12 25:2
  25:14 28:20
  31:4 32:8
  32:12 40:12
  40:21 50:24
  58:10,23
  59:1,11,13
  62:18 67:19
  70:12 75:7
  76:13 77:6
  81:9
**decommissi...**
  37:2
**Defendant's**
  3:12 60:1
**Defendants**
  1:9 2:13
**defense** 16:1
  16:11
**definitely**
  84:6
**degree** 18:10
**deliver** 81:13
**demonstrat...**
  32:16 34:9
  34:12
**department**
  8:7,24 13:4
  13:15 15:23
  20:10 22:19
  22:22,22
  23:23 25:7
  25:20,22
  26:7,11

27:16,21
28:4,8
31:18,22
32:11,24
33:19 37:9
39:18 40:24
43:5 49:5
49:13 55:1
56:15,20
58:3 60:22
61:5,15,24
62:10 63:22
64:6,20
66:15 67:6
67:15 68:2
68:10,16
69:3,7,15
71:18 72:18
74:4,23
76:4,21
78:21 79:1
79:5,23
80:9,14,18
81:4,19
83:7
**department's**
  26:1,3
  47:17
**departments**
  14:9 71:20
  71:20 83:3
  83:5,16
**depending**
  47:8
**deposed**
  65:21
**deposition**
  1:12,17 4:1
  6:3,20
  16:11 17:9
  20:12 24:5
  24:9 29:3
  31:1 41:24
  54:18 84:10

85:5,10,20
87:5,8
**depositions**
  1:15
**deputy** 19:19
**describe**
  28:23
**described**
  82:8
**designation**
  54:3
**designee**
  21:18,24
  36:13 78:18
**destroy** 13:6
**destroyed**
  9:18 11:13
  11:18 12:4
  12:10,12
  20:22 38:3
  38:13 39:8
  39:12 40:20
  58:18 70:9
  76:11 82:10
  82:16
**destroys**
  12:15
**destruction**
  39:21
**detail** 14:15
  38:16 82:8
**detainees**
  49:16 60:22
  61:5,15
  62:10 63:21
  65:18 66:15
  69:7 74:22
  81:18
**determine**
  46:23 62:19
  81:10
**develop**
  47:24 48:7
**developed**

SYRIL THOMAS
May 20, 2025

50:1 51:22
**DeVore** 3:6
  4:10,19,24
  24:4,15
  31:17 57:12
  65:7 66:5
  68:21,24
  70:18
**difference**
  35:9,12
**different** 8:18
  8:19 24:12
  27:20 28:6
  41:22 42:18
  44:22 53:24
**difficult** 8:20
  9:2 17:19
  17:22 24:18
  31:7 40:23
  41:1 67:21
  67:23 70:15
**difficulty**
  8:16 60:7
  62:22
**directly** 73:4
**director**
  10:17,18,24
  11:3,12
  15:22 19:6
  44:22,23
  45:20
**disagree**
  65:20
**disburseme...**
  10:1 17:18
  51:2 52:9
  53:16 70:8
  75:2 76:10
  81:7
**disclosed**
  32:19
**discreet** 4:3
**discuss** 77:14
**discussed**

77:15 82:15
**discussion**
  63:14 77:10
**dismissed** 5:8
**dispensaries**
  74:11
**dispensary**
  73:19
**dispute** 23:22
  24:22 25:5
  34:24 35:6
  35:10,13,15
  36:4,5,7,13
  36:17 37:14
  37:16 38:12
  38:17 43:9
  48:5,13,21
  49:2,9,19
  50:9,18
  52:1,3
  54:15,17
  55:23 56:3
  56:12,16,17
  56:24 58:1
  58:4,12
  61:10,13,19
  61:22 62:4
  62:14 64:2
  64:16 65:17
  66:13,22,24
  67:2,10
  68:3,6
  69:17,22,24
  72:2 73:10
  73:13,22
  74:2,9,18
  75:17,21
  77:1 78:2,6
  78:19,23
  79:3,6,8
  80:13,15,17
  80:22 81:16
  81:20
**disputed** 70:6

**disputing**
  37:20 62:24
**District** 1:1,1
  1:14
**Division** 1:2
  67:12,14
  68:1,9,18
  68:23 69:10
  69:10 71:8
  71:12,17,21
  72:21 73:8
  73:15,17,19
  74:13 75:19
  80:18
**doc** 13:17
  41:18 42:12
  65:18 66:15
  82:9
**doctors** 73:24
  74:3
**document**
  6:21 7:2,14
  16:7 17:13
  20:14 21:1
  21:3 22:2
  23:18 32:16
  32:19 34:3
  39:21 43:14
  43:16 47:4
  48:10 54:20
  55:18 60:13
  79:15 80:2
  82:7
**documenta...**
  32:4
**documents**
  12:22 13:17
  14:10 15:17
  15:20,22
  16:10,12,13
  16:15,16,20
  17:1 24:12
  31:13,17,20
  31:21 44:19

47:17 53:13
  82:9,16,20
**doing** 7:23
**dollar** 43:24
  44:5
**dollars** 20:24
  43:10 45:3
  46:24 53:8
  53:10 73:5
**dorms** 77:24
**dots** 10:16
**Downers**
  18:2
**drafted** 23:12
**drug** 3:15
  32:15 34:8
  34:10,12,17
  36:8 44:11
  47:11 48:18
  48:20 49:7
  50:8,13
  77:10 78:4
**duly** 5:20,22
  85:11
**duplicative**
  42:19

————
**E**
————
**E** 2:1,1,9 3:1
  3:8
**e-mail** 7:6
  16:18 17:3
  83:22
**early** 71:22
  72:22
**EASTERN**
  1:2
**EBS** 8:15
  27:10
**education**
  18:18 56:8
  56:14,19
  58:2 75:13
  75:19 76:3

76:18 79:21
  79:21 81:14
  81:14
**Edwards**
  27:11 59:6
  59:8
**eight** 82:11
**eighties** 72:22
**either** 24:23
  25:6 35:7
  36:4,23
  52:9 56:5
  57:1 62:15
  75:23 80:24
**elements**
  79:17
**employee**
  45:14
**employees**
  49:24 51:20
  52:2,5 53:3
  72:15,16
**ended** 13:12
**enhance** 56:8
  56:14,18
  75:13 76:18
**enhanced**
  23:24
**entire** 57:17
**entirely** 5:10
**entitled** 34:8
**entity** 37:11
  39:11 57:10
**entries** 15:5,9
  15:13
**entry** 21:19
**equipment**
  47:6
**essentially**
  37:8 47:5
**establish**
  34:17
**establishing**
  34:11

**estimated**
  49:17
**eve** 4:4
**Everybody**
  71:4 84:1
**evidence** 41:6
  41:16 42:11
  43:2,7,9
  45:8,11
  46:4,6
  50:16 61:21
  62:7 69:20
  80:16,20
  81:2
**exactly** 21:6
  22:12
**exam** 76:20
**Examination**
  3:4 6:5 82:3
**examined**
  5:23 85:12
**exceptions**
  39:22
**Excuse** 30:7
**exhibit** 3:10
  3:12,13,15
  6:19 15:24
  16:1,2 20:5
  20:6,6,15
  21:11 22:15
  32:14 33:23
  43:12 47:16
  47:19 49:22
  51:5,18
  54:6,7,9
  55:19 60:9
  75:10 76:19
  77:8,15
  79:9,14
**exist** 58:21,22
  59:21
**existence**
  59:22
**expand** 63:11

