# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KAVARIAN ROGERS; | |
| Plaintiff, | |
| v. | Case No. 24-cv-03739 |
| THOMAS DART, SHERIFF OF COOK COUNTY, AND COOK COUNTY, ILLINOIS, | Judge Mary M. Rowland<br>Judge M. David Weisman |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kavarian Rogers, an inmate at Cook County Jail, filed this lawsuit individually and on behalf of a putative class alleging that Cook County Sheriff, Thomas Dart, and Cook County, Illinois (collectively, "Defendants") have not installed grab bars or mounted shower seats in the toilets and showers of Division 9 in the jail, in violation of Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) ("RA"). Plaintiff Rogers has moved for a preliminary injunction. [51]. Rogers requests that the Court (1) direct notice to individuals housed in Division 9 that a shower chair is available upon request; and (2) direct staff to provide a shower chair to individuals with an alert for a cane, crutch, or walker upon request during the pendency of this action. *Id.* at 11. For the reasons explained below, Rogers's motion for a preliminary injunction [51] is granted.

1

## BACKGROUND

Plaintiff Kavarian Rogers is an inmate at the Cook County Department of Corrections who has a diminished ability to move around and stand due to a past injury. Accordingly, he requires accommodations for ambulating, showering, and toileting. Rogers initiated this suit claiming the showers and toilets in housing Division 9 at Cook County Jail, which lack grab bars and a mounted shower seat, violate the ADA and RA. This Court previously certified a Rule 23(b)(2) class and a Rule 23(b)(3) class of detainees in Division 9 who have been assigned a cane, crutch, or walker by a jail medical provider. [101].

Now before the Court is Plaintiff's motion for preliminary injunctive relief, which seeks only interim relief. Plaintiff moved for a preliminary injunction before the class was certified.

## STANDARD

"A preliminary injunction is an extraordinary remedy." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). *See also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged [] except in a case clearly demanding it.") (cleaned up).

The party seeking a preliminary injunction must make an initial threshold showing that: (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) traditional legal remedies would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A.,*

2

*Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Demonstrating a likelihood of success is "a significant burden," though "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id.* (noting that the "better than negligible" standard has been retired). "A 'strong' showing thus does not mean proof by a preponderance…[b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou,* 549 F.3d at 1086.

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id.* "This Circuit employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268, 205 L. Ed. 2d 137 (2019) (internal citations and quotations omitted). Finally, the court asks "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id.*

## ANALYSIS

Defendants challenge Rogers's request for injunctive relief on the grounds that Plaintiff (1) lacks standing; (2) cannot meet the burden for relief; and (3) seeks overbroad relief. The Court addresses each argument in turn.

### I.   Standing and Mootness

Defendants argue that Plaintiff Rogers lacks standing as an individual to pursue injunctive relief and assert that his individual injunctive claim is moot.[1] To establish Article III standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Fox v. Dakkota Integrated Sys.*, LLC, 980 F.3d 1146,1151 (7th Cir. 2020).

When seeking prospective injunctive relief, a plaintiff must show he faces a "real and immediate," and not just a "conjectural or hypothetical," threat of a future violation of his rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation and internal quotation marks omitted); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95–96 (quoting *O'Shea v.*

---

[1] The parties agree the Rule 23(b)(2) class has standing to pursue injunctive relief. *Compare* [112] at 7 ("The Court certified a class for purposes of injunctive relief under Rule 23(b)(2), which independently preserves the case ... [T]he class itself remains a live controversy.") *with* [120] at 5 ("[T]he Rule 23(b)(2) class has standing to pursue injunctive relief."). Accordingly, the standing and mootness dispute concerns *only* Plaintiff Rogers as an individual.

*Littleton*, 414 U.S. 488, 495–96 (1974)). Claims for injunctive relief must remain justiciable throughout the course of litigation. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (explaining a case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"); *Bey v. Haines*, 802 F. App'x 194, 200 (7th Cir. 2020) ("[A] court's power to grant injunctive relief only survives if such relief is actually needed." (internal quotation marks omitted)).

Defendants contend Plaintiff cannot satisfy his burden to establish a real and immediate threat of future injury because he is no longer housed in Division 9 at the Cook County Jail. [112] at 4–5. Plaintiff argues he has standing to seek injunctive relief despite presently being housed in another division and claims two exceptions to the mootness doctrine preserve his claim: (1) the "capable of repetition yet evading review" exception; or (2) the "inherently transitory" exception. [51] at 6–8. Defendants dispute either exception applies to Plaintiff's individual claim here.

