IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kavarian Rogers, *individually and on behalf of a class*, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *-vs-* | ) ) | No. 24-cv-3739 |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) ) ) | Judge Rowland |
| *Defendants.* | ) ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Division 9 at the Cook County Department of Corrections is subject to the Rehabilitation Act (RA) accessibility standards that require accessible showers and toilets. Division 9 was built after March 7, 1988 and Cook County and the Sheriff's Office received federal financial assistance, so the construction of the building was required to comply with the Uniform Federal Accessibility Standards (UFAS). UFAS requires an accessible toilet to have grab bars and an accessible shower to have grab bars.

There is no dispute that none of the Division 9 inmate toilets have grab bars nearby. Similarly, none of the showers available to inmates have grab bars nearby.

This case has been certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure "to resolve the issue under Rule 23(c)(4) of whether the toilets and showers complied with the Structural Standards required by the ADA and RA" between May 8, 2022, and the date of entry of judgment. *Rogers v. Dart*, 2025 WL 1359120, at *8 (N.D. Ill. May 9, 2025).

The undisputed record establishes that the showers and toilets do not comply with the applicable structural standards. Therefore, summary judgment should be granted in favor of the Rule 23(b)(3) issue class.

-1-

### I. Background

A general construction permit was issued for Division 9 on August 4, 1989. Plaintiff's Statement of Facts ("PSOF") ¶¶ 5-7; *Rogers v. Dart*, 2025 WL 2239341, at *5 (N.D. Ill. Aug. 6, 2025). This date is significant because, as Car Darr – Vice President of Architecture for Globetrotters Engineering Corporation and Cook County's retained expert in *Hernandez v. Dart*, 23-cv-16970 – explained, it is generally used by the City "to determine which codes to apply." PSOF ¶ 8. On December 4, 1989, Walsh/Newberg, a joint venture, was awarded Contract No. 89-73-262 to construct Division 9. PSOF ¶¶ 9-11. Cook County's Rule 30(b)(6) Designee, Sheena Aikens, confirmed "it does appear that the board approved [on] December 4th, 1989" Contract No. 89-73-262 for Walsh/Newberg to construct Division 9. PSOF ¶ 11.

From 1988 to 1992, federal financial assistance was provided for the benefit of the Department of Corrections. PSOF ¶¶ 12-29; *Rogers*, 2025 WL 2239341, at *3.

Division 9 is comprised of two interconnected three-story towers. PSOF ¶ 33. It has 24 tiers, or living units, and each is substantially similar in all material respects as to structure and build, including the cell layout, toilets, and showers. PSOF ¶ 34. Critical for the class issue here, neither the inmate showers nor toilets have grab bars. PSOF ¶¶ 35-36; *Rogers*, 2025 WL 2239341, at *5.

It is obvious the building lacks accessible showers and toilets. The Sheriff's Divisional Policy revised in November of 2000 states "Division Nine is not designed for handicapped inmates use and the division doesn't provide for integration of the handicapped with the inmates in general population." PSOF ¶ 30 (cleaned up). Sabrina Rivero-Canchola, the Sheriff's ADA Compliance Officer, also prepared a FY19 Business Case acknowledging Division 9 is not ADA complaint for detainees. PSOF ¶ 79; *Rogers*, 2025 WL 2239341, at *5. Division 9, however, is accessible "fo[r] staff and visitors." PSOF ¶ 32.

The Sheriff's Divisional Policy states "[c]rutches/canes are not to be on the living unit" and that "[c]rutches/canes are to be stored [i]n the officer's control room." PSOF ¶ 31. Rule 30(b)(6) deposition testimony confirms nothing is provided to allow a class members assigned to Division 9 to toilet or shower. Larry Gavin, one of the First Assistant Executive Directors at the Sheriff's Office and a Rule 30(b)(6) Designee, stated no accommodations are offered for inmates with a cane, crutch, or walker alert to use the toilet. PSOF ¶ 38. Similarly, Mr. Gavin said nothing is offered to assist a class member shower. PSOF ¶ 39. Dr. Andrew DeFuniak, Cook County's Rule 30(b)(6) Designee, acknowledged fall prevention was a reason for prescribing canes, crutches, and walkers for inmates at the Department of Corrections. PSOF ¶ 51; *Rogers*, 2025 WL 2239341, at *4. He has no awareness, however, whether class members are permitted to have access to these assistive devices on the tiers or awareness of any accommodations provided to class members to toilet and shower. PSOF ¶¶ 42-43, 52-60; *Rogers*, 2025 WL 2239341, at *4.

In February of 2020 plaintiff "Rogers suffered a traumatic brain injury that left him with a seizure disorder and weakness in the right side of his body from his head to his toe." *Rogers*, 2025 WL 2239341, at *4; PSOF ¶¶ 44-47. These impairments limit Rogers's ability to shower, stand, walk, and carry out other actions. PSOF ¶¶ 44-51. Lieutenant Kevin Meller has observed Rogers and his obvious mobility impairment and confirmed other individuals with obvious mobility impairments are housed in Division 9. PSOF ¶¶ 67-68.

