**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KAVARIAN ROGERS, individually and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, <br><br> Defendants. | Case No. 24-cv-03739 <br><br> Judge Mary M. Rowland |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kavarian Rogers brings this class action lawsuit on his behalf and on behalf of two classes against Cook County Sheriff, Thomas Dart, and Cook County, Illinois (collectively, "Defendants"). Plaintiffs are a Rule 23(b)(2) class of "all individuals at Cook County Jail prescribed a cane, crutch, or walker by a jail provider assigned to Division 9" and a Rule 23(b)(3) class "to resolve the issue under Rule 23(c)(4) of whether the toilets and showers complied with the Structural Standards required by the [Americans with Disabilities Act ("ADA")] and [Rehabilitation Act ("RA")]" between May 8, 2022, and the date of entry of judgment. [101].

The parties have filed cross-motions for summary judgment and Defendants request leave to file their first amended affirmative defenses. Plaintiffs moved for partial summary judgment arguing that they prevail on the Rule 23(b)(3) issue class. [147]. Defendants opposed Plaintiffs' motion and filed a cross-motion for summary

1

judgment arguing that Plaintiffs' individual and class claims under the ADA and RA fail on the merits. [152]. For the reasons stated herein, Plaintiffs' motion for partial summary judgment [147] is granted, and Defendants' motion for summary judgment [152] is denied. Additionally, Defendants' motion for leave to amend [171] is denied.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor."

*White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago*, 992 F.3d 607, 615 (7th Cir. 2021). The Court treats the motions separately. *Marcatante v. City of Chicago*, 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[1]

### A. Division 9

Division 9 is a housing unit at Cook County Jail. [153] ¶ 33. A general construction permit was issued for Division 9 at Cook County Jail on August 4, 1989. *Id.* ¶ 6; *see also id.* ¶ 11. There are 24 tiers in Division 9, all substantially similar including cell layout, toilets, and showers. [153] ¶ 34. From May 8, 2022 until at least September 24, 2024, there were no fixed grab bars in proximity to any of the toilets

---

[1] The Court takes facts from Defendants' Response to Plaintiff's Statement of Facts [153], Plaintiff's Response to Defendants' Statement of Facts [158], Defendants' Response to Plaintiff's Statement of Additional Facts [167], and various exhibits and declarations the parties have submitted in connection with the parties' cross motion for summary judgment. The facts in this section are undisputed unless otherwise noted.

in the cells or dayrooms or detainee showers of Division 9. *Id.* ¶¶ 35–36. Some inmates with medical alerts for a cane, crutch, or walker are housed in Division 9, but none of the inmates housed in Division 9 are permitted or required to use assistive devices full time, according to their medical alerts. *Id.* ¶ 39.

## B. Named Plaintiff Rogers and the Rule 23(b) Classes

Plaintiff Rogers entered Cook County Jail on April 2, 2020. [153] ¶ 1. In Rogers's medical records, he reported that he suffered a gunshot wound to his head that resulted in a traumatic brain injury, right spastic hemiparesis, and seizes. *Id.* ¶ 44. His medical records show a seizure disorder diagnosis. *Id.* At various times while at Cook County Jail, Rogers was assigned to Division 9. *Id.* ¶ 40. At various relevant times while housed in Division 9, Rogers had a medical alert for a "cane long distance only" and for "walker long distance only." *Id.* ¶ 41; [158] ¶ 52. Rogers testified that he fell while using the toilets and showers in Division 9 without grab bars. [153] ¶¶ 61, 63.

On May 8, 2024, Plaintiff Rogers initiated this litigation asserting individual and class claims for violations of Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) because the toilets and showers of Division 9 lack grab bars and mounted shower seats necessary for disabled inmates to use the facilities on the same basis as non-disabled inmates. [1].

4

## ANALYSIS

### I.    Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). "We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

Many of both Plaintiffs' and Defendants' Local Rule 56.1 responses are non-compliant because they are purely argumentative or embed new facts within their responses. Several responses carry on for multiple pages. The purpose of the Local Rule is to simplify matters for the Court by clearly delineating what facts are in dispute. Interweaving new facts, old facts, and legal arguments make it impossible to discern where the factual disputes lie. Nonetheless, the Court reviewed all of the statements and considers the facts in the light most favorable to the non-moving party.

## II.   Certified Issue as to the Toilets and Showers in Division 9

The parties have filed cross-motions for summary judgment on the certified issue of whether the toilets and showers in Division 9 complied with the structural standards required by the RA and the ADA. As an initial matter, the Court must identify what structural standards apply to the Division 9 facilities. Which structural standards apply is determined by the age of a building. The Court separately addresses the RA and ADA.