**SYRIL THOMAS**
**May 20, 2025**

Page 6

expansive 64:10
expect 28:7
expectation 28:13
expenditure 14:5 40:17 42:7 43:19
expenditures 7:20,21 8:17 9:3,20 17:17 25:18 27:4,6,13 37:22 38:2 38:23 39:6 40:1,22 41:3 42:7 44:24 45:6 46:5,12,17 50:21 67:19 70:14,16 75:8 81:8
expenses 14:7
explain 52:5
explaining 24:17
explanations 38:17
extensions 4:20
extensively 63:15
eyes 44:16

**F**
facilities 81:18 83:6
facility 12:18 74:13 77:19
fact 3:12 5:6 36:7 60:11
facts 50:16 69:19 80:19
fading 21:21

fair 8:3 20:12 37:17 41:8 41:19,21 42:10 64:18 74:5 82:10 82:18
falls 25:11
familiar 29:6 33:10,19 45:23 71:17 71:19
far 14:2 17:18 27:8 30:15 36:19
feasible 40:4
federal 1:13 7:21 8:5,11 8:21 23:17 23:23 24:24 26:16,18 27:4,7,13 27:15 29:4 31:19,20,22 33:13,15,16 36:20 38:23 39:6,17 40:17 41:7 41:17 42:7 42:8,11 43:3,10 46:13,15,17 46:20 48:22 49:10 50:5 50:13 51:18 52:2,6 53:3 53:8,9,15 53:16 56:8 56:13,18 58:1 60:20 61:3,13,22 62:8,20 63:6,20 64:5,19 65:17 66:14

67:4,14,24 68:14 69:1 69:17 73:5 73:11 74:14 74:21 75:13 76:1,17 77:18,18,22 78:3,20 79:4,6
federally 74:4
feel 7:24
felt 30:20
few-minute 70:17
filings 55:11
finance 18:16
financial 8:5 8:6 10:13 14:13 19:6 52:23 60:20 61:3,13,23 64:5,19 67:4 68:14 69:1 78:20 83:2
find 24:12 46:3,5 55:12
finding 60:7
findings 46:16,18
fine 35:17 39:23 42:24 70:19 78:13
finished 78:9
fired 53:7
firing 53:18
firm 19:13
first 3:9 5:20 5:22 7:13 7:15 24:9 29:16 85:11
fiscal 27:4
five 51:9 67:8

77:23,23
five-man 77:24
five-minute 78:7
fixed 47:5,6
Florida 34:16
focal 49:7
focus 18:16 19:18
focuses 19:14
focusing 19:16
following 1:18
follows 5:24
fool 65:13
foregoing 85:5,14 87:4,7
form 13:19 28:10 31:24 35:4 36:15 37:18 38:4 39:1,13 48:23 58:14 62:2 72:24 74:6,16
former 10:24
forth 87:6
found 13:17 49:17
Foundation 48:19 50:3 50:7 51:23
frame 8:13 9:12,18 23:5 38:4 40:1 50:24 59:11 64:9 75:4 76:13
front 5:9 6:22 31:13 55:10 68:24

full 55:8
fund 40:17 71:10
funded 34:20 35:2 71:13 71:16 74:5 74:14
funding 26:15,18 34:7,19 35:1 36:8 47:12,23 48:6 49:23 50:6 51:20 52:2 72:15 72:23 75:18 79:16,22 80:3,8,8,12 80:13,17 81:3,5
funds 38:23 50:13 51:23 52:6 53:4 53:15 63:20 67:13,14 72:5,8 79:4 81:17
further 34:2 81:23 83:20

**G**
G 2:3,3
Gateway 48:19 50:2 50:7 51:23
general 10:1 14:15 37:6
generally 82:11 83:14
generate 23:9 28:1
give 12:20 23:2,4 34:4 51:12

glanced 16:4 20:15
go 10:14 11:17 14:16 17:10 27:8 28:3,21 37:15 40:8 47:16,18 54:18 59:18 74:17
goals 34:10
goes 27:12
going 5:9 6:7 6:19 17:8 20:5 36:23 41:22 42:17 42:20 47:10 47:16 51:5 51:18 54:6 60:9 61:22 62:7,8 65:2 65:5,15,22 77:8 79:14 84:3
good 23:3 70:24 83:24
government 10:4 19:4 22:23 26:16 36:12,20 37:11,16 39:7 46:9 46:15,20 47:19 48:22 49:10,20 50:10 51:18 52:15 53:14 62:20 63:6 66:7 67:3 74:15 76:1 77:9
governmen... 19:14,16
graduate

**SYRIL THOMAS**
**May 20, 2025**

Page 7

18:3,9
**grant** 23:17
   23:24 34:7
   43:20 44:10
   45:10 47:10
   49:4,23
   51:19 56:8
   56:13 58:1
   74:21 75:9
   75:13 76:17
   77:18,22
   78:3
**granted**
   34:15
**grants** 24:24
   34:15 73:5
   75:3 77:3
   79:19
**great** 38:16
**Grove** 18:2
**guess** 71:15
**Guzman**
   10:21 11:5
   11:12,19,21
   12:1
**Guzman's**
   29:4,8

**H**

**H** 3:8
**half** 11:8
**handwriting**
   55:11
**hard** 8:10
   9:12,17
   10:11 12:15
   14:2 17:15
   19:1 20:21
   22:6 25:3
   29:1 31:7
   32:6 40:10
   42:6 45:16
   46:22 51:1
   52:10 54:21

55:9 58:17
   67:16 70:7
   75:1 76:9
**hard-copied**
   60:3
**health** 49:5,6
   54:4 60:20
   74:1 79:17
   79:20,20,21
   79:23,24
   80:9 81:13
   81:14,14
**heard** 33:7,8
   33:10,17
**hearings** 5:5
**help** 10:16
   13:18 27:13
   29:2
**hereinabove**
   85:17
**hesitate** 73:2
**high** 18:1
**highlighted**
   6:24 7:1
**Hillsborough**
   34:16
**hired** 49:24
   51:21 52:2
   52:5,16
   53:3,7
**hiring** 53:5
   53:15,18
   54:3
**historical**
   10:8 13:2
   13:17 14:10
   14:16
**Historically**
   55:16
**history** 9:4
**hit** 35:21
**HIV** 74:23
**HIV-related**
   79:21 81:15

**hold** 4:22,24
   18:24
**holds** 83:2
**holiday** 4:5
**honest** 23:2
**hours** 30:24
**house** 25:11
**houses** 83:2
**housing** 69:6
**human** 53:6
   53:13 79:24
   80:9