It is an "uncontroversial proposition that when a prisoner who seeks injunctive relief for a condition [is no longer subject to said condition], the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (citing *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995)). When Plaintiff Rogers initiated this suit, he was detained in Division 9 of Cook County Jail. [112-1] Rogers Bed Assignment Sheet. Since Plaintiff was transferred out of Division 9 on July 21, 2024—before he moved for preliminary injunctive relief, he has not been subject to the conditions underlying this suit. *Id.* Accordingly, Rogers's individual

claims for prospective injunctive relief are no longer live.

But a named plaintiff may continue to litigate a class action even after his personal claim has evaporated under certain mootness doctrines. *See Wrightsell v. Cook County*, 599 F.3d 781, 782 (7th Cir. 2010) (citing the inherently transitory and capable of repetition yet evading review exceptions). This case meets the requirements of the inherently transitory exception. To fall within this exception, two elements must be satisfied: (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint. *Gerstein v. Pugh,* 420 U.S. 103 at 110 n. 11 (1975). The crux of the "inherently transitory" exception is the uncertainty about the length of time a claim will remain alive and whether authorities have discretion over one's duration or if one knows how long he would be subject to particular conditions is critical. *Olson v. Brown*, 594 F.3d 577, 582–83 (7th Cir. 2010).

Here, Defendants have control over Rogers's housing assignments, and he does not know when he may be transferred to a new housing unit. *See* [112-1] Rogers Bed Assignment Sheet. Thus, the first element is satisfied. Likewise, there is a constant class of disabled inmates in Division 9 who also allegedly cannot use the showers and toilets on the same basis as non-disabled inmates. Accordingly, the second element is satisfied, and the case is not moot under the inherently transitory exception. *Id.* (holding named plaintiff's claim for injunctive relief resolved as to him after he was transferred to another correctional facility and no longer subject to the conditions

that formed the basis of his complaint but not moot for the purpose of class certification).

Because the inherently transitory exception applies, the Court need not address the capable of repetition yet evading review exception.

## II.  Preliminary Injunction Elements

### a.  Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show that he has a "strong" chance of success on the merits of at least one of his claims. *Illinois Republican Party*, 973 F.3d 763. Although a plaintiff need not show that he will win the case, this threshold showing is "a significant burden." *Id.* Plaintiffs have shown a strong likelihood of success on the merits of its claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

To establish a *prima facie* case under either the ADA or the RA, a plaintiff must demonstrate: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity; and (3) the denial was by reason of his disability. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). The standards under the ADA and the RA are functionally identical, except that the RA requires receipt of federal funding, which is not disputed here. Thus, the Court considers both statutes together, referring predominantly to the ADA.

### i.  Qualified Individual with a Disability

For purposes of analysis under the ADA, an individual is disabled if he has a

"physical or mental impairment that substantially limits one or more major life activities" 42 U.S.C. § 12102(1). Plaintiffs have submitted evidence of physical impairments. 29 C.F.R. § 1630.2(h) ("Physical or mental impairment means—(1) Any ... anatomical loss affecting one or more body systems, such as ... neurological [and] musculoskeletal."). For example, Rogers suffered a traumatic brain injury that left him with a seizure disorder and weakness in the right side of his body from his head to his toe ([51-10] Rogers Sept. 19, 2024 Dep. Tr. at 12:20–13:2; [51-13] Andrew DeFuniak, M.D. (Cook County 30(b)(6) Designee) Dep. Tr. at 26:9–27:22.) and class member Michael Washington sustained a spinal cord injury that partially paralyzed the right side of his body and limited his use of his right arm and leg ([120-3] Washington Decl. at ¶ 2). Other Division 9 inmates have similar impairments. *See, e.g.*, [120-2] Johnson Dep. Tr. at 21:17–23 (Darrell Johnson has nerve damage in his lower right leg and numbness extending from his back to his right leg).