Rogers testified that he fell using the Division 9 toilets and suffered injuries. PSOF ¶ 61. Grab bars, Rogers avers, "could have prevented some of the falls." PSOF ¶ 62. Rogers also fell more than five times using the showers that caused physical injuries. PSOF ¶ 63. Rogers filed grievances regarding the obvious physical barriers showering and toileting in Division 9. PSOF ¶¶ 64-66.

Other class members experienced similar barriers. Michael Washington sustained a spinal cord injury and complained in February 2020 of the inability to balance while showering. PSOF ¶¶ 70-72. Washington also has issues "every day" using the toilets. PSOF ¶ 73. Darrell Johnson has nerve damage and was authorized to use a cane at all times during his incarceration in Division 9. PSOF ¶ 74. Johnson had issues with the toilets because they were low and he did not have anything "but the wall" to support his poor balance. PSOF ¶ 75. Johnson also wrote a grievance in February 2024 complaining of poor balance in the shower and need for an accommodation and a second grievance in June 2024 describing a "slip and fall in the showers." PSOF ¶¶ 76-78. Grab bars, Johnson avers, "[d]efinitely would have helped a lot" shower in Division 9. PSOF ¶ 76.

## II.     The statutory and regulatory framework

The Court explained the statutory and regulatory framework under the RA and ADA when granting preliminary injunctive relief as follows:

> Where correctional facilities provide detainees with the benefit of recreational activities, medical services, and educational and vocational programs, they must do so in a way that does not exclude the disabled members of the detainee population. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). It is well-established that use of showers and toilets are considered "programs or activities" for which accommodations may be required. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (showers are a program or activity within the meaning of the ADA and RA); *Phipps v. Sheriff of Cook County*, 681 F.Supp.2d 899, 916 (N.D. Ill. 2009) (collecting cases regarding use of showers and toilets as programs or services under the ADA). Indeed, access to "[a]dequate . . . facilities to wash and use the toilet . . . are among the minimal civilized measure of life's necessities that must be afforded to prisoners." *Jaros*, 684 F.3d at 670 (internal quotation marks omitted).

> The ADA and RA require public entities, such as correctional facilities, to "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). A reasonable measure includes designing a building in "such manner that the facility or part of the facility is readily accessible to and usable by handicapped persons." 42 C.F.R. § 42.522(a). A building is "readily accessible" if it complies with ADA and RA accessibility

> guidelines, compliance with which is required by applicable regulations. *Lane*, 541 U.S. at 532. The appropriate guideline for a particular building is determined by the building's age. If physical construction or alterations begin on or after March 7, 1988, "design, construction, and alterations of buildings" must comply with the Uniform Federal Accessibility Standards ("UFAS" or "the Standards"). 28 C.F.R. § 42.522(b).

*Rogers*, 2025 WL 2239341, at *4.

UFAS requires an accessible shower to have grab bars. UFAS § 4.21.4. Likewise, UFAS requires an accessible toilet to have grab bars mounted near the toilet. UFAS § 4.17.6. In order to trigger the RA, an entity must receive federal financial assistance. *Jaros v. Illinois Dep't. of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). In ruling on plaintiff's motion for preliminary relief, the Court held "receipt of federal funding . . . is not disputed here." *Rogers*, 2025 WL 2239341, at *3.

The Americans with Disabilities Act (ADA) has "functionally identical" standards for toilets and showers. *Rogers*, 2025 WL 2239341, at *3. The 1991 ADA Standards require an accessible shower stall to have grab bars, 1991 ADA Standards § 4.21.4, and an accessible toilet must also have grab bars. 1991 ADA Standards § 4.17.6.

### III.    Evidence class members are qualified individuals with a disability

As the Court explained, "an individual is disabled if he has a 'physical or mental impairment that substantially limits one or more major life activities.'" 2025 WL 2239341, at *4 (quoting 42 U.S.C. § 12102(1)). Plaintiff Rogers suffered a traumatic brain injury that left him with a seizure disorder and weakness in the right side of his body. PSOF ¶¶ 44-50. Rogers has used a cane, walker, and wheelchair while detained at the Jail. PSOF ¶¶ 40-41, 47. Class member Michael Washington sustained a spinal cord injury that partially paralyzed the right side of his body and limited his use of his right arm and leg. PSOF ¶ 70; *Rogers*, 2025 WL 2239341, at *4. Class member Darrell Johnson has nerve damage in his lower right leg and numbness extending from his back to his right leg. PSOF ¶ 74. "These impairments limit Rogers's and the class's ability to

shower, stand, walk, and carry out other actions." *Rogers*, 2025 WL 2239341, at *4. The ADA considers a "major life activity" to include "[c]aring for oneself, standing, and walking." *Rogers*, 2025 WL 2239341, at *4 (citing 42 U.S.C. § 12102(2)(A) and 29 C.F.R. § 1630.2(i)(1)(i)).