### a.  Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794(a). Pursuant to the regulations promulgated under the Rehabilitation Act, construction or alteration of buildings after March 7, 1988, must comply with the Uniform Federal Accessibility Standards ("UFAS"). 28 CFR § 42.522(b). Under the UFAS, accessible toilets and showers must have grab bars. UFAS §§ 4.17.6; 4.21.4. There is no dispute that Division 9 was built after March 7, 1988 and that there have been no grab bars in proximity to any of the detainee toilets or showers in Division 9 during the relevant time period. [153] ¶¶ 6–11; 35–36. Based on these undisputed facts, no reasonable jury could find that the Division 9 toilets and showers complied with the structural standards set by the UFAS.

Nevertheless, Defendants argue they are entitled to summary judgment on the

6

class's Rehabilitation Act claims for three reasons: (1) there is insufficient evidence that either Defendant Cook County or Defendant Dart, Cook County Sheriff, received federal financial assistance to trigger liability under the RA; (2) Cook County Jail as a whole complies with UFAS standards as of today's date; and (3) the members of the class were provided with equivalent access to toilets and showers. [155] at 11–21. The Court addresses each argument in turn.

### i. Application of the UFAS

It is undisputed that liability under the Rehabilitation Act can be established against only those entities, programs or activities that receive federal financial assistance. 29 U.S.C. § 794(a); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons"). Defendants argue Plaintiffs cannot satisfy their burden under the RA to show that either the Sheriff or the County received federal funds sufficient to subject them to the requirements of the Act. [155] at 11–19. The Court disagrees and finds the federal financial assistance requirement satisfied here.

### 1. Thomas Dart, Sheriff of Cook County

The undisputed evidence establishes that the Cook County Department of Corrections, a department within the Cook County Sheriff's Office, received federal financial assistance during the relevant time period. A 1991 budget for the Cook County Sheriff's Department of Corrections, that the County produced, boasted among its 1990 achievements: "[r]eceived Federal Grant for enhanced inmate

7

identification process." [148-11] Cook County Budget Excerpt. The funding supported the expansion of data processing equipment and data exchange to track inmates going to and from court appearances. *Id.* Additionally, then-Cook County Budget Director Annette Guzman testified in another proceeding in this district that "the Sheriff's Office received two grants primarily from the federal government for various programs . . . within the Sheriff's Office" between 1989 and 1992. [148-9] 3/13/23 Hr'g Tr. at 2:10–13, 3:10–17. This evidence alone is sufficient to fulfill the RA's federal financial assistance requirement.

Furthermore, Defendants admit Cermak Health Services, which provides medical services to detainees, received federal financial assistance for programs, services, and activities at the Cook County Department of Corrections between 1989 and 1992, while Division 9 was being built. [153] ¶ 14; [148-40] Cook County Resp. to First Req. to Admit ¶ 7; *see also* [148-9] 3/13/23 Hr'g Tr. at 3:25–4:13 (Guzman testifying that Cermak Health Services received federal funding between 1989 and 1992). More specifically, the Bureau of Justice Assistance, a federal agency, awarded a grant to Cermak Health Services for drug treatment in a jail setting. [153] 22; [148-15] U.S. Justice Dept., Office of Justice Programs Publication at 1–2, 7, 35. Defendants argue Cermak's receipt of federal funds is irrelevant to the determination of whether the RA applies because Cermak is a division within the Cook County Health and Hospitals System and is separate entity from the Sheriff's Department. [153] ¶¶ 14, 20, 2223 (citing *Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002) ("Cermak is a separate entity from [Cook County Department of Corrections] and [is]

an extension of Cook County Hospital")). In addition to the inmate tracking grant described above, the Cook County Sheriff is also subject to the RA because it receives federal funds indirectly through Cermak. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 606–07 (1986) (explaining Section 504 covers entities who receive aid directly from the federal government or indirectly through another recipient of that aid); *see* 28 C.F.R. § 42.540(e) ("Recipient means any . . . public or private entity . . . to which Federal financial assistance is extended directly or through another recipient").

Defendants respond this evidence falls short because Plaintiff must establish the specific entity or department responsible for the alleged discrimination received federal funds. [155] at 11. According to Defendants, Plaintiff must show that the Cook County Department of Capital Planning and Policy, the department that constructed and oversaw the construction of Division 9, received federal funds and there is no such evidence. *Id.* Defendants' narrow focus on the Department of Capital Planning and Policy strains credulity and runs contrary to law and to reality.[2]

There is no dispute that the Department of Capital Planning and Policy is responsible for the construction and renovation of new facilities at Cook County Jail. [158] ¶ 20. But it would be dishonest to find that responsibility begins and ends with the Department of Capital Planning and Policy. Under Illinois law, the Sheriff has custody and control over the Cook County Jail, 55 ILCS 5/3-6017, and is responsible