**I**

**identification**
   23:17,24
**identify** 8:20
   8:22 9:2,11
   9:20 13:5,9
   14:4 16:20
   17:16 20:19
   22:6 23:4
   25:16 27:6
   27:13 28:24
   29:2 31:10
   52:9 54:2
   70:13,15
   75:8
**identifying**
   32:10 76:14
**ill** 49:13
**Illinois** 1:1,8
   2:5,11 18:8
   18:13 34:21
   35:3 85:1
   85:21 86:2
**impersonal**
   45:12,15,17
**implemented**
   56:7,14
   58:1
**important**
   46:3
**improper**

5:10
**improvement**
   80:1
**in-jail** 48:1,7
**include** 83:5
**including**
   4:15 38:17
   63:14
**inclusive** 64:9
   87:6
**indicate**
   31:18
**indicating**
   31:21 71:6
**indirect**
   45:18
**individual**
   65:12
**information**
   8:10 9:7,14
   9:17 10:8
   10:16,19,20
   12:10,15,21
   13:8,22
   14:13,17,19
   16:4 17:11
   17:14,15,17
   22:4,13,15
   24:23 25:2
   25:4 27:10
   28:13,15
   29:2,2 31:3
   31:7,9 32:6
   36:19 39:12
   39:14 42:6
   45:14 46:6
   52:11 53:8
   56:5 57:1
   58:4,7 59:8
   59:15 60:7
   62:5 70:8
   70:13 75:2
   76:8,9
   83:15

**infrastruct...**
   47:7
**initially**
   24:16
**inmate** 23:17
   23:24
**inmates**
   73:19
**intent** 43:23
   45:2 46:8
**interested**
   85:22
**internal** 27:5
**internally**
   9:10,21
**interpretat...**
   45:17
**interpreted**
   44:7
**interrogato...**
   5:23 85:12
**investigate**
   8:2,5 10:5
   21:19 22:1
   23:11
**investigation**
   52:4,5
   58:11 74:20
**invoices** 9:20
**issue** 4:14
   82:15
**issues** 4:2
**item** 9:19
**items** 13:7
   45:1
**iterations**
   65:4

**J**

**jail** 3:15
   32:15 34:6
   34:9,11,18
   36:9 44:12
   47:11 48:19

49:16 50:14
   67:12 73:9
   77:11,19
   78:5
**jail-based**
   34:12
**jails** 34:13
**January**
   47:13
**Jason** 2:9 3:6
   29:23
**JD** 27:11
   59:6,8
**JDE** 27:12
   59:9,9,10
   59:12
**jdevore@d...**
   2:12
**jjohnson@...**
   2:12
**job** 33:12
**Johnson** 2:9
   5:19 31:17
**JORI** 2:9
**Jorie** 29:23
   30:4
**journal** 15:4
   15:9,13
**judge** 29:4,8
**July** 47:12
**justice** 25:7
   25:20,22
   26:1,3,7,11
   32:24 33:3
   33:7,18,20
   33:20 34:7
   34:14 47:17
   47:24 48:7
   77:9

**K**

**K** 85:2
**KAVARIAN**
   1:4

**SYRIL THOMAS**
**May 20, 2025**

Page 8

10:8 15:21
44:14 83:11
**keeping** 25:2
**keeps** 15:4,9
15:14
**kin** 85:23
**kind** 7:16
15:6 17:12
17:18,22
22:3,6,13
25:16 28:16
33:14,21
45:18 82:13
**know** 4:4 5:2
5:4 10:21
10:23 12:16
15:21 16:15
21:11,12
22:3,8,9,12
22:16 23:3
23:6,8,14
26:3,5,9,24
27:17 28:18
29:10,17,20
29:21 30:5
30:18,19
32:3 33:11
33:12,16
44:17 45:16
45:16,19
47:2 52:16
53:1,8,19
53:23 54:5
57:14 59:2
64:11 66:1
71:14 72:7
73:3,16,17
76:17 83:9
**knowing** 55:6
**knowledge**
15:2 22:8
22:20,21,23
25:24 26:1
44:20 66:6

66:6 67:13
69:16
**knowledge...**
45:21

_____ **L** _____

**lack** 57:14
66:22
**large** 55:15
55:15
**larger** 63:4
**late** 71:22
72:22
**law** 73:15
**Lawrence**
19:20
**ledger** 10:1
14:15
**ledgers** 15:4
**left** 19:7,11
33:1
**legal** 42:15
43:6 68:4
**lens** 45:17
**let's** 5:11
51:12 70:17
**library** 73:15
**License** 86:8
**light** 4:8
**limited** 13:11
22:22 48:18
**line** 3:20 45:1
**list** 16:13
27:22,23
28:1,2
**listed** 46:7
55:24
**little** 70:23
73:2
**LLC** 2:8
**local** 19:17
**locate** 13:22
**long** 6:15 7:7
42:19 46:23

51:8 74:16
**longer** 59:4
64:24
**look** 17:8
20:13 22:6
25:3,16
28:3,21
31:7 53:12
54:19,21,23
81:8
**looked** 7:13
16:21 17:13
43:16 55:7
55:9 79:15
**looking** 7:20
31:2,15
54:7 59:19
**loose** 82:13
**lot** 24:12 82:5

_____ **M** _____

**M** 1:13 85:6
86:7
**Madam** 20:1
**mainframe**
8:12 9:14
10:12 22:11
25:1 28:20
28:21,24
31:4 32:7,9
37:2 40:10
40:21 50:23
58:9,17,21
59:11,13,15
59:21 62:18
62:18 63:4
63:12 67:18
70:11 75:5
77:4,5 81:9
**maintain**
50:8
**maintained**
59:5
**maintaining**

59:4
**maintenance**
79:4
**making** 40:23
70:15
**management**
83:6
**manner** 77:4
**March** 8:8
19:23 29:5
39:18 41:18
42:13 43:3
43:4 69:3
69:14
**master's**
18:15
**math** 82:13
82:13
**matter** 41:21
**MBA** 18:10
18:12,14,17
**mean** 7:18
15:15 21:10
23:2 33:10
40:19 43:22
44:1 45:12
46:23 47:3
57:16 58:24
63:14,14,17
**means** 21:12
23:6 44:3
45:13 47:5
**meant** 21:19
22:1
**medical**
73:20 74:12
**meet** 29:12
29:18,21,22
30:3,6,8
**meeting**
29:16
**meetings**
15:5,10
**memory**

30:14
**men** 50:5
**mental** 79:20
81:13
**mentally**
49:13
**mention** 80:2
**mentioned**
7:10 10:12
12:4 13:6
13:14 14:12
17:12 25:10
31:2 32:3
37:21 45:5
46:11 50:18
52:8,21
56:4 62:16
63:1 67:16
70:7 74:24
75:22 77:2
80:23 81:6
**mentioning**
58:5
**met** 29:14,15
29:23 30:16
**metropolitan**
34:13
**middle** 17:9
**mind** 19:1
35:12 44:14
83:11
**minor** 78:24
**minus** 55:10
**minutes**
42:22 51:9
66:10
**mischaract...**
50:15
**modality**
77:23
**model** 34:12
34:17,20
35:2 47:20
**modification**