These impairments limit Rogers's and the class's ability to shower, stand, walk, and carry out other actions. *See, e.g.*, [50-6] Rogers Aug. 11, 2023 Grievance at 5 (citing lack of balance in the shower and not being "fully able to hold [him]self up"); [120-5] Washington Feb. 20, 2020 Grievance at 1 (stating inability to balance and hold himself up). Caring for oneself, standing, and walking are each considered a "major life activity" under both the ADA and the corresponding regulations. 42 U.S.C § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

That leaves the question of whether these impairments "substantially limited" Plaintiff's and the other class members' ability to stand, walk, and perform major life

8

activities. The governing regulations set forth that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). In fact, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). The evidence weighs in favor of finding that Plaintiff's and the class's impairments substantially limit their ability to conduct major life activities. *See, e.g.*, [51-13] DeFuniak Dep. Tr. at 34:8–13 (some individuals prescribed canes, crutches, and walkers present fall risks); 67:8–20 (individuals presenting with limping appear to have mobility disability).

In sum, Plaintiff and the class members have made a sufficient showing for purposes of preliminary injunctive relief that they are qualified individuals with disabilities.

### ii. Denial of Access to Services Due to Disability

Where correctional facilities provide detainees with the benefit of recreational activities, medical services, and educational and vocational programs, they must do so in a way that does not exclude the disabled members of the detainee population. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). It is well-established that use of showers and toilets are considered "programs or activities" for which accommodations may be required. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (showers are a program or activity within the meaning of the ADA

and RA); *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009) (collecting cases regarding use of showers and toilets as programs or services under the ADA). Indeed, access to "[a]dequate … facilities to wash and use the toilet … are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros*, 684 F.3d at 670 (internal quotation marks omitted).

The ADA and RA require public entities, such as correctional facilities, to "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). A reasonable measure includes designing a building in "such manner that the facility or part of the facility is readily accessible to and usable by handicapped persons." 42 C.F.R. § 42.522(a). A building is "readily accessible" if it complies with ADA and RA accessibility guidelines, compliance with which is required by applicable regulations. *Lane*, 541 U.S. at 532. The appropriate guideline for a particular building is determined by the building's age. If physical construction or alterations begin on or after March 7, 1988, "design, construction, and alterations of buildings" must comply with the Uniform Federal Accessibility Standards ("UFAS" or "the Standards"). 28 C.F.R. § 42.522(b).

Division 9 is subject to ADA and RA accessibility standards that require accessible showers and toilets. Division 9 was built after March 7, 1998 and Cook County received federal financial assistance, so the construction of the building was required to comply with the UFAS. *See* [107] Division IX Blueprint (citing Aug. 4, 1989 as the issuance date of the Division IX general construction permit); [120-1]

*Bennett v. Dart*, 18-cv-04268, ECF No. 199 (confirming receipt of federal grants for various programs between 1989 and 1992). The Standards require an accessible shower to have a mounted shower seat, UFAS § 4.213, and grab bars, UFAS § 4.213. Likewise, the Standards require an accessible toilet to have grab bars mounted near the toilet. UFAS § 4.17.6. Despite the UFAS requirements, neither the shower nor toilets in Division 9 have grab bars nor do the showers in Division 9 have mounted shower seats. [51-3] Sheriff Responses to First Request to Admit ¶¶ 9–12; *see* [51-2] Cook County Responses to First Request to Admit ¶¶ 9–12. Furthermore, no portable shower chairs are offered to individuals housed in Division 9. [51-5] Larry Gavin (Sheriff 30(b)(6) Designee) Dep. Tr. at 33:18–22. Plaintiff and the class members were thus denied access to shower and toilet services in Division 9 because of their disabilities. Even Cook County acknowledges Division 9 is not ADA compliant. [51-12] FY19 Business Case at 2 ("Having no ADA compliant housing other than divisions 8 and Cermak, severely restricts [our] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets and showers.").

Defendants dispute that Plaintiff and the class were denied access to a program or service based on a disability.[2] [112] at 7–8. As an initial matter,

---

[2] Plaintiffs identified multiple instances of "AI hallucination[s]" in Defendants' opposition brief. [120] at 7–8. In at least two citations Defendants directly quote from two cases but those quotes are not to be found in those cases. In one of those cases, it is possible the quote was misattributed to the wrong case, [112] at 12 (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) instead of *Bell v. Wolfish*, 441 U.S. 520, 522 (1979)) and in the other the quote does not appear to exist, [112] at 8 (quoting *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). At best, this reflects careless work and at worst, dishonest work through use of AI. Regardless, the Court admonishes this conduct. The Court notes that new counsel has appeared for Defendants. [133–140].