"Substantially limits," according to the government regulations "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA [and] '[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). As the Court stated "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Rogers*, 2025 WL 2239341, *4 (citing 29 C.F.R. § 1630.2(j)(1)(ii)). The evidence, for the same reasons in the opinion granting preliminary injunctive relief, "weighs in favor of finding that Plaintiff's and the class's impairments substantially limit their ability to conduct major life activities." *Rogers*, 2025 WL 2239341, *4.

Defendants, of course, may be able to challenge whether individual class members are disabled at trial since the pending motion for summary judgment only addresses the issue certified "under Rule 23(c)(4) of whether the Division 9 toilets and showers complied with the Structural Standards required by the ADA and RA" during the class period. 2025 WL 1359120, at *8 (N.D. Ill. May 9, 2025); *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (explaining that certification under Rule 23(c)(4) "resolves the *issue*, not the whole case" and that "[c]lass members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages").

### IV. No dispute federal accessibility standards apply to Division 9

"[F]or purposes of the RA, the question is whether the program or activity in question receives federal assistance, full stop." *Phipps v. Sheriff of Cook County*, 681 F.Supp.2d 899, 912 (N. D. Ill. 2009) (Bucklo, J.). The relevant inquiry, therefore, is

whether the Cook County Department of Corrections was in receipt of "federal funds of any sort" during the time Division 9 was under construction. *Id.*

At all relevant times, the Cook County Department of Corrections received federal financial assistance during the period Division 9 was under construction, subjecting it to the requirements of the RA. PSOF ¶¶ 12-29; *Rogers*, 2025 WL 2239341, at *3 (holding receipt of federal funding "is not disputed here").

Additionally, construction of Division 9 commenced after March 7, 1988, triggering UFAS. 28 C.F.R. § 42.522(b) (1); PSOF ¶¶ 5-11; *Rogers*, 2025 WL 2239341, at *5 (holding Division 9 was required to comply with UFAS because it was built after March 7, 1988).

Accordingly, there is no dispute here that the UFAS apply to Division 9 of the Department of Corrections.

V. **No dispute that Division 9 toilets and showers violate UFAS because they lack grab bars**

UFAS, as stated above, requires an accessible toilet to have grab bars, UFAS § 4.17.6, and an accessible shower to have grab bars, UFAS § 4.21.4. There is no dispute that all Division 9 showers lack grab bars, PSOF ¶ 36, and all Division 9 toilets available for inmates lack grab bars. PSOF ¶ 35. The Court, ruling on plaintiff's motion for preliminary relief, acknowledged Division 9 lacks grab bars near showers and toilets. *Rogers*, 2025 WL 2239341, at *5.

Accordingly, there can be no dispute that Division 9 inmate showers and toilets violate UFAS because of the lack of grab bars. These are "fixtures that disabled inmates may need in order to use showers and toilets safely." *Bennett*, 53 F.4th at 420.

VI. **No evidence class members had clearly equivalent access to shower and toilet**

The ADA permits "'[d]epartures from particular requirements' of the federal accessibility standards 'by use of other methods . . . when it is clearly evident that

equivalent access to the facility or part of the facility is thereby provided.'" *Craig v. Hughes*, 2025 WL 1826099, at *5 (N.D. Ill. 2025) (Harjani, J.) (citing 28 C.F.R. § 35.151(c)(1)); *Clemons v. Dart*, 2016 WL 11943932 (N.D. Ill. 2016) (Tharp, J.) ("post-1998 facilities can provide equivalent access through appropriate design modifications and the implementation of new technology"). "[A] public entity that does not comply with the ADA standards has the burden of demonstrating that an alternative method provides equivalent access." *Spence v. Dart*, 2020 WL 4677053, at *2 (N.D. Ill. 2020) (Kennelly, J.).

The record evidence here is that the class members have not been provided any accommodation to overcome the structurally noncompliant showers and toilets in Division 9. PSOF ¶¶ 30-31, 37-39, 42-43, 48-62, 64-66, 71-73, 75-78. The Sheriff's Rule 30(b)(6) Designee, First Assistant Executive Director Gavin, confirmed other maximum-security divisions at the Department of Corrections, for example the Residential Treatment Unit, has grab bars.[2] PSOF ¶ 69.

No reasonable finder of fact could find that class members confronting the non-compliant showers and toilets have "equivalent access." Grab bars are fixtures that may help class members toilet and shower safely. *Bennett*, 53 F.4th at 420.

---

[2] Interesting, ADA Compliance Officer Rivero-Canchola recently responded to a grievance asserting "[g]rab bars are not required in Division 9." PSOF ¶ 80.

**VII.  Conclusion**

It is therefore respectfully requested that the Court grant partial summary judgment in favor of the Rule 23(b)(3) issue class.

Respectfully submitted,

/s/  Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
pwm@morrisseylawchicago.com

*an attorney for the plaintiff class*