---

[2] At argument on the motion Defendants conceded that the Department of Capital Planning and Policy is not a suable entity. [189] 4/8/26 Hr'g Tr. at 15:17–21 ("The proper party is Cook County. So the Department of Capital Planning, they are not a party to be sued. Cermak Health Services is not a party to be sued. So the proper party is Cook County.").

for the care and custody of all individuals detained at the Jail, 730 ILCS 125/2. Furthermore, the Cook County Sheriff is legally responsible to ensure the jail facilities are "kept and maintained in good and sufficient condition and repair." 730 ILCS 125/1. Finally, Cook County—not the Department of Capital Planning and Policy—owns all the buildings in the Cook County Jail complex and controls the funding for constructing, maintaining, and renovating those buildings. [153] ¶ 3; 730 ILCS 125/20 ("cost and expense of keeping, maintaining and furnishing the jail of each county, and of keeping and maintaining the prisoner thereof, except as otherwise provided by the law, shall be paid from the county treasury, the account there for being first settled and allowed by the county board"). The Department of Capital Planning and Policy cannot legally construct a new housing unit at the Jail without authorization from Cook County and the Sheriff's Office.[3] The Court rejects Defendants' argument that only the Department of Capital Planning and Policy can be held liable under the Rehabilitation Act for structural violations of the RA.[4]

---

[3] Reflecting the reality of their legal obligations to the individuals held in custody Cook County Jail, the Sheriff and the County routinely stipulate to receipt of federal funds and do not challenge that requirement in Rehabilitation Act cases. *See, e.g.*, Bennett v. Dart, 2025 WL 2764518, at *7 (N.D. Ill. Sept. 29, 2025) (Sheriff's Office did not contest receipt of federal funding for a claim under the RA not binding in any other case); *Westmoreland v. Dart*, 2023 WL 4273661, at *7 (N.D. Ill. June 29, 2023) (federal funding element not at issue in case against the Sheriff and the County); *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1065 (N.D. Ill. 2016) ("it is undisputed that the Cook County Sheriff received federal funds during the time that Clemons was housed at the Cermak facility ..."); *Bowers v. Dart*, 2017 WL 4339799, at *3 (N.D. Ill. Sept. 29, 2017), *aff'd*, 1 F.4th 513 (7th Cir. 2021) ("The relevant entities here, Cook County and the Cook County Sheriff's Office, accepted federal funds for Illinois state prisons."); *Phipps v. Sheriff of Cook County*, 681 F.Supp.2d 899, 913 (N.D. Ill. 2009) (finding the Rehabilitation Act applied to the County and that "[u]nder any natural reading, the Sheriff's Office incontrovertibly falls under [the Rehabilitation Act].").

[4] This argument troubles the Court. It is a matter of public record that in 1974 pre-trial detainees filed a class action suit against the then-Sheriff and others arguing that the conditions in the Jail "were so harsh, unsafe, and unsanitary as to constitute punishment of pretrial detainees in violation of the Fourteenth Amendment's due process clause." *See Duran v. Elrod*, 760 F.2d 756, 757 (7th Cir. 1985). The suit was settled via consent decree in 1982. *Id.* One of the terms of the consent decree was the

10

## 2. Cook County, Illinois

Having found the Cook County Sheriff received federal financial assistance, the Court must address the question of whether UFAS may be applied against Cook County. As stated, the Rehabilitation Act prohibits "discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The Act defines "program or activity" as "all the operations" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). The relevant inquiry is whether the "department, agency, special purpose district, or other instrumentality of a State or of a local government" receives federal financial assistance, full stop." *Phipps*, 681 F.Supp.2d at 912.

Defendants argue the County does not fit the definition of "program or activity." They contend this definition, as interpreted by the Seventh Circuit, excludes the County because Cook County *is* a "local government," and not a "department, agency, special purpose district, or other instrumentality . . . *of* a local government" and RA liability is limited to the "department" level of local government. [155] at 13 (discussing *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991)) (emphasis added). In *Schroeder*, an employee of the Chicago Fire Department was delayed eight months in receiving his duty disability benefits retroactive to the start of his disability leave. 927 F.2d at 958. Schroeder sought emotional distress damages for alleged constitutional violations resulting from the eight-month delay in the award

---

construction of new housing to relieve overcrowding—including Division 9. *Id.* at 758. Defendants cannot credibly argue the Sheriff is not a proper defendant in a Rehabilitation Act challenge based on the construction of new housing units when the Sheriff entered a consent decree to construct that very housing unit to settle a lawsuit and address overcrowding.