73:12
**money** 17:20
27:15 31:19
35:21 43:3
45:8 46:10
46:13 56:18
62:9,20
63:7 65:17
66:14 67:24
69:17 75:24
76:2 81:11
**Monroe** 2:10
**month** 8:1
**Morrissey**
2:3,3,4 3:5
4:10,17,22
4:24 5:3,13
5:17 6:2,6
11:20 14:23
15:16 17:6
17:24 24:4
24:7,14,19
26:23 28:17
32:23 34:22
35:8 37:3
37:24 38:6
38:9,11,19
38:21 39:4
39:16 40:3
40:14 41:13
42:3,23
43:1,11
48:15 49:3
51:4,7,17
54:9,10
57:2,12,18
57:23 58:20
59:14 61:11
61:20 62:6
63:2,10,18
64:3,13,17
65:7,14,22
66:5,11
67:1,11

**SYRIL THOMAS**
**May 20, 2025**

68:8,13,20
68:21,24
69:6,12,23
70:17,21
71:2,4,7
72:3,9 73:7
74:10,19
76:16 77:7
78:7,11,13
78:16,17
81:1,22
83:20 84:3
**motion** 4:21
**moved** 8:14
59:6,7
**moving** 5:12
**multiple**
38:16 41:9
61:7 66:2

**N**

**N** 2:1 3:1
**name** 6:11
**named** 85:10
**national**
32:15 34:9
34:20 35:2
54:4
**nature** 16:16
31:10 33:12
**nearly** 42:20
49:15
**necessary**
10:15 46:2
**need** 10:6,18
14:16 20:16
49:17 51:8
70:22 79:10
83:23
**needed** 4:14
14:6
**never** 17:3
39:5 65:7
**new** 8:14

9:13 49:23
51:20 52:1
59:6
**nineties**
72:22
**NIU** 18:8
**nobody's**
62:8
**non-capital...**
47:9
**nonprofit**
48:19
**Northern** 1:1
18:8,13
**Notary** 87:24
**noted** 50:22
55:12 75:9
**notice** 3:11
5:1,2 6:3,20
6:22 73:10
**November**
80:3
**number**
33:14
**numerous**
63:13,23

**O**

**O** 85:2,2
**o'clock** 42:21
**object** 4:15
4:23 28:10
32:18,21
72:6
**objecting**
34:2
**objection**
11:16 13:19
14:20 15:11
16:23 24:2
24:5,13,14
26:20 31:24
35:4 36:15
37:18 38:4

38:15 39:1
39:13 40:7
41:9,20
42:15 43:6
48:9,9,23
50:15 56:21
57:22 58:14
61:7,17
62:2,12
63:23 64:7
64:22 66:18
67:7 68:11
69:19 70:2
71:24 72:6
72:24 74:6
74:16 76:5
76:23 80:19
**obtain** 58:12
**obtained**
34:7
**occasions**
63:13
**occurred**
20:17 45:6
56:1,13
58:7
**OCHENK...**
1:13 85:7
86:7
**offered** 69:7
**office** 4:11
10:4 13:15
14:8,12,18
22:16,23
31:16 32:5
37:7 52:13
52:20,24
53:2,17
57:7,24
62:23 63:12
66:12,13
**offices** 57:20
71:19
**official** 86:1

**Oh** 11:8 21:8
51:11 77:14
**okay** 4:1
15:18 16:6
38:8,10
39:20,23
51:9,15
70:24 71:22
73:20 77:16
77:20 78:10
78:14 79:13
82:13,19
83:5,18,24
84:5
**on-site** 79:20
81:13
**once** 19:1
31:8
**ones** 14:14
**onwards** 59:7
**opportunity**
34:4
**Oracle** 8:15
27:10 59:9
**oral** 5:23
85:12
**orally** 6:8
**order** 60:1
83:23
**ordering** 84:2
**originally**
50:4
**outlay** 47:3,5
47:7
**outlying**
82:15
**outside** 10:4
10:6,10
14:8 22:18
40:15 53:2
58:17 68:11
**overcrowdi...**
34:11

**P**

**P** 2:1,1 4:10
4:17 5:13
5:17 6:2,6
11:20 14:23
15:16 17:6
17:24 24:4
24:7,14,19
26:23 28:17
32:23 34:22
35:8 37:3
37:24 38:6
38:11,19,21
39:4,16
40:3,14
41:13 42:3
42:23 43:1
43:11 48:15
49:3 51:4,7
51:17 54:9
54:10 57:2
57:12,18,23
58:20 59:14
61:11,20
62:6 63:2
63:10,18
64:3,13,17
65:7,14,22
66:5,11
68:8,13,21
68:24 69:6
69:12,23
70:17,21
71:2,4,7
72:3,9 73:7
74:10,19
76:16 77:7
78:7,11,13
78:16,17
81:1,22
83:20 84:3
**p.m** 1:16
84:12
**page** 3:20

20:6 22:15
33:23 43:12
47:18,18
49:22 51:5
54:7,8,9,12
55:10,19,19
75:10,11
76:19 77:15
79:9,14,14
**pages** 55:12
55:14 87:5
87:7
**paid** 72:19
**paragraph**
56:6 60:18
79:19,22
**paragraphs**
34:1
**part** 8:16
74:15 79:16
**particular**
8:21 9:17
12:16 13:5
14:5,17
16:23 20:18
20:24 28:22
31:12 46:24
48:10 54:20
71:19 75:3
77:3
**particularly**
4:8
**particulars**
33:16
**parties** 12:14
85:23
**party** 12:17
23:4
**patients**
74:12 76:21
81:18
**Patrick** 2:4
3:5
**payable** 9:24

SYRIL THOMAS
May 20, 2025

Page 10

**payroll** 45:13
45:14
**people** 30:2
52:17 75:18
**percent** 49:17
**performing**
19:17
**period** 7:21
8:9 13:23
21:13,17
31:5 40:5
40:18,20
41:3,7 45:7
45:20 47:12
53:10,15,20
54:2 55:3
58:10 62:17
65:1,10
66:21 68:16
73:9 74:22
78:18 79:1
80:3 81:5
82:6
**periods** 7:17
**person** 21:13
**personal** 45:9
45:13
**persons** 20:9
79:18
**pertaining**
1:15
**phased** 15:6
**phone** 30:9
**physical**
59:24
**physically**
59:21 77:10
**physicians**
54:3 74:12
**Pima** 34:17
**place** 8:13
25:14 53:11
76:12
**plain** 31:9

**Plaintiff** 1:5
2:7
**Plaintiff's**
3:11,12,14
6:22 16:2
60:10
**plan** 43:24
**planning**
83:6
**play** 22:11
**please** 5:14
21:22 42:2
42:4 83:11
**point** 13:11
49:7
**policy** 10:9
10:10 12:13
13:1,6 14:1
20:22 22:11
26:2,4,5,8
27:9 31:6
32:7 37:1
39:22 40:9
51:1 53:11
58:9,19
60:4,6
67:17 70:9
74:24 76:9
81:7 82:7
**position** 46:3
46:9 67:24
83:15
**possession**
52:12,14
**possibly**
45:19
**preceding**
87:7
**Preckwinkle**
20:3
**Preckwinkl...**
57:20,24
**preparation**
12:23 16:11