11

Defendants inexplicably do not address the UFAS and their failure to comply with the requirements. Defendants first argue Plaintiff and the class were not denied access to the shower or the toilet because the ADA and the RA only require reasonable accommodations based on individual assessments, not an individual's "preferences." *Id.* Defendants claim they, along with Cermak Health Services, make an individualized medical assessment of each individual's abilities, assign medical designations, and house inmates based on their designations. *Id.* But this argument relies on Defendants' conclusion that Plaintiff and the class cannot show they are disabled, which the Court addressed above. The Cook County Jail's status quo—no grab bars or mounted shower seats—and the policies in practice—no provision of a shower seat—are not affording Plaintiff and the class equal access to the jail's toilets and showers. *Bowers v. Dart*, 2017 WL 4339799, at *6 (N.D. Ill. Sept. 29, 2017) (holding plaintiff was denied access to prison's toilets and showers where the facilities did not comply with the applicable accessibility standards), *aff'd*, 1 F.4th 513 (7th Cir. 2021).

Next, Defendants senselessly contort Plaintiff's denial of accommodations claim into a "rehabilitative strategy aimed at preserving and improving Plaintiff's mobility." [112] at 8. Without citing to *any* evidence or authorities—either from this case specifically or from the medical field generally, Defendants claim "[o]veruse of assistive devices … in situations where they are not medically necessary … can lead to muscle atrophy, loss of balance, and increased dependency." *Id.* But the evidence in this case contradicts Defendants' unsupported excuse: Plaintiff Rogers's weakness

12

in his right side worsened and he eventually required use of a wheelchair after initially using a cane. [51-13] DeFuniak Dep. Tr. at 27:4–28:1. In any event, regardless of the rehabilitative strategies implemented for disabled individuals at Cook County Jail, that does not absolve Defendants of their statutory obligations to comply with the UFAS.

Finally, Defendants assert several wrong-headed arguments. They claim Plaintiff Rogers never submitted a grievance or ADA accommodation request for a shower chair and thus the record lacks any contemporaneous documentation that he was denied a medically necessary accommodation. [112] at 8. This is just wrong. On May 8, 2022, Rogers grieved the lack of accessible showers in Division 9 and explicitly referenced the lack of a shower chair. [23-7] Rogers May 8, 2022 Grievance at 1. And as addressed above, the lack of compliance with UFAS standards shows denial of reasonable accommodations to access services and programs, including toilets and showers. Defendants also argue Plaintiff fails to demonstrate prison officials acted with deliberate indifference. [112] at 8. But as Plaintiff argues, a plaintiff need not show deliberate indifference when seeking injunctive relief, only when seeking damages for an ADA claim. *See Lacy*, 897 F.3d 862–63.

Accordingly, Plaintiff Rogers and the class have carried their burden to demonstrate a strong likelihood of success on the merits. *See Illinois Republican Party*, 973 F.3d 760, 762–63.

### b. Irreparable Harm and No Adequate Remedy at Law

The second and third threshold showing a plaintiff seeking a preliminary

injunction must make is that he likely will suffer irreparable harm if a preliminary injunction is not granted and that any remedy at law would be inadequate. *Girl Scouts of Manitou*, 549 F.3d 1086. Harm is irreparable if legal remedies available to the movant are seriously inadequate as compared to the harm suffered. *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). Plaintiff Rogers and the class have shown that they have no adequate remedy at law and that they will suffer irreparable harm unless an injunction is issued.

Plaintiff asserts he and the class will suffer irreparable harm absent injunctive relief. [51] at 9–10. According to Plaintiff, individuals who are prescribed canes, crutches, and walkers may continue to fall and suffer physical injuries in the Division 9 showers due to Defendants' decision to house those individuals in a unit with an inaccessible shower room despite knowing those individuals may need accommodations. *Id.* Physical injury can be an irreparable harm. *Woodley v. Baldwin*, 2018 WL 3354915, at *9 (N.D. Ill. June 14, 2018) (finding physical injuries such as bruised and scraped shins, headaches, and eye pain amounted to irreparable harm), *report and recommendation adopted*, No. 18 CV 50050, 2018 WL 3344593 (N.D. Ill. July 9, 2018). Defendants do not dispute the likelihood that a disabled inmate housed in Division 9 may fall and be injured in the showers. [112] at 8–9. Instead, Defendants rely on the fact that Rogers has been transferred out of the division and thus cannot show a continuing or imminent risk. *Id.* For the reasons explained above regarding standing and mootness, this argument is unavailing. Thus, Plaintiffs have shown they will likely suffer irreparable harm before the final resolution of their claims.