11

of benefits and asserted a claim under the RA. *Id.* at 958, 962. The *Schroeder* court, without analysis, determined the City of Chicago could not be sued under Rehabilitation Act. *Id.* 962. The Court explained that a 1988 amendment intended to broaden relief available meant the RA

> would apply to the entirety of any state or local institution [like the Cook County Sheriff] that had a program or activity funded by the federal government. So "program or activity" was expanded from a specific program or specific activity to "all the operations" of the university or hospital or other institution that conducted the program or activity. S.Rep. No. 64, 100th Cong., 2d Sess. 16 (1988), U.S. Code Cong. & Admin. News16 (1988), U.S. Code Cong. & Admin. News 1988, 33, 1818 ("If federal health assistance is extended to a part of a state health department, the entire health department would be covered in all of its operations. If the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies which actually get the aid").

*Id.* The Court then observed that the amendment was not "intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance." *Id. See also Lacy v. Dart,* 2015 WL 5921810, at *3 (N.D. Ill. Oct. 8, 2015) ("The Rehab Act defines "program or activity" as the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government. The defendant County, which is responsible for construction and maintenance of the courthouses at issue, does not fit this definition. . . . nothing in the amendment's legislative history suggests that Congress contemplated classifying an entire municipality . . . as a

12

'program or activity.'")[5].

*Schroeder* is distinguishable. There, the plaintiff contended the city fire department discriminated against him and sued the City of Chicago. But in this case, Cook County, through its legal obligations over Cook County Jail, directly engaged in discrimination against Plaintiffs. "Illinois law provides that '[i]t shall be the duty of the county board of each county . . . [t]o erect . . . and keep in repair . . . [a] jail.'" *Bell v. Sheriff of Cook County*, 2018 WL 6100033, at *2 (N.D. Ill. Nov. 21, 2018) (quoting 55 ILCS 5/5-1106); *see also Leinenweber v. Dupage County*, 2009 WL 458622, at *3 (N.D. Ill. Feb. 23, 2009) (stating that pursuant to Illinois statute, counties are given the responsibility to "erect or otherwise . . . provide a jail" and to provide for "all costs of maintaining persons committed" to that jail); *Simenc v. County of DuPage*, 1983 U.S. Dist. LEXIS 17796, at *4 (N.D. Ill. Apr. 12, 1983) ("[T]he County Board has the financial responsibility to erect, finance and maintain suitable jail facilities and to provide reasonable and necessary expenses for the use of the sheriff."). Accordingly, Plaintiffs are not simply attempting to sweep in the whole local government on account of the discrimination of "two little crannies," but rather the discrimination

---

[5] Notably, all the courthouses at issue in *Lacy* were built before either the ADA's or RA's structural requirements, *i.e.*, UFAS, were applicable to them. 2015 WL 5921810, at *2–3. The Tenth Circuit also noted the legislative history does not support finding that Congress intended to exclude all city and county governments from liability under the RA. *Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 603 n.5 (10th Cir. 1994). According to *Bentley*, the legislative history laments that several cases, including one against the City of Chicago, as "casualties" of the Supreme Court decision in *Grove City College v. Bell*, 465 U.S. 555 (1984), which the amendment was intended to overrule. *Id.* (citing S.Rep. No. 64, 100th Cong., 2d Sess. 14–17 (1987), *reprinted in* 1988 U.S.C.C.A.N. 16–18).

13

by the local government itself.[6] *See Drayton v. McIntosh County., Georgia*, 434 F. Supp. 3d 1374, 1382 (S.D. Ga. 2020) (allowing RA challenge against county for actions undertaken by the governing body); *Bentley*, 41 F.3d at 603 (permitting RA claims to proceed against county board of commissioners based on claims that the board discriminated against plaintiff)[7].

Finally, based on the evidence explained above regarding federal funds Cermak Health Services receives, there is no dispute the County receives federal funds.

Accordingly, the federal financial assistance requirement is met and both Cook County and the Sheriff Dart may be held liable under the RA.

### ii. Minimum Compliance with the UFAS

Next, Defendants contend if the Court finds Sheriff Dart and Cook County are required to comply with the UFAS, which it has, then the Cook County Jail complex, when assessed as a whole, meets the minimum standards of UFAS. [155] at 20–21. The UFAS includes minimum standards regarding the scope of compliance for various classifications of buildings and facilities. UFAS § 4.1.4. For jails, prisons, reformatories, and other detention or correctional facilities, "**5 percent of residential**

---

[6] Other courts in the district have reached the same conclusion albeit based on different analysis. *Bennett,* 2025 WL 2764518, at *6–7 (holding Cook County is included under the RA); *Phipps*, 681 F.Supp.2d at 912 (same).

[7] The *Bentley* court further disagreed with *Schroeder* and explained, "[The] practice [of suing the local government for the discriminatory practices of a sub-unit of local government] should not dictate whether [a plaintiff] may bring suit under the Rehabilitation Act. Rather, the inquiry should focus on whether there is a sufficient nexus between the federal funds and the discriminatory practice as outlined in the Restoration Act and its legislative history." 41 F.3d at 603. This analysis is foreclosed by *Schroeder*.