20:12 29:3
43:16 54:18
**prepare**
29:13 30:17
44:15 45:24
**prepared**
44:21
**prepares**
44:23
**preparing**
30:22,24
**present** 1:17
85:9
**presented**
44:3
**presently**
26:19 27:15
**President**
20:1,3
57:20,24
**president's**
37:6 66:12
66:13
**pretty** 57:16
**previous**
59:10
**previously**
80:23 85:10
**primary**
19:18
**prior** 12:10
32:19 42:5
48:17 65:16
**private** 48:19
73:5
**probably**
42:22 61:8
**problem**
35:18 36:3
50:20
**Procedure**
1:14
**proceedings**
31:16

**process** 23:8
23:18,24
**processed**
49:16
**program** 8:6
8:21,23
13:10 14:17
20:8,9
25:17 27:20
28:7 32:16
34:10 39:17
42:13 43:4
48:1,8
49:15,23
50:4,6
51:20 52:1
60:21 61:4
61:14,23
62:9 64:20
65:18 66:16
67:5 68:15
69:2,7 75:9
77:22 81:3
81:13,21
**program's**
79:18
**programmi...**
49:8
**programs**
8:18 9:2
14:5 20:24
27:7 28:4
28:22,24
31:12 34:13
34:18 37:23
40:23 42:8
46:21 50:22
51:3 81:11
**project** 34:8
34:10 47:8
71:13 79:23
**projects**
17:21
**property**

20:9 79:18
**proposed**
4:11
**protection**
20:8 79:18
**prove** 17:20
36:24
**provide**
10:15 28:12
28:16 31:3
44:11 47:11
75:19 77:22
**provided** 6:4
17:12 48:18
50:4,13
73:24 75:24
**providing**
74:22
**Psychiatry**
49:6,13
**public** 19:7
19:13 49:6
79:24 87:24
**publication**
47:19 49:20
50:10 51:19
77:9
**publicly** 27:3
**publish** 23:12
27:5
**pull** 10:15
13:9 14:5
16:20 31:5
32:10,12
40:12,22
67:19 68:17
70:12 75:7
76:13 81:10
**pulling** 75:10
**purchases**
47:6
**pursuant**
1:13 6:3
85:20

**purview** 9:24
**put** 4:9 14:14
21:6 42:20
**pwm@mor...**
2:6

_____
**Q**
**question** 3:20
15:8 23:1
24:20 25:19
27:17 31:6
31:11 38:20
41:14,15,22
42:2,9,10
42:17,18,21
42:23 63:8
65:3,4 67:8
67:20 70:1
71:15 74:7
**questioning**
32:20
**questions** 6:7
17:22 39:21
59:19 60:8
65:5,24
83:21 85:12
85:16
**quit** 66:1

_____
**R**
**R** 2:1
**RADUNSKY**
2:8
**raise** 72:5,8
**reach** 10:3,6
10:17,18
14:9,24
25:7,21,21
26:13
**reaching**
25:19
**read** 33:24
47:20 87:4
**reading**

**SYRIL THOMAS**
**May 20, 2025**

Page 11

| | | | | | |
|---|---|---|---|---|---|
| 44:13 77:11 | 42:7 45:6 | 25:11,12 | 75:14,20 | 53:21 75:7 | 10:7 |
| **reads** 48:17 | 46:5,12 | 37:1 40:6,9 | 76:4,10,14 | 76:14 81:10 | **responsible** |
| 49:22 | 50:21 51:2 | 53:9 58:8 | 76:18 | **representat...** | 10:20 15:23 |
| **ready** 5:11 | 52:9 53:16 | 58:18 67:17 | **relates** 39:21 | 65:16 | 49:14 |
| 71:4 | 62:17 70:8 | 78:16 85:15 | 68:18 | **representat...** | **restroom** |
| **realized** | 70:14 75:1 | **recorded** | **remember** | 21:9 27:19 | 51:10 |
| 13:24 | 75:8 76:10 | 35:20 | 4:17 77:11 | 33:6 34:23 | **result** 49:23 |
| **Really** 24:6 | 77:3 81:7 | **recordkeep...** | **remote** 85:9 | 37:13 38:9 | 51:19 |
| **realm** 53:5,17 | **receive** 7:4,6 | 10:8 25:10 | 85:15 | 61:2 63:11 | **retain** 10:7 |
| **reason** 23:22 | 7:9 16:7,10 | 75:6 | **remotely** 5:16 | 67:23 | **retained** |
| 34:24 37:15 | 18:12,17 | **records** 8:9 | 5:20,24 | **represents** | 10:11 59:8 |
| 48:13,21 | 26:15,18 | 9:11 11:13 | **renovations** | 52:22 | 60:4 |
| 49:2,9,19 | 29:7,10 | 11:15,18,22 | 78:24 | **request** 3:14 | **retention** 8:9 |
| 50:9 55:23 | 41:7 47:23 | 12:2,4,8 | **repeat** 15:8 | 16:2,24 | 9:4 10:10 |
| 59:12 72:2 | 48:6 54:24 | 36:12 37:15 | 21:22,23 | **requested** | 12:13 13:1 |
| 73:2,10,13 | 73:20 | 37:16 38:3 | 26:17 41:15 | 22:5 | 13:6 14:1 |
| 73:22 74:2 | **received** 7:2 | 38:13 39:7 | **rephrase** | **research** 9:21 | 14:13 20:22 |
| 74:9,18 | 16:8,12,13 | 40:19 52:17 | 38:19 | 13:2,8,13 | 22:10 25:11 |
| 75:17,21,22 | 16:17 19:1 | 52:20,23 | **replace** 78:21 | 13:21 17:16 | 25:12 26:1 |
| 78:19,23 | 23:16 24:24 | 53:1 54:1 | **report** 27:2 | 27:18 31:11 | 26:3,5,7 |
| 79:3,6,8 | 27:6,15 | 58:8,12,16 | 46:15 59:10 | 51:1 62:19 | 27:9 31:6 |
| 80:13,16,22 | 31:19,22 | 62:17 63:6 | 77:4 | 74:20 75:19 | 32:6 37:1 |
| 81:16,20 | 35:20 36:2 | 67:16 75:1 | **reported** | **researched** | 40:9 50:24 |
| **reasons** 59:13 | 36:19 41:17 | 76:2 83:2 | 46:17 | 9:10 | 53:10 58:9 |
| **recall** 7:5 | 42:12 43:3 | **reduce** 34:10 | **REPORTER** | **researching** | 58:18 60:4 |
| 16:16 29:14 | 43:10,10 | **REFEREN...** | 5:15 6:1 | 9:16 25:15 | 60:6 67:17 |
| 30:1,13 | 45:9 46:14 | 3:9 | 54:8 70:24 | **Reserved** | 70:9 74:24 |
| 55:3 | 50:21 56:18 | **referred** | 71:6 | 84:5 | 76:9 81:6 |
| **recap** 65:11 | 60:20 61:4 | 85:18 | **reporting** | **resources** | 82:7 |
| **receipt** 8:5 | 61:14,23 | **reflect** 43:19 | 19:6 27:1 | 20:21 53:6 | **retirement** |
| 23:23 41:3 | 62:5,9,20 | 53:2,14 | 27:12 52:10 | 53:13 | 19:21 |
| 44:24 53:14 | 63:21 64:5 | **reflected** | 58:17 59:9 | **respect** 43:7 | **review** 12:22 |
| 69:1 74:14 | 64:19 65:17 | 76:19 | 59:18 60:2 | **respond** 17:7 | 13:3 29:4 |
| **receipts** 8:11 | 66:14 67:4 | **refresh** 17:4 | 60:3 70:12 | 36:16 38:5 | 34:4 |
| 8:18,21 | 67:14 68:1 | 30:14 | **reports** 9:12 | 42:4 60:7 | **reviewed** |
| 9:19 10:2 | 69:17 73:11 | **regarding** | 10:15 13:9 | 64:14 67:21 | 17:1,11 |
| 17:18 25:17 | 78:20 79:4 | 32:20 38:17 | 13:23 14:6 | **response** 3:12 | 60:13 |
| 27:6,14 | **receiving** | 48:10 68:22 | 14:14 20:17 | 17:13 23:3 | **right** 4:5 |
| 32:10 33:13 | 4:18 | **related** 7:20 | 25:16 27:5 | 41:23 60:10 | 15:24 23:4 |
| 36:20,23 | **recollection** | 8:10,18,24 | 29:1 31:5 | **responses** | 26:10 33:4 |
| 37:22 38:2 | 17:4 55:17 | 17:23 56:9 | 32:5,10,13 | 64:10 66:3 | 33:9 38:19 |
| 38:23 39:6 | **record** 4:9 | 56:14,19 | 36:22 40:12 | **responsibili...** | 52:20 57:4 |
| 39:16 40:1 | 9:3 12:13 | 58:2 70:14 | 40:22 42:5 | 25:12 | 69:9 71:2 |
| 40:17,22 | 13:1 25:1 | 70:16 75:3 | 45:1 46:16 | **responsibili...** | 72:13 75:15 |