Defendants claim monetary damages are adequate to compensate for physical injuries. [112] at 9–10. But courts routinely hold physical injuries are serious harms that money damages cannot adequately remedy, *see Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 453 (7th Cir. 2022) (affirming grant of preliminary injunction), and absent injunctive relief, Plaintiff and the class are susceptible to injuries that may lead to more serious health problems, *see Woodley*, 2018 WL 3354915, at *9 (finding no adequate remedy at law where injuries caused by failure to accommodate disability may lead to deteriorating health conditions). The Court agrees. *See also Lacy v. Dart*, 2015 WL 5921810, at *13 (N.D. Ill. Oct. 8, 2015) ("Although plaintiffs seek to recover damages pursuant to Title II, these damages are not an adequate remedy because they are meant to compensate plaintiffs for past instances of discrimination, but, if rewarded, will do nothing to protect plaintiffs' rights going forward.").

Thus, Plaintiff Rogers and class members have made a threshold showing that they will suffer irreparable harm if the injunction is not granted and traditional legal remedies would be inadequate.

### c. Balance of Equities and the Public Interest

Finally, a plaintiff seeking preliminary injunctive relief must show the balance of harms weigh in favor of preliminary relief and the public will benefit from such relief. *Girl Scouts*, 549 F.3d at 1100. When balancing the harms, this Court must weigh the irreparable harm that plaintiff would endure without the protection of the preliminary injunction against any irreparable harm the defendant would suffer if

15

the Court were to grant the requested relief. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). The higher plaintiff's likelihood of success, the less strong of a showing defendant must make that the balance of harms is in its favor and vice versa. *Id.* For the reasons discussed above, Plaintiff and the class have met their burden to show the balance of factors weighs in favor of granting a preliminary injunction.

Defendants for their part do not seem to know what relief Plaintiffs are seeking and incorrectly construe the requested ultimate relief as the preliminary relief. [112] at 12 (referencing installation of grab bars in all showers and issuance of shower chairs to all detainees as preliminary relief sought). Without a plausible explanation or evidence, they claim requiring Cook County Jail to follow their own policy of making a shower chair available upon request would "destabilize well-established correctional policies and expose the facility to new and unintended harms." *Id.*

The balance of harms weighs in favor of Plaintiff and the class. Plaintiffs face an ongoing inability to shower on the same basis as other inmates and face the risk of physical injury that could exacerbate existing disabilities or cause new health issues. By contrast, the limited nature of the requested relief—that requires Defendants to abide by their own policy—poses minimal harm to Defendants. There is substantial public interest in ensuring correctional facilities abide by their own policies and protecting the federal rights of Rogers and class members to access showers on the same terms as other inmates. *Lacy*, 2015 WL 5921810, at *13

16

### III.    Scope of Requested Relief

Under the Prison Litigation Reform Act (PLRA), prospective injunctive relief must be "narrowly drawn, extend no further than necessary to remedy the constitutional violation, and must use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (cleaned up). Defendants contend the relief Plaintiff and the class seek is overbroad and unnecessary.

Contrary to Defendants' assertions, Plaintiffs are not seeking structural or policy-wide mandates nor would the relief "force the County to undertake significant construction projects, infrastructure retrofitting, and reallocation of resources." [112] at 11. Plaintiffs ask the Court to require Defendants to enforce Procedure 704. Under this policy, the ADA Compliance Officer and Superintendents are obligated to "ensure that shower chairs are available in divisions that house inmates with mobility impairments so that they are provided safe and equal access to showering." [51-4] Cook County Department of Corrections, Procedure 704: Prohibition Against Discrimination on the Basis of Disability Procedure at 5. Where living units do not have fixed shower benches, Procedure 704 requires the living unit officers "shall issue shower chairs to inmates with mobility impairments upon request." *Id.* Plaintiffs ask for nothing further than what Defendants already are obligated to provide.

The Court finds that this is the least intrusive means necessary to correct the harm to Plaintiff.

## CONCLUSION

For the stated reasons, Plaintiff Rogers's motion for preliminary injunctive relief [51] is granted. Effective immediately, the Court orders Defendants to enforce Procedure 704 for class members assigned to Division 9 at Cook County Jail: (1) shower chairs must be provided to mobility impaired detainees upon request; and (2) Defendants must notify inmates that shower chairs are available upon request.

E N T E R :

Dated: August 6, 2025

_____
MARY M. ROWLAND
United States District Judge