14

units available, or at least one unit, whichever is greater" must comply with UFAS standards. UFAS § 4.1.4(9)(c). Applied to Cook County Jail, at least five percent of residential units would need to comply with UFAS standards to meet the baseline standard. Defendants assert they surpass that threshold when the entire jail facility is assessed as one.

According to an affidavit submitted by Sabrina Trevizo, the ADA Compliance Officer for the Sheriff's Office, 1,007 of the 9,774 cells in Cook County Jail are "ADA cell/beds." [158] ¶ 45. As of April 2018, all of these "ADA cell/beds" were located within either the Residential Treatment Unit ("RTU" or "Division 8") or Cermak. [148-37] FY19 Business Case at 2 ("Having *no* ADA compliant housing other than divisions 8 and [Cermak], severely restricts [our] ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets and showers." (emphasis added)). The only case examining UFAS minimum requirements in a correctional facility of which this Court is aware also involved Cook County Jail, the Cook County Sheriff, and Cook County. *Phipps*, 681 F. Supp. at 923. In *Phipps*, the defendants—the same defendants as here—took positions inconsistent with and contrary to those taken in this case. *Id.* First, they argued the minimums did not apply to Cermak because those are hospital units, not residential cells. *Id.* And second, they provided "back-of-the-envelope" calculations for compliance on a per division basis, not jail-wide. *Id.* The court ultimately denied defendant's motion for summary judgment after finding defendants' arguments created factual disputes. *Id.*

Here, the parties dispute whether the 5 percent compliance should be

15

measured at the time Division 9 was constructed or today. [160] at 9–10; [168] at 21. According to Plaintiffs, no divisions at Cook County Jail offered accessible toilets and showers at the time Division 9 was constructed, and thus the regulations required Division 9 to be UFAS-compliant. [167] ¶¶ 30–31. Defendants insist the 5 percent minimum compliance should be measured across all of Cook County Jail today. Neither party cites any authority in support of their position nor is the Court aware of any cases in which courts directly analyzed when Section 4.1.4 should be measured.

The plain language of the UFAS provides strong support that compliance should be measured at the time of construction. Section 1—cited by Defendants in support of their federal funding arguments—requires that "these standards are to be applied during the design, construction, and alteration of buildings and facilities." In the absence of case law examining this provision, the Court considers nearly identical language found in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), which address fixed or built structures of a building. *See* 56 C.F.R. 35414–15, § 1 ("scoping and technical requirements" of the guidelines "are to be applied during the design, construction, and alteration of buildings and facilities"). In a case challenging a clothing retail store's accessibility for wheelchair users around moveable display racks, a court applying ADAAG looked to the ADAAG's purpose section. *Colorado Cross-Disability Coal. v. Too (Delaware), Inc.*, 344 F. Supp. 2d 707, 712–13 (D. Colo. 2004). The court determined the ADAAG did not apply to moveable displays because the arrangement of such displays would occur *after* a building is constructed and *after* compliance is measured. *Id.* So too here. No reasonable jury

16

could find that when Division 9 was built, 5 percent of Cook County Jail was in compliance with the relevant UFAS.

Thus, the facts offered by Defendants fail to raise a genuine, material dispute of fact, nor would they allow a reasonable jury to conclude that either Division 9 or Cook County Jail as a whole complied with the UFAS at the time of construction.

### iii. Equivalent Access

Finally, Defendants argue the UFAS does not apply to Division 9 if equivalent access is provided. [155] at 21. Defendants misstate the law. The UFAS applies, even if equivalent access is provided, but under the implementing regulations, "[d]epartures from particular technical and scoping requirements of UFAS by the use of other methods are permitted where substantially equivalent or greater access to and usability of the building is provided." 28 C.F.R. § 42.522(b)(1). Defendants proffer that they provide "substantially equivalent or greater access" by removing detainees from the general population, or Division 9 more specifically, and placing those detainees in the Residential Treatment Unit (RTU) or Cermak Health Services with accessible toilets and showers. [155] at 21. Plaintiffs dispute that equivalent facilitation is a viable defense, and even if it is, they contest that reclassifying Division 9 inmates and transferring them constitutes equivalent or greater access to toilets and showers. [160] at 10–12.