**SYRIL THOMAS**
**May 20, 2025**

Page 12

81:22 83:20
**Robbin** 1:13
5:13 70:22
83:22 84:4
85:6 86:7
**Rogers** 1:4
16:3
**rooms** 76:20
**rotate** 54:11
**Rule** 3:11 6:2
6:20,22
**Rules** 1:14
85:20

**S**

**S** 2:1 3:8
**SATC** 50:1
**saw** 7:13
**saying** 24:18
41:1,2
**says** 13:6
20:8,10
23:16 32:24
33:3 44:1
47:22 60:18
60:23 79:22
80:8
**scanned**
54:20
**schedule** 27:3
46:17
**school** 18:1
**scope** 26:20
68:11 72:6
**screening**
44:11 47:11
**second** 3:14
16:2 79:19
**section** 6:24
77:12 81:12
**see** 6:21 7:1
9:6,10 13:2
13:22 14:6
14:10 20:8

21:1,8,8
22:6 23:16
23:18,19,19
32:16,24
33:2,3,24
35:21 43:14
43:21 47:13
47:22 48:2
48:3 53:12
54:11,12
55:13,19,21
56:10,11
60:18,24
77:21,24
80:5,6,10
**seeing** 79:11
**SEFA** 46:18
**selected**
47:23 48:6
**send** 83:22
**sent** 24:8
**sentence**
23:19 48:17
49:4,12,22
**separate** 26:6
26:7 68:22
**September**
5:1
**series** 6:7
**service** 44:11
69:7
**services** 8:6
27:20 28:7
39:17 42:13
43:4 45:9
45:12,13,15
45:17 48:18
49:5 50:4,7
54:4 56:9
56:15,19
58:2 60:20
60:21 61:4
61:14,23
62:9 64:20

65:18 66:16
67:5 68:15
69:2 74:1
75:14,20
76:4,18
79:17,22,24
79:24 80:9
81:3,15
**set** 5:8 44:15
64:10 87:6
**setting** 3:15
32:15 34:9
44:12 47:12
**seven** 51:13
55:22 82:11
**share** 16:1
79:10
**shared** 16:4
17:2 36:12
**sheriff** 1:7
20:9 60:11
72:4
**sheriff's**
14:18 72:12
72:15
**short** 4:4
**shorthand**
85:13
**show** 6:19
15:24 31:17
31:20,21
54:6 60:9
63:6
**showcase**
62:21
**showing** 20:5
32:14 33:23
43:12 55:8
**side** 35:19
36:24
**signature**
85:19 86:1
**Sikich** 19:14
19:18

**similar** 16:8
16:15
**similarly** 36:4
**sinks** 78:22
**sir** 6:7,13,21
17:7 34:1
42:4 43:12
52:12
**site** 47:23
**skim** 43:18
60:16
**skimmed**
60:15
**smooth** 42:1
**social** 79:20
81:13
**software**
59:24
**sorry** 12:18
15:6 21:21
24:21 26:17
26:21 40:8
41:15 54:8
59:12 79:12
**sort** 31:10
**sounds** 63:8
**South** 2:4
18:2
**space** 78:4
**speak** 9:6,8
53:20
**speaking**
24:14 37:5
37:6 44:18
57:4 82:11
83:14
**specific** 7:5,9
8:20 12:17
12:18,21
16:16 17:16
21:7,7
27:18 28:4
28:24 29:1
29:11,17

31:10 46:20
55:6,12
67:19 70:15
75:9 76:14
81:3
**specifically**
9:15,16,20
13:9 30:5
33:11 40:24
70:13 76:3
81:11
**specificatio...**
45:21
**specifics**
73:17
**speculate**
21:16 44:7
**speculation**
15:11 24:2
48:11,24
71:24 74:6
76:23
**spend** 20:16
30:24 43:23
43:24 44:5
45:2 46:8
46:22,24
47:1
**spending**
20:17
**spent** 17:20
20:23 30:22
35:22 36:2
36:21 45:3
46:6,10
63:7 70:5
81:11
**spoke** 11:7
**staff** 9:24
49:23 50:2
51:20,23
52:1 53:15
74:12
**start** 7:23

19:3
**starting** 19:5
**state** 19:17
85:1
**statement**
35:13,14,21
48:5,22
49:10,20
50:10,12
58:12 62:24
70:1
**statements**
3:12 9:19
29:4,8
37:14,16
38:13 60:10
**States** 1:1,14
**stenographer**
85:14
**steps** 8:4
21:24
**stipulates**
60:19
**store** 60:5
**straight**
31:15
**Street** 2:10
**Strike** 15:1,3
23:7 26:14
35:11 71:11
**structural**
78:4
**structure**
77:22 83:10
**stuff** 17:8
50:19
**Subject** 87:6
**submit** 27:23
**submitted**
85:20
**SUBSCRI...**
87:19
**substance**
34:19 35:1