Defendants' practice is to rely on assessments from medical partners to place inmates in particular housing units with different accessible facilities. Courts in this district have consistently found that when an alternative to the structural standards

17

involves an inmate requesting and relying on the assistance of others, the alternative does not constitute equivalent access. *See, e.g.*, *Hernandez v. Dart*, 2026 WL 296425, at *6 (N.D. Ill. Feb. 4, 2026) (policy of having correctional officers available to assist push wheelchair users up and down or drive them in a cart across a non-compliant ramp does not constitute equivalent access); *Craig v. Hughes*, 2025 WL 3688016, at *5–8 (N.D. Ill. Dec. 19, 2025) (providing portable shower chairs to inmates upon request is not equivalent access); *Clemons*, 168 F. Supp. 3d at 1066–69 (providing access to around-the-clock nursing care in lieu of ADA-compliant fixtures is not equivalent access); *Flora v. Dart*, 2017 WL 2152392, at *6 (N.D. Ill. May 17, 2017) (vacated by agreement of the parties) (accommodations that render inmate dependent on others, including use of the RTU's dayroom ADA compliant toilet, do not provide equivalent access). This Court has previously come to the same conclusion. *See Walker v. Dart*, 2025 WL 3496580, at *3 (N.D. Ill. Dec. 5, 2025) (policy of having correctional officers available to assist wheelchair users up and down a non-compliant ramp does not constitute equivalent access). For the same reason, the Court finds that Defendants' reassignment practice here does not provide equivalent access or greater access.

Defendants argue the aforementioned cases are inapposite because they address ADA regulations and involved buildings built after 1992. Although Division 9 is not subject to the ADA Structural Standards, as described below, the housing unit is subject to the RA's UFAS. "The Rehabilitation Act expressly incorporates the standards and procedures applicable to claims brought under the Americans with

18

Disabilities Act." *Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022). Precedents applying either statute are instructive. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). Accordingly, the reasoning from ADA cases are applicable to the RA claims as well.

### b. Americans with Disabilities Act

Defendants assert they are entitled to summary judgment on the class's American with Disabilities Act claims because accessible toilets and showers are provided in other housing units. The Court disagrees.

Under the regulations promulgated pursuant to the ADA, construction or alteration of buildings commenced after July 26, 1992 are subject to either the UFAS or the Americans with Disabilities Act Standards for Accessible Design. 28 C.F.R. § 35.151(c). But buildings constructed before 1992 and unaltered since are not subject to the ADA's structural accessibility standards. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). There is no dispute that Division 9 was constructed before July 26, 1992. [153] ¶¶ 6–11. Nor has either party submitted evidence of alterations to Division 9 since its construction. Accordingly, the building is considered an "existing facility." 28 C.F.R. § 35.150(a). Existing facilities are to "operate each service, program, or activity so that . . . when viewed in its entirety, is readily accessible to and usable by individuals with disabilities" through various methods. 28 C.F.R. § 35.150(a), (b)(1).

Public entities offering services at existing facilities "can comply with Title II by making reasonable modifications to their policies, practices, or procedures." *Lacy*,

19

897 F.3d at 853–54. A reasonable accommodation does not require a perfect cure for the problem, *see Stewart v. County of Brown*, 86 F.3d 107, 112 (7th Cir. 1996), but in defining a reasonable accommodation in correctional facilities, courts consider the accommodation "in light of the overall institutional requirements." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). Pursuant to the implementing regulations, means of providing reasonable accommodations include: "reassignment of services to accessible buildings," "delivery of services at alternative accessible sites," and "any other methods that result in making . . . services, programs, or activities readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(b)(1).

As discussed above, Defendants contend they provide "program accessibility," *i.e.*, accessible toilets and showers, by housing disabled inmates in the RTU and Cermak, where the toilets and showers are ADA accessible. [155] at 23. But, as Plaintiffs argue, Defendants' practice contravenes the policy goals of the ADA and the letter of its implementing regulations. [160] at 11–13. The ADA regulations governing jails and correctional facilities explicitly prohibit discrimination against people with disabilities through segregation. 28 C.F.R. § 35.152(b)(2) provides that "[p]ublic entities shall ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals." And "[u]less it is appropriate to make an exception, a public entity—[s]hall not place inmates or detainees with disabilities in designated medical areas unless they are actually receiving medical care or treatment." 28 C.F.R. § 35.152(b)(2). That is

20

precisely what Defendants are doing here by limiting accessible toilets and showers to Cermak and the RTU and then placing disabled detainees into those two units away from the general population.

Defendants' arguments to the contrary are unavailing. As an initial matter, they make no attempt at arguing that the RTU or Cermak are the "most integrated setting appropriate to the needs of the [inmates]." 28 C.F.R. § 35.152(b)(2). Instead, Defendants claim their deviation from the most integrated setting requirement and the anti-segregation regulations specific to correctional centers can be excused because the regulations permit exceptions when appropriate. [168] at 13–14, 21–23. But Defendants offer no explanation of what warrants an exception here other than a conclusory statement that "operating a jail facility is an incredibly complex endeavor." *Id.* at 13. This cannot be an appropriate exception, for it would swallow the rule. Finally, Defendants' reliance on *G.P. v. Claypool*, 466 F. Supp. 3d 875 (N.D. Ill. 2020) does not compel a different outcome. Although *Claypool* compellingly distinguishes between program accessibility and facilities accessibility, *see* 466 F. Supp. 3d at 886–88, the case involved a school and absent from the opinion is any consideration of 28 C.F.R. § 35.152 pertaining to correctional centers, which is dispositive here.[8]

Having rejected Defendants' arguments, the Court concludes that Defendants fail to raise a genuine dispute of material fact with regard to the toilets and showers

---

[8] Furthermore, Defendants could have offered other meaningful accommodations short of structural changes or architectural accommodations, such as a shower chair or other aids, that allowed inmates to remain in a more integrated setting.