**SYRIL THOMAS**
**May 20, 2025**

49:15,18,24
51:21 79:17
**substantiate**
36:1 59:19
**sufficient**
30:20
**Suite** 2:10
**sunset** 59:2
**support** 50:2
51:22
**supporting**
75:2
**supposed** 4:1
46:15
**Supreme**
85:21
**sure** 39:14,20
45:3 55:5
70:21
**swear** 5:13,15
**sworn** 5:20
5:23 85:11
87:19
**Syril** 1:12 3:1
5:21 6:12
17:10 51:8
57:6 84:8
87:15
**system** 8:12
9:4,13,14
10:13,13,15
13:12 14:3
14:4 17:15
22:11 25:1
25:2 28:3
28:19,20
31:4 32:7
37:2 40:10
40:21 50:23
53:23 58:9
59:6,11
67:18 70:11
75:5,6
76:12 77:5

81:9
**systems** 8:14
8:17 13:8
20:20 25:14
53:11 59:12

— T —

**T** 3:8 4:22,24
5:3 38:9
67:1,11
68:20
**take** 12:14
18:20 21:24
51:6,7
70:17 78:7
**taken** 1:12
6:3 8:4
51:16 71:3
78:15 85:6
85:13 87:8
**talk** 29:15
**talking** 38:6
39:15,16
52:12,14,19
57:19 75:12
77:17
**talks** 51:19
77:21 79:16
79:19,20
81:12
**Tampa** 34:16
**technical**
50:1 51:22
**tell** 8:4 16:13
21:14 22:18
27:19 28:6
36:20 52:17
**ten** 13:7
25:13,13
41:24 65:3
66:10 70:10
**ten-plus** 61:8
**ten-year** 10:9
14:1

**tendered**
34:4
**term** 46:21
**termination**
53:5
**test** 19:2
**testified** 5:24
17:3 24:11
66:21 82:21
**testify** 16:21
**testifying**
12:23 57:8
57:17 60:14
63:9
**testimony**
13:18 29:13
43:17 50:15
82:5
**tgm@morr...**
2:6
**Thank** 6:1
47:15 51:14
61:1 71:1
80:7 82:1
84:8,9
**Thanks** 51:15
**therapeutic**
49:24 50:8
51:21 77:23
**thing** 20:19
36:11 59:24
**things** 31:8
36:1 40:15
53:24 67:22
**think** 7:16
8:3 30:1,1
30:11 55:4
55:4 57:11
65:3 66:8
66:20 78:9
**third** 12:14
12:17 34:20
35:2 47:23
47:23

**Thomas** 1:7
1:12 2:3,3
3:1 5:21
6:12,21
22:21 24:20
25:19 26:24
38:22 43:2
44:18 47:13
52:19 54:12
57:6,19
58:11 60:9
63:3,10
66:12 69:13
71:8 80:5
81:24 87:15
**thought**
20:21
**three** 4:19
19:15 55:16
**three-year**
56:8 75:13
80:3
**time** 4:14,15
7:9,13,15
7:17,21 8:9
8:13 9:12
9:18 10:14
11:7,23
12:16,20
13:23 17:21
21:13,17
23:5 24:18
27:24 28:19
30:10,13,16
30:19,21
31:5 38:4
40:1,5,11
40:18,20
41:3,7,11
45:6,20
46:22 50:24
53:10,15,20
54:2 55:3
57:17 58:6

58:10 59:11
62:17 64:1
64:9,15
65:10 66:21
66:23 68:16
73:9 74:22
75:3,6
76:13 77:5
77:5 78:11
78:18 79:1
81:24 82:6
85:7,17
**times** 4:3,4
4:10,11
29:12,14,15
29:17,21
38:16 41:10
41:24 61:8
61:8 63:24
65:3
**title** 6:13 16:3
**titled** 16:2
32:14
**today** 24:10
32:20 37:10
**toilets** 78:22
**tomorrow**
83:22 84:4
**top** 33:1,24
34:1
**topic** 8:2 9:7
9:22 10:5
12:24 13:18
14:10 16:22
38:7,7 41:4
45:24 60:14
68:14,24
78:19 79:2
**training**
44:11
**transaction**
14:15 81:10
**transactions**
67:20 70:14

76:14
**transcript**
87:5,8
**transition**
11:10
**treat** 74:12
81:18
**treatment**
3:15 32:15
34:9,12,18
34:20 35:1
44:11 47:11
48:1,8,18
48:20 49:7
49:18 50:8
50:13 74:22
76:20 79:24
**treatments**
36:8 77:10
78:5
**tremendous**
82:8
**tried** 18:24
65:11
**true** 13:15,16
15:10 24:7
38:1,24
50:14 56:15
66:17 67:2
71:23 85:15
87:7
**try** 9:6 13:21
65:12,13
**trying** 8:2,22
20:19 57:15
66:1 67:22
**Tucson** 34:17
**turning** 79:9
**two** 8:14 11:6
19:15,21
23:20 24:8
27:11 30:2
34:1 53:19
53:24 59:8

**SYRIL THOMAS**
**May 20, 2025**

Page 14

type 24:5
types 9:3
  28:6
typically
  46:19 47:7

**U**
U.S 32:24
  33:19 51:24
  79:23 80:9
unable 10:14
  75:7
uncover 52:4
  74:21
undersigned
  85:13,22
understand
  6:9 15:13
  22:24 23:1
  24:20 31:3
  37:10 57:8
  57:19 63:16
  71:15 73:21
understand...
  24:18 27:9
  39:15 66:8
understood
  31:8 69:5
undisputed
  60:23
unemotional
  42:1
unfamiliar
  33:21
unfortunat...
  9:13 10:16
  22:19 53:21
United 1:1,14
University
  18:8,13
unsure 7:8,17
  70:5
use 32:18
  34:2 48:10

51:10 59:3
———
**V**
vague 36:15
validate
  17:14,19
  20:17,23
  22:3,10,13
  22:14 24:23
  25:3,5 35:7
  35:14,19
  36:6,18
  37:21 38:1
  38:18,22
  39:3,5,11
  39:24 40:4
  40:13,17
  41:3,5,12
  42:6 45:5
  46:6,11
  50:20 52:11
  56:4 57:1
  58:6 60:8
  62:15 68:7
  70:4 75:23
  77:2 80:23
  81:8
validation
  35:22
various 16:12
verify 53:21
versus 8:19
  16:3 38:17
  60:11
**Virtually**
  30:9
vocational
  79:21 81:14
**VORE** 2:8,9
  4:1,13,21
  4:23 5:2,4
  5:18 11:16
  13:19 14:20
  15:11 16:23

17:8 24:2,6
  24:11,16
  26:20 28:10
  31:24 32:18
  34:2 35:4
  36:15 37:18
  38:4,8,10
  38:15 39:1
  39:13,20
  40:7 41:9
  41:20 42:15
  42:24 43:6
  48:9,23
  50:15 51:8
  51:11,15
  56:21 57:11
  57:13,22
  58:14 61:7
  61:17 62:2
  62:12 63:8
  63:13,23
  64:7,15,22
  65:9,20,24
  66:8,18
  67:7 68:4
  68:11,18,22
  69:5,9,19
  70:2,19
  71:5,24
  72:6,24
  74:6,16
  76:5,23
  78:10,12,14
  80:19 82:2
  82:4 83:19
  84:2,5
vs 1:6