21

in Division 9 and no reasonable jury could find that the at-issue facilities complied with the RA and ADA during the relevant time period. The Court grants summary judgment in favor of the Rule 23(b)(3) class.

### III. Defendants' Motion for Summary Judgment on Plaintiff's Individual Claims

Defendants move for summary judgment on Plaintiff Rogers's individual RA and ADA claims concerning the toilets and showers in Division 9. To prevail on a claim under the RA, a plaintiff must establish: "(1) the plaintiff must be a handicapped individual as defined by the Act; (2) the plaintiff must be 'otherwise qualified' for participation in the program; (3) the program must receive federal financial assistance; and (4) the plaintiff must have been 'denied the benefits of the program solely because of [their] handicap.'" *Royan v. Chi. State. Univ.*, 145 F.4th 681, 689 (7th Cir. 2025) (citing 29 U.S.C. § 794(a)). To prove a *prima facie* case under Title II of the ADA, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Lacy*, 897 F.3d at 853 (citations and internal quotation marks omitted). Because the relief available to Rogers under the RA and ADA is coextensive and the analysis governing each the elements of each statute is the same (except the RA's federal funding requirement, discussed *supra*), the Court will address the RA and ADA together in this section.

Defendants assert that Plaintiff Rogers has not shown a denial of access to services, programs, or activities and that there is no evidence to establish that

22

Defendants acted with deliberate indifference. The Court concludes Defendants are not entitled motion for summary judgment on Plaintiff Rogers's individual claims.

### a. Denial of Access

Defendants contend Plaintiff was provided accessible accommodations when required and was not denied access to toilets and showers on the same terms as non-disabled inmates. According to Defendants, they achieved this outcome by moving Rogers from general population, where toilets and showers lack grab bars, to the RTU and Cermak, where grab bars are installed in the toilets and showers, as needed. [155] at 7–8. Cermak personnel examined Rogers at intake and when the Cermak staff determined Rogers needed heightened medical care along with accessible accommodations, he would be assigned a new medical alert and be transferred to the RTU or Cermak. [158] ¶¶ 26–27; 46–58. When Cermak personnel concluded Rogers's medical condition sufficiently improved and he no longer required accessible accommodations, he returned to general population. *Id.* Rogers's medical alert changed at least five times between April 2020 and April 2024. *Id.* Each time his medical alert changed, he was moved from general population. *Id.* But as explained above, removing Plaintiff from general population, the most integrated setting, is not permissible without an appropriate exception, which has not been established here.

This leaves the question of whether Rogers was denied access to services when housed in general population. Defendants insist Rogers did not require accessible bathroom facilities when in Division 9 pursuant to Cermak's assessment and Rogers's medical alert for long distances only. [155] at 5–7. But viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there is sufficient evidence

23

from which a reasonable jury could find that Rogers was denied access on the same terms as non-disabled detainees in violation of the RA and ADA because of the non-compliant toilets and showers in Division 9. Rogers testified that he fell while using the toilets and showers in Division 9 because the facilities lacked grab bars. [153] ¶¶ 61, 63. He further testified that he suffered injuries and pain to his wrist and head. *Id.* Although Defendants dispute the extent of Rogers's immobility and cast doubt on the veracity of his claims of falling (*see* [153] ¶¶ 61, 63; *see also* [158] ¶¶ 63–73), that is not a matter to be resolved at summary judgment. A reasonable jury could find that having to use non-compliant bathroom facilities, which caused pain and injury, constituted a denial of access and that a disabled person need not experience pain to access basic services such as toilets and showers. *See Mendoza v. Dart*, 638 F. Supp. 3d 898, 901 (N.D. Ill. 2022) ("As for the primary obstacle plaintiff identifies at the Leighton Courthouse—the narrow gate that he could cross only by lifting himself out of his wheelchair—a jury crediting his testimony could likewise conclude that the pain and discomfort he experienced was more than an inconvenience.").

### b. Deliberate Indifference

To obtain compensatory damages, a plaintiff must establish intentional discrimination. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). "[A] plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference." *Lacy*, 897 F.3d at 863. The Seventh Circuit has adopted a two-part standard for deliberate indifference: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (internal quotation marks omitted). Defendants argue Plaintiff cannot establish

24

that Defendants acted with deliberate indifference because Rogers's medical needs and need for accessible housing were determined by Cermak personnel, not the Sheriff, and that the Sheriff's Office responded to changes in Rogers's medical alerts by transferring him between the RTU, Cermak, and Division 9. [155] at 9–10.

The record shows that Defendants had notice before Rogers was housed in Division 9 that the unit was not compliant with federal accessibility standards. [148-37] FY19 Business Case at 2 (Sheriff's Office document stating no ADA compliant housing exists other than the RTU and Cermak). This is evidence of Defendants' knowledge. Furthermore, Rogers filed a grievance regarding the difficulties and pain he experienced using the toilet without grab bars in Division 9. [178-2] at 17 (Grievance Control Number NC2024x00055). This too is evidence of Defendants' knowledge. *See Hernandez*, 2026 WL 296425, at \*10 (finding grievances about challenges traversing ramps are evidence of the Sheriff's and Cook County's knowledge that Cook County Jail ramp failed to comply with the ADA). When viewing this evidence in the light most favorable to Rogers, the Court finds that the Sheriff's Business Case assessment and grievance are sufficient evidence from which a jury could find that Defendants had knowledge that the Division 9 toilets and showers were not compliant with federal accessibility standards. Accordingly, Plaintiff Rogers has thus raised a genuine dispute of material fact on the knowledge prong of deliberate indifference.

In sum, the Court denies Defendants' motion for summary judgment Plaintiff Rogers's individual claims.

25

## IV. Defendants' Motion for Leave to Amend their First Amended Affirmative Defenses

After the parties finished briefing summary judgment, Defendants filed a motion for leave to amend their answers to assert four affirmative defenses pursuant to the Illinois Tort Immunity Act and a defense under Section 1997e(e) of the Prison Litigation Reform Act ("PLRA"). Plaintiffs oppose Defendants' request. [174]. Defendants' motion is denied.

A party may amend its complaint "with the opposing party's written consent or the court's leave," which "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to allow an amended pleading is left to the court's discretion. *Chatham v. Davis*, 839 F.3d 679, 686 (7th Cir. 2016). The court "should only refuse to grant leave where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants or where amendment would be futile." *In re Abbott Depakote S'holder Derivative Litig.*, 909 F. Supp. 2d 984, 1000 (N.D. Ill. 2012); *see Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Although amendments to pleadings are not prohibited after summary judgment is filed, the Seventh Circuit has stated that "[a]llowing a last-minute defense that introduces . . . new factual and legal issues after discovery has closed raises the costs of litigation and allows the party that was at least negligent in failing to plead its defense to take unfair advantage of its opposing party." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 482 (7th Cir. 2019).

Defendants' boilerplate motion provides no explanation for their delay, nor have they even attempted to meet their burden to establish that Plaintiffs would

26

experience no undue prejudice. *See King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994) ("party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party"). Although Defendants contend the Illinois Tort Immunity Act affirmative defenses are not new because they previously were raised in the motion to dismiss and will not prejudice Plaintiffs because they are based on the same evidence as Plaintiffs' claims, those arguments were raised for the first time in their reply brief and thus are waived. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."). As observed by another jurist on a nearly identical motion involving the same defendants, even if Defendants' arguments were not waived, "discovery is closed, and it was reasonable for Plaintiffs to conclude that Defendants abandoned those defenses and structure their discovery without considering those defenses." *Hernandez*, 2026 WL 296425, at *13. Accordingly, Defendants' motion is denied.

One final note as to Defendants' proposed defense under the PLRA. Pursuant to the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997e(e). Courts are divided regarding whether the physical injury requirement of the PLRA is properly considered an affirmative defense that must be pleaded in an answer. *Compare Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008) ("[W]e conclude that the limitation of complaints by prisoners for emotional injury, 42 U.S.C. § 1997e(e), provides an affirmative defense, not a jurisdictional limitation.")

27

*with Walker v. Schult,* 45 F.4th 598, 615 (2d Cir. 2022) ("Finally, and more fundamentally, we disagree with the district court's view that § 1997e(e) was intended to provide an 'affirmative' defense.'"). The Seventh Circuit has not definitively weighed in on the question, and neither party raised this issue. If Defendants intend to raise a defense under Section 1997e(e) at a later stage of this case, the Court will allow the parties at that time to address the issue of whether such a defense is an "affirmative" defense that must be pleaded in an answer or be forfeited.

## CONCLUSION

For the stated reasons, Plaintiffs' motion for partial summary judgment [147] is granted, and Defendants' motion for summary judgment [152] is denied. Furthermore, Defendants' motion for leave to file amended affirmative defenses [171] is denied.

E N T E R:

Dated: June 3, 2026

_____
MARY M. ROWLAND
United States District Judge

28