**W**
W 2:4
wait 5:8
waiting 5:11
waived 85:19
Waldren

24:8
want 4:5,6,7
  4:9 11:6
  18:23 21:15
  23:2,2 37:4
  39:14 42:18
  44:7 70:20
  73:5 76:5
  84:6
wanted 47:1
wasn't 24:16
  32:19 39:20
  46:2
way 9:16
  25:15 27:11
  40:16 41:2
  41:5,12
  42:1 46:7
ways 41:22
we'll 51:12
  83:22
we're 4:8
  14:13 39:15
  39:16 65:22
  68:17 84:3
we've 8:14
  27:3 29:15
  36:12 65:3
week 4:15 7:8
  7:10 29:9,9
weekend
  83:24
weeks 7:24
went 5:1,2
  19:7 24:9
  66:9
West 2:10
Western 2:4
Wilson 19:20
witness 4:6,7
  5:7,10,14
  5:16,20,22
  11:18 13:21
  14:22 15:13

17:11 26:22
  28:12 32:2
  34:6 35:6
  36:17 37:20
  39:3,24
  40:9 41:12
  43:9 48:13
  49:2 50:18
  51:6,9,14
  56:24 58:16
  61:10,19
  62:4,14
  64:2,8,16
  65:2 66:24
  67:10 68:6
  69:22 70:4
  72:2,8 73:2
  74:9,18
  76:5,8 77:1
  80:22 82:1
  84:9 85:6
  85:11,17,19
  86:1 87:1
witness' 66:4
women 50:5
work 9:21
  11:2,5 19:9
  74:3
worked 11:11
  19:5,10,13
  19:16
working 19:3
  19:20
wouldn't
  4:21,23
  73:16

**X**
X 3:1,8

**Y**
yeah 5:3
  12:18 13:1
  19:1 23:19

24:21,21
  36:17 37:20
  39:24 41:12
  43:21 44:20
  48:13 49:2
  52:3,16
  55:9,22
  56:24 60:15
  61:19 62:4
  62:14 65:9
  73:22 74:2
  84:6,7
year 6:16
  11:6,8 18:3
  18:9 27:4
  34:14 46:22
  47:2 65:12
  82:22
years 8:19
  11:5 13:5,7
  19:15,15,21
  21:15 25:13
  25:13 27:11
  38:14 59:8
  59:10 60:5
  70:10 82:11
  82:19
yep 23:20

**Z**
Zoom 1:12,15
  85:5

**0**
084-002522
  86:8

**1**
1 3:10 6:19
  12:24 13:18
  16:22 41:4
  45:24 60:14
  78:19 79:2
  87:5
1,504,438

**TOOMEY REPORTING**
**312-853-0648**

**SYRIL THOMAS**
**May 20, 2025**

80:4,12
**1:00** 4:2
**10** 3:15,20
  32:14 33:23
  47:16,18,19
  49:22 51:18
  68:9,19,23
  69:10 77:8
  77:15 79:9
  79:14
**10257** 2:4
**13** 54:9 55:19
  75:10 76:19
**13th** 29:5
**14** 19:6
**15** 3:13 19:7
  19:7 42:22
**15th** 80:3
**18** 51:5
**19** 21:11
  68:16
**1980** 71:22
**1987** 34:6
**1988** 7:21
  28:19 34:18
  34:24 36:8
  40:2 41:18
  42:13 43:3
  47:12 48:6
  51:24 64:9
  66:21 69:4
  69:14 74:13
  77:17 78:3
  79:2 82:6,9
  83:10
**1989** 43:13
  44:9 47:10
  60:19 61:3
  61:12 62:1
  62:11 63:7
  63:20 71:9
  71:13
**1990** 21:1,3
  21:16 22:1

22:15 23:8
23:12,22
47:13 64:4
64:18 65:8
65:23 66:14
**1990s** 71:22
**1991** 20:7,13
  21:11,19
  22:2 23:8
  23:13 55:20
  55:21,24
  56:6,13,18
  58:1 75:12
  76:1 80:4
**1992** 7:22
  39:19 40:2
  41:19 42:14
  43:4 54:13
  54:16,23
  55:13 56:1
  56:7 58:13
  60:19 64:9
  66:21 69:4
  69:15 71:9
  71:13 74:14
  75:11 79:16
  82:6,9
  83:10
**1993** 80:4
**1995** 82:16
**1997** 18:4
**1999** 27:12
  40:21 42:5
  58:23 59:7
**1st** 8:8 39:19
  41:19 42:14
  43:4 47:12
  47:13 69:4
  69:15

**2**

**2** 56:6
**20** 19:5 60:5
  65:3 82:22

**20-plus** 8:19
**200,000**
  74:21
**2000** 82:17
**2001** 18:10
**2006** 18:11
**2008** 18:23
**2014** 19:5
**2018** 12:1,7
  27:11 59:8
**2023** 12:1,7
  29:5 82:22
**2024** 19:23
**2025** 1:16 3:2
  29:19 44:17
  45:18 86:3
  87:9,21
**220** 50:5
**227,500** 56:9
  56:19 75:14
  76:1,19
**23** 3:2
**230** 2:10,10
**233-7901** 2:5
**23rd** 1:16
  87:9
**24-cv-03739**
  1:5
**25** 82:19
**29th** 86:2

**3**

**3** 3:12 60:9
**3:05** 1:16 4:2
**30** 50:5 82:19
**30(b)(6)** 3:11
  6:2,20,22
**300-4479**
  2:11
**300,000**
  34:15 35:20
  36:2
**312** 2:11
**31st** 80:4

**32** 3:15
**35** 47:18
**36** 49:22
  77:15

**4**

**4** 3:13 15:24
  16:2 20:5,6
  22:15 43:12
  51:5 54:6,7
  54:9 55:19
  75:10 76:19
  79:9,14,14
**4:00** 42:21
**4:10** 51:12
**4:40** 70:20
**4:51** 78:14
**4:55** 78:10,12
  78:14
**42** 3:20
**44,000** 43:21

**5**

**5:00** 4:6
**5:04** 84:12
**55,000** 49:15

**6**

**6** 3:5,10
**6:00** 4:7
**60** 3:12 49:17
**60606** 2:11
**60643** 2:5

**7**

**7** 20:6,6
  22:15 33:23
  60:18
**773** 2:5
**7th** 8:8 39:18
  41:18 42:13
  43:3 69:3
  69:14

**8**

**8** 43:12
**82** 3:6
**87** 87:6
**88** 8:8 11:23
  28:6 31:19
  31:23 38:7
  38:24 39:7
  39:18 52:6
  74:5
**89** 65:19

**9**

**9** 67:12,14
  68:1,18
  69:10 71:8
  71:12,17,21
  72:21 73:8
  73:15,17,19
  74:13 75:19
  80:18
**90** 64:23
**91** 28:6 31:19
  31:23 38:7
  38:24 39:7
  64:24
**92** 8:8 11:23
  28:19 52:7
  64:24 74:5
  79:2
**93,592** 44:10
  45:9
**991** 